William A. Maher (WM-9470)
Marc L. Abrams (MA-6600)
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
(212) 382-3300

Attorneys for Plaintiff AIU Insurance Company



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

AIU INSURANCE COMPANY,

        Plaintiff,

-against-

TIG INSURANCE COMPANY,

        Defendant.

------------------------------------------------------------- x

**ECF DOCUMENT**



Civil Action No. 07 CIV 7052

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff AIU Insurance Company ("AIU"), by and through its undersigned attorneys, Wollmuth Maher & Deutsch LLP, for its Complaint against defendant TIG Insurance Company ("TIG") alleges, upon knowledge as to itself and its own acts and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1. This action seeks damages and other relief in connection with TIG's failure to pay amounts due in accordance with certain facultative reinsurance agreements entered between AIU and International Insurance Company ("IIC"); in or around 2003, IIC merged into TIG. Under these reinsurance agreements, IIC agreed to indemnify AIU

for payments made by AIU pursuant to certain underlying umbrella insurance policies that AIU issued to its insured, Foster Wheeler Corporation, and its insured's affiliates (collectively, "Foster Wheeler").

2.  Although AIU paid significant reinsurance premiums to IIC in return for this reinsurance protection, and despite the fact that the reinsurance agreements give rise to legally binding obligations, TIG, as the successor to IIC, has wrongfully refused to pay what is due and owing under these agreements. Accordingly, AIU brings this action for breach of contract and declaratory relief in order to recover the damages and other relief to which it is entitled as a result of TIG's conduct.

## THE PARTIES

3.  Plaintiff AIU is an insurance company that is organized under the laws of the State of New York and maintains its principal place of business in New York.

4.  Defendant TIG is an insurance company that is organized under the laws of the State of California and maintains its principal place of business in Texas.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because AIU and TIG are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.  This Court has personal jurisdiction over TIG because: (i) the operative reinsurance agreements were issued in New York; (ii) these reinsurance agreements were issued on the paper of IIC's corporate parent, Crum & Forster Insurance Companies, which also was located in New York; (iii) the reinsurance agreements were subsequently distributed to AIU in New York; (iv) TIG has transacted and continues to transact

substantial business in New York; and (v) TIG is an insurance company licensed by the New York State Department of Insurance.

7.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

## BACKGROUND

8.  Reinsurance is a type of insurance in which an insurer transfers to a reinsurer some or all of the risk that the insurer has assumed under one or more insurance policies. The reinsurer is paid a premium in accordance with the terms of the reinsurance agreement. The original insurer is known as the "cedent" or "ceding insurer" and it is said to "cede" risk, and premium, to the reinsurer. In this case, AIU, as cedent, transferred certain risks discussed below to IIC, as reinsurer. When IIC subsequently merged into TIG, these risks were assumed by TIG.

9.  The reinsurance that IIC provided to AIU is referred to as "facultative reinsurance," which is a type of reinsurance coverage that applies to a single policy or risk and is negotiated on an individual basis.

### The Relevant Agreements

10.  Between 1978 and 1982, as well as in certain other years not relevant to this dispute, Liberty Mutual Insurance Company and its affiliates ("Liberty Mutual") issued primary general liability insurance policies to Foster Wheeler (the "Primary Policies") in the amount of $1 million per occurrence and in the aggregate.

11.  Sitting directly above certain of the Primary Policies were four Umbrella Liability Policies that AIU issued to Foster Wheeler bearing policy numbers 75-100789,

3

75-101149, 75-101988, and 75-102083 (collectively, the "Umbrella Policies"). The Umbrella Policies were effective from October 1, 1978 until October 1, 1982 and contained limits of $20 million per occurrence and in the aggregate for claims in excess of Liberty Mutual's $1 million limits under the Primary Policies.

12. In order to reinsure its exposure under the Umbrella Policies, AIU entered into four facultative reinsurance agreements with IIC covering the same time periods as the Umbrella Policies: i.e., from October 1, 1978 until October 1, 1982. These reinsurance agreements included: (i) certificate numbers CFR-0062, CFR-0063, and CFR-0064, covering the period from October 1, 1978 until October 1, 1979; (ii) certificate numbers CFR-0071, CFR-0072, and CFR-0073, covering the period from October 1, 1979 until October 1, 1980; (iii) certificate numbers CFR-0085, CFR-0086, and CFR-0087, covering the period from October 1, 1980 until October 1, 1981; and (iv) an additional certificate covering the period from October 1, 1981 until October 1, 1982 (collectively, the "Reinsurance Agreements").

13. Under the Reinsurance Agreements, IIC agreed to indemnify AIU for a portion of losses and loss expenses that AIU incurred under the Umbrella Policies.

14. More specifically, in connection with Umbrella Policy 75-100789, IIC agreed inter alia, to pay with respect to "each occurrence," a 60 percent share of AIU's first $5 million of exposure, a 31.28 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; in connection with Umbrella Policy 75-101149, IIC agreed inter alia, to pay with respect to "each occurrence," a 70 percent share of AIU's first $5 million of exposure, a 25.78 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10

million of exposure; in connection with Umbrella Policy 75-101988, IIC agreed, <u>inter alia</u>, to pay with respect to "each occurrence," an 80 percent share of AIU first $5 million of exposure, a 35 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; and with respect to Umbrella Policy 75-102083, IIC agreed, <u>inter alia</u>, to pay with respect to "each occurrence" a 25 percent share of AIU's exposure of $10 million in excess of $10 million.

