Sean Thomas Keely (SK-8593)
LOVELLS LLP
590 Madison Avenue
New York, New York 10022
(212) 909-0600

Attorneys for Defendant
TIG Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

AIU INSURANCE COMPANY,

                               Plaintiff,                         Case No. 07-CV-7052 (SHS)

    -against-

TIG INSURANCE COMPANY,

                               Defendant.

------------------------------------------------------------x

## ANSWER TO COMPLAINT

      Defendant TIG INSURANCE COMPANY for its Answer to the Complaint states as

follows:

### Nature of the Action

      1.     This action seeks damages and other relief in connection with TIG's failure to pay
amounts due in accordance with certain facultative reinsurance agreements entered between AIU
and International Insurance Company ("IIC"); in or around 2003, IIC merged into TIG. Under
these reinsurance agreements, IIC agreed to indemnify AIU for payments made by AIU pursuant
to certain underlying umbrella insurance policies that AIU issued to its insured, Foster Wheeler
Corporation, and its insured's affiliates (collectively, "Foster Wheeler").

ANSWER:    TIG admits that the Complaint purports to seek damages and other relief. TIG

admits that AIU and IIC entered into certain facultative reinsurance agreements, but denies that

TIG has failed to pay amounts in fact due under those facultative reinsurance agreements. TIG

admits that, in or around 2003, IIC merged into TIG. TIG admits that, pursuant to the terms and conditions of certain facultative reinsurance agreements, IIC agreed to reinsure AIU with respect to certain underlying umbrella insurance policies that AIU issued to its insured, Foster Wheeler Corporation, and its insured's affiliates. TIG denies any remaining allegations of Paragraph 1 not specifically admitted herein.

2.      Although AIU paid significant reinsurance premiums to IIC in return for this reinsurance protection, and despite the fact that the reinsurance agreements give rise to legally binding obligations, TIG, as the successor to IIC, has wrongfully refused to pay what is due and owing under these agreements. Accordingly, AIU brings this action for breach of contract and declaratory relief in order to recover the damages and other relief to which it is entitled as a result of TIG's conduct.

ANSWER:    TIG admits that AIU paid reinsurance premiums to IIC for certain facultative reinsurance agreements and admits that the reinsurance agreements give rise to legally binding obligations by both parties, but denies that AIU has met its legally binding obligations under the agreements. TIG admits that TIG is the successor to IIC with respect to the facultative reinsurance agreements, but denies that TIG has wrongfully refused to pay sums allegedly due and owing under these agreements. TIG admits that AIU's Complaint is styled as an action for breach of contract and declaratory relief, but denies that AIU is entitled to recover damages and other relief as a result of TIG's conduct. TIG denies any remaining allegations of Paragraph 2 not specifically admitted herein.

## The Parties

3.      Plaintiff AIU is an insurance company that is organized under the laws of the State of New York and maintains its principal place of business in New York.

ANSWER:    TIG is without knowledge or information sufficient to form a belief as to the truth of Paragraph 3, and therefore denies same.

2

4.    Defendant TIG is an insurance company that is organized under the laws of the State of California and maintains its principal place of business in Texas.

ANSWER:    TIG admits that it is an insurance company that is organized under the laws of the

State of California.  TIG denies that it maintains its principal place of business in Texas.  Further

answering, TIG states that it maintains its principal place of business in New Hampshire.

## Jurisdiction and Venue

5.    This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because AIU and TIG are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

ANSWER:    TIG admits that the amount in controversy exceeds $75,000, exclusive of interest

and costs.  TIG is without knowledge or information sufficient to form a belief as to the truth of

the remaining allegations of Paragraph 5, and therefore denies same.

6.    This Court has personal jurisdiction over TIG because: (1) the operative reinsurance agreements were issued in New York; (ii) these reinsurance agreements were issued on the paper of IIC's corporate parent, Crum & Forster Insurance Companies, which also was located in New York; (iii) the reinsurance agreements were subsequently distributed to AIU in New York; (iv) TIG has transacted and continues to transact substantial business in New York; and (v) TIG is an insurance company licensed by the New York State Department of Insurance.

