Sean Thomas Keely (SK-8593)
LOVELLS LLP
590 Madison Avenue
New York, New York 10022
(212) 909-0600
sean.keely@lovells.com

James I. Rubin (*pro hac vice*)
Catherine E. Isely (*pro hac vice*)
Julie Rodriguez Aldort (*pro hac vice*)
BUTLER RUBIN SALTARELLI & BOYD
70 W. Madison, Suite 1800
Chicago, Illinois 60602
(312) 444-9660
Attorneys for Defendant
TIG Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | |
|---|---|
| AIU INSURANCE COMPANY, : | |
| : | |
| Plaintiff, : | |
| : | |
| -v. - : | Civil Action No. 07 CIV 7052 |
| : | |
| TIG INSURANCE COMPANY, : | |
| : | |
| Defendant. : | |
| : | |

-------------------------------------------------------x

## DECLARATION OF JULIE RODRIGUEZ ALDORT

I, Julie Rodriguez Aldort, declare as follows:

1. I am over the age of 18 years.

2. I am an attorney duly licensed to practice law in the State of Illinois. I was admitted to appear *pro hac vice* in this matter on October 10, 2007. I am a partner

with the law firm of Butler Rubin Saltarelli & Boyd LLP, counsel for Defendant TIG Insurance Company ("TIG").

3. I submit this affidavit in support of TIG Insurance Company's Memorandum of Law in Support of its Motion to Compel. I have personal knowledge of the facts stated herein, and, if called as a witness, I could and would testify competently thereto.

4. Counsel for the parties – Marc Abrams and Serena Parker on behalf of AIU and myself on behalf of TIG - have held a series of meet and confer sessions beginning on January 10, 2008 and ending on April 7, 2008. I attended all of these conferences. The sessions covered, among other things, (1) AIU's privilege claims and (2) whether the parties would produce documents related to claims under the facultative reinsurance certificates in issue, beyond those specifically related to the billings in the Complaint. These "Other Claims" are the Forty-Eight Insulations asbestos claims (the "Other Asbestos Claims") and two claims arising out of boiler explosions on navy vessels (the "Boiler Claims").

5. On January 10, 2008, during the initial meet and confer (attended by Attorneys Abrams and Parker for AIU and Attorney Catherine Isely and myself for TIG), Attorney Abrams advised that AIU objected to producing documents relating to the Other Claims, but he did not provide a basis for AIU's objection beyond that set forth in AIU's written responses. A true and correct copy of AIU's responses to request for production is attached hereto as Exhibit 1. During this initial meet and confer, I advised that, for the time being, TIG would not challenge the withholding of the Boiler Claims. I further

2

advised that TIG would respond to AIU's position with respect to the Other Asbestos Claims during a subsequent meet and confer.

6. During the same January 10, 2008 meet and confer, counsel also discussed AIU's refusal to produce documents related to AIU's notices to its other reinsurers' regarding losses under the facultative reinsurance certificates, which includes the Other Claims and the billings at issue in the Complaint. Although in its written responses, AIU asserted overbreadth and burdensomeness objections as well, during the conference, Attorney Abrams advised that AIU refused to provide documents related to notices to its other reinsurers on the grounds that it did not believe the documents were relevant without reference to the other two objections. (*See* Exhibit 1, Response Nos. 14-16.) I responded by stating that the discovery requests sought information that was likely to lead to admissible and/or relevant evidence. I stated that, for example, such discovery could show that AIU provided notice to other reinsurers, but not TIG. Counsel ultimately reached a compromise with respect to the notices relating to the billings at issue in the Complaint, but notices to AIU's reinsurers relating to the Other Claims remained an open issue.

