# ALDORT DECLARATION
# EXHIBIT 1

William A. Maher (WM-9470)
Marc L. Abrams (MA-6600)
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
(212) 382-3300

Attorneys for Plaintiff AIU Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

AIU INSURANCE COMPANY,

                    Plaintiff,

          -against-

TIG INSURANCE COMPANY,

                  Defendant.

                    :    Case No. 07-cv-7052 (SHS)

------------------------------------------------------------- x

## AIU INSURANCE COMPANY'S RESPONSES AND OBJECTIONS TO TIG INSURANCE COMPANY'S FIRST SET OF DOCUMENT REQUESTS

        Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the

"Rules"), AIU Insurance Company ("AIU"), by and through its undersigned attorneys, Wollmuth

Maher & Deutsch LLP, hereby objects and responds to the First Set of Document Requests,

dated October 25, 2007 (the "Requests"), propounded by TIG Insurance Company ("TIG"), as

follows:

### GENERAL OBJECTIONS

        1.    AIU's specific objections to each Request are in addition to the general

limitations and objections set forth in this section.  These limitations and objections form a part

of the response to each Request and are set forth here to avoid the duplication and repetition of

restating them for each response. The absence of a reference to a specific General Objection should not be construed as a waiver of any General Objection with respect to each Request.

2.    AIU objects to the definitions and instructions contained in the Requests, and to the Requests, to the extent that they are vague, ambiguous, overbroad and unduly burdensome.

3.    In particular, AIU objects to the definition of "Plaintiff" contained in the Requests. Apart from the fact that there is no such entity as "AIG Insurance Company," several other corporate affiliates of AIU were involved in coverage litigation with Foster Wheeler in connection with insurance policies purportedly issued by these affiliates to Foster Wheeler. Any documents relating to obligations as between Foster Wheeler and AIU's corporate affiliates are irrelevant to the subject matter of this litigation, and, accordingly, such materials will not be produced. Moreover, AIU objects to any other definitions contained in the Requests that uses the term "Plaintiff" (for instance, "Plaintiff's Broker", "Plaintiff's Foster Wheeler Policies") on the same grounds.

4.    In particular, AIU also objects to the definition of "Coverage Attorney" contained in the Requests because it would necessarily apply to all potential representations in connection with the Foster Wheeler Policies, and, therefore, would include representations unrelated to the claims that form the subject matter of this proceeding.  Accordingly, AIU will interpret the term "Coverage Counsel" to mean any law firms representing AIU in connection with the Foster Wheeler Coverage Litigation, as this term is defined in AIU's First Request for the Production of Documents to Defendant TIG Insurance Company.

5.    AIU objects to the Requests to the extent that they impose obligations on AIU beyond what is required by the Rules.

2

6.    AIU objects to the Requests, to the extent that they seek, or can be construed to seek, documents that are privileged under law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or immunity. Such documents will not be produced. In the event that any document containing such information is or has been produced, such disclosure or production is inadvertent and does not constitute a waiver of any such privilege or immunity.

7.    AIU objects to the Requests to the extent that they seek information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that they seek information concerning subjects other than those relevant to the claims and defenses of any party.

8.    AIU objects to the Requests to the extent that they call for the production of confidential information, including sensitive commercial or proprietary information or information protected from disclosure by law, court order, or any agreement with respect to confidentiality or nondisclosure.

9.    AIU objects to the Requests to the extent that they seek information concerning any act or omission by any person other than AIU.

10.    AIU objects to the Requests to the extent that they seek documents which are in the possession, custody or control of TIG or third parties. In particular, and without limiting the foregoing, AIU objects to the Requests to the extent that they seek documents in the possession, custody or control of TIG. In all such instances, the discovery is obtainable from another source – TIG itself – that is more convenient, less burdensome and less expensive.

11.     To the extent that AIU responds to any Request, it does so without conceding the relevance or materiality of such response, and without prejudice to its right to object to further discovery on such subject matter or to object to the admissibility of any such response at the time of hearing or trial.

12.     AIU's statements that it will produce "responsive" documents refers to documents that are non-privileged and are relevant to the claims, subject matter and the time period at issue in this action.

13.     A response that AIU will produce documents responsive to a Request does not constitute a representation that responsive, non-privileged and otherwise unprotected documents in fact exist, or are in the possession, custody or control of AIU.

14.     Insofar as AIU has responded to a Request to which it has objected, AIU reserves the right to maintain such objection and such objection is not waived in any respect by the provision of a response.

15.     The responses and objections are based upon AIU's present knowledge, information and belief.  The responses and objections are subject to amendment as AIU acquires additional information and completes its review and analysis.  AIU reserves the right to rely upon any facts, documents or other evidence which may hereafter develop or come to its attention.

16.     The objections asserted by AIU are asserted in good faith, based upon counsel's evaluation of AIU's discovery obligations in this matter.  Nevertheless, AIU offers and stands ready to confer with TIG's counsel in an effort to resolve or narrow to the greatest extent possible any dispute between the parties concerning AIU's responses and objections.

4

## SPECIFIC RESPONSES AND
## OBJECTIONS TO THE INDIVIDUAL REQUESTS

AIU incorporates each of the foregoing General Objections in its responses and objections to each individual Request. Without waiving the foregoing General Objections, and subject thereto, AIU responds to each individual Request as follows:

### REQUEST NO. 1

**Produce all copies of each of the Reinsurance Contracts referred to in the Complaint.**

### OBJECTIONS AND RESPONSE TO REQUEST NO. 1

AIU objects to Request No. 1 on the ground that it seeks documents that are likely in the possession, custody and/or control of TIG. Subject to and without waiver of the foregoing objections, including the General Objections, AIU will produce non-privileged documents responsive to this Request.

### REQUEST NO. 2

**Produce all documents concerning the negotiation and purchase of the Reinsurance Contracts, including but not limited to documents prepared by, received from, provided to, or retained by Plaintiff, Plaintiff's Broker, Johnson & Higgins of New York, Crum & Forster Insurance Companies, International Insurance Company or Willis, Faber & Dumas, Ltd.**

### OBJECTIONS AND RESPONSE TO REQUEST NO. 2

AIU objects to the term "Plaintiff" as set forth in General Objection No. 3. AIU further objects to Request No. 2 to the extent it assumes that any of the above entities were agents of AIU and on the ground that it seeks information that is in the possession, custody or control of TIG and/or third parties. AIU further objects to Request No. 2 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, including the General Objections, AIU will produce non-privileged

5

documents responsive to this Request to the extent such documents exist and are within AIU's possession.

## REQUEST NO. 3

**Produce all documents concerning the operation or administration of the Reinsurance Contracts.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 3

AIU objects to Request No. 3 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks information concerning the Reinsurance Contracts generally, without regard to any particular claim or loss. AIU further objects to Request No. 3 on the ground that the terms "operation or administration" are so vague and ambiguous that TIG has failed in this request to indicate those documents that it seeks with reasonably particularity as required by the Rules. Subject to and without waiver of the foregoing objections, including the General Objections, AIU directs TIG to its Objections and Responses to Requests Numbers 1 and 2.

## REQUEST NO. 4

**Produce all internal accounting records, journal entries and desk files concerning the Reinsurance Contracts.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 4

AIU objects to Request No. 4 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The materials that TIG seeks in this Request bear no connection to the claims and/or defenses of any party in this matter. Subject to and without waiver of the foregoing objections, including the General Objections, AIU will produce non-

6

privileged documents responsive to this Request to the extent such documents exist, are within

AIU's possession, and to the extent that they relate to the subject matter of this lawsuit.

## REQUEST NO. 5

**Produce all documents concerning the negotiation and issuance of Plaintiff's Foster Wheeler Policies, including but not limited to documents prepared by, received from, or provided to Foster Wheeler, Foster Wheeler's Broker, Plaintiff, Plaintiff's Broker, Johnson & Higgins of New York, Crum & Forster Insurance Companies, International Insurance Company or Willis, Faber & Dumas, Ltd.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 5

AIU objects to the term "Plaintiff" as set forth in General Objection No. 3. AIU

further objects to Request No. 5 on the ground that it seeks information that is in the possession,

custody or control of TIG and/or third parties. AIU further objects to Request No. 5 on the

grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not

reasonably calculated to lead to the discovery of admissible evidence. Subject to and without

waiver of the foregoing objections, including the General Objections, AIU will produce those

policies issued by AIU to Foster Wheeler for which TIG provided facultative reinsurance.