15.     The Reinsurance Agreements provide that "[a]ll claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, with respect to business accepted on an excess of loss basis and in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability with respect to business accepted on a pro rata basis, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award."

16.     The Reinsurance Agreements also provide that "[p]ayment of its proportion of loss and expense paid by the Company will be made by the Reinsurer to the Company promptly following receipt of proof of loss."

17.     In exchange for its agreement to reinsure AIU in accordance with the terms of the Reinsurance Agreements, IIC accepted substantial premium payments from AIU.

5

Case 1:07-cv-07052-SHS-HBP   Document 1   Filed 08/07/07   Page 6 of 9

## The Underlying Claims

18. Foster Wheeler was a manufacturer and installer of boilers and other steam generating and heat exchange equipment for various utilities and other industries. Since the late 1970s, hundreds of thousands of asbestos claims have been asserted against Foster Wheeler.

19. Foster Wheeler was engaged in coverage litigation with Liberty Mutual (and various of its other excess and umbrella insurers, including AIU) as to the coverage obligations under the Primary Policies (as well as the coverage obligations under various other primary, excess and umbrella policies) relating to asbestos claims asserted against it. In or around June 2003, Foster Wheeler and Liberty Mutual ultimately settled their respective claims against one another, thereby exhausting coverage under the Primary Policies. Foster Wheeler then sought insurance payments from certain excess and umbrella insurers, including AIU, in the action entitled Foster Wheeler LLC v. Affiliated FM Ins. Co., et al, Index No. 60777/01 (Supreme Court, New York County) (the "Coverage Action").

20. After negotiations between Foster Wheeler, AIU, and certain of AIU's corporate affiliates, AIU and certain of its corporate affiliates reached a settlement with Foster Wheeler and entered into a confidential settlement agreement dated as of June 30, 2006 (the "Settlement Agreement"). Thereafter, AIU and certain of its corporate affiliates were dismissed from the Coverage Action.

21. In accordance with the terms of the Settlement Agreement, AIU has made substantial payments to Foster Wheeler under the Umbrella Policies.

6

22. AIU has provided TIG with information related to the coverage claims asserted by Foster Wheeler and the Settlement Agreement.

### The Reinsurance Billings

23. On or around March 26, 2007, AIU submitted a reinsurance billing and proofs of loss to RiverStone Reinsurance Services LLC ("RiverStone"), the entity that administers reinsurance claims on behalf of TIG.

24. AIU has subsequently submitted additional billings and proofs of loss to RiverStone, including correspondence dated June 22, 2007, which indicated that as of that date, TIG owed AIU approximately $12,300,454 in reinsurance billings submitted under the Reinsurance Agreements in connection with payments AIU has made under the Settlement Agreement.

25. Despite AIU's requests for payment, and the fact that AIU has fulfilled all of its obligations under the Reinsurance Agreements, TIG has failed to fulfill its obligation under the Reinsurance Agreements to pay the billed amounts which are due and owing under the terms of the Reinsurance Agreements.

### COUNT I
### (Breach of Contract)

26. AIU repeats and realleges the allegations set forth in paragraphs 1 through 25 as though fully set forth herein.

27. Under the Reinsurance Agreements, TIG, as the successor to IIC, has an obligation and a duty to reimburse AIU for its share of losses and loss expenses in connection with the Umbrella Policies issued to Foster Wheeler.

28. By failing to pay its share of AIU's losses and loss expenses, TIG has breached its obligation and duty to reinsure and indemnify AIU, as required by the Reinsurance Agreements.

29. As a result of TIG's breach of the Reinsurance Agreements, AIU has suffered damages in the amount of at least $12,300,454 plus interest.

## COUNT II
### (Declaratory Relief)

30. AIU repeats and realleges the allegations set forth in paragraphs 1 through 29 as though fully set forth herein.

31. TIG has failed to acknowledge its liability under the Reinsurance Agreements for the losses and loss expenses submitted to it by AIU in connection with the Settlement Agreement.

32. There is an actual controversy between AIU and TIG as to their respective rights and liabilities under the Reinsurance Agreements.

33. AIU is entitled to a declaration, in accordance with 28 U.S.C. § 2201, that the Reinsurance Agreements are in full force and effect and that TIG is obligated to make timely payments to AIU in such amounts as have already become due and may become due in the future insofar as claims are ceded under the Reinsurance Agreements in connection with the Settlement Agreement.

WHEREFORE, Plaintiff AIU respectfully requests that this Court enter judgment in its favor, and against TIG, as follows:

A. A judgment that TIG has breached the Reinsurance Agreements;

B. Compensatory damages in the total amount of $12,300,454, plus interest;

C. A declaration that TIG must reimburse AIU for its share of current and future losses and loss expenses under the Reinsurance Agreements in connection with payments under the Settlement Agreement;

D. Reasonable costs and fees incurred in bringing this action; and

E. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 7, 2007
New York, New York

**WOLLMUTH MAHER & DEUTSCH LLP**

By: _____
William A. Maher (WM-9470)
Marc L. Abrams (MA-6600)

500 Fifth Avenue
New York, NY 10110
(212) 382-3300

Attorneys for Plaintiff AIU Insurance Company

9