ANSWER:    TIG admits that this Court has personal jurisdiction over TIG, that TIG has

transacted business in New York and that TIG is an insurance company licensed by the New

York State Department of Insurance.  TIG denies that TIG continues to transact business in New

York, and further denies that the operative reinsurance agreements were issued in New York or

that the agreements were issued "on the paper of IIC's corporate parent, Crum & Forster

Insurance Companies."  TIG is without knowledge or information sufficient to form a belief as to

the truth of the allegation that "the reinsurance agreements were subsequently distributed to AIU

in New York," and therefore denies same.  TIG denies any further allegations of Paragraph 6 not specifically admitted herein.

      7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

ANSWER:    TIG admits that venue is proper pursuant to 28 U.S.C. § 1391 (a) (1), but denies

that venue is proper pursuant to 28 U.S.C. § 1391 (a) (2) and further denies that a substantial part

of the events or omissions giving rise to the claims occurred in this district.  TIG denies any

further allegations of Paragraph 7 not specifically admitted herein.

## Background

      8.      Reinsurance is a type of insurance in which an insurer transfers to a reinsurer some or all of the risk that the insurer has assumed under one or more insurance policies.  The reinsurer is paid a premium in accordance with the terms of the reinsurance agreement.  The original insurer is known as the "cedent" or "ceding insurer" and it is said to "cede" risk, and premium, to the reinsurer.  In this case, AIU, as cedent, transferred certain risks discussed below to IIC, as reinsurer.  When IIC subsequently merged into TIG, these risks were assumed by TIG.

ANSWER:    TIG admits the first two sentences of Paragraph 8 and the third sentence of

Paragraph 8 except for the phrase "and is said to 'cede' risk and premium to the reinsurer."  TIG

admits that IIC merged into TIG.  TIG denies any further allegations of Paragraph 8 not

specifically admitted herein.

      9.      The reinsurance that IIC provided to AIU is referred to as "facultative reinsurance," which is a type of reinsurance coverage that applies to a single policy or risk and is negotiated on an individual basis.

ANSWER:    Admitted.

### The Relevant Agreements

10.    Between 1978 and 1982, as well as in certain other years not relevant to this dispute, Liberty Mutual Insurance Company and its affiliates ("Liberty Mutual") issued primary general liability insurance policies to Foster Wheeler (the "Primary Policies") in the amount of $1 million per occurrence and in the aggregate.

ANSWER:    TIG admits that, between 1978 and 1982, Liberty Mutual Insurance Company and

its affiliates issued primary general liability insurance policies to Foster Wheeler in the amount

of $1 million per occurrence and in the aggregate where applicable.  TIG is without knowledge

or information sufficient to form a belief as to the truth of the allegation as to "certain other years

not relevant to this dispute," and therefore denies same.  TIG denies any further allegations of

Paragraph 10 not specifically admitted herein.

11.    Sitting directly above certain of the Primary Policies were four Umbrella Liability Policies that AIU issued to Foster Wheeler bearing policy numbers 75-100789, 75-101149, 75-101988, and 75-102083 (collectively, the "Umbrella Policies").  The Umbrella Policies were effective from October 1, 1978 until October 1, 1982 and contained limits of $20 million per occurrence and in the aggregate for claims in excess of Liberty Mutual's $1 million limits under the Primary Policies.

ANSWER:    TIG admits that sitting directly above certain of the Primary Policies were three

umbrella liability policies that AIU issued to Foster Wheeler bearing policy numbers 75-100789,

75-101149 and 75-101988 (collectively "Certain Umbrella Policies"), in effect from October 1,

1978 until October 1, 1981, with limits of $20 million per occurrence and in the aggregate where

applicable for claims in excess of Liberty Mutual's $1 million limits under the Primary Policies.

TIG is without knowledge or information sufficient to form a belief as to the truth of the

allegations as to Policy No. 75-102083, and therefore denies same.  TIG denies any further

allegations of Paragraph 11 not specifically admitted herein.

12.    In order to reinsure its exposure under the Umbrella Policies, AIU entered into four facultative reinsurance agreements with IIC covering the same time periods as the Umbrella Policies: i.e., from October 1, 1978 until October 1, 1982.  These reinsurance agreements

included: (1) certificate numbers CFR-0062, CFR-0063, and CFR-0064, covering the period from October 1, 1978 until October 1, 1979; (ii) certificate numbers CFR-0071, CFR-0072, and CFR-0073, covering the period from October 1, 1979 until October 1, 1980; (iii) certificate numbers CFR-0085, CFR-0086, and CFR-0087, covering the period from October 1, 1980 until October 1, 1981; and (iv) an additional certificate covering the period from October 1, 1981 until October 1, 1982 (collectively, the "Reinsurance Agreements").