7. In the January 10, 2008, meet and confer, I also inquired into AIU's General Objection No. 6 relating to privilege. In particular, I asked if AIU intended to withhold coverage counsel communications and work product relating to the underlying claims on the basis of privilege. Attorney Abrams confirmed that this was AIU's intention. My partner, Catherine Isely, and I advised Attorney Abrams that TIG objected to AIU's withholding of these documents on the basis of privilege. (We noted that TIG was not seeking AIU's disclosure of privileged communications between AIU and its

reinsurance counsel in this dispute.) We pointed out that the documents were discoverable by TIG. We noted that as AIU's reinsurer, TIG was entitled to the documents on the basis of, among other things, the common interest doctrine. Attorney Abrams disagreed. Ultimately, this issue was raised before the Court in the status hearing on January 18, 2008. At that time the Court advised TIG to address the dispute in a motion to compel after reviewing the AIU privilege log.

8. During a subsequent meet and confer on January 14, 2008, Attorney Abrams proposed that the parties produce notices relating to the Other Claims, but not the associated claim files. I advised Attorney Abrams that I would review the proposal with TIG.

9. On February 7, 2008, in yet another meet and confer, I advised Attorney Abrams, that at that time, TIG did not believe it would be appropriate to produce only the notices without having the context of the claim files to identify the circumstances under which notices were being provided. Attorney Abrams stated that AIU did not believe the claim files were necessary as this was merely a "notice case" and asserted that producing the claim files would implicate a substantial number of documents and significant effort by AIU. I responded by explaining that the Other Claims documents could not be cherry-picked; they were either in or out of the proceeding. Attorney Abrams agreed to consider the issue further.

10. On February 22, 2008, counsel held a further meet and confer in which Attorney Abrams advised that AIU would proceed with producing only the notice documents and asked me if TIG maintained its position. I stated that I would respond after considering the issue. On March 5, 2008, counsel again conferred and I advised that

4

TIG proposed a compromise in which AIU would produce its claim files for the Other Claims and TIG would produced its assumed reinsurance claim files for the Other Claims through ninety days after notice to TIG. I further advised that TIG believed the documents were relevant to determining whether AIU had any procedures for providing notice and to identifying the circumstances that led AIU to provide such notice. Accordingly, I stated that TIG no longer was willing to take an "all in or all out" approach to the Other Claims. Attorney Abrams stated that AIU would consider the issue further.

   11. On March 14, 2008, I received an electronic mail from Attorney Abrams in which he advised that AIU maintained its view that only the notices for the Other Claims should be subject to discovery. He objected to producing the supporting claim files on the basis of relevance and burdensomeness. He requested that TIG provide a further explanation of its argument as to the relevance of the documents. A true and correct copy of the electronic mail I received from Marc Abrams on March 14, 2008 is attached as Exhibit 2.

   12. On March 18, I responded to Attorney Abrams by electronic mail with the following explanation:

> The "Other Claims" documents are discoverable, that is, likely to lead to the discovery of admissible evidence, as they relate to the issue of whether and to what extent AIU has implemented procedures to comply with AIU's notice obligations under the facultative reinsurance certificates. Additionally, the documents will show the circumstances that triggered AIU's provision of notice for these claims. This may shed let on AIU's decisionmaking process, or lack thereof, for providing notice to TIG under the facultative reinsurance certificates. In our meet and confers you have stated that you believe that only the notices for the "Other Claims" are relevant because this is a "notice case." As you know, relevant to a "notice case" are AIU's efforts to comply with its notice obligations under the facultative reinsurance certificates. The requested claim files go

5

> directly to that point.  Excerpting the notices from the claim files, as you request, is insufficient because it would present the documents out of context and would not provide any information regarding the circumstances that led AIU to provide notice.  Accordingly, TIG has met its burden of establishing that this discovery request is likely to lead to the discovery of admissible evidence.

A true and correct copy of my electronic mail to Marc Abrams, dated March 18, 2008, is attached as Exhibit 3.

   13. In the same electronic mail, I also provided an explanation as to the relevance of AIU's notices to its reinsurers relating to the Other Claims:

> Along the same lines, TIG has requested AIU's notices and status reports (and documents relating to its decision to provide such notice) to its other reinsurers  (treaty and facultative) relating to the Forty-Eight Insulations [Other Asbestos Claims] and Boiler claims.  This request is also likely to lead to the discovery of admissible evidence in that it again relates to the issue of whether and to what extent AIU has implemented procedures to comply with AIU's notice obligations.  These documents would also show (1) the circumstances that caused AIU to provide notice to reinsurers, (2) to which reinsurers AIU elected to provide notice, and (3) when such notice was provided.  Thus, TIG has met its burden and these documents are discoverable.