## REQUEST NO. 6

**Produce all documents relating to notices or communications received by Plaintiff or its agents or representatives from Foster Wheeler or its agents with respect to requests or demands for coverage of asbestos-related claims under Plaintiff's Foster Wheeler Policies.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 6

AIU objects to the term "Plaintiff" as set forth in General Objection No. 3. AIU

further objects to Request No. 6 on the ground that it seeks information that is in the possession,

custody or control of third parties. Subject to and without waiver of the foregoing objections,

including the General Objections, AIU will produce non-privileged documents responsive to this

7

Request to the extent such documents exist, are within AIU's possession, and to the extent that they relate to the subject matter of this lawsuit.

## REQUEST NO. 7

**Produce all documents relating to the evaluation and assessment of any requests or demands for coverage from Foster Wheeler under Plaintiff's Foster Wheeler Policies, including but not limited to documents prepared by, received from, provided to or retained by Plaintiff, Plaintiff's claim handlers and administrators, their supervisors, in-house legal counsel or Coverage Counsel, and Plaintiff's claim files and coverage counsel's files.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 7

AIU objects to the term "Plaintiff" as set forth in General Objection No. 3. AIU further objects to Request No. 7 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence especially to the extent that it seeks information concerning the Foster Wheeler Policies generally, without regard to any particular claim or loss. AIU further objects to Request No. 7 on the ground that it seeks information that is in the possession, custody or control of third parties. AIU further objects to Request No. 7 to the extent that it seeks documents that are privileged under law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or immunity. Subject to and without waiver of the foregoing objections, including the General Objections, and to the extent non-privileged materials responsive to this Request exist, are within AIU's possession and relate to the subject matter of this proceeding, AIU will produce them.

8

## REQUEST NO. 8

**Produce AIU's and AIG's claims files with respect to Plaintiff's Foster Wheeler Policies.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 8

AIU objects to the term "Plaintiff" and "AIG" for the reasons set forth in General Objection No. 3. AIU further objects to Request No. 8 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence especially to the extent that it seeks information concerning the Foster Wheeler Policies generally, without regard to any particular claim or loss. AIU further objects to Request No. 8 to the extent that it seeks documents that are privileged under law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or immunity. Subject to and without waiver of the foregoing objections, including the General Objections, AIU will produce non-privileged documents responsive to this Request to the extent such documents exist, are within AIU's possession, and relate to the subject matter of this litigation.

## REQUEST NO. 9

**Produce AIU's and AIG's coverage counsel's files with respect to Plaintiff's Foster Wheeler Policies.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 9

AIU objects to the term "Plaintiff" and "AIG" for the reasons set forth in General Objection No. 3 and to the term "coverage counsel" for the reasons set forth in General Objection No. 4. AIU further objects to Request No. 9 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence especially to the extent that it seeks information concerning the Foster Wheeler Policies generally, without regard to any particular claim or loss.

9

AIU further objects to Request No. 9 because it seeks documents that are privileged under law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or immunity. Subject to and without waiver of the foregoing objections, including the General Objections, and to the extent non-privileged materials responsive to this Request exist and are within AIU's possession, AIU will produce them.

## REQUEST NO. 10

**Produce all documents relating to the negotiation, consideration, approval or authorization of the Settlement.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 10

AIU objects to Request No. 10 because it seeks documents that are privileged under law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or immunity. AIU further objects to Request No. 10 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, including the General Objections, and to the extent non-privileged materials responsive to this Request exist and are within AIU's possession, AIU will produce them.

## REQUEST NO. 11

**Produce all documents relating to or relied upon by Plaintiff in connection with Plaintiff's allocation of the Settlement.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 11

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Request No. 11 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the

10

discovery of admissible evidence. The materials that TIG seeks in this Request bear no connection to the claims and/or defenses of any party in this matter. Subject to and without waiver of the foregoing objections, including the General Objections, and to the extent non-privileged materials responsive to this Request exist, are within AIU's possession and relate to the subject matter of this proceeding, AIU will produce them.

## REQUEST NO. 12

**Produce all documents relating to or relied upon by Plaintiff in connection with, the reinsurance billings at issue in the Complaint.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 12

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Request No. 12 to the extent that it seeks documents that are privileged under law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or immunity. Subject to and without waiver of the foregoing objections, including the General Objections, AIU will produce non-privileged documents responsive to this Request.

## REQUEST NO. 13

**Produce all documents relating to any review, audit or inspection performed by or on behalf of Defendant concerning the losses at issue in the Complaint.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 13

AIU objects to Request No. 13 to the extent that it seeks documents that are privileged under law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or immunity. Subject to and without waiver of the foregoing objections, including the General Objections, AIU will produce non-privileged documents responsive to this Request to the extent such documents exist.

11

## REQUEST NO. 14

**Produce all documents relating to the decision to give notice to Plaintiff's reinsurers with respect to any claims made by Foster Wheeler pursuant to Plaintiff's Foster Wheeler Policies.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 14

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU objects to Request No. 14 on the grounds that it is overbroad, unduly burdensome and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence because it seeks information concerning the decision to give notice of claims to all of AIU's reinsurers generally regarding claims under the Foster Wheeler Policies generally, as opposed to the specific notice to TIG of the asbestos losses referenced in the Complaint. AIU further objects to Request No. 14 to the extent that it seeks documents that are privileged under law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or immunity. Subject to and without waiver of the foregoing objections, including the General Objections, AIU will produce non-privileged documents responsive to this Request to the extent: (i) such documents exist, (ii) they relate to notice provided to TIG specifically, and (iii) they relate to the asbestos losses submitted to TIG and referred to in the Complaint.

## REQUEST NO. 15

**Produce all documents relating to notices to any of Plaintiff's reinsurers with respect to any claims made by Foster Wheeler pursuant to Plaintiff's Foster Wheeler Policies.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 15

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Request No. 15 on the grounds that it is overbroad, unduly burdensome and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks information concerning notice of claims to all of

AIU's reinsurers generally regarding claims under the Foster Wheeler Policies generally, as

opposed to the specific notice to TIG of the asbestos losses referenced in the Complaint. AIU

further objects to Request No. 15 to the extent that it seeks documents that are privileged under

law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or

immunity. Subject to and without waiver of the foregoing objections, including the General

Objections, AIU will produce non-privileged documents responsive to this Request to the extent:

(i) such documents exist, (ii) they relate to notice provided to TIG specifically, and (iii) they

relate to the asbestos losses submitted to TIG and referred to in the Complaint.

### REQUEST NO. 16

**Produce all documents relating to Plaintiff's communications with its reinsurers
concerning any claims made by Foster Wheeler pursuant to Plaintiff's Foster Wheeler
Policies.**

### OBJECTIONS AND RESPONSE TO REQUEST NO. 16

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection

No. 3. AIU objects to Request No. 16 on the grounds that it is overbroad, unduly burdensome

and seeks information that is not reasonably calculated to lead to the discovery of admissible

evidence to the extent that it seeks information concerning communications with

AIU's reinsurers generally regarding claims under the Foster Wheeler Policies generally, as

opposed to communications to TIG regarding the asbestos losses referenced in the Complaint.

Subject to and without waiver of the foregoing objections, including the General Objections,

AIU will produce non-privileged documents responsive to this Request to the extent:  (i) such

documents exist, (ii) they relate to communications with TIG specifically, and (iii) they relate to

the asbestos losses submitted to TIG and referred to in the Complaint.

## REQUEST NO. 17

**Produce all documents concerning estimating, setting, posting, evaluating, revising, adjusting or supplementing Plaintiff's reserves with respect to the claims made by Foster Wheeler under Plaintiff's Foster Wheeler Policies.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 17

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection

No. 3. AIU further objects to Request No. 17 on the grounds that it is overbroad, unduly

burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence to the extent that it seeks information concerning reserves

under the Foster Wheeler Policies generally, without regard to any particular claim or loss. AIU

further objects to Request No. 17 to the extent that it seeks documents that are privileged under

law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or

immunity. Subject to and without waiver of the foregoing objections, including the General

Objections, AIU will produce non-privileged documents responsive to this Request to the extent

such documents exist, and relate to the asbestos losses submitted to TIG and referred to in the

Complaint.

## REQUEST NO. 18

**Produce all documents that support, refute or otherwise concern the allegations of Plaintiff's Complaint.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 18

AIU objects to Request No. 18 on the grounds that it is vague, ambiguous,

overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably

calculated to lead to the discovery of admissible evidence because it seeks information

concerning the allegations in the Complaint generally, without regard to any particular

14

allegation. Under the Rules, TIG has an obligation to describe each document or category of document requested with reasonable particularity, which it has failed to do here.

## REQUEST NO. 19

**Produce all documents that support, refute or otherwise concern Defendant's defenses to the allegations of the Complaint.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 19

AIU objects to Request No. 19 on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence because it seeks information concerning TIG's defenses generally, without regard to any particular allegation. Under the Rules, TIG has an obligation to describe each document or category of document requested with reasonable particularity, which it has failed to do here.