ANSWER:     TIG is without knowledge with respect to AIU's intentions and, therefore, denies

Paragraph 12, except that TIG admits that AIU and TIG entered into certain reinsurance

agreements, including certificate numbers CFR-0062, CFR-0063, and CFR-0064, covering the

period from October 1, 1978 until October 1, 1979; (ii) certificate numbers CFR-0071, CFR-

0072, and CFR-0073, covering the period from October 1, 1979 until October 1, 1980; and (iii)

certificate numbers CFR-0085, CFR-0086, and CFR-0087, covering the period from October 1,

1980 until October 1, 1981 (collectively "Certain Reinsurance Agreements"). TIG denies that

the parties' reinsurance agreements include "an additional certificate covering the period from

October 1, 1981 until October 1, 1982." TIG denies any further allegations of Paragraph 12 not

specifically admitted herein.

13.     Under the Reinsurance Agreements, IIC agreed to indemnify AIU for a portion of losses and loss expenses that AIU incurred under the Umbrella Policies.

ANSWER:     TIG admits that, subject to the terms, conditions and exclusions of the Certain

Reinsurance Agreements and the implied terms, including the duty of utmost good faith, IIC

agreed to reinsure AIU for a portion of losses and loss expenses that AIU incurred under the

Certain Umbrella Policies. TIG denies any further allegations of Paragraph 13 not specifically

admitted herein.

14.     More specifically, in connection with Umbrella Policy 75-100789, IIC agreed inter alia, to pay with respect to "each occurrence," a 60 percent share of AIU's first $5 million of exposure, a 31.28 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; in connection with Umbrella Policy 75-101149, IIC agreed inter alia, to pay with respect to "each occurrence," a 70 percent share of AIU's first $5 million of

exposure, a 25.78 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; in connection with Umbrella Policy 75-101988, IIC agreed, inter alia, to pay with respect to "each occurrence," an 80 percent share of AIU first $5 million of exposure, a 35 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; and with respect to Umbrella Policy 75-102083, IIC agreed, inter alia, to pay with respect to "each occurrence" a 25 percent share of AIU's exposure of $10 million in excess of $10 million.

ANSWER:     TIG admits that, subject to the terms, conditions and exclusions of the Certain

Reinsurance Agreements and the implied terms, including the duty of utmost good faith, IIC

agreed to reinsure:  (i) Umbrella Policy 75-100789 for $3 million part of $5 million for AIU's

first $5 million of exposure, $1.5909 million part of $5 million for AIU's $5 million excess of $5

million exposure layer, and $2.5 million part of $10 million for AIU's $10 million excess of $10

million exposure layer; (ii) Umbrella Policy 75-101149 for $3 million part of $5 million for

AIU's first $5 million of exposure, $1.289150 million part of $5 million for AIU's $5 million

excess of $5 million exposure layer, and $2.5 million part of $10 million for AIU's $10 million

excess of $10 million exposure layer; and (iii) Umbrella Policy 75-101989 for $4 million part of

$5 million for AIU's first $5 million of exposure, $1.75 million part of $5 million for AIU's $5

million excess of $5 million exposure layer, and $2.5 million part of $10 million for AIU's $10

million excess of $10 million exposure layer.  TIG denies that it agreed to reinsure Umbrella

Policy 75-102083.  TIG denies any further allegations of Paragraph 14 not specifically admitted

herein.

        15.     The Reinsurance Agreements provide that "[a]ll claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, with respect to business accepted on an excess of loss basis and in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability with respect to business accepted on a pro rata basis, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award."

ANSWER:    Admitted as to the Certain Reinsurance Agreements only.  TIG denies any further

allegations of Paragraph 15 not specifically admitted herein.

     16.    The Reinsurance Agreements also provide that "[p]ayment of its proportion of
loss and expense paid by the Company will be made by the Reinsurer to the Company promptly
following receipt of proof of loss."

ANSWER:    Admitted as to the Certain Reinsurance Agreements only.  TIG denies any further

allegations of Paragraph 16 not specifically admitted herein.