(Exh. 3.)

   14. On March 24, 2008, in response to my electronic mail dated March 18, 2008, Attorney Abrams restated AIU's relevance objection, stating, "AIU's practices regarding notice of claims at issue many years ago simply have no bearing on the claims at issue now."  A true and correct copy of Marc Abrams' electronic mail to me dated March 24, 2008 is attached as Exhibit 4.  He also restated AIU's burdensomeness objection, stating that TIG's requests would "mean obtaining the files of outside counsel" and obtaining responsive materials "would be burdensome and would also necessarily

6

require another detailed privilege review without providing any benefit to this case."

(*Id.*)

15.   Counsel held a further meet and confer on March 27, 2008. During the conference, attended on behalf of TIG by my partner Mark Schwartz and myself, I requested details regarding AIU's burdensomeness objection. Attorney Abrams stated that AIU anticipated that to obtain the responsive claim files, he would have to approach outside counsel. He stated that he knew Cozen O'Connor, AIU's counsel in the declaratory judgment action, were likely involved, but he did not yet know if other counsel were involved. He also stated he did not know which outside counsel handled which of the AIG entities work for these claims. He considered this a burdensome process. He did not know the volume of documents in the possession of outside counsel. I also inquired as to the volume of AIU's actual claim files for the Other Claims. Attorney Abrams estimated the volume at one box with respect to the Other Asbestos Claims. He did not know the volume or location of the Boiler Claims.

16.   I also inquired as to AIU's basis for asserting that the files for the Other Claims were not relevant based on AIU's assertion that they were from many years ago and were supposedly unrelated claims. I noted that AIU had simultaneously taken the position that the notices for the older, "unrelated" claims were relevant. Attorney Abrams responded by stating that the timeliness of AIU's notices for the Other Claims and the procedures followed for the Other Claims did not bear on the billings at issue in the Complaint.

17.   In response, I explained that, in fact the documents were potentially relevant for a number of reasons. First, they would disclose the circumstances under

7

which AIU determined it was appropriate to give notice under the facultative reinsurance certificates and whether it was now taking an inconsistent position. Second, based on the Second Circuit's decision in *Unigard Security Ins. Co. Inc. v. North River Ins. Co.*, 4 F.3d 1049 (2d Cir. 1993), AIU's procedures for providing notice are pertinent to TIG's late notice defense. I also reminded AIU's counsel that multiple volumes of the documents that AIU appeared to be deeming solely related to the Other Claims had been presented to TIG in July 2007 during its audit of the Foster Wheeler asbestos claims, which are the subject of this suit. I further noted that when TIG asked AIU about the completeness of the files presented for the audit, which included certain Other Claims documents, AIU responded by stating that the documents presented were those that would "assist TIG in understanding the claims asserted against AIU and their resolution." Attached as Exhibit 5 is a true and correct copy of AIU's response to TIG's inquiries following the audit dated August 2, 2007. Thus, I posited that the documents were plainly relevant and that AIU's ability to produce them for the audit undermined its undue burden argument.

18. In the call, I asked if AIU was withholding the documents previously presented to TIG during the audit based on its objection to producing Other Claims documents. Attorney Abrams stated that he was not familiar with the documents presented to TIG during the audit and that he had to investigate their status.

19. I next noted that AIU had not produced any documents from prior to the 2001 declaratory judgment action except for placement/underwriting documents and asked if AIU had taken the position that any documents created prior to the declaratory judgment action were related to the Other Asbestos Claims, and thus, was withholding

8

them.  Attorney Abrams stated that he did not believe that any documents before the declaratory judgment action would be related to the asbestos claims at issue in the Complaint.  I challenged him on this, noting that in the declaratory judgment action that AIU had admitted in discovery that it received notice letters from Foster Wheeler at least as early as 1992 relating to the claims at issue in the declaratory judgment action, which are the same claims at issue in the Complaint.  We agreed to confer on the issue further in a subsequent meet and confer.