## REQUEST NO. 20

**Produce all documents that Plaintiff intends to offer or anticipates offering during the trial of this matter.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 20

AIU objects to Request No. 20 because it seeks documents that are privileged under law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or immunity. AIU further objects to this Request because it is premature and contrary to the Rules and the Court's scheduling of this matter. At an appropriate point in this litigation, AIU will provide certain disclosures related to this Request, to the extent they are required by the Rules or the Court's Individual Rules, and to the extent such materials have not already been produced.

## REQUEST NO. 21

**Produce all documents provided to anyone who Plaintiff may call as a fact witness at trial.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 21

AIU objects to Request No. 21 because it seeks documents that are privileged under law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or immunity. AIU further objects to this Request because it is premature and contrary to the Rules and the Court's scheduling of this matter. At an appropriate point in this litigation, AIU may provide certain non-privileged disclosures related to this Request, to the extent they are required by the Rules or the Court's Individual Rules, and to the extent such materials have not already been produced.

## REQUEST NO. 22

**Produce all documents provided to any person who is retained or specially employed to, or otherwise will, provide expert testimony in this case.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 22

AIU objects to Request No. 22 on the ground that it is premature given that expert discovery has not commenced and AIU has not presently retained any expert witnesses in connection with this matter. Upon the commencement of expert discovery, AIU will reconsider this Request and provide any disclosures mandated by the Rules or the Court's Individual Rules.

## REQUEST NO. 23

**For each person who is retained or specially employed to, or otherwise will, provide expert testimony in this case, produce all documents and information required under Rule 26(a)(2) of the Federal Rules of Civil Procedure, and in addition, produce all draft reports prepared by all such persons.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 23

AIU objects to Request No. 23 on the ground that it is premature given that expert discovery has not commenced and AIU has not presently retained any expert witnesses in connection with this matter. Upon the commencement of expert discovery, AIU will reconsider this Request and provide any disclosures mandated by the Rules or the Court's Individual Rules.

## REQUEST NO. 24

**Produce all documents relating to the guidelines or procedures used by Plaintiff to prepare, process and issue notices to reinsurers, claims against reinsurers, and to issue bills to reinsurers, including, but not limited to formal or informal guidelines, manuals, bulletins and memoranda.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 24

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU objects to Request No. 24 the grounds that it is overbroad, unduly burdensome and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence because it seeks information concerning guidelines or procedures for issuing notices, claims or bills to AIU's reinsurers generally, without regard to any particular claim or loss. Subject to and without waiver of the foregoing objections, including the General Objections, and to the extent the guidelines and/or procedures contemplated by this Request were or would have been applicable to AIU's issuance of notices, claims or bills to TIG specifically, AIU will produce such materials to the extent they are non-privileged and exist.

## REQUEST NO. 25

**Produce all documents provided to, or resolutions or minutes of, the Plaintiff's Board of Directors and of any committees of the Board of Directors concerning or mentioning Foster Wheeler Asbestos claims or losses, Defendant or the Reinsurance Contracts or billings referred to in the Complaint.**

**OBJECTIONS AND RESPONSE TO REQUEST NO. 25**

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU objects to Request No. 25 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence especially to the extent that it seeks information concerning the Reinsurance Contracts generally, without regard to any particular claim or loss. The materials that TIG seeks in this Request bear no connection to the claims and/or defenses of any party in this matter.

**REQUEST NO. 26**

**Produce all documents provided to, or resolutions and minutes of, the Plaintiff's Board of Directors and of any committees of the Board of Directors concerning or mentioning guidelines or procedures for processing reinsurance claims, including, but not limited to, formal or informal guidelines, manuals, bulletins, and memoranda.**

**OBJECTIONS AND RESPONSE TO REQUEST NO. 26**

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU objects to Request No. 26 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The materials that TIG seeks in this Request bear no connection to the claims and/or defenses of any party in this matter.

**REQUEST NO. 27**

**Produce all documents provided to, or resolutions and minutes of, the Board of Directors and any of the committees of the Board of Directors of Defendants concerning or mentioning guidelines or procedures for identifying, preparing, processing and issuing reinsurance notices, claims against reinsurers, bordereaus and bills, including, but not limited to, formal or informal guidelines, manuals, bulletins, and memoranda.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 27

AIU objects to Request No. 27 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The materials that TIG seeks in this Request bear no connection to the claims and/or defenses of any party in this matter.

## REQUEST NO. 28

**Produce all documents, including, but not limited to desk files, work papers, emails, diaries, and journals of each person identified in response to TIG Insurance Company's First Set of Interrogatories and relating to the losses at issue in the Complaint or the Reinsurance Contracts.**

## OBJECTIONS AND RESPONSE TO REQUEST NO. 28

AIU objects to Request No. 28 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks information concerning the Reinsurance Contracts generally, without regard to any particular claim or loss. Subject to and without waiver of the foregoing objections, including the General Objections, AIU will produce non-privileged documents responsive to this Request to the extent such documents exist and relate to the asbestos losses submitted to TIG and referred to in the Complaint.

Dated: December 12, 2007
         New York, New York

**WOLLMUTH MAHER & DEUTSCH LLP**

By:_____

      William A. Maher (WM-9470)
      Marc L. Abrams (MA-6600)


500 Fifth Avenue
New York, NY 10110
(212) 382-3300

Attorneys for Plaintiff AIU Insurance Company

# ALDORT DECLARATION
# EXHIBIT 2



"Abrams, Marc"
<mabrams@wmd-law.com>
03/14/2008 10:56 AM

To  <JAldort@butlerrubin.com>

cc  <jrubin@butlerrubin.com>, "Maher, William"
<WMaher@WMD-LAW.com>, "Parker, Serena"
<sparker@wmd-law.com>, <cisely@butlerrubin.com>

bcc

Subject  FW: TIG/AIU

History:        🗐 This message has been forwarded.

Julie,

In response to your items below:

1. We are still reviewing your proposal, but it is our preliminary view that the notices are the only relevant documents regarding the 48 Insulations materials.  If there are other specific documents in these files that you believe to be relevant, please explain why they are relevant in writing and we can consider if we can accommodate your request to obtain them.  Obtaining the entire claims file for 48 Insulations (and the other claims) would be burdensome and time consuming, and not serve any apparent purpose (unless you can explain one to me).

2. In terms of notices to other reinsurers on FW losses we are willing to provide all notices to AIU's facultative reinsurers in redacted form until December 31, 2007, so long as TIG agrees to produce all notices to its retrocessionaires on FW losses insured by AIU (i.e., the losses alleged in the Complaint). Assuming you will (or have already) produced such materials, we will respond accordingly and will produce such materials next week, and to the extent they have not already been produced.

Regards,

_____

Marc Abrams
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Tel: 212-382-3300
Fax: 212-382-0050
www.wmd-law.com

This electronic message contains privileged attorney-client communications from the law firm of Wollmuth Maher & Deutsch LLP.  The information is intended to be for the use of the addressee only.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.

**From:** JAldort@butlerrubin.com [mailto:JAldort@butlerrubin.com]
**Sent:** Wednesday, March 12, 2008 4:51 PM
**To:** Abrams, Marc
**Cc:** cisely@butlerrubin.com; jrubin@butlerrubin.com; Parker, Serena; Maher, William
**Subject:** RE: TIG/AIU


Marc,
I am out of the office this week, so I was hoping to follow up with you regarding some outstanding

discovery items via email.

First, has your client come to any decision with respect to our counter-proposal on the "Other Claims," *i.e* . Forty-Eight Insulations and the "Boiler" claims? Last week we had discussed TIG's proposal that AIU produce its ceded claim files for these claims through 90 days after initial notice to TIG and that, in exchange, TIG would produce its assumed files through 90 days after initial notice from AIU. You were going to discuss the issue with AIU.

Second, as respects the "Other Reinsurer" documents relating to the "Other Claims," we discussed TIG's continued request for AIU's reinsurer notice (and status report) documents relating to its other reinsurers, including any documents relating to AIU's decision to give notice. You were going to discuss the issue further with your client. Do you have any further information on this issue?

Third, with regard to the privilege log, we previously agreed that the parties would not log any privileged materials after the date the complaint was filed. You had mentioned that you might have an earlier date that you would like to propose. Have you given this further thought? If so, what date do you propose? TIG would appreciate receiving an answer on this as soon as possible as we are currently spending a significant amount of time preparing our privilege log. As soon as I hear from you, we will review the issue with our clients and advise you whether TIG agrees to the proposal.