     17.    In exchange for its agreement to reinsure AIU in accordance with the terms of the
Reinsurance Agreements, IIC accepted substantial premium payments from AIU.

ANSWER:    TIG admits that, in exchange for its agreement to reinsure AIU in accordance with

the terms, conditions and exclusions of the Certain Reinsurance Agreements, as well as the

implied terms, including the duty of utmost good faith, IIC accepted premium payments from

AIU.  TIG denies any further allegations of Paragraph 17 not specifically admitted herein.

## The Underlying Claims

     18.    Foster Wheeler was a manufacturer and installer of boilers and other steam
generating and heat exchange equipment for various utilities and other industries.  Since the late
1970s, hundreds of thousands of asbestos claims have been asserted against Foster Wheeler.

ANSWER:    TIG admits that, in 2007, TIG first received notice from AIU that included

information from AIU that Foster Wheeler was a manufacturer and installer of boilers and other

steam generating and heat exchange equipment for various utilities and other industries, and that,

since the late 1970s, hundreds of thousands of asbestos claims have been asserted against Foster

Wheeler.  TIG denies any further allegations of Paragraph 18 not specifically admitted herein.

     19.    Foster Wheeler was engaged in coverage litigation with Liberty Mutual (and
various of its other excess and umbrella insurers, including AIU) as to the coverage obligations
under the Primary Policies (as well as the coverage obligations under various other primary,

8

excess and umbrella policies) relating to asbestos claims asserted against it.  In or around June 2003, Foster Wheeler and Liberty Mutual ultimately settled their respective claims against one another, thereby exhausting coverage under the Primary Policies.  Foster Wheeler then sought insurance payments from certain excess and umbrella insurers, including AIU, in the action entitled <u>Foster Wheeler LLC v. Affiliated FM Ins. Co., et al</u>, Index No. 60777/01 (Supreme Court, New York County) (the "Coverage Action").

ANSWER:    TIG admits that, in 2007, TIG first received notice from AIU that included

information from AIU that:  (i) Foster Wheeler was engaged in coverage litigation with Liberty

Mutual (and various of its other excess and umbrella insurers, including AIU) as to the coverage

obligations under the Primary Policies (as well as the coverage obligations under various other

primary, excess and umbrella policies) relating to asbestos claims asserted against it; (ii) in or

around June 2003, Foster Wheeler and Liberty Mutual ultimately settled their respective claims

against one another, thereby exhausting coverage under the Primary Policies; and (iii) Foster

Wheeler sought insurance payments from certain excess and umbrella insurers, including AIU, in

the action entitled <u>Foster Wheeler LLC v. Affiliated FM Ins. Co., et al</u>, Index No. 60777/01

(Supreme Court, New York County) (the "Coverage Action").  TIG denies any further

allegations of Paragraph 19 not specifically admitted herein.


20.    After negotiations between Foster Wheeler, AIU, and certain of AIU's corporate affiliates, AIU and certain of its corporate affiliates reached a settlement with Foster Wheeler and entered into a confidential settlement agreement dated as of June 30, 2006 (the "Settlement Agreement").  Thereafter, AIU and certain of its corporate affiliates were dismissed from the Coverage Action.

ANSWER:    TIG admits that, in 2007, TIG first received notice from AIU that included

information from:  (i) AIU that after negotiations between Foster Wheeler, AIU, and certain of

AIU's corporate affiliates, AIU and certain of its corporate affiliates reached a settlement with

Foster Wheeler and entered into a confidential settlement agreement dated as of June 30, 2006

(the "Settlement Agreement"); and (ii) that, thereafter, AIU and certain of its corporate affiliates

were dismissed from the Coverage Action.  TIG denies any further allegations of Paragraph 20 not specifically admitted herein.

21.    In accordance with the terms of the Settlement Agreement, AIU has made substantial payments to Foster Wheeler under the Umbrella Policies.

ANSWER:    TIG admits that, in 2007, TIG first received notice from AIU that included

information from AIU that, in accordance with the terms of the Settlement Agreement, AIU had

made payments to Foster Wheeler under the Umbrella Policies.  TIG is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of Paragraph

21, and therefore denies same.