20.     During the same meet and confer on March 27, 2008, Counsel discussed TIG's objections to AIU's privilege log.  In particular, my partner and I reiterated TIG's objection to AIU's claim of privilege with respect to documents relating to the underlying coverage litigation.  Attorney Schwartz explained that TIG believed the documents should be produced based on various waiver theories.  Attorney Abrams stated that AIU maintained its position that the documents were privileged.  Counsel for both parties agreed that further discussions would not lead to a resolution of the dispute over AIU's privilege claim.

21.     Also during the March 27, 2008 meet and confer, I noted a number of categories of responsive documents that appeared to be missing from AIU's production.  I detailed these in a letter to Attorney Abrams dated March 28, 2008.  A true and correct copy of my letter is attached as Exhibit 6.  During the meet and confer, Attorney Abrams said he would review the document categories I identified and provide a further response.  I also asked whether AIU had conducted electronic searches for responsive documents.  Attorney Abrams stated that AIU had conducted electronic searches.  In my follow up letter from March 28, 2008, I asked Attorney Abrams to confirm that AIU had searched

9

for various individuals, whom I listed in my letter, who had relevance to the dispute. I also inquired as to whether AIU had applied any date limitations to its searches. (*Id.* at 3.)

22. On April 1, 2008, the parties' counsel (I was joined by my colleague, Mindy Finnigan on this call) held another meet and confer regarding the Other Claims issue and several other outstanding document issues not pertinent to the pending motion to compel. With respect to the Other Claims issue, Attorney Abrams advised that AIU maintained its objection to producing these documents. Attorney Abrams also advised that AIU's objection extended to those documents that AIU had previously presented to TIG during the July 2007 audit to the extent that AIU deemed the documents related solely to the Other Asbestos Claims. In response I noted that AIU had only objected to TIG's request for the audit documents on the basis of privilege. In response, Attorney Abrams stated that he had made no secret of the fact that AIU was taking the position that any documents they deemed related to the Other Claims were being withheld and that this position applied to all of AIU's responses.

23. Attorney Abrams confirmed that AIU's position generally was that documents from prior to the declaratory judgment action were related to the Other Asbestos Claims. I again challenged him on this, noting audit documents and documents produced by AIU indicated claim activity years earlier. Attorney Abrams stated that to the extent he deemed the earlier documents related to the claims in the declaratory judgment action, he would produce them. Counsel agreed that further discussions would not lead to a resolution of the dispute.

24. During the call, and as confirmed in his follow up letter of the same date, Attorney Abrams stated that AIU had conducted searches of the electronic mailboxes of

10

those individuals identified in response to TIG's interrogatories and certain others. A true and correct copy of Attorney Abrams letter of April 1, 2008 is attached as Exhibit 7. In the call Attorney Abrams stated that AIU had searched for those individuals it deemed relevant but not necessarily those that TIG deemed relevant.

25. In the April 1, 2008 discussion and in his subsequent follow up letter of the same date, Attorney Abrams stated that he would supplementally produce a selection of documents that I had noted as missing from AIU's production during our meet and confer on March 27, 2008. In particular, Attorney Abrams advised that AIU would produce the documents that it produced in the underlying declaratory judgment action with the exception of documents it deemed related to the Other Claims and documents it deemed related to AIU's other reinsurers. (To date, AIU has not produced any of these documents.)

26. On April 3, 2008, I responded to Attorney Abrams' April 1 letter. A true and correct copy is attached as Exhibit 8. In particular, I objected to AIU's refusal to conduct electronic searches for individuals other than those identified in AIU's interrogatory responses. (*See* Exh. 8 at 2.) I also objected to AIU's excising of the Other Claims and other reinsurer documents from the documents produced in the declaratory judgment action. (*Id*. at 1-2.)