Finally, does it appear that AIU will be prepared to exchange privilege and redaction logs on Thursday, March 20, 2008 as planned? We would be amenable to, and might prefer, moving the date out a few more days, particularly given my absence from the office this week.

If there are any other open items that I failed to note above please let me know. We'd like to tie up these loose ends as soon as possible.

Best regards,
Julie Rodriguez Aldort

This email message is intended for the sole use of the intended recipient(s) and may contain confidential or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy and delete all copies of the original message. To reply to our email administrator directly, send an email to postmaster@butlerrubin.com.

BUTLER RUBIN SALTARELLI & BOYD LLP
excellence in litigation

http://www.butlerrubin.com

# ALDORT DECLARATION

# EXHIBIT 3

Julie Rodriguez Aldort/Butler
Rubin

03/18/2008 01:54 PM

To  "Abrams, Marc" <mabrams@wmd-law.com>

cc  cisely@butlerrubin.com, jrubin@butlerrubin.com, "Parker,
Serena" <sparker@wmd-law.com>", "Maher, William"
<WMaher@WMD-LAW.com>

bcc  Kelly Fornwall/Butler Rubin@Butler Rubin;
mfinnigan@butlerrubin.com

Subject  Re: TIG/AIU 🗎

Marc,

Following up on our conversation yesterday, I write to provide TIG's position with respect to its request for
the claim files relating to the "Other Claims," i.e. the Forty-Eight Insulations and "Boiler" claims. Note, TIG
has previously advised you that TIG would be willing to compromise its request and allow AIU to produce
the claim files only through ninety days after the date of initial notice to TIG. TIG would, at the same time,
produce its assumed files for these claims through ninety days after the date of initial notice to TIG. To be
clear, I previously provided TIG's position to you verbally during our meet and confer sessions. However,
in an effort to resolve this discovery issue short of a motion to compel, I set forth below our position again
in written form as you requested.

The "Other Claims" documents are discoverable, that is, likely to lead to the discovery of admissible
evidence, as they relate to the issue of whether and to what extent AIU has implemented procedures to
comply with AIU's notice obligations under the facultative reinsurance certificates. Additionally, the
documents will show the circumstances that triggered AIU's provision of notice for these claims. This may
shed let on AIU's decisionmaking process, or lack thereof, for providing notice to TIG under the facultative
reinsurance certificates. In our meet and confers you have stated that you believe that only the notices for
the "Other Claims" are relevant because this is a "notice case." As you know, relevant to a "notice case"
are AIU's efforts to comply with its notice obligations under the facultative reinsurance certificates. The
requested claim files go directly to that point. Excerpting the notices from the claim files, as you request,
is insufficient because it would present the documents out of context and would not provide any
information regarding the circumstances that led AIU to provide notice. Accordingly, TIG has met its
burden of establishing that this discovery request is likely to lead to the discovery of admissible evidence.

Along the same lines, TIG has requested AIU's notices and status reports (and documents relating to its
decision to provide such notice) to its other reinsurers (treaty and facultative) relating to the Forty-Eight
Insulations and Boiler claims. This request is also likely to lead to the discovery of admissible evidence in
that it again relates to the issue of whether and to what extent AIU has implemented procedures to comply
with AIU's notice obligations. These documents would also show (1) the circumstances that caused AIU
to provide notice to reinsurers, (2) to which reinsurers AIU elected to provide notice, and (3) when such
notice was provided. Thus, TIG has met its burden and these documents are discoverable.

Please review this issue with your client and advise me by Monday, March 24, 2008, whether AIU will
agree to TIG's proposed compromise or if the parties have reached an impasse on this issue. In the mean
time, if you have further questions or would like to meet and confer on this issue further, please contact
me.

Best regards,


**Julie Rodriguez Aldort**

**Butler Rubin Saltarelli & Boyd LLP**
70 West Madison St. | Suite 1800 | Chicago, IL 60602
312.696.4478 | 312.873.4328 fax

jaldort@butlerrubin.com
www.butlerrubin.com

"Abrams, Marc" <mabrams@wmd-law.com>



**"Abrams, Marc"**
**<mabrams@wmd-law.com>**
03/14/2008 10:56 AM

To  <JAldort@butlerrubin.com>

cc  <jrubin@butlerrubin.com>, "Maher, William"
<WMaher@WMD-LAW.com>, "Parker, Serena"
<sparker@wmd-law.com>, <cisely@butlerrubin.com>

Subject  FW: TIG/AIU

Julie,

In response to your items below:

1. We are still reviewing your proposal, but it is our preliminary view that the notices are the only relevant documents regarding the 48 Insulations materials.  If there are other specific documents in these files that you believe to be relevant, please explain why they are relevant in writing and we can consider if we can accommodate your request to obtain them.  Obtaining the entire claims file for 48 Insulations (and the other claims) would be burdensome and time consuming, and not serve any apparent purpose (unless you can explain one to me).

2. In terms of notices to other reinsurers on FW losses we are willing to provide all notices to AIU's facultative reinsurers in redacted form until December 31, 2007, so long as TIG agrees to produce all notices to its retrocessionaires on FW losses insured by AIU (i.e., the losses alleged in the Complaint). Assuming you will (or have already) produced such materials, we will respond accordingly and will produce such materials next week, and to the extent they have not already been produced.

Regards,

---
Marc Abrams
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Tel: 212-382-3300
Fax: 212-382-0050
www.wmd-law.com

This electronic message contains privileged attorney-client communications from the law firm of Wollmuth Maher & Deutsch LLP.  The information is intended to be for the use of the addressee only.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.

**From:** JAldort@butlerrubin.com [mailto:JAldort@butlerrubin.com]
**Sent:** Wednesday, March 12, 2008 4:51 PM
**To:** Abrams, Marc
**Cc:** cisely@butlerrubin.com; jrubin@butlerrubin.com; Parker, Serena; Maher, William
**Subject:** RE: TIG/AIU

Marc,

I am out of the office this week, so I was hoping to follow up with you regarding some outstanding discovery items via email.

First, has your client come to any decision with respect to our counter-proposal on the "Other Claims," *i.e*. Forty-Eight Insulations and the "Boiler" claims? Last week we had discussed TIG's proposal that AIU produce its ceded claim files for these claims through 90 days after initial notice to TIG and that, in exchange, TIG would produce its assumed files through 90 days after initial notice from AIU. You were going to discuss the issue with AIU.

Second, as respects the "Other Reinsurer" documents relating to the "Other Claims," we discussed TIG's continued request for AIU's reinsurer notice (and status report) documents relating to its other reinsurers, including any documents relating to AIU's decision to give notice. You were going to discuss the issue further with your client. Do you have any further information on this issue?

Third, with regard to the privilege log, we previously agreed that the parties would not log any privileged materials after the date the complaint was filed. You had mentioned that you might have an earlier date that you would like to propose. Have you given this further thought? If so, what date do you propose? TIG would appreciate receiving an answer on this as soon as possible as we are currently spending a significant amount of time preparing our privilege log. As soon as I hear from you, we will review the issue with our clients and advise you whether TIG agrees to the proposal.

Finally, does it appear that AIU will be prepared to exchange privilege and redaction logs on Thursday, March 20, 2008 as planned? We would be amenable to, and might prefer, moving the date out a few more days, particularly given my absence from the office this week.

If there are any other open items that I failed to note above please let me know. We'd like to tie up these loose ends as soon as possible.

Best regards,
Julie Rodriguez Aldort

This email message is intended for the sole use of the intended recipient(s) and may contain confidential or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy and delete all copies of the original message. To reply to our email administrator directly, send an email to postmaster@butlerrubin.com.

BUTLER RUBIN SALTARELLI & BOYD LLP
excellence in litigation

http://www.butlerrubin.com

# ALDORT DECLARATION
# EXHIBIT 4



"Abrams, Marc"
<mabrams@wmd-law.com>
03/24/2008 01:25 PM

To  <JAldort@butlerrubin.com>

cc  <cisely@butlerrubin.com>, <jrubin@butlerrubin.com>,
"Parker, Serena" <sparker@wmd-law.com>, "Maher,
William" <WMaher@WMD-LAW.com>

bcc

Subject  RE: TIG/AIU

Julie,

I just want to note for the record that TIG first took the position that materials related to the "other claims" -
i.e., the 48 insulations and boiler claims -- were either not relevant at all or that they should be produced in
their entirety. TIG's new position is that the "other claims" files should be produced up until ninety days
after notice to TIG and that AIU should produce any notices of the "other claims" to its other reinsurers
too.  To address your argument below, AIU's practices regarding notice of claims at issue many years ago
simply have no bearing on the claims at issue now.  Moreover, as I have explained in our conferences,
compliance with your demands would mean obtaining the files of outside counsel with respect to these
matters, which were concluded many years ago.  Production of these materials would be burdensome and
would also necessarily require another detailed privilege review without providing any benefit to this case.