22.    AIU has provided TIG with information related to the coverage claims asserted by Foster Wheeler and the Settlement Agreement.

ANSWER:    TIG admits that AIU first provided TIG with information related to the coverage

claims asserted by Foster Wheeler and the Settlement Agreement in 2007, but denies that the

information provided has been sufficient or timely.  TIG denies any remaining allegations of

Paragraph 22 not specifically admitted herein.

## The Reinsurance Billings

23.    On or around March 26, 2007, AIU submitted a reinsurance billing and proofs of loss to RiverStone Reinsurance Services LLC ("RiverStone"), the entity that administers reinsurance claims on behalf of TIG.

ANSWER:    TIG admits that, on or around March 26, 2007, AIU submitted documents styled

as a reinsurance billing and what AIU calls "proofs of loss" to RiverStone Reinsurance Services

LLC, and admits that Riverstone Reinsurance Services LLC is the entity that administers

reinsurance claims on behalf of TIG.  TIG denies that the information provided by AIU has been

sufficient or timely.  TIG denies any remaining allegations of Paragraph 23 not specifically

admitted herein.

24.     AIU has subsequently submitted additional billings and proofs of loss to
RiverStone, including correspondence dated June 22, 2007, which indicated that as of that date,
TIG owed AIU approximately $12,300,454 in reinsurance billings submitted under the
Reinsurance Agreements in connection with payments AIU has made under the Settlement
Agreement.

ANSWER:     TIG admits that AIU has submitted additional billings and what AIU calls "proofs

of loss" to RiverStone, including correspondence dated June 22, 2007, which asserted that as of

that date, TIG owed AIU approximately $12,300,454 in reinsurance billings submitted under the

Certain Reinsurance Agreements in connection with payments AIU has made under the

Settlement Agreement.  TIG denies that TIG owes AIU approximately $12,300,454 in

reinsurance billings submitted under the Reinsurance Agreements in connection with payments

AIU has made under the Settlement Agreement and denies that the information provided has

been sufficient or timely.  TIG denies any remaining allegations of Paragraph 24 not specifically

admitted herein.

25.     Despite AIU's requests for payment, and the fact that AIU has fulfilled all of its
obligations under the Reinsurance Agreements, TIG has failed to fulfill its obligation under the
Reinsurance Agreements to pay the billed amounts which are due and owing under the terms of
the Reinsurance Agreements.

ANSWER:     TIG admits that AIU has made requests for payment under the Certain

Reinsurance Agreements, but TIG denies that AIU has fulfilled all of its obligations under the

Reinsurance Agreements.  TIG denies that it has an obligation under the Reinsurance

Agreements to pay the billed amounts and denies that the billed amounts are due and owing

under the terms of the Reinsurance Agreements.  TIG denies any remaining allegations of

Paragraph 25 not specifically admitted herein.  Further answering, AIU (i) breached its express

obligation under the Certain Reinsurance Agreements to provide prompt notice of the Foster

Wheeler claims to TIG; (ii) breached its duty of utmost good faith implied in the Certain

Reinsurance Agreements to provide prompt notice of the Foster Wheeler claims to TIG; and (iii)

breached its express obligation under the Certain Reinsurance Agreements to make AIU's

records available for TIG's inspection and to place AIU's records at TIG's disposal at reasonable

times.

## COUNT I
### (Breach of Contract)

26.     AIU repeats and realleges the allegations set forth in paragraphs 1 through 25 as
though fully set forth herein.

ANSWER:     TIG repeats and realleges the responses set forth in paragraphs 1 through 25 as

though fully set forth herein.

27.     Under the Reinsurance Agreements, TIG, as the successor to IIC, has an
obligation and a duty to reimburse AIU for its share of losses and loss expenses in connection
with the Umbrella Policies issued to Foster Wheeler.

ANSWER:     Denied.

28.     By failing to pay its share of AIU's losses and loss expenses, TIG has breached its
obligation and duty to reinsure and indemnify AIU, as required by the Reinsurance Agreements.

ANSWER:     Denied.

29.     As a result of TIG's breach of the Reinsurance Agreements, AIU has suffered
damages in the amount of at least $12,300,454 plus interest.

ANSWER:     Denied.