27. On April 7, 2008, the parties held a further meet and confer. During the call, Attorney Abrams asked if TIG had produced its "Other Claims" documents. I advised that TIG had not, but that TIG stood ready to produce its assumed files for these claims upon AIU's agreement to comply with TIG's document requests seeking documents regarding the Other Claims or upon the Court's order compelling AIU to

11

produce such documents. I followed up on the issues raised in my letter dated April 3, 2008. Attorney Abrams stated that he would respond in writing. On April 11, 2008, I received a letter from Attorney Abrams responding to my letter. A true and correct copy of Attorney Abrams' letter is attached as Exhibit 9. In the letter, Attorney Abrams stated that AIU maintained its position with respect to the documents produced in the declaratory judgment action. Attorney Abrams also refused to conduct further electronic searches, with the exception of Meera Coilparampil. Attorney Abrams offered to conduct an electronic search for Ms. Coilparampil's files if TIG dropped its request for additional searches. By electronic mail dated April 15, 2008, I advised Attorney Abrams that TIG was not willing to forgo the searches for the other pertinent individuals identified in my letter dates April 3, 2008 in exchange for a search of Ms. Coilparampil's files. A true and correct copy of my electronic mail dated April 15, 2008 is attached as Exhibit 10.

28. Attached to this declaration as Exhibit 11 is a true and correct copy of the letter dated January 25, 2007 from Richard Kafaf to Michael Staley, labeled TIG 126-181.

29. Attached to this declaration as Exhibit 12 is a true and correct copy of facultative certificate CFR 0062, labeled TIG 1156-1165.

30. Attached to this declaration as Exhibit 13 is a true and correct copy of the Summons and Complaint in re *Certain Underwriters at Lloyd's, London, et al. v. Foster Wheeler Corporation, et al.*, Index No. 600777/01, dated February 14, 2001 and labeled PL 2065-2106.

31. Attached to this declaration as Exhibit 14 is a true and correct copy of the July 25, 2001 Third Part Complaint in re *Foster Wheeler Corporation v. American International Ins. Co. et al.*, Index No. 590856/01, labeled TIG 1709-1732.

32. Attached to this declaration as Exhibit 15 is a true and correct copy of the Confidential Settlement Memorandum in re *Foster Wheeler LLC v. Affiliated FM Ins. Co., et al.*, Index No 600777/01 and Related New Jersey Action, labeled PL 59450-59457.

33. Attached to this declaration as Exhibit 16 is a true and correct copy of the February 2, 2007 letter from Michael Staley to Richard Kafaf, labeled TIG 13592.

34. Attached to this declaration as Exhibit 17 is a true and correct copy of the April 3, 2007 letter from Michael Staley to Richard Kafaf, labeled TIG 117.

35. Attached to this declaration as Exhibit 18 is a true and correct copy of pertinent excerpts of the April 26, 2007 email from Richard Kafaf to Michael Staley and Judy Marotti, with attachments, labeled TIG 41-95.

36. Attached to this declaration as Exhibit 19 is a true and correct copy of AIU's Privilege Log.

37. Attached to this declaration as Exhibit 20 is a true and correct copy of AIU's Privilege Redaction Log.

38. Attached to this declaration as Exhibit 21 is a true and correct copy of TIG Insurance Company's First Set of Document Requests, dated October 25, 2007.

39. Attached to this declaration as Exhibit 22 is a true and correct copy of unreported cases cited in TIG's Memorandum of Law In Support of Its Motion to Compel.

40. Attached to this declaration as Exhibit 23 is a true and correct copy of the Objections and Responses of Defendant, AIU Insurance Company, to Plaintiff's Second Set of Interrogatories and Document Requests in re *Foster Wheeler LLC v. Affiliated FM Insurance Company, et al.*, Index No 600777/01, labeled PL 5540-5553.

41. Attached to this declaration as Exhibit 24 is a true and correct copy of the January 8, 2004 letter from J. Dolan to A. Weiner, labeled PL 32860-62.

42. Attached to this declaration as Exhibit 25 is a true and correct copy of AIU's Memorandum of Law in Opposition to St. Paul's Motion for Summary Judgment and the Affidavit of Werner Ahrenstedt, including Exhibits D and E thereto, in *AIU Insurance Company v. Certain Underwriters at Lloyd's, London*, Index No. 602924/07.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: April 15, 2008

_____
Julie Rodriguez-Aldort

W0065659v2