In the event that TIG really seeks discovery as to notice on previous claims made under the Foster
Wheeler policies, AIU will consider providing notices of these other claims to TIG and the other reinsurers
(in a redacted form), but only to the extent TIG agrees not to proceed with its motion regarding the entire
claims files.

Regards,

_____

Marc Abrams
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Tel: 212-382-3300
Fax: 212-382-0050
www.wmd-law.com

This electronic message contains privileged attorney-client communications from the law firm of Wollmuth
Maher & Deutsch LLP.  The information is intended to be for the use of the addressee only.  If you are not
the addressee, note that any disclosure, copying, distribution or use of the contents of this message is
prohibited.

**From:** JAldort@butlerrubin.com [mailto:JAldort@butlerrubin.com]
**Sent:** Tuesday, March 18, 2008 2:54 PM
**To:** Abrams, Marc
**Cc:** cisely@butlerrubin.com; jrubin@butlerrubin.com; Parker, Serena; Maher, William
**Subject:** Re: TIG/AIU

Marc,
Following up on our conversation yesterday, I write to provide TIG's position with respect to its request for
the claim files relating to the "Other Claims," i.e. the Forty-Eight Insulations and "Boiler" claims.  Note, TIG
has previously advised you that TIG would be willing to compromise its request and allow AIU to produce

the claim files only through ninety days after the date of initial notice to TIG. TIG would, at the same time, produce its assumed files for these claims through ninety days after the date of initial notice to TIG. To be clear, I previously provided TIG's position to you verbally during our meet and confer sessions. However, in an effort to resolve this discovery issue short of a motion to compel, I set forth below our position again in written form as you requested.

The "Other Claims" documents are discoverable, that is, likely to lead to the discovery of admissible evidence, as they relate to the issue of whether and to what extent AIU has implemented procedures to comply with AIU's notice obligations under the facultative reinsurance certificates. Additionally, the documents will show the circumstances that triggered AIU's provision of notice for these claims. This may shed light on AIU's decisionmaking process, or lack thereof, for providing notice to TIG under the facultative reinsurance certificates. In our meet and confers you have stated that only the notices for the "Other Claims" are relevant because this is a "notice case." As you know, relevant to a "notice case" are AIU's efforts to comply with its notice obligations under the facultative reinsurance certificates. The requested claim files go directly to that point. Excerpting the notices from the claim files, as you request, is insufficient because it would present the documents out of context and would not provide any information regarding the circumstances that led AIU to provide notice. Accordingly, TIG has met its burden of establishing that this discovery request is likely to lead to the discovery of admissible evidence.

Along the same lines, TIG has requested AIU's notices and status reports (and documents relating to its decision to provide such notice) to its other reinsurers  (treaty and facultative) relating to the Forty-Eight Insulations and Boiler claims. This request is also likely to lead to the discovery of admissible evidence in that it again relates to the issue of whether and to what extent AIU has implemented procedures to comply with AIU's notice obligations. These documents would also show (1) the circumstances that caused AIU to provide notice to reinsurers, (2) to which reinsurers AIU elected to provide notice, and (3) when such notice was provided. Thus, TIG has met its burden and these documents are discoverable.

Please review this issue with your client and advise me by Monday, March 24, 2008, whether AIU will agree to TIG's proposed compromise or if the parties have reached an impasse on this issue. In the mean time, if you have further questions or would like to meet and confer on this issue further, please contact me.

Best regards,


**Julie Rodriguez Aldort**

**Butler Rubin Saltarelli & Boyd LLP**
70 West Madison St. | Suite 1800 | Chicago, IL 60602
312.696.4478 | 312.873.4328 fax


jaldort@butlerrubin.com
www.butlerrubin.com


"Abrams, Marc"
<mabrams@wmd-law.com>        To <JAldort@butlerrubin.com>
                            cc <jrubin@butlerrubin.com>, "Maher, William" <WMaher@WMD-LAW.com>, "Parker, Serena"
03/14/2008 10:56 AM             <sparker@wmd-law.com>, <cisely@butlerrubin.com>
                            Subj FW: TIG/AIU
                            ect

Julie,

In response to your items below:

1. We are still reviewing your proposal, but it is our preliminary view that the notices are the only relevant documents regarding the 48 Insulations materials.  If there are other specific documents in these files that you believe to be relevant, please explain why they are relevant in writing and we can consider if we can accommodate your request to obtain them.  Obtaining the entire claims file for 48 Insulations (and the other claims) would be burdensome and time consuming, and not serve any apparent purpose (unless you can explain one to me).

2. In terms of notices to other reinsurers on FW losses we are willing to provide all notices to AIU's facultative reinsurers in redacted form until December 31, 2007, so long as TIG agrees to produce all notices to its retrocessionaires on FW losses insured by AIU (i.e., the losses alleged in the Complaint). Assuming you will (or have already) produced such materials, we will respond accordingly and will produce such materials next week, and to the extent they have not already been produced.

Regards,

_____

Marc Abrams
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
Tel: 212-382-3300
Fax: 212-382-0050
www.wmd-law.com

This electronic message contains privileged attorney-client communications from the law firm of Wollmuth Maher & Deutsch LLP.  The information is intended to be for the use of the addressee only.  If you are not the addressee, note that any disclosure, copying, distribution or use of the contents of this message is prohibited.


**From:** JAldort@butlerrubin.com [mailto:JAldort@butlerrubin.com]
**Sent:** Wednesday, March 12, 2008 4:51 PM
**To:** Abrams, Marc
**Cc:** cisely@butlerrubin.com; jrubin@butlerrubin.com; Parker, Serena; Maher, William
**Subject:** RE: TIG/AIU


Marc,

I am out of the office this week, so I was hoping to follow up with you regarding some outstanding discovery items via email.

First, has your client come to any decision with respect to our counter-proposal on the "Other Claims," *i.e* . Forty-Eight Insulations and the "Boiler" claims? Last week we had discussed TIG's proposal that AIU produce its ceded claim files for these claims through 90 days after initial notice to TIG and that, in exchange, TIG would produce its assumed files through 90 days after initial notice from AIU. You were going to discuss the issue with AIU.

Second, as respects the "Other Reinsurer" documents relating to the "Other Claims," we discussed TIG's continued request for AIU's reinsurer notice (and status report) documents relating to its other reinsurers, including any documents relating to AIU's decision to give notice. You were going to discuss the issue further with your client. Do you have any further information on this issue?

Third, with regard to the privilege log, we previously agreed that the parties would not log any privileged materials after the date the complaint was filed. You had mentioned that you might have an earlier date that you would like to propose. Have you given this further thought? If so, what date do you propose? TIG would appreciate receiving an answer on this as soon as possible as we are currently spending a significant amount of time preparing our privilege log. As soon as I hear from you, we will review the issue with our clients and advise you whether TIG agrees to the proposal.

Finally, does it appear that AIU will be prepared to exchange privilege and redaction logs on Thursday, March 20, 2008 as planned? We would be amenable to, and might prefer, moving the date out a few more days, particularly given my absence from the office this week.

If there are any other open items that I failed to note above please let me know. We'd like to tie up these loose ends as soon as possible.

Best regards,
Julie Rodriguez Aldort


This email message is intended for the sole use of the intended recipient(s) and may contain confidential or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy and delete all copies of the original message. To reply to our email administrator directly, send an email to postmaster@butlerrubin.com.

BUTLER RUBIN SALTARELLI & BOYD LLP
excellence in litigation

http://www.butlerrubin.com

# ALDORT DECLARATION

# EXHIBIT 5

# EXHIBIT 5

# FILED UNDER SEAL

# ALDORT DECLARATION

# EXHIBIT 6

# BUTLER RUBIN SALTARELLI & BOYD LLP

March 28, 2008

Direct Dial: (312) 696-4478
Direct Fax: (312) 444-9018
jaldort@butlerrubin.com

**BY ELECTRONIC MAIL**

Marc L. Abrams
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
12th Floor
New York, New York  10110

   Re: AIU Insurance Company v. TIG Insurance Company, 07 C 7052

Dear Marc:

  Thank you for taking the time to speak with my partner, Mark Schwartz, and me yesterday regarding certain document discovery issues. Below, I seek to confirm and memorialize our discussions to avoid any future misunderstandings.