## COUNT II
## (Declaratory Relief)

30.     AIU repeats and realleges the allegations set forth in paragraphs 1 through 29 as though fully set forth herein.

ANSWER:     TIG repeats and realleges the responses set forth in paragraphs 1 through 29 as

though fully set forth herein.


31.     TIG has failed to acknowledge its liability under the Reinsurance Agreements for the losses and loss expenses submitted to it by AIU in connection with the Settlement Agreement.

ANSWER:     Denied.

32.     There is an actual controversy between AIU and TIG as to their respective rights and liabilities under the Reinsurance Agreements.

ANSWER:     Admitted.

33.     AIU is entitled to a declaration, in accordance with 28 U.S.C. § 2201, that the Reinsurance Agreements are in full force and effect and that TIG is obligated to make timely payments to AIU in such amounts as have already become due and may become due in the future insofar as claims are ceded under the Reinsurance Agreements in connection with the Settlement Agreement.

ANSWER:     Denied.

## AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

1.      AIU's claims are barred in whole or in part by AIU's preceding breach of the Reinsurance Agreements' provision requiring that AIU provide prompt notice of any occurrence or accident which appears likely to involve the reinsurance.

SECOND AFFIRMATIVE DEFENSE

2.      AIU's claims are barred in whole or in part by AIU's preceding breach of the Reinsurance Agreements' provision requiring that AIU provide prompt notice of any occurrence or accident which appears likely to involve the reinsurance.  As a result, TIG entered into commutations of certain of its outwards reinsurance coverage without notice of Foster Wheeler's claims against AIU.  The absence of such notice caused TIG to commute for fewer dollars than TIG otherwise would have commuted had it had such notice.  As a result, TIG suffered prejudice and/or tangible economic injury in the form of lost reinsurance recoveries.

THIRD AFFIRMATIVE DEFENSE

3.      AIU's claims are barred in whole or in part by AIU's preceding breach of the Reinsurance Agreements' provision requiring that AIU provide prompt notice of any occurrence or accident which appears likely to involve the reinsurance.  As a result, TIG suffered prejudice and/or tangible economic injury as a result of not receiving notice to set appropriate reserves under the Reinsurance Agreements.

## FOURTH AFFIRMATIVE DEFENSE

4.      AIU's claims are barred in whole or in part by AIU's preceding breach of the Reinsurance Agreements' provision requiring that AIU shall make available for inspection and place at the disposal of TIG at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

## FIFTH AFFIRMATIVE DEFENSE

5.      AIU's claims are barred in whole or in part by the doctrine of estoppel, in that, as a result of AIU's acts and/or omissions, TIG justifiably and detrimentally relied on the absence of prompt notice by AIU advising TIG under the Reinsurance Agreements of the Foster Wheeler claims, suits or proceedings.  As a result, TIG enter into commutations of certain of its outwards reinsurance coverage without notice of Foster Wheeler's claims against AIU.  The absence of such notice caused TIG to commute for fewer dollars than TIG otherwise would have commuted had it had such notice.  As a result, TIG suffered prejudice and/or tangible economic injury in the form of lost reinsurance recoveries.

## SIXTH AFFIRMATIVE DEFENSE

6.      Some or all of the claims paid by AIU to Foster Wheeler may be excluded from the coverage provided by one or more of the Reinsurance Agreements.

## SEVENTH AFFIRMATIVE DEFENSE

7.      AIU has the burden to establish that the claims paid under its settlement with Foster Wheeler are within the terms and conditions of the policies ceded to the Reinsurance

Contracts and are otherwise properly allocated to those policies.  AIU has not met its burden on these points.

**JURY DEMAND**

TIG demands a trial by jury on all issues so triable.

Dated: New York, New York
September 17, 2007

LOVELLS LLP

By: _____
Sean Thomas Keely (SK-8593)
590 Madison Ave.
New York, New York 10022
Phone: (212) 909-0600
Fax:    (212) 909-0660

Attorneys for Defendant
TIG Insurance Company

OF COUNSEL:

James I. Rubin
Catherine E. Isely
Amy A. Pines
Julie Rodriguez Aldort
BUTLER RUBIN SALTARELLI & BOYD LLP
70 West Madison Street
Suite 1800
Chicago, IL 60602
(312) 444-9660


To:    William A. Maher, Esq.
Marc L. Abrams, Esq.
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

Attorneys for Plaintiff
AIU Insurance Company