**Treaty Reinsurer Notices**

  Previously, on March 4, 2008, AIU agreed to produce the notices to AIU's treaty reinsurers relating to the billings at issue in the Complaint. However, you stated, on March 18, 2008, that AIU needed additional time to produce these documents. I asked you yesterday about the status of AIU's production of these documents. You stated that the documents were being collected and you would look into when we could expect them. You said you would get back to us early next week. I suggest that we include this in our follow up meet and confer discussion scheduled for Monday, March 31, 2008 at 4:00 pm ET/3:00 pm CT.

**Documents Absent from AIU's Production that AIU Previously Agreed to Produce**

  I next raised several categories of documents that AIU agreed to produce in response to TIG's document requests. The first category related to documents from the 2007 audit. In response to TIG document request No. 13, AIU agreed to produce the documents presented to TIG in the July 2007 audit. AIU asserted only a privilege objection to Request No. 13. I advised you in our discussion that AIU's production did not include all of the non-privileged documents shown to TIG during the audit. In particular, I noted that AIU had not produced any of the documents dated prior to the initiation of the New York declaratory judgment action. You asked for examples, and I pointed to the March 1992 Johnson & Higgins letter forwarding Foster Wheeler's notice to its excess insurers.

Marc L. Abrams
March 28, 2008
Page 2

You thought that the withheld documents might have been related to the Forty-Eight Insulations claim, which TIG contends should be produced but AIU has objected to producing. I made several points in response to this.

**REDACTED**

I asked if AIU had applied a date cut-off, such as the date of the declaratory judgment complaint, in producing its documents. You stated that AIU had not. However, you stated that AIU had consciously withheld documents that it believed were solely related to the Forty-Eight Insulations and/or the so-called "Boiler" claims. I asked how AIU decided that files were in that "Other Claims" category and you declined to explain your reasoning. As I indicated in our discussion, all the files included in the audit are presumptively relevant, whether termed "Forty-Eight Insulations" or not.

I identified several other categories of documents that were missing from AIU's production and you agreed to investigate the status of these documents. The documents I identified were as follows:

1. All non-privileged claim file documents for years prior to 2001

2. The AIU claim files produced in the declaratory judgment action

3. Internal files, including emails, memoranda, and handwritten notes for the period 2001 through 2005 (very few internal documents were produced for this four year period in which the declaratory judgment action was pending)

4. Electronic notes (I noted that a partial file was produced at PL 57475, but that the file did not include entries earlier than February 9, 2004)

5. The Initial Serious Accident Report dated December 23, 2003

As I stated in the call, these are the missing categories we have identified to date. We may supplement this list at a later date. I reiterated that, given the looming deposition schedule, TIG required a response with respect to the missing documents in short order. I also noted that we hoped to wrap the issue into the expected motion on AIU's assertion of privilege. You said you understood that TIG viewed this as an important issue and that you would endeavor to respond quickly. We will discuss this further in our meet and confer next Monday. *In particular, we would like to discuss AIU's efforts to search for responsive documents such as those listed in numbered paragraph three above.*

Marc L. Abrams
March 28, 2008
Page 3

I asked you if AIU performed searches for electronic documents. You stated that Cozen O'Connor performed its own electronic searches of emails. You also stated that AIU performed searches of the email files for the persons involved in the claims at issue and that AIU searched the electronic claim files. You stated that AIU was performing a supplemental search for two individuals previously searched to determine if any additional responsive documents could be located. You stated that you expected to provide these by the end of next week. *I would like to raise a follow up question with respect to the electronic searches. Please state whether the electronic searches were date delimited and if so, what were the date parameters of the search. Also, please state whose mailboxes were searched. Please confirm that AIU searched the electronic mailboxes of Werner Ahrenstedt, David Anderson, Meera Coilparampil, Polly James, Richard Kafaf, Peter Kuchar, Judy Mariotti, Neil McHugh, William Mezick, Jeff Millstone, Jay Morrow, Steve Parness, Diane Proimos, Patrick Smith and Susan Wilson.*

I asked if AIU had produced the AIG files having anything to do with AIG's handling of the Foster Wheeler claims on behalf of AIU. You confirmed that it had.

I also asked if the absence in AIU's production of guidelines related to when notices should be sent to reinsurers such as TIG (as requested in Document Request No. 24) indicated that there were no such guidelines. You confirmed that none existed.

## "Other Claims" Files

We next followed up on previous meet and confer discussions relating to the "Other Claims" files, that is, the files relating to Forty-Eight Insulations ("Forty Eight Insulations Claims"), Wilhite and Ahlgren ("Boiler Claims"). I acknowledged your response on the issue from earlier this week and asked for the basis for AIU's burdensomeness objection to producing these files. You stated that you suspected several outside firms were involved in the action and that you would be required to obtain the files in the possession of each firm. You also stated that you did not know which firms handled the various AIG entities' files. I asked if you knew the volume of these outside counsel files. You stated that you did not know. I then focused on the files in AIU's possession and noted that AIU had presented some of these files with the audit documents. Thus, the burdensomeness objection for these documents seemed inappropriate. I asked about the volume of AIU's internal files for these claims. You said that you believed it was about one box of documents. I asked if AIU would maintain its objection if TIG sought only the files in AIU's possession, as opposed to those in the possession of its outside counsel. You said that you would follow up with your client. You asked if TIG would produce its internal assumed files for these claims if AIU produced such files. I confirmed that TIG would produce its assumed file through ninety days after notice to TIG.

We briefly discussed AIU's relevance objection to producing the "Other Claims." I asked the basis for AIU's assertion that its notices for these claims were relevant but that the related claim files were not. You stated that whether AIU provided timely notice for these claims did not bear on the timeliness of the notice for the billings in the complaint. In response, I first noted that relevance was not the standard for discoverability, as the Court had noted in the

Marc L. Abrams
March 28, 2008
Page 4

last status. Nonetheless, I stated that the documents were potentially relevant for a number of reasons. First, they will disclose the circumstances under which AIU determined it was appropriate to give notice under the facultative reinsurance certificates and whether it is now taking an inconsistent position. For example, I stated that if AIU provided notice to its reinsurers upon first notice from Foster Wheeler for the Forty-Eight Insulations claims, this would shed light on the reasonableness of AIU's decision to defer notice for the billings in the Complaint until after the settlement of the declaratory judgment action. Second, I noted that, based on the *Unigard* case, AIU's procedures for providing notice are pertinent to the late notice defense. You disputed my assertions. We agreed to disagree on the relevance point. To the extent that a compromise is not reached, we agreed this would be an issue for the motion to compel.

You noted that AIU likely did not have any of the "Boiler Claim" files in its possession any longer. *Since our call, I can confirm that TIG maintains its desire to obtain these files for the reasons articulated above. To the extent that these documents are no longer in AIU's possession, please provide an explanation as to the location or destruction of the files.*

With respect to the notices to AIU's reinsurers relating to the "Other Claims," you stated that AIU would be willing to produce these if the parties were able to reach a compromise with respect to the direct claim files.

*Since our call, I have consulted my client and determined that TIG is not interested in further compromise on the Other Claims files. That is, TIG is unwilling to limit the production to documents in AIU's or AIG's possession. Rather, TIG maintains that all documents in the claim files through ninety-days after notice to TIG should be produced. Accordingly, TIG will move to compel on this issue unless you inform us during Monday's meet and confer that AIU has changed its position.*

## Generic Objections

I next followed up on our previous agreement to revisit the "generic objections," *i.e.,* objections such as "vague, ambiguous, over broad, overly burdensome," to determine whether either party had withheld documents on these bases. I asked if AIU had withheld any documents. At first, you stated that AIU had not. However, you later corrected your answer to state that AIU had withheld joint defense documents, which you described as primarily draft pleadings and some modeling documents, relating to the declaratory judgment action. You stated that you had not produced these because you were not sure that TIG was interested in such documents and because you thought TIG might have the documents if it was involved in the same defense group. You suggested that we revisit the issue after the Court rules on the pending motion relating to production of TIG's direct files. I advised that I would follow up with you on the issue. *I can now advise that TIG would like AIU to produce the so-called joint defense documents that do not constitute draft pleadings, e.g., modeling documents, etc. TIG would also like a copy of the joint defense agreement. To the extent that AIU takes the position that these documents cannot be produced based on AIU's obligations under the agreement, please provide*

Marc L. Abrams
March 28, 2008
Page 5

*a privilege log. TIG reserves its right to obtain the draft pleadings that you describe as joint defense documents.*

I then advised that TIG had withheld two categories of documents based on the objection that requests for such documents were overbroad and not likely to lead to the discovery of admissible evidence. The categories are (1) internal management reports that were not used in the negotiation or calculation of the commutations and (2) documents relating to the commutation created after the commutation, such as summary and payment documents. I explained that these documents did not relate to TIG's defense of prejudice, which focused on the impact that the late notice had on TIG's calculations for the commutations and negotiations with certain of its retrocessionaires. You stated that you would consider the issue.

## Privilege Log

We spoke briefly about the privilege logs. I reiterated my request for the parties to exchange lists of individuals from the logs, with designations as to whether they were serving in an attorney capacity at the time the privilege document was created. I asked that the list include, for those individuals who were supposedly serving in an attorney capacity, the individual's title, department, and affiliation. I then asked when AIU would be prepared to exchange such lists. Your colleague, Ms. Parker, stated that you were working on it and might need to obtain the additional requested information from AIU. Please advise us on Monday, March 31, of the status of this list.

We discussed TIG's previously identified challenge to AIU's claim of privilege with respect to the documents in the declaratory judgment action. We explained that TIG believed the documents should be produced based on several waiver theories. You stated that you understood our argument but that AIU maintained its position. We agreed that additional conferring on the issue was unnecessary because the parties had reached an impasse. TIG will move to compel on this issue.

## Numbering Gaps in AIU's Production

Although we did not discuss this in our call, I also wanted to bring to your attention a series of unexplained numbering gaps in AIU's production. I have attached a list of these gaps. Please provide an explanation for the gaps.

\*        \*        \*

Marc L. Abrams
March 28, 2008
Page 6


     If you believe that I have captured any of our discussions in accurately, please advise me immediately.  Otherwise, I look forward to our further meet and confer scheduled for Monday, March 31, 2008 at 4pm (EDT).

          Sincerely,

          Julie Rodriguez Aldort

JRA

cc:    Sean Keely
       William Maher
       James I. Rubin
       Catherine E. Isely
       Mark A. Schwartz


W0065500v2

# ALDORT DECLARATION

# EXHIBIT 7

# WOLLMUTH MAHER & DEUTSCH LLP

### 500 FIFTH AVENUE
### NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

April 1, 2008

## BY E-MAIL AND FIRST CLASS MAIL

Julie Rodriguez Aldort, Esq.
Butler Rubin Saltarelli & Boyd LLP
70 West Madison, Suite 1800
Chicago, Illinois 60602

        Re:    AIU Insurance Company v. TIG Insurance Company,
                Case No. 07-cv-7052 (SHS)

Dear Julie:

        I write in response to your letter dated March 28, 2008 regarding discovery issues.  At the outset, I disagree with both the tone and substance of the letter, which does not accurately summarize our meet and confer phone conference which took place on March 27, 2008 in many important respects.  As TIG introduces its follow-up queries, I also suggest that TIG keeps in mind that AIU has already produced roughly 50,000 pages of documents a part of its production in the past month and is committed to responding to its discovery obligations.  The specific responses to the queries raised in your recent correspondence are as follows:

        1.     Treaty Notices.  To the extent there are treaty notices that predate the Complaint and that were issued to AIU's treaty reinsurers, AIU will produce these materials expeditiously and in a redacted form.  Please note that AIU has objected to producing these materials and still contends that they have no relevance to this dispute, but is producing them here to avoid an unnecessary discovery dispute.

        2.     Audit Documents.  AIU has produced those documents provided in the inspection to the extent that they are not subject to privileges and to the extent that they do not relate to the Other Claims (i.e., the 48 Insulations and Boiler claims).  As a courtesy, AIU has re-reviewed these audit materials to make sure that all responsive materials have been produced.  To the extent it is unclear whether the particular inspection documents relate to the Foster Wheeler

1

litigation (as referenced in the Complaint) or the Other Claims, AIU will produce such materials in an expeditious manner, while reserving its right to dispute the relevance of such materials.[1]

3.    <u>Assorted Claims Documents.</u>    AIU has already produced documents responsive to many of the categories that you identify on page 2 of your correspondence. Nonetheless, AIU is in the process of reviewing certain files to determine whether a supplemental production is necessary. If so, supplemental materials will be produced in an expeditious manner.

4.    <u>AIU Document Production.</u>    You also raised a query with regard to documents produced by AIU in the coverage litigation. We have been able to locate such materials, and to the extent they do not relate to other reinsurers and/or the Other Claims, AIU will produce such materials shortly.

5.    <u>Electronic Review.</u>    As I explained in the phone conference, AIU has undertaken and continues to undertake an electronic search (and in certain situations, multiple electronic searches) for those witnesses identified in AIU's Response to TIG's First Set of Interrogatories as well as certain other AIU employees. AIU has no obligation, nor will it, to conduct electronic searches for any witness that TIG so chooses, regardless of that witnesses' actual relevance to the case. AIU's review of files did not discriminate on the basis of a cut-off date.

6.    <u>"Other" Claims Files.</u>    As it appears that TIG has no interest in reaching a compromise on the Other Claims files – even one that was proposed by its own counsel – please proceed with moving the Court for such discovery as you threaten in your letter. To the extent you do so, we reserve our rights to not only oppose such a motion but also to seek similar information relating to your assumed reinsurance files regarding the Other Claims as well as your notices of the Other Claims to your reinsurers or retrocessionaires.

7.    <u>Joint Defense Documents.</u>    We regret that you are not taking a common sense approach to these materials, especially as they have no bearing on the dispute between the parties. As you agreed to do, please determine whether TIG (or International Insurance Company) was subject to the joint defense agreement – to the extent they were, this would facilitate the production of certain joint defense materials. To the extent that TIG was <u>not</u> part of a joint defense agreement, AIU will log joint defense documents except for draft pleadings or submissions to the Court, which will not be logged.

8.    <u>Privilege Log.</u>    As stated in our phone conference, AIU will provide a list of attorneys referenced in its privilege log in an expeditious manner. To the extent that the attorneys on the list are not outside counsel, AIU will provide certain limited additional information, including the title of the attorney's position and his or her affiliation.

9.    <u>"Numbering Gaps" in AIU's Production.</u>    The gaps identified in the attachment to your letter are the result of documents that are either non-responsive or privileged. In our initial production, we supplied "this page appears intentionally blank" documents so as to indicate such gaps in the production. In subsequent productions, and after the Court's so ordering of the

---

[1] Finally, to the extent you have not already produced such materials, AIU hereby calls for the production of all materials that TIG copied during its inspection of AIU's records.

Confidentiality Agreement, we likely produced a subset of the "gap" materials to you, while maintaining privilege or relevance objections to a smaller subset. To the extent that you would like revised and updated "this page appears intentionally blank" pages, we would be glad to have our paralegals coordinate an approach to resolving this issue.[2] Finally, we note that certain entries referenced in your attachment refer to production ranges that follow the last document that AIU has produced in this matter. We will assume that these entries appear in error.

Very truly yours,

Marc L. Abrams

cc:   Sean Thomas Keely

---

[2] We note that your correspondence indicates that TIG is withholding certain documents relating to its commutations. We will address the obvious relevance of these documents in separate correspondence.

3

# ALDORT DECLARATION

# EXHIBIT 8

# BUTLER RUBIN SALTARELLI & BOYD LLP

April 3, 2008

<div align="right">

Direct Dial: (312) 696-4478
Direct Fax: (312) 444-9018
jaldort@butlerrubin.com

</div>

**BY ELECTRONIC MAIL**

Marc L. Abrams
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
12th Floor
New York, New York  10110

      Re:    AIU Insurance Company v. TIG Insurance Company, 07 C 7052

Dear Marc:

I write in follow up to your letter dated April 1, 2008 and to confirm our meet and confer discussion of the same date.

**Treaty Reinsurer Notices**

I understand from your letter and our conversation that you are working on obtaining the notices to AIU's treaty reinsurers that predate the Complaint. You stated that you were attempting to locate and contact the individuals in the treaty reinsurance department to obtain these documents. You were unable to commit to a date by which you would produce these documents, but stated that you were endeavoring to provide them expeditiously.

**AIU's Supplemental Production**

This letter confirms that you are intending to make a supplemental production early next week. This supplemental production will include any additional documents that you locate in response to the five enumerated categories listed on page two of my letter dated March 28, 2008. Additionally, according to your letter and our discussion yesterday, this supplemental production will include those portions of the audit file presented to TIG during the July 2007 audit to the "extent that they do not relate to the Other Claims (*i.e.*, the 48 Insulations and Boiler Claims)." Note, as we have discussed, TIG maintains its position that the culling of the audit file by AIU is improper because these documents are plainly relevant to the litigation for the reasons previously discussed. As we have advised, we will address this issue in our motion to compel.

In our call and in your letter, you stated that the "AIU Document Production" from the declaratory judgment action (which you referred to in page two of your letter) would be produced with the exception of documents relating to "other reinsurers and/or the Other Claims." I would like to briefly respond to AIU's decision to withhold the "other reinsurers and/or the Other Claims" files from AIU's disclosure of the AIU Document Production. These documents

Marc L. Abrams
April 3, 2008
Page 2

are by definition relevant in that they were produced in the declaratory judgment action, the settlement for which AIU has billed TIG. Moreover, these documents plainly are not privileged and have previously been prepared for production. Thus, the burden of producing them is minimal. Accordingly, please state whether you will include in next week's supplemental production the entire "AIU Document Production" from the declaratory judgment action, without removing the "other reinsurers and/or the Other Claims" documents. We will seek court intervention on this issue if AIU maintains its current position.

**AIU's Electronic Review**

In your letter you have stated that AIU will not "conduct electronic searches for any witness that TIG so chooses, regardless of that witnesses' actual relevance to the case." Moreover, in our call you stated that AIU searched for witnesses it deemed relevant but not necessarily those that TIG deemed relevant. I would likely to briefly respond to this point. In my letter dated March 28, 2008, I asked you to confirm that you had searched the electronic mailboxes for the individuals listed in my letter. These individuals were identified from the audit documents presented by AIU, that is, they were identified from the universe of documents that AIU deemed pertinent to its audit presentation to TIG in July 2007. The standard for reasonable diligence requires that AIU perform electronic searches for individuals that are plainly relevant, such as the listed individuals. I understand that you have searched for those individuals listed in AIU's responses to interrogatories. Please state whether you have or will conduct searches for David Anderson, Meera Coilparampil, Polly James, Peter Kuchar, Neil McHugh, Jay Morrow, Patrick Smith, and Susan Wilson as well. If you refuse to perform such searches, TIG will have no choice but to include this issue in its motion to compel.

**AIU's Interrogatory Responses**

During our call, I raised several questions regarding AIU's responses to interrogatories, and in particular, its supplemental responses. First, with respect to AIU's Interrogatory Responses Numbers 3 and 17, you advised that the supplemental responses replaced the original responses such that AIU was no longer relying on Fed. R. Civ. P. 33(d) for these responses.

Second, you provided affiliation information for three witnesses named in your responses as follows: William Mezick (AIG World Source, New York), Jeff Millstone (AIU, New York), and James Dolan (Cozen O'Connor, New York).

Third, I asked you about AIU's supplemental responses to TIG Interrogatory Nos. 3, 4, and 17. In particular, I noted that these responses stated that AIU was "unaware of any persons currently employed by or associated with AIU that were involved in, or have knowledge or information" regarding the information requested in the respective interrogatories. I asked if your responses also covered any responsive information AIU possessed regarding former employees. You stated that AIU included such information and pointed to Judy Marotti as an example.

Marc L. Abrams
April 3, 2008
Page 3

Fourth, I asked if, given the parties' compromise on other reinsurer/retro documents, AIU would identify individuals in response to TIG Interrogatory Nos. 9 and 11, which relate to identification of individuals with responsibility for notifying TIG and AIU's treaty reinsurers of the Foster Wheeler claims at issue in the Complaint. During our call, I inadvertently omitted Interrogatory No. 10, which relates to notice to AIU's facultative reinsurers. Please state whether AIU will respond to all three of these interrogatories with respect to the claims at issue in the Complaint.

Finally, I drew your attention to AIU's supplemental response to Interrogatory No. 17, which you stated replaced the AIU's original response relying on Rule 33(d). AIU's response is as follows:

> Interrogatory No. 17: Identify each and every person who, on behalf of Plaintiff, received any notice of asbestos losses from Foster Wheeler, regardless of whether the notice was or could be described as a precautionary, preliminary, initial or supplemental.

> Response: AIU hereby incorporates its responses and objections as set forth in AIU's Responses and Objections to TIG Insurance Company's First Set of Interrogatories, Interrogatory No. 17, and supplements its response as follows. Subject to these objections and its General Objections, AIU states that at the present time, it is unaware of any persons employed by or associated with AIU that received notice of asbestos losses from Foster Wheeler. To the extent that in the course of reviewing production documents, AIU learns of such persons, it will supplement this response accordingly.

I expressed disbelief that AIU was unaware of any persons (former or current employees) who received notice of asbestos losses from Foster Wheeler. You stated that you would review the issue further. I would like to note here that AIU's response suggests a lack of diligence in its search for information responsive to TIG's document requests. Depending on the results of your review, TIG reserves its right to include this issue in its motion to compel.

## Numbering Gaps in AIU's Production

Please have your paralegal contact Kelly Fornwall, the paralegal handling this matter at Butler Rubin, to discuss obtaining the replacement "gap sheets" that you referred to in your letter and in our call. Ms. Fornwall can be contacted at (312) 242-4117 or kfornwall@butlerrubin.com.

\*        \*        \*

If you feel that I have misstated any of our discussions, please advise me immediately. Otherwise, I look forward to your responses to the remaining open inquiries and hope that we can resolve these issues with minimal court intervention.

Marc L. Abrams
April 3, 2008
Page 4

Sincerely,

Julie Rodriguez Aldort

cc:     Sean Keely
        William Maher
        James I. Rubin
        Catherine E. Isely

# ALDORT DECLARATION
# EXHIBIT 9

# WOLLMUTH MAHER & DEUTSCH LLP

### 500 FIFTH AVENUE

### NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

April 11, 2008

**BY E-MAIL AND**
**FIRST CLASS MAIL**
Julie Rodriguez Aldort, Esq.
Butler Rubin Saltarelli & Boyd LLP
70 West Madison, Suite 1800
Chicago, Illinois 60602

> Re:    AIU Insurance Company v. TIG Insurance Company,
>        Case No. 07-cv-7052 (SHS)

Dear Julie:

I write to respond to certain items raised in your most recent discovery correspondence dated April 3, 2008 as set forth below. Unfortunately, rather than waiting for my response, you have raised certain other issues in a correspondence dated April 10, which AIU reserves its right to respond to separately.

1. <u>Treaty Notices.</u> Your summary of our agreement is generally accurate except that I indicated that AIU will be producing such materials <u>to the extent they exist</u> (<u>i.e.</u>, to the extent AIU possesses the requested notices <u>and</u> to the extent that they were distributed to treaty reinsurers prior to the date of the Complaint in this action).

2. <u>AIU's Supplemental Production.</u> You are correct that AIU will be making a supplemental production with respect to certain claims documents, some of which were queried by TIG in earlier discovery correspondence. We are working diligently to prepare these materials for production, and will let you know as soon as possible when we will be in a position to produce them.

3. <u>The AIU Production.</u> You have asked us to reconsider our decision to not produce 48 Insulation materials as well as materials referencing other reinsurers, which form part of the AIU production in the coverage litigation. With regard to the 48 Insulations materials that fall within this production, my understanding is that TIG will be seeking to compel the production of 48 Insulations related materials generally. Given TIG's position, as well as its refusal to consider a sensible narrowing of its inquiry regarding these materials, AIU will not be voluntarily producing documents on the very issue that TIG is seeking to compel. And with regard to the

1

documents in the AIU production that have been withheld because they relate to AIU's other reinsurers, these documents have no relevance whatsoever to this proceeding, and TIG itself has withheld its own materials relating to other insurers or reinsurers. To the extent that TIG challenges AIU's withholding of "other reinsurer" information, AIU will deem TIG to have opened this door with regard to TIG's discovery.

4. <u>Electronic Discovery</u>. AIU disagrees with TIG's position that TIG may unilaterally designate which AIU employees should be subject to electronic discovery review. AIU has already reviewed (or is reviewing) electronic files of the witnesses referenced in its Interrogatory Responses, which represents a substantial number of employees and a considerable expense to AIU. AIU has no obligation to electronically search the files of every person at the company who ever received an e-mail or document relating to Foster Wheeler, and TIG has provided no basis for the electronic search of the various witnesses identified in its correspondence. In an effort to compromise with TIG, AIU is willing to also consider undertaking an electronic search with respect to Meera Coilparampil, who, as you know, no longer works for AIU or its affiliates, but only to the extent TIG is willing to follow a common sense approach and withdraw its other requests. Please contact me at your convenience so that we may discuss such an approach.

5. <u>AIU Supplemental Interrogatory Responses</u>. In terms of your queries regarding our Supplemental Interrogatory Responses: (i) AIU will not designate witnesses involving potential notices to treaty reinsurers as these witnesses have absolutely no connection to any claims or defenses in this matter; and (ii) AIU reserves its right to supplement its Interrogatory Responses based on its review of materials in this matter, and accordingly, is in the process of considering a supplemental response to Interrogatory No. 17. TIG will receive this response within a reasonable time period prior to the commencement of depositions.

I look forward to continuing our discussions regarding these matters.

Very truly yours,

Marc L. Abrams

cc:    Sean Thomas Keely