# ALDORT DECLARATION
# EXHIBIT 20

## PRIVILEGE REDACTION LOG
### AIU Insurance Company v. TIG Insurance Company

| Bates Number/Range | Date | Type | Author | Addressee(s) | Other recipient(s) | Redacted Subject | Basis*** |
|---|---|---|---|---|---|---|---|
| PL 00002065 - 00002106 | 02/14/01 | Document | Cozen Attorney(s) | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00035848 - 00035869 | 02/20/01 | Document | Cozen Attorney(s) | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00001989 - 00002023 | 03/30/01 | Document | Cozen Attorney(s) | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00059413 - 00059416 | 05/14/02 | Memorandum | S. Wilson | | | Memorandum reflecting legal advice re coverage litigation strategy | W/P1 |
| PL 00026370 - 00026384 | 06/20/02 | Document | Cozen Attorney(s) | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00000766 - 00000767 | 10/11/02 | Email | L. Shreiber | J. McDaniel, D. Hamilton, M. Brill | | Attorney communication re coverage litigation strategy | A/C,W/P 1 |
| PL 00000764 - 00000765 | 10/14/02 | Email | L. Shreiber | M. Brill | | Attorney communication re coverage litigation strategy | A/C,W/P 1 |
| PL 00059408 - 00059412 | 11/13/02 | Memorandum | S. Wilson | | | Memorandum reflecting legal advice re coverage litigation strategy | W/P1 |
| PL 00059404 - 00059407 | 09/03/03 | Memorandum | M. Coilparampil | | | Memorandum reflecting legal advice re coverage litigation strategy | W/P1 |
| PL 00013883 | 02/02/04 | Email | J. Dolan | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00052566 - 00052567 | 11/16/04 | Email | J. Dolan | M. Coilparampil | | Communication with counsel re coverage litigation strategy | A/C |
| PL 00005594 - 00005605 | 10/14/05 | Document | M. Nicholson, W. Skinner | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00005585 - 00005593 | 10/14/05 | Document | M. Nicholson, W. Skinner | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00059465 - 00059466 | 11/08/05 | Internal Memorandum | J. Marotti | J. Johnson | S. Parness | Memorandum reflecting legal advice re coverage litigation strategy | A/C, W/P1 |
| PL 00059462 - 00059464 | 11/15/05 | Internal Memorandum | J. Marotti | J. Johnson | | Memorandum reflecting legal advice re coverage litigation strategy | A/C, W/P1 |
| PL 00039622 - 00039636 | 03/03/06 | Letter | Cozen | | | Handwritten attorney notes re coverage | W/P1 |

*** The following abbreviations are used herein:
AC – Attorney/Client Privilege
WP1 – Coverage Counsel Work Product

| Bates Number/Range | Date | Type | Author | Addressee(s) | Other recipient(s) | Redacted Subject | Basis*** |
|---|---|---|---|---|---|---|---|
| | | | Attorney(s) | | | litigation strategy | |
| PL 00059459 - 0005960 | 05/09/06 | Document | S. Parness | J. Johnson | | Memorandum reflecting legal advice re coverage litigation strategy | A/C, W/P1 |
| PL 00059277 - 00059280 | 10/03/06 | Memorandum | J. Marotti | | | Memorandum reflecting legal advice re coverage litigation strategy | A/C, W/P1 |
| PL 00059448 - 00059449 | 12/21/06 | Document | S. Parness | J. Johnson | | Memorandum reflecting legal advice re coverage litigation strategy | A/C, W/P1 |
| PL 00059267 - 00059270 | 04/04/07 | Memorandum | J. Marotti | | | Memorandum reflecting legal advice re coverage litigation strategy | A/C, W/P1 |
| PL 00053920 – 00053921 | 06/25/07 | Email | R. Kafaf | S. Parness | W. Ahrenstedt, W. Mezick, P. Aiudi, P. Colon | Attorney communication re review of legal issues concerning reinsurance collection | A/C |
| PL 00053917 - 00053918 | 06/27/07 | Email | R. Kafaf | W. Ahrenstedt | W. Ahrenstedt, W. Mezick, P. Aiudi, P. Colon | Attorney communication re review of legal issues concerning reinsurance collection | A/C |
| PL 00053906 | 06/29/07 | Email | R. Kafaf | W. Ahrenstedt | W. Ahrenstedt, W. Mezick, P. Aiudi, P. Colon | Attorney communication re review of legal issues concerning reinsurance collection | A/C |
| PL 00053907 | 06/29/07 | Email | R. Kafaf | S. Parness | W. Ahrenstedt, W. Mezick, P. Aiudi, P. Colon | Attorney communication re review of legal issues concerning reinsurance collection | A/C |
| PL 00053902 – 00053904 | 07/02/07 | Email | R. Kafaf | S. Parness | W. Ahrenstedt, W. Mezick, P. Aiudi, P. Colon | Attorney communication re review of legal issues concerning reinsurance collection | A/C |
| PL 00053899 - 00053901 | 07/03/07 | Email | R. Kafaf | P. Aiudi | | Attorney communication re review of legal issues concerning reinsurance collection | A/C |
| PL 00053898 | 07/05/07 | Email | J. Marotti | R. Kafaf | | Memo reflecting communication with counsel re coverage litigation strategy | A/C |

2

| Bates Number/Range | Date | Type | Author | Addressee(s) | Other recipient(s) | Redacted Subject | Basis*** |
|---|---|---|---|---|---|---|---|
| PL 00053889 | 07/05/07 | Email | J. Marotti | R. Kafaf | | Memo reflecting communication with counsel re coverage litigation strategy | A/C |
| PL 00053890 | 07/05/07 | Email | J. Marotti | R. Kafaf | | Memo reflecting communication with counsel re coverage litigation strategy | A/C |
| PL 00053859 - 00053872 | Undated | Memorandum | J. Marotti, S. Parness | | | Memorandum reflecting legal advice re coverage litigation strategy | A/C, W/P1 |
| PL 00041429 - 00041442 | Undated | Document | Cozen Attorney(s) | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00041101 - 00041176 | Undated | Document | Cozen Attorney(s) | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00038946 - 00039168 | Undated | Document | Cozen Attorney(s) | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00035871 - 00035872 | Undated | Document | Cozen Attorney(s) | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00033963 - 00033976 | Undated | Document | Cozen Attorney(s) | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00013229 - 00013243 | Undated | Document | Cozen Attorney(s) | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00026365 - 00026369 | Undated | Document | Cozen Attorney(s) | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |
| PL 00033936 - 00034087 | Undated | Document | Cozen Attorney(s) | | | Handwritten attorney notes re coverage litigation strategy | W/P1 |

# ALDORT DECLARATION
# EXHIBIT 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
|                                  |   :   |
| AIU INSURANCE COMPANY,           |   :   |
|                                  |   :   |
|          Plaintiff,              |   :   |
|                                  |   :   |
|       -against -                 |   :   |      Civil Action No. 07 CIV 7052
|                                  |   :   |
| TIG INSURANCE COMPANY,           |   :   |
|                                  |   :   |
|          Defendant.              |   :   |
|                                  |   :   |
------------------------------------------------------x

## TIG INSURANCE COMPANY'S FIRST SET OF DOCUMENT REQUESTS

Defendant TIG Insurance Company, as successor-in-interest to International Insurance Company, ("TIG"), pursuant to Rule 34 of the Federal Rules of Civil Procedure, requests that Plaintiff AIU Insurance Company, produce the following documents at the offices of Butler Rubin Saltarelli & Boyd, 70 W. Madison, Suite 1800, Chicago, Illinois 60602, within thirty (30) days of service.

### DEFINITIONS AND INSTRUCTIONS

1.  "Plaintiff" means AIU Insurance Company, its predecessors, successors, and assigns, and all other persons acting or purporting to act on its behalf, individually or collectively, including but not limited to any officers, directors, employees, partners, corporate parent, subsidiaries or affiliates of AIU Insurance Company, such as AIG Insurance Company.

2.  "Reinsurance Contracts" means those contracts defined in the Paragraph 12 of the Complaint as the "Reinsurance Agreements," specifically certificate numbers CFR-0062,

CFR-0063, and CFR-0064, covering the period from October 1, 1978 until October 1, 1979; certificate numbers CFR-0071, CFR-0072, and CFR-0073, covering the period from October 1, 1979 until October 1, 1980; certificate numbers CFR-0085, CFR-0086, and CFR-0087, covering the period from October 1, 1980 until October 1, 1981; and "an additional certificate covering the period from October 1, 1981 until October 1, 1982," without waiver of TIG's denial in Paragraph 12 of the Answer with respect to the alleged "additional certificate covering the period from October 1, 1981 until October 1, 1982."

3. "Foster Wheeler" means Foster Wheeler Corporation, and any parent, subsidiary, affiliate, director, officer or employee.

4. "Plaintiff's Foster Wheeler Policies" means those policies defined in the Paragraph 11 of the Complaint as the "Umbrella Policies," specifically policy numbers 75-100789, 75-101149, 75-101988, and 75-102083.

5. "Complaint" means the complaint Plaintiff filed in the above-captioned action on August 10, 2007.

6. "Answer" shall refer to the answer and affirmative defenses filed by TIG in this action on or about September 17, 2007.

7. "Settlement" means the June 30, 2006 settlement between Foster Wheeler and Plaintiff.

8. "Coverage Attorney" means any attorney or law firm retained by Plaintiff to provide any legal services or legal advice concerning any obligations Plaintiff had or was alleged to have to Foster Wheeler.

9. "Foster Wheeler's Broker" means any entity or agent that provided insurance brokerage services to Foster Wheeler with respect to insurance coverage provided by Plaintiff to Foster Wheeler.

10. "Plaintiff's Broker" means any entity or agent that provided reinsurance brokerage services to Plaintiff with respect to insurance coverage provided by Plaintiff to Foster Wheeler.

11. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

12. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

13. "Person" means any natural person or any business, legal or governmental entity or association.

14. "Concerning" means relating to, referring to, describing, evidencing or constituting.

15. The terms "all" and "each" shall be construed as all and each.

16. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

17. The use of the singular form of any word includes the plural and vice versa.

18. For any document that you withhold from production on the grounds of privilege, provide all information required by Local Rule 26.2.

19. The particularity or generality of any one request shall not limit your response to any other request.

20. Plaintiff shall produce all responsive documents in its possession or control, including responsive documents in the possession or control of Plaintiff's representatives, employees, agents, servants or attorneys.

21. Plaintiff shall produce all responsive documents in the order, files and categories in which they are maintained in the ordinary course of business.

22. This request shall be deemed to be continuing in nature and Plaintiff shall duly supplement its responses as additional responsive documentation becomes available.

## REQUESTS

1. Produce all copies of each of the Reinsurance Contracts referred to in the Complaint.

2. Produce all documents concerning the negotiation and purchase of the Reinsurance Contracts, including but not limited to documents prepared by, received from, provided to or retained by Plaintiff, Plaintiff's Broker, Johnson and Higgins of New York, Crum & Forster Insurance Companies, International Insurance Company or Willis, Faber & Dumas, Ltd.

3. Produce all documents concerning the operation or administration of the Reinsurance Contracts.

4. Produce all internal accounting records, journal entries and desk files concerning the Reinsurance Contracts.

5. Produce all documents concerning the negotiation and issuance of Plaintiff's Foster Wheeler Policies, including but not limited to documents prepared by, received from, or

- 4 -

provided to Foster Wheeler, Foster Wheeler's Broker, Plaintiff, Plaintiff's Broker, Johnson and Higgins of New York, Crum & Forster Insurance Companies, International Insurance Company or Willis, Faber & Dumas, Ltd.

6. Produce all documents relating to notices or communications received by Plaintiff or its agents or representatives from Foster Wheeler or its agents with respect to requests or demands for coverage of asbestos-related claims under Plaintiff's Foster Wheeler Policies.

7. Produce all documents relating to the evaluation and assessment of any requests or demands for coverage from Foster Wheeler under Plaintiff's Foster Wheeler Policies, including but not limited to documents prepared by, received from, provided to or retained by Plaintiff, Plaintiff's claim handlers and administrators, their supervisors, in-house legal counsel or Coverage Counsel, and Plaintiff's claims files and coverage counsel's files.

8. Produce AIU's and AIG's claims files with respect to Plaintiff's Foster Wheeler Policies.

9. Produce AIU's and AIG's coverage counsel's files with respect to Plaintiff's Foster Wheeler Policies.

10. Produce all documents relating to the negotiation, consideration, approval or authorization of the Settlement.

11. Produce all documents relating to or relied upon by Plaintiff in connection with, Plaintiff's allocation of the Settlement.

12. Produce all documents relating to or relied upon by Plaintiff in connection with, the reinsurance billings at issue in the Complaint.

13. Produce all documents relating to any review, audit or inspection performed by or on behalf of Defendant concerning the losses at issue in the Complaint.

14. Produce all documents relating to the decision to give notice to Plaintiff's reinsurers with respect to any claims made by Foster Wheeler pursuant to Plaintiff's Foster Wheeler Policies.

15. Produce all documents relating to notices to any of Plaintiff's reinsurers with respect to any claims made by Foster Wheeler pursuant to Plaintiff's Foster Wheeler Policies.

16. Produce all documents relating to Plaintiff's communications with its reinsurers concerning any claims made by Foster Wheeler pursuant to Plaintiff's Foster Wheeler Policies.

17. Produce all documents concerning estimating, setting, posting, evaluating, revising, adjusting or supplementing Plaintiff's reserves with respect to the claims made by Foster Wheeler under Plaintiff's Foster Wheeler Policies.

18. Produce all documents that support, refute or otherwise concern the allegations of Plaintiff's Complaint.

19. Produce all documents that support, refute, or otherwise concern Defendant's defenses to the allegations in the Complaint.

20. Produce all documents that Plaintiff intends to offer or anticipates offering during the trial of this matter.

21. Produce all documents provided to any person who Plaintiff may call as a fact witness at trial.

22. Produce all documents provided to any person who is retained or specially employed to, or who otherwise will, provide expert testimony in this case.

23. For each person who is retained or specially employed to, or who otherwise will, provide expert testimony in this case, produce all documents and information required under Rule 26(a)(2) of the Federal Rules of Civil Procedure, and in addition, produce all draft reports prepared by all such persons.

24. Produce all documents relating to the guidelines or procedures used by Plaintiff to prepare, process and issue notices to reinsurers, claims against reinsurers, and to issue bills to reinsurers, including, but not limited to formal or informal guidelines, manuals, bulletins, and memoranda.

25. Produce all documents provided to, or resolutions and minutes of, Plaintiff's Board of Directors and of any committees of the Board of Directors concerning or mentioning Foster Wheeler asbestos claims or losses, Defendant or the Reinsurance Contracts or the billings referred to in the Complaint.

26. Produce all documents provided to, or resolutions and minutes of, the Plaintiff's Board of Directors and of any committees of the Board of Directors concerning or mentioning guidelines or procedures for processing reinsurance claims, including, but not limited to formal or informal guidelines, manuals, bulletins, and memoranda.

27. Produce all documents provided to, or resolutions and minutes of, the Board of Directors and of any committees of the Board of Directors of Defendants concerning or mentioning guidelines or procedures for identifying, preparing, processing and issuing reinsurance

notices, claims against reinsurers, bordereaus and bills, including, but not limited to formal or informal guidelines, manuals, bulletins, and memoranda.

28. Produce all documents, including but not limited to desk files, work papers, emails, diaries, and journals, of each person identified in response to TIG's Insurance Company's First Set of Interrogatories and relating to the losses at issue in the Complaint or the Reinsurance Contracts.

Respectfully submitted,

TIG INSURANCE COMPANY

By: _____
Sean Thomas Keely (SK-8593)

Date: October 25, 2007

Sean Thomas Keely (SK-8593)
Lovells LLP
590 Madison Avenue
New York, New York 10022
(212) 909-0600

James I. Rubin (Admitted *pro hac vice*)
Catherine E. Isely (Admitted *pro hac vice*)
Julie Rodriguez Aldort (Admitted *pro hac vice*)
Amy Pines (Admitted *pro hac vice*)
Butler Rubin Saltarelli & Boyd LLP
70 West Madison, Ste. 1800
Chicago, Illinois 60602
(312) 444-9660

- 8 -

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on October 25, 2007, he caused the foregoing *TIG Insurance Company's First Set of Document Requests* to be served on the following attorneys via messenger:

William A. Maher, Esq.
Marc L. Abrams, Esq.
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York   10110

Sean Thomas Keely

W0057093v4

# ALDORT DECLARATION

# EXHIBIT 22



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3230292 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 3230292)**

Page 1

**H**105 Street Associates, LLC v. Greenwich Ins. Co.
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
105 STREET ASSOCIATES, LLC, Plaintiff,
v.
GREENWICH INSURANCE COMPANY,
Defendants.
**No. 05 Civ. 9938(VM)(DF).**

Nov. 7, 2006.

MEMORANDUM AND ORDER

FREEMAN, Magistrate J.
**\*1** This insurance coverage action has been referred
to me for general pretrial supervision. Pending before
the Court is a discovery dispute as to whether non-
party Wilson, Elser, Moskowitz, Edelman & Dicker
LLP ("Wilson, Elser"), which served as "coverage
counsel" (and now serves as litigation counsel) for
defendant       Greenwich       Insurance       Company
("Greenwich"), should be required to produce certain
documents in response to a subpoena *duces tecum*
served on it by Plaintiff 105 Street Associates, Inc.
("105 Street"). Wilson, Elser maintains that the
documents at issue are protected from disclosure
under the attorney-client privilege and/or the work
product doctrine. 105 Street, however, argues that the
documents should be produced either because
privilege has been waived as a result of Wilson,
Elser's failure to produce a privilege log in a timely
manner, or because the documents are not actually
privileged or subject to work product protection. The
parties' dispute is resolved as set forth below.

*BACKGROUND*

In this action, 105 Street seeks to compel its insurer,
Greenwich, to defend and indemnify it in connection
with an underlying personal injury suit. Greenwich
declined coverage based on a defense of late notice.

The parties' disagreement here centers on the role
played by Wilson, Elser in the investigation and
analysis of 105 Street's insurance claim. In response
to an interrogatory calling for it to identify "each

person who participated in any evaluation or
investigation concerning whether to approve or deny
coverage, defense or indemnity" with respect to the
underlying claims, Greenwich identified three
individuals: Michael Barnaba ("Barnaba"), a senior
claims analyst at XL Insurance and/or XL Specialty
Claims Administrators ("XL"); FN1 Edward Walsh
("Walsh"), a senior claim account manager at XL;
and Stephen A. Postelnek ("Postelnek"), a former
member of Wilson, Elser (now deceased). (*See* Letter
to the Court from Donald F. Schneider, Esq., dated
June 30, 2006 ("6/30/06 Schneider Ltr."), Ex. B, at 4
(Answer to Interrogatory No. 1(a)).)

> FN1. It appears that XL is Greenwich's
> claims administrator. (*See* Letter to the
> Court from Donald F. Schneider, Esq., dated
> May 25, 2006 ("5/25/06 Schneider Ltr."), at
> 4.)

105 Street asserts that, according to the discovery
record to date, it appears that Barnaba asked
Postelnek to provide an opinion as to whether there
was support for a "late notice" defense, Postelnek
provided such an opinion, and then Walsh decided to
deny coverage solely in reliance on that opinion,
without doing any independent analysis of the issue.
(*See* 6/30/06 Schneider Ltr., Ex. C (note by Barnaba,
indicating that he had "requested permission to
consult with coverage counsel as late reporting denial
may be supported"); *id.,* Ex. D, at p. 12, ll. 13-19, and
p. 24, ll. 13-18 (deposition testimony by Walsh that
he knew nothing about the case other than to review
and approve the draft coverage denial prepared by
"coverage counsel" and sent to him by Barnaba).)
105 Street contends that Wilson, Elser acted in the
role of investigator in the process of determining
whether Greenwich should approve or deny coverage
for 105 Street's claim, and that, therefore, any work
done by Wilson, Elser prior to Greenwich's decision
to decline coverage is not immune from discovery as
privileged. (*See* 6/30/06 Schneider Ltr. at 2; *see also*
Letter to the Court from Donald F. Schneider, Esq.,
dated June 6, 2006, at 3-7.)

**\*2** For its part, Wilson, Elser contends that it was
retained as "coverage counsel" because there would
probably be a denial of coverage, and that, as Walsh

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3230292 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 3230292)**

apparently testified in his deposition, "coverage counsel does not do investigation."(*See* Letter to the Court from Glenn J. Fuerth, Esq., dated June 7, 2006, at 2-3.) Wilson, Elser argues that it was at all times acting in no other capacity than as counsel for Greenwich, and that the documents sought are protected by the work product doctrine and the attorney-client privilege. (*See* Letter to the Court from Glenn J. Fuerth, Esq., dated June 27, 2006.)

*DISCUSSION*

I. *APPLICABLE LEGAL STANDARDS*

A. *The Work Product Doctrine*

Rule 26(b)(3) of the Federal Rules of Civil Procedure protects, as work product, documents prepared "in anticipation of litigation or for trial by or for [a] party or by or for that ... party's representative (including the ... party's attorney, consultant, surety, indemnitor, insurer, or agent)." The phrase "in anticipation of litigation" has been construed by the Second Circuit to mean that, " 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." ' *U.S. v. Adlman*, 134 F.3d 1194, 1202 (2d Cir.1998) (emphasis in original) (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *8 Federal Practice & Procedure* § 2024, at 343 (1994)).

As many courts have noted, it often is difficult to determine whether documents prepared by an insurance company or its representatives are entitled to work product protection because insurers are in the business of investigating and adjusting claims. *See SEC v. Credit Bancorp, Ltd.,* No. 99 Civ. 11395(RWS), 2002 U .S. Dist. LEXIS 627, at *5 (S.D.N.Y. Jan. 16, 2002) (citing cases); *see also Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs.,* No. 96 Civ. 5590(MJL)(HBP), 1998 U.S. Dist. LEXIS 16183, at *16 (S.D.N .Y. Oct. 16, 1998) ("Application of the work-product doctrine to documents prepared by insurance companies has been particularly troublesome because it is the routine business of insurance companies to investigate and evaluate claims and to defend their insureds against third-party claims."). Thus, in the insurance context, it is particularly important that the party opposing production of the documents, on

whom the burden of proof as to privilege rests, demonstrate by specific and competent evidence that the documents were created in anticipation of litigation. *Weber v. Paduano,* No. 02 Civ. 3392(GEL), 2003 U.S. Dist. LEXIS 858, at *12 (S.D.N.Y. Jan. 22, 2003).

Although the Court's determination of the point at which "an investigation conducted by counsel crosses the line from business-centered (and unprotected) to litigation-centered ... must be determined on a case-by-case basis,"*Evanston Ins. Co. v. OEA, Inc.,* Misc. M8-85, Related Case No. CIV-02-1505 (E.D.Cal.), 2006 U.S. Dist. LEXIS 26330, at *10 (S.D.N.Y. May 4, 2006), "courts frequently presume that investigative reports prepared by or for an insurer prior to a coverage decision are prepared in the ordinary course of the insurer's business and are not afforded work-product protection,"*Mount Vernon,* 1998 U.S. Dist. LEXIS 16183, at *18 (citations omitted); *see also Tudor Ins. Co. v. McKenna Assocs.,* No. 01 Civ. 0115(DAB)(JCF), 2003 U.S. Dist. LEXIS 10853, at *8 (S.D.N.Y. June 25, 2003) ("An insurer's decision to decline coverage is typically the point at which the ordinary course of business ends and the anticipation of litigation begins."(citations omitted)). Courts have applied this rule even when such documents are generated by attorneys. *See Evanston,* 2006 U.S. Dist. LEXIS 26330, at *9 (explaining that "the determination to pay (or, more often, not to pay) on an insurance claim has often been held to be a routine business function, even if performed by outside counsel"); *see also Reliance Ins. Co. v. Am. Lintex Corp.,* No. 00 Civ. 5568(WHP)(KNF), 2001 U.S. Dist. LEXIS 7140, at *5-6 (S.D.N .Y. June 1, 2001) (" 'Merely because such an investigation was undertaken by attorneys will not cloak the reports and communications with privilege because the reports, although prepared by attorneys, are prepared as part of the "regular business" of the insurance company." ' (quoting *Bertalo's Restaurant v. Exchange Ins. Co.,* 658 N.Y.S.2d 656, 659 (2d Dep't 1997))).

B. *Attorney-Client Privilege*

*3 As jurisdiction in this case is based on diversity, the New York law of privilege applies. *See Mt. Vernon,* 1998 U.S. Dist. LEXIS 16183, at *8. In New York, the attorney-client privilege protects confidential communications between attorney and

Not Reported in F.Supp.2d                                                                                           Page 3
Not Reported in F.Supp.2d, 2006 WL 3230292 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 3230292)**

client relating to legal advice. *Id.* (citing N.Y. C.P.L.R. § 4503(a)); *Rossi v. Blue Cross & Blue Shield of Greater N.Y.,* 540 N.E.2d 703, 706 (N.Y.1989)). Availability of the privilege does not depend on the existence or prospect of litigation, *Bank Hapoalim, B.M. v. American Home Assurance Co.,* No. 92 Civ. 2561(KMW), 1994 U.S. Dist. LEXIS 4091, at *10 (S.D.N.Y. Apr. 6, 1994), but turns on whether the communication, viewed in its full content and context, is of a legal character, *id.* at *15 (citing *Spectrum Sys. Int'l Corp. v. Chem. Bank,* 581 N.E.2d 1055, 1060-61 (N.Y.1991)). Further, while the privilege protects only communications, and not underlying facts, the inclusion of nonprivileged information "in an otherwise privileged lawyer's communication to its client-while influencing whether the document would be protected in whole or only in part-does not destroy the immunity."*Spectrum,* 581 N.E.2d at 1060;*see Rossi,* 540 N.E.2d at 706 ("So long as the communication is primarily or predominantly of a legal character, the privilege is not lost merely by reason of the fact that it also refers to certain nonlegal matters.").

Although "[i]n the context of insurance litigation, attorney-client communications have been denied protection when it appears the attorney is merely *investigating* a claim on a policy,"*Evanston,*2006 U.S. Dist. LEXIS 26330, at *11 (emphasis added), when such communications relate to *legal advice,* they do not lose the protection of the attorney-client privilege simply because they involve an insurance claim. *See Tudor,* 2003 U.S. Dist. LEXIS 10853, at *7 (finding that communications between the insurer and coverage counsel that related to the provision of legal advice were privileged and did not need to be disclosed); *see also Reliance,*2001 U.S. Dist. LEXIS 7140, at *5-6 (distinguishing between "attorneys' reports and communications deemed to be not primarily of a legal character," which are not protected by the attorney-client privilege, and communications consisting of legal advice and opinion that "are primarily of a legal character," which are protected by the privilege).

## II. *THE DOCUMENTS AT ISSUE*

### A. *Failure to Timely Produce a Privilege Log*

The Court first addresses 105 Street's argument that

Greenwich has waived any purported privilege or work-product immunity as to any withheld documents because it failed to produce a privilege log in a timely manner. Local Civil Rule 26.2 mandates that, where a claim of privilege is asserted in response to a document request, a privilege log must be produced at the time of the response to such request, unless otherwise ordered by the Court. *See*Local Civil Rule 26.2(c). Here, while Greenwich's responses to 105 Street's document demand were due on May 1, 2006, Greenwich did not actually produce documents until May 16, 2006, and did not provide a privilege log until May 26, 2006, after several requests were made by 105 Street's counsel. (*See* 5/25/06 Schneider Ltr. at 1-2; Letter to the Court from Donald F. Schneider, Esq., dated May 30, 2006, at 1.)

*4 Judges in this district have repeatedly held that "the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege."*FG Hemisphere Assocs. v. Du Congo,* No. 01 Civ. 8700(SAS)(HBP), 2005 U.S. Dist. LEXIS 3523, at *14 (S.D.N.Y. Mar. 8, 2005); *see id.* at *14-16 (citing cases). Nonetheless, "[o]f relevance to such a determination is the nature of the violation, its willfulness or cavalier disregard for the rule's requirements, and the harm which results to other parties."*AFP Imaging Corp. v. Philips Medizin Sys.,* No. 92 Civ. 6211(LMM)(THK), 1993 U.S. Dist. LEXIS 18234, at *7 (S.D.N.Y. Dec. 28, 1993). In this instance, Greenwich has explained that its production of the privilege log was delayed by the illness of an attorney working on the matter. (*See* Letter to the Court from Glenn J. Fuerth, Esq., dated June 1, 2006.) Thus, while the Court cautions Wilson, Elser that the appropriate response to such an unexpected delay is to seek an extension of time from opposing counsel or from the Court, the Court declines to impose the harsh remedy of finding privilege waived.

### B. *Work Product Protection*

With respect to the assertion of work product protection, the Court notes that, with the exception of Document No. GR 401-02, which is listed on the privilege log as "undated," all of the documents at issue were created prior to September 20, 2004, the date on which Greenwich declined coverage. Greenwich has not sustained its burden of

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3230292 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 3230292)**

demonstrating, by specific and competent evidence, that these documents were created in anticipation of litigation.*See Weber,* 2003 U.S. Dist. LEXIS 858, at *12. As there is no apparent reason why Greenwich would have anticipated litigation prior to its decision to decline coverage on 105 Street's claim, *see Evanston,*2006 U.S. Dist. LEXIS 26330, at *10, materials generated prior to September 20, 2004 are not entitled to work product protection. Accordingly, with the exception of Document No. GR 401-02, work product protection is denied to all documents that have been submitted. As to Document No. GR 401-02, while the document itself appears to be undated, there are dates on the second page of the document that indicate that the document was prepared by Wilson, Elser after the commencement of the instant litigation. As such, Document No. GR 401-02 is entitled to work product protection and need not be produced.

*C. Attorney-Client Privilege*

Finally, with respect to the assertion of attorney-client privilege, the Court has reviewed the documents *in camera* and finds as follows:

*1. Document Nos. GR 288 and GR 289-93*

Document No. GR 288 is a one-page letter, dated September 1, 2004, from Barnaba to Postelnek, that requests legal advice. Document No. GR 289-93 is a five-page letter, dated August 25, 2004, from Barnaba to Postelnek, that requests legal advice.[FN2]Accordingly, these documents are protected by the attorney-client privilege and need not be produced.

> FN2. Document No. GR 294-97 is a document entitled "Guidelines Regarding Payment of Defense Costs," which was apparently attached to this letter (GR 289-93). The parties have agreed that this document need not be produced. (*See* Stipulation, so ordered June 26, 2006.)

*2. Document No. GR 298-99*

**\*5** Document No. GR 298-99 is a two-page letter, dated August 25, 2004, from Barnaba to Estelle Rodriguez at 105 Street. According to Greenwich's

privilege log, it appears that this letter was attached to the above 5-page letter from Barnaba to Postelnek (GR 289-93). Yet, even if this letter was sent to Postelnek by Barnaba, there is no indication that Barnaba sought specific legal advice regarding the letter. Further, there is no indication that this letter was not, in fact, sent to 105 Street. Accordingly, Document No. GR 298-99 is not protected by the attorney-client privilege and must be produced.

*3. Document No. GR 300-06*

Document No. GR 300-06 is a six-page letter, dated September 10, 2004, from Postelnek to Barnaba, which is described in Greenwich's privilege log as the "first report of coverage counsel." This document contains both factual background and legal analysis and advice regarding 105 Street's claim.

Although underlying facts are not protected by the attorney-client privilege, *see Spectrum,* 581 N.E.2d at 1060;*see also Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.,* 111 F.R.D. 76, 80 (S.D.N.Y.1986) (explaining that the privilege does not protect facts that an attorney obtains from independent sources and then conveys to the client), where facts are presented "as the foundation for the [lawyer's] legal advice" in a communication that is "primarily and predominantly of a legal character," the entire communication may retain its privileged status, *see Spectrum,* 581 N.E.2d at 1061 (finding the entire document at issue exempt from discovery where "the narration relate [d] and integrate[d] the facts with the law firm's assessment of the client's legal position"). Here, however, it is unnecessary to attempt to distinguish between the portion of the document that sets forth only factual narrative, and the portion of the document that contains legal analysis, as the Court finds that, with the limited exception discussed below, privilege has been waived as to the entirety of the document.

It is well-established that the attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication to a third party or stranger to the attorney-client relationship. *See In re Kidder Peabody Secs. Litig.,* 168 F.R.D. 459, 468 (S.D.N.Y.1996); *see also In re Penn Cent. Commercial Paper Litigation,* 61 F.R.D. 453, 463-64 (S.D.N.Y.1973) ("It is hornbook law that the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 5
Not Reported in F.Supp.2d, 2006 WL 3230292 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 3230292)**

voluntary disclosure or consent to the disclosure of a communication, otherwise subject to a claim of privilege, effectively waives the privilege. This view is universally shared by both the courts and leading commentators."(citations omitted)). Voluntary disclosure to a party outside the attorney-client relationship destroys the attorney-client privilege because it destroys the confidentiality of the communication. *SEC v. Beacon Hill Asset Mgmt. LLC,* 231 F.R.D. 134, 146 (S.D.N.Y.2004) (citing *In re von Bulow,* 828 F.2d 94, 102-03 (2d Cir.1987)). Nonetheless, "the extrajudicial disclosure of an attorney-client communication-one not subsequently used by the client in a judicial proceeding to his adversary's prejudice-does not waive the privilege as to the undisclosed portions of the communication."*In re von Bulow,* 828 F.2d at 102.

\*6 With respect to Document No. GR 300-06, a significant part of the communication in this document-in fact, nearly all of it-was disclosed to 105 Street in the September 20, 2004 letter in which Greenwich declined coverage. (*See* 6/30/06 Schneider Ltr., Ex. A (Letter to 105 Street from Wilson, Elser, dated September 20, 2004).) As the Court finds that this disclosure waives privilege as to those communications, Document No. GR 300-06 must be produced. Greenwich may, however, redact the fourth, fifth and sixth full paragraphs on page six of the document (GR 305), as the communications contained in this portion of the document were not previously disclosed and plainly contain legal advice.

### 4. Document Nos. GR 307, GR 308-09, and GR 406

Document No. GR 307 is a one-page e-mail, dated September 10, 2004, from Reena Blinkoff, Esq. ("Blinkoff"), an attorney at Wilson, Elser, to Barnaba. Although this e-mail relates to legal advice, a portion of this communication was disclosed to 105 Street in the September 20, 2004 letter in which Greenwich declined coverage. (*See* 6/30/06 Schneider Ltr., Ex. A.) Privilege is therefore waived as to this portion of the communication. Accordingly, Document No. GR 307 should be produced, except that Greenwich may redact the third full paragraph of the e-mail, which also appears to be privileged, but as to which privilege has not been waived.

The Blinkoff e-mail message contained in Document No. GR 307 is also contained in two e-mail "strings," which Wilson, Elser has submitted separately for the Court's review. The two documents containing these e-mail strings are numbered GR 308-09 (consisting of the Blinkoff e-mail message and a responsive message dated September 16, 2004, from Barnaba to Blinkoff), and GR 406 (consisting of the Blinkoff e-mail message, a subsequent message of the same date from Barnaba to Walsh, and a third message, dated September 15, 2004, from Walsh to Barnaba). Having reviewed each of the additional messages in these e-mail strings for potentially privileged communications, the Court concludes that, with the exception of the communications described above in connection with Document No. GR 307, the documents are not privileged. Each should therefore be produced in its entirety, except for the same redaction that the Court has permitted with respect to Document No. GR 307.

### 5. Document No. GR 403-05

Document No. GR 403-05 is a three-page invoice, dated November 19, 2004, which is described in Greenwich's privilege log as Wilson, Elser's "interim statement for services rendered and disbursement made to Broadspire."

Under New York law, "attorney time records and billing statements are not privileged when they do not contain detailed accounts of the legal services rendered."*DiBella v. Hopkins,* 403 F.3d 102, 120 (2d Cir.2005) (citing *Eisic Trading Corp. v. Somerset Marine, Inc.,* 622 N.Y.S.2d 728, 729 (1st Dep't 1995)); *see also Orange County Publs. v. County of Orange,* 637 N.Y.S.2d 596, 602 (N.Y.Sup.Ct.1995) (same). Nonetheless, "billing statements which 'are detailed in showing services, conversations, and conferences between counsel and others' are protected by the attorney-client privilege."*Orange County Publs.,* 637 N.Y.S.2d at 602 (quoting *Licensing Corp. of Am. v. Nat'l Hockey League Players Ass'n,* 580 N.Y.S.2d 128, 129 (N.Y.Sup.Ct.1992)). Although such documents do not provide legal advice, they are considered privileged because "disclosure would reveal ... privileged communications between [the client] and its attorneys."*Licensing Corp. of Am.,* 580 N.Y.S.2d at 130;*see also Renner v.. Chase Manhattan Bank,* No. 98 Civ. 926(CSH), 2001 U.S. Dist. LEXIS 17920, at \*5-6 (S.D.N.Y Nov. 2, 2001) (explaining that attorney billing statements are generally

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                           Page 6
Not Reported in F.Supp.2d, 2006 WL 3230292 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 3230292)**

discoverable, but that such documents may be redacted if production will reveal client confidences).

*7 While Document No. GR 403-05 contains some description of the services rendered by Wilson, Elser, none of the descriptions in the invoice reveals client confidences or privileged communications, with the exception of the first time entry for September 8, 2004, which contains a description of research pertaining to legal advice. Accordingly, Document No. GR 403-05 must be produced, but the description for this single time entry may be redacted.

*6. Document No. GR 408*

Document No. GR 408 is a one-page XL internal file note, written by Barnaba, which contains file note entries dating from August 20, 2004 to October 12, 2004. According to Greenwich's privilege log, Document No. GR 408 was produced to 105 Street, but the file note entry dated September 8, 2004 was partially redacted, and the file note entry dated September 17, 2004 was entirely redacted.

As to the September 8, 2004 entry, the Court finds that only the last sentence of this entry concerns an attorney-client communication that relates to legal advice. As to the September 17, 2004 entry, the Court finds that, although this entry concerns an attorney-client communication that relates to legal advice, the attorney-client privilege has been waived as to this entry by the communications disclosed to 105 Street in the September 20, 2004 letter in which Greenwich declined coverage. (*See* 6/30/06 Schneider Ltr., Ex. A.) Accordingly, Document No. GR 408 must be produced, except that Greenwich may redact the last sentence of the September 8, 2004 entry.

*CONCLUSION*

For all of the foregoing reasons:

(1) Greenwich is directed to produce the withheld documents to the extent set forth above no later than November 14, 2006. The parties shall schedule the deposition of Barnaba to take place following the production of these documents.

(2) All discovery is now closed, except for (i) the above-ordered production of documents by

Greenwich, (ii) the deposition of Barnaba, and (iii) the non-party depositions of North Shore Risk Management and BFC Construction Corporation. The deadline for completion of this remaining fact discovery is hereby extended to December 7, 2006.

SO ORDERED

S.D.N.Y.,2006.
105 Street Associates, LLC v. Greenwich Ins. Co.
Not Reported in F.Supp.2d, 2006 WL 3230292 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                        Page 1
Not Reported in F.Supp.2d, 2005 WL 2254463 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2254463)**

**H**American Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Alcoa S.S. Co., Inc.
S.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., Plaintiff,
v.
ALCOA STEAMSHIP CO., INC., et al., Defendants.
**No. 04 Civ. 4309 LAK JCF.**

Sept. 15, 2005.

*MEMORANDUM AND ORDER*

FRANCIS, Magistrate J.
*1 In a Memorandum and Order dated September 13, 2005 (the "Order"), I determined, among other things, that the American Steamship Owners Protective and Indemnity Association (the "American Club" or the "Club") had waived the attorney-client privilege with respect to an opinion letter dated May 18, 2004, provided to the Club by its counsel, Nourse & Bowles LLP, because it had produced in the course of this litigation numerous opinion letters dealing with the same subject matter and had utilized them in depositions. The American Club now seeks reconsideration of the Memorandum and Order on the grounds that: (1) the May 18, 2004 letter is shielded from disclosure by the work product doctrine; (2) the work product doctrine should also be held to protect an opinion letter dated July 29, 2004; and (3) waiver should not be found on the basis of the "fairness doctrine" because the Club was not selective in its disclosure of opinion letters. The American Club also asks that I stay enforcement of the Order until this application and any appeal has been heard. (Letter of Shaun F. Carroll dated September 14, 2005 ("Carroll Letter")). The Club's application is granted in part and denied in part.

First, reconsideration is granted with respect to the work product issue. Although no argument based on work product was advanced in the memoranda on the Club's motion, it was briefly raised by counsel on oral argument and alluded to, at least tangentially, in a subsequent letter. However, upon reconsideration, I

adhere to my prior determination that the May 18 letter is subject to disclosure. The "fairness doctrine" analysis applies to waiver of work product protection just as it does to waiver of the attorney-client privilege. See*In re Grand Jury Proceedings,* 219 F.3d 175, 191 (2d Cir.2000); *In re Grand Jury Proceedings,* No. M-11-189, 2001 WL 237377, at *12-13 (S.D.N.Y. March 2, 2001); *ESPN, Inc. v. Office of the Commissioner of Baseball,* 76 F.Supp.2d 383, 416 n. 34 (S.D.N.Y.1999); *Granite Partners, L.P. v. Bear, Stearns & Co.,* 184 F.R.D. 49, 54 (S.D.N.Y.1999). Thus, to the extent that the Club introduced similar opinion letters offensively in this litigation, it waived the work product doctrine as well as the attorney-client privilege for the May 18 letter.

Reconsideration is denied with respect to the July 29, 2004 letter because the Order does not address it in the first place. With respect to the issue of waiver, the Order was explicitly limited to the May 18, 2004 letter and to a second letter dated June 18, 2004. (Order at 23). The July 29 letter was not then considered, and if counsel now wish to present an application with respect to that document, they may.

Reconsideration is also denied with respect to my determination that the American Club engaged in selective disclosure of its opinion letters. The Club now suggests that it only produced letters relating to insurance years 1989 and before and that a letter authored in 2004 has no similar relevance. (Carroll Letter at 2-3). In fact, the Club has produced and relied on number opinion letters postdating 1989 which, like the May 18, 2004 letter, discuss issues central to this case (Declaration of Lisa A. Bauer dated June 10, 2005, Exhs. L(k), (m), (n), (o), (p)), and this was fully considered at the time the Order was issued.

*2 Finally, it is appropriate to stay the effect of the Order insofar as it requires disclosure of the May 18 letter to give the Club an opportunity to appeal this decision. Otherwise, the Club's right to object would, in practical effect, be nullified.

*Conclusion*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 2254463 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 2254463)**

For the reasons set forth above, reconsideration of my September 13, 2005 Memorandum and Order is granted to the extent that the Club's claim of work product protection for the May 18, 2004 letter is addressed and is otherwise denied. Upon reconsideration, I adhere to my prior determination and find that, like the attorney-client privilege, work product protection for this letter has been waived. The Club's obligation to disclose the letter is stayed pending determination of a timely appeal of this decision.

SO ORDERED.

S.D.N.Y.,2005.
American Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Alcoa S.S. Co., Inc.
Not Reported in F.Supp.2d, 2005 WL 2254463 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 79461 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp., 1991 WL 79461)**

Page 1

▷American Tel. and Tel. Co. v. New York City Human Resources Admin.
S.D.N.Y.,1991.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Plaintiff,
v.
NEW YORK CITY HUMAN RESOURCES ADMINISTRATION and the City of New York, Defendants.
The CITY OF NEW YORK, Third-Party Plaintiff,
v.
NORTHERN TELECOM INC., Third-Party Defendant.
**No. 89 Civ. 4569 (PKL).**

May 6, 1991.

*MEMORANDUM AND ORDER*

JAMES C. FRANCIS IV, United States Magistrate Judge.
**\*1** In this action, plaintiff American Telephone and Telegraph Company ("AT & T") seeks to recover $529,000 for telephone charges from the City of New York ("the City"). The charges in question appeared on two bills and covered long distance calls incurred over a one-month period by the City's Human Resources Administration ("HRA").[FN1] The defendants have now moved pursuant to Rule 37(a) of the Federal Rules of Civil Procedure for an order compelling the plaintiffs to answer interrogatories and to produce documents. The defendants further seek an award of sanctions including attorneys' fees and expenses incurred in connection with this matter, pursuant to Rule 37(b) of the Federal Rules of Civil Procedure. Although the specific discovery requests at issue will be discussed below, a brief summary of the facts of this case and the course of discovery is appropriate at the outset.

*Background*

During the period in question, HRA subscribed to AT & T's Long Distance Message Telecommunications Services ("LDMTS"). HRA was actually billed for

those services by New York Telephone, which was under contract with AT & T to record LDMTS provided by AT & T to its customers and to bill them on AT & T's behalf.

In the summer of 1987, HRA received two bills for long-distance service which were inordinately large. In August of that year it received an 857-page bill with over $337,000 in long distance charges and in September it received a 499-page bill with more than $175,000 in charges.[FN2] Most of the calls were to Colombia, Pakistan, and the Dominican Republic.

Since telephone fraud to these three countries is fairly common, AT & T routinely monitors calls to them and alerts its customers when there is reason to suspect fraud. AT & T prepares weekly high-frequency ("hi-fi") reports, which identify telephone numbers showing 25 or more calls to the three high-fraud countries during a one-week period. Affidavit in Support of Motion to Compel Answers to Interrogatories, To Compel the Production of Documents, and for Sanctions ("Yessel Aff."), Exh. L, at 39-44, 66. AT & T first contacted HRA about possible remote access fraud from its number on August 12, 1987. *Id.* at 108.

Since it first learned of the charges, HRA has asserted that it is not liable for the calls. HRA in fact claimed a credit for the calls, but the claim was disallowed by AT & T. New York Telephone then removed the disputed charges from its bill, and referred the matter to AT & T for direct collection action. Since then, HRA has continued to refuse to pay the charges.

Both AT & T and the City agree generally on how the calls were billed to HRA. HRA had a PBX (an electronic switching device) which it purchased from Northern Telecom, the third-party defendant in this case. At some point the PBX was modified, so that anyone with the appropriate code could make calls through HRA's PBX. Apparently, some unauthorized person or group of persons obtained HRA's code and was able to place the calls, which were then billed to HRA's number.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 79461 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp., 1991 WL 79461)**

Page 2

**\*2** In December of 1987 HRA filed an informal complaint with the Federal Communications Commission (FCC) denying liability for the tariffed charges. That complaint procedure was closed by the FCC in June of 1988, and in August 1988 HRA filed a formal complaint with the FCC. In January of 1989 HRA petitioned the FCC to withdraw its formal complaint without prejudice. The FCC granted HRA's request, over the opposition of AT & T, and in an order dated April 14, 1989, the Common Carrier Bureau of the FCC dismissed HRA's formal complaint without prejudice and terminated the FCC proceeding. AT & T filed the instant action for recovery of the $529,000 in June of 1989.

According to AT & T, HRA has breached its obligation to pay for long distance service, in violation of FCC Tariff No. 1. AT & T asserts that as an interstate common carrier it has no control over the use-or abuse-of a switching device which is installed independently by a third party. Moreover, AT & T points out that HRA has already suggested that one of its own telephone technicians tampered with the PBX so that anyone with the appropriate access code could make calls through it. Affidavit of John Patrick Deveney in Opposition to Defendant's Motion For Discovery and Sanctions ("Deveney Aff.") at 2; Plaintiff AT & T's Memorandum of Law in Opposition to the Motion of Defendant City of New York For Discovery and Sanctions ("AT & T Memo") at 2-3; Yessel Aff. at 12. Thus, AT & T argues, HRA must take responsibility for "its own criminal modification of the City's telephone system so that the whole world could place calls on its numbers." Deveney Aff. at 2.

In its defense, HRA argues that it is a victim of "remote access fraud", an increasingly common phenomenon whereby the access codes for telephone switching devices are compromised. HRA asserts that AT & T was aware of potentially fraudulent calls from its number well before it eventually notified HRA, and that it had a duty to warn HRA at that earlier time. HRA also contends that it is not responsible for the criminal acts of third parties. Finally, HRA claims that AT & T has not been consistent in its handling of such situations with other customers, and thus has discriminated against HRA in its charges or practices, in violation of Section 202 of the Communications Act.

*Discussion*

1. *Waiver*

As a threshold issue, the City claims that AT & T has waived its objections to the interrogatories at issue here because it failed to file timely objections to them. The City first served its interrogatories on AT & T on August 23, 1989. However, discovery was stayed by stipulation pending determination of the City's motion to dismiss. That motion was denied on May 2, 1990, and a period of informal discovery followed. By the fall of 1990, however, the City indicated that it was dissatisfied with the course of discovery, Yessel Aff. at 5, and the case was referred to me for general pretrial supervision. In the meantime, on October 25, 1990, the City served AT & T with its first request for the production of documents. After a conference before me on November 7, 1990, I issued an order directing that all outstanding interrogatory and document discovery be completed by November 30, 1990. AT & T served its objections to the City's request for production of documents on November 29, 1990 and its responses to the City's interrogatories on December 7, 1990.

**\*3** The City makes two arguments with respect to its claim that AT & T was late in its response. First, the City contends that "despite the City's repeated calls and letters, AT & T neglected for months to respond to the City's interrogatories." Memorandum of Law in Support of Defendant's Motion to Compel Discovery and for Sanctions ("City Memo") at 10. According to the City, AT & T responded only when the City threatened to move for dismissal or for sanctions. Second, the City notes that even when AT & T did serve its objections and answers on December 7, 1990, it did so one week past the deadline imposed by this Court.

The City's first argument is unavailing. As indicated, discovery did not commence until early May, 1990, after the motion to dismiss was denied. Initially, both parties acceded to a process of informal discovery. The correspondence between them indicates that the City became increasingly frustrated by what it viewed as AT & T's dilatory responses to its interrogatories. Yessel Aff., Exhs. D, E. However, the City did not make any formal motions or even bring the matter to the attention of the Court until October 19, 1990, when it informed Judge Leisure of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 79461 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp., 1991 WL 79461)

its displeasure. That same displeasure was expressed in the conference before me on November 7, after which I issued the order concerning the completion of discovery. Thus, AT & T was not on notice that the City expected formal responses to its interrogatories until mid-October at the earliest. Given the informal nature of discovery up until that point, it would be unduly harsh now to preclude those responses altogether.

The City's second argument, that AT & T's objections to its interrogatories should be precluded because they were filed after the court-imposed deadline expired, must also fail. AT & T asserts that it believed the parties were still in agreement about informal discovery and that, having timely objected to the City's document request, it believed "its obligations had been fulfilled." AT & T Memo at 5. That AT & T could have believed at this point that it had satisfied its obligations is difficult to credit, given the dissatisfaction expressed by the City at the November 7 conference before this Court, and the resulting order which clearly stated that "[a]ll outstanding interrogatory and document discovery shall be completed by November 30, 1990." Order dated November 7, 1990. Nevertheless, AT & T's response to the City's interrogatories was only one week late, and, given the parties' prior history of informal exchanges, should not now be precluded.

2.    *Interrogatories, Document Requests and Objections*

In its First Set of Interrogatories, the City has served AT & T with 42 interrogatories, of which 28 are in dispute. In addition, the City has served AT & T with a First Request for Production of Documents, listing seven items. In addition to any documents responsive to the interrogatories which are still in dispute, this list contains two disputed items.

The interrogatories and documents in question address issues which the City has identified as critical to its defense, and may generally be grouped into three categories. First, the City is seeking information about how and through whom AT & T monitors possible long-distance fraud, particularly to the Dominican Republic, Colombia, and Pakistan. Second, the City has inquired about when and how AT & T learned about possible fraudulent abuse of HRA's number. Finally, the City is seeking

information about how AT & T has handled similar situations with other customers.

*4 In response, AT & T indicates that it has several general objections to all of the disputed materials, as well as specific objections to each of them. Generally, AT & T contends that: (1) the information requested is protected by the attorney-client privilege or work product doctrine and that it contains proprietary information or business secrets; (2) the time frame covered by the requests is much too broad and the information requested is therefore irrelevant; (3) the information has already been provided; and (4) the information sought goes beyond the scope of relevance, as determined by previous agreement between the parties. Except for the first objection, these general objections are more appropriately addressed in the context of individual items.

A.  *AT & T's Objections Regarding Attorney-Client Privilege, Work Product Doctrine and Business Secrets*

With respect to the issue of attorney-client privilege or work product doctrine, AT & T's objection is unavailing. According to Local Rule 46(e)(2), if an attorney objects to an interrogatory on the basis of any privilege, including work product doctrine, the attorney must provide certain specified information about the documents withheld or about the oral communications in question. Here, AT & T has not provided the City with the requisite information about the documents or communications for which a privilege is claimed, nor has it "set forth the underlying facts that demonstrate the existence of the privilege." *Compagnie Francaise D'Assurance v. Phillips Petroleum,* 105 F.R.D. 16, 43 (S.D.N.Y.1984); *see also, Precision Testing Laboratories, Ltd. v. Kenyon Corp. of America,* No. 84 Civ. 5424 (IBC), at 9 (S.D.N.Y. April, 6, 1988) (1988 WL 34825, LEXIS 2756). On this ground alone, AT & T's objection must be overruled. *Abu-Nassar v. Elders Futures, Inc.,* No. 88 Civ. 7906 (PKL), at 65-66 (S.D.N.Y. Mar. 28, 1991) (1991 WL 45062, LEXIS 3794). In addition, many of the documents which AT & T appears to claim are immune based on work product doctrine would in fact be discoverable, since they "were prepared in the regular course of business prior to the onset of litigation." *Compagnie Francaise,* 105 F.R.D. at 41.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

AT & T also claims that some of the documents and information requested involve proprietary information or business secrets. However, as the City points out, the Court has issued a Protective Order, and thus all material deemed confidential already is protected. Stipulation and Protective Order for Confidential Information, dated 11/29/90. Beyond this, however, AT & T has not provided any specific information about which documents or information should be protected, as is required, and its objection on this basis also must fail. *See Turick v. Yamaha Motor Corp.,* 121 F.R.D. 32, 35 (S.D.N.Y.1988).

B. *AT & T's Objections Regarding Overbreadth, Burdensomeness and Irrelevance*

AT & T also claims that it has specific objections to many of the interrogatories posed and documents requested. To the extent specific objections have been raised, they will be addressed individually. However, AT & T has interposed the same "specific objection," either in whole or in part, to 23 of the 28 interrogatories in dispute, and to at least three of the seven documents requested, namely that they are "overbroad and unduly burdensome and require production of irrelevant information and documents." Since they apply to so many of AT & T's objections, the issues of overbreadth, burdensomeness and relevance will be addressed generally, rather than on a question-by-question basis.

*5 To the extent that AT & T objects to any of the City's interrogatories and document requests solely on the basis that they are "overbroad and unduly burdensome," the objections must fail. A party "cannot evade its discovery responsibilities by 'simply intoning this familiar litany' that the interrogatories are burdensome, oppressive or overly broad." *Compagnie Francaise,* 105 F.R.D. at 42 (quoting *Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292, 296 (E.D.Pa.1980)). Instead, as provided by Local Rule 46(e), "the objection shall state with specificity all grounds. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extension thereof, shall be waived." Here, AT & T has failed to produce "affidavits or other competent evidence ... to demonstrate the burden of complying with proposed discovery,"*Abu-Nassar v. Elders Futures, Inc.,* No. 88 Civ. 7906 (PKL), at 59, and thus its objections on the grounds of burdensomeness and overbreadth are

deemed waived. *See Factor v. Mall Airways,* 131 F.R.D. 52, 55 (S.D.N.Y.1990).

AT & T's argument with regard to relevance also must fail. According to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, [if] it relates to the claim or defense of the party seeking discovery...." Here, as already noted, the information in dispute fall into three categories: (1) AT & T's procedures for monitoring long-distance fraud; (2) AT & T's communication with the City about possible fraud in this case; and (3) AT & T's practices in dealing with other clients who may have been the subject of such fraud. Each of these areas of inquiry is directly related to three of the City's defenses, namely (1) that AT & T knew or should have known that the City was vulnerable to remote access fraud; (2) that AT & T could have notified the City earlier than it did about the calls in question; and (3) that AT & T has treated customers differently in deciding how to handle such cases. Whether or not the City will ultimately prevail on any of these defenses is not at issue here. The general scope of the questions is not unreasonable, and they are clearly relevant to some of the City's defenses. *See, e.g., Freund Industrial Co. v. Driam Metallproduct GMBH & Co.,* No. 88 Civ. 3605 (LBS) (S.D.N.Y. July 12, 1990) (LEXIS 8555); *Scott v. Arex, Inc.,* 124 F.R.D. 39, 40-41 (D.Conn.1989).

C. *AT & T's Specific Objections to the Interrogatories*

Interrogatories 1-7 and 26 deal with AT & T's procedures for tracking long-distance telephone fraud and with AT & T's information about possible fraud at HRA. With the exception of interrogatories no. 3 and 4, AT & T's objections with respect to overbreadth, burdensomeness, and irrelevance are overruled, for the reasons discussed above. Interrogatories no. 1 and 26 must be answered in full.[FN3] With respect to interrogatories no. 2, 5, 6, and 7, AT & T must indicate whether the names of the employees it has already provided are the *only* individuals with the information identified. If they are not, the names of all additional employees with that information must be provided. The responses to interrogatories no. 3 and 4 may be limited to documents and persons with knowledge of AT & T's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 79461 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp., 1991 WL 79461)

international information systems only as they pertain to possible fraud.

*6 With respect to interrogatory no. 8, AT & T must indicate whether the HRA employees it has already identified are the *only* persons outside AT & T whom it contacted about the telephone calls in dispute. I accept AT & T's explanation that an earlier representation to the FCC that AT & T had contacted an employee of New York Telephone about the calls was erroneous. However, to the extent that the City incurs expenses because of AT & T's failure to identify potential deposition witnesses at this time, the City may apply to the Court for an award of costs.

Interrogatories no. 9 and 28 ask for any documents provided to AT & T by local telephone companies about the calls in question. AT & T does not object to interrogatory no. 28, but represents that the raw data received from New York Telephone was not retained. I accept AT & T's representation; however, if such data is later discovered, AT & T will be liable for sanctions. In response to interrogatory no. 9, AT & T indicates that it may have "formal memoranda or policy statements governing the preparation of [the] 'Hi-Fi' reports." Deveney Aff. at 10. AT & T must produce all such documents, if they exist, as well as any other related documents responsive to this interrogatory.

Interrogatories no. 13, 14, and 15 relate to AT & T F.C.C. Tariff No. 1 and other applicable tariffs. The tariff is a matter of public record, and need not be produced. The City now seeks acknowledgement that AT & T drafted the tariff, City Memo at 26, and AT & T so acknowledges. AT & T Memo at 21. With respect to interrogatory no. 15, I accept AT & T's representation that there are no other applicable tariffs.

Interrogatory no. 16 has to do with the billing and collection services provided to AT & T by New York Telephone. Interrogatories no. 19-21 concern the costs to AT & T associated with the telephone calls in question. The City's argument that these interrogatories would provide "substantiation for AT & T's damage claim," City Memo at 23, is unavailing. These interrogatories are, in fact, overbroad. AT & T seeks to recover what it was owed under the operative tariff for the calls in question. To the extent that responses to these

interrogatories would document that the amount billed was actually owed, they should be produced. However, information about AT & T's actual costs, as opposed to what it was permitted to bill, is irrelevant.

In interrogatory no. 18, the City seeks all filings before the FCC in which AT & T has asserted that the customer was responsible for calls which the customer claimed were unauthorized. Similarly, document request no. 5 requests all documents involving telephone fraud before the FCC or any state or federal court, in which AT & T was a named party. This request is clearly overbroad. Since the interrogatory is relevant to one of the City's defenses, AT & T must produce copies of pleadings relating to charges of toll fraud for the years 1986 and 1988.[FN4] The document request shall be similarly limited to the years 1986 through 1988, and shall further be limited to any proceedings before the FCC, any state court in New York State, and any federal court in the Second Circuit.

*7 Interrogatories no. 22, 23, and 35 have to do with the names of AT & T employees who investigated the fraud at HRA and the documents they prepared. AT & T's objections to these interrogatories are overruled. AT & T must identify *all* employees who participated in the HRA fraud investigation, and identify and produce all documents which they prepared. To the extent that the City incurs expenses because of AT & T's failure to identify potential deposition witnesses or documentary evidence at this time, the City may apply to the Court for an award of costs.

Interrogatories no. 24 and 25 request any documentation that shows that the calls in question did or did not originate from HRA's telephone number. AT & T's response to these two interrogatories, AT & T Memo at 21, is satisfactory.

AT & T claims that there are no names that would be responsive to interrogatory no. 33. To the extent that the City incurs expenses because of AT & T's failure to identify potential deposition witnesses, the City may apply to the Court for an award of costs.

In interrogatory no. 37, the City seeks all documents relating to customer claims of unauthorized calls, from 1985 to the present. AT & T objects, in part,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 79461 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp., 1991 WL 79461)**

Page 6

because it contends that settlement documents are not discoverable. AT & T's objection on this basis is overruled. The documents sought do not relate to settlement in this case, and thus are not precluded pursuant to Fed.R.Evid. 408.[FN5] Rather, they pertain to other settlement arrangements which AT & T has negotiated with other customers, and thus are relevant to the City's defense that it has been discriminated against by AT & T's insistence on full payment. The interrogatory is, however, overbroad. AT & T's response shall be limited to customer claims exceeding $5,000 and having to do either with remote access fraud or with the unauthorized use of a PBX. The response shall be further restricted to the years 1986 through 1988. AT & T's objection to document request no. 4, which deals with withheld customer payments in instances of alleged fraud, also is overruled. However, it shall be similarly limited, as requested, to instances involving charges of $5,000 or more.

In interrogatory no. 38 the City is requesting all documents provided by AT & T to its customers or prospective customers from 1985 to the present concerning the possibility of unauthorized remote access to their telephone equipment. AT & T asserts that there were no warnings issued to its customers on this issue through the end of 1987, and it objects to providing any information after that period. AT & T's objection is overruled. As indicated by the City, the purpose of this interrogatory is to determine whether it would have been feasible for AT & T to warn the City, before it was victimized, about the possibility of remote access fraud on its equipment. In this sense, the City's inquiry is similar to information about post-accident design changes in a tort case, information which is discoverable, even if not admissible at trial. The information is relevant to one of the City's defenses, and must be provided.

*8 Finally, interrogatory no. 39 requests that AT & T identify each document prepared by AT & T between 1985 and the present concerning unauthorized remote access to customers' telephone equipment. AT & 'T's objection that the request is overbroad and unduly burdensome and that it requires production of irrelevant information and documents is overruled, for reasons already set forth.[FN6] However, AT & 'T's response shall be limited to internal documents, such as policy memoranda, studies, and compilations on the extent of remote access fraud, and shall not include case-specific materials related to individual customer complaints.

*3. Sanctions*

The City's application for an award of sanctions including attorneys' fees and expenses pursuant to Rule 37(b) is denied, without prejudice to the City renewing its application at the conclusion of discovery in this case. It would impede the progress of discovery to devote attention to the sanctions issue at this time.

*Conclusion*

AT & T shall provide the additional responses required by this Order by May 31, 1991.

SO ORDERED.

> FN1. Originally, HRA was also a defendant in this action. However, by Order & Opinion dated May 2, 1990, the Court granted HRA's motion to dismiss based on its lack of capacity to be sued.

> FN2. By comparison, HRA's previous monthly bill for long distance calls was approximately $2,500.

> FN3. AT & T contends that it has already responded to many of these interrogatories, in compliance with the protective order and with an "antecedent agreement" with the City. However, the City asserts that there was no antecedent agreement, and that AT & T has not complied. Since AT & T has failed to provide documentation of its compliance, it must be assumed that AT & T has not yet responded, unless otherwise indicated.

> FN4. AT & T has already produced pleadings from 1987, the year when the charges in question were incurred.

> FN5. Both parties cite *Morse/Diesel, Inc. v. Fidelity & Deposit Co.,* 122 F.R.D. 447 (S.D.N.Y.1988), to support their arguments about whether settlement documents are

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 7
Not Reported in F.Supp., 1991 WL 79461 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp., 1991 WL 79461)**

discoverable. *Morse/Diesel* is inapposite, however, because there the documents sought related to settlement in the same case.

FN6. In its response to this interrogatory, as in several other instances, AT & T reiterates its contention that the City is not entitled to the defense that it was a victim of remote access fraud, since HRA has admitted that one of its employees was responsible for the tampering which led to the actual telephone fraud. However, AT & T does not document how the "old fashioned, garden-variety sort of fraud" which it contends is involved here, AT & T Memorandum at 9, differs from "more arcane and sophisticated methods of 'remote access fraud,' ", *id.* at 10, of which it might legitimately have superior knowledge. AT & T is ill-served by this very general, dismissive response, since it addresses the merits of the City's defense, not the discoverability of its request. Since AT & T has not sought to strike the defense, the only issue is whether or not the material requested is relevant to that defense. Here, the City's contention with respect to relevance has effectively gone unchallenged.

S.D.N.Y.,1991.
American Tel. and Tel. Co. v. New York City Human Resources Admin.
Not Reported in F.Supp., 1991 WL 79461 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2355323 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2355323)

Page 1

**H**Century 21, Inc. v. Diamond State Ins. Co.
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
CENTURY 21, INC., et al., d/b/a Century 21
Department Stores, LLC, Plaintiff,
v.
DIAMOND STATE INSURANCE COMPANY,
Defendant.
**No. 03 Civ. 5163(GEL).**

Aug. 10, 2006.

Elio Mark Di Berardino, Joshua Lee Mallin, Weg and
Myers, P.C., New York, NY, for Plaintiff.
Max W. Gershweir, Law Office of Max W.
Gershweir, New York, NY, for Defendant.

### OPINION AND ORDER

GERARD E. LYNCH, District Judge.
**\*1** In this action for a judgment of rights and
damages under an insurance contract, the parties
jointly seek an order to resolve the applicability of
the attorney-client privilege to certain information
sought by the defendant from a non-party (plaintiff's
former counsel) during ongoing discovery. Since the
privilege has been waived with respect to some of the
desired information, the non-party subpoena will be
enforced as modified.

### BACKGROUND

Plaintiff Century 21, Inc. ("Century") seeks a
judgment declaring that defendant Diamond State
Insurance Company ("Diamond") owes a contractual
duty to defend and indemnify it in a trademark
infringement action and also owes any damages
resulting from a breach of that duty. The trademark
infringement action was brought by Gucci America,
Inc. ("Gucci"), against Century, among others.*Gucci
Am., Inc. v. Big M Inc.,* No. 02 Civ. 3191 (S.D.N.Y.
June 19, 2002) (amended complaint). Diamond has
disavowed any duty to defend or indemnify Century
in relation to Gucci's action, based on various
grounds including untimely notice. Century claims it
provided timely notice. (Am.Compl.¶ 12.)

In a July 28, 2006, joint submission, the parties laid
out their respective positions in the instant discovery
dispute.[FN1]Diamond seeks by third-party subpoena to
access any relevant communications between
Century and Century's former counsel that transpired
prior to Gucci's filing suit against Century. Diamond
contends that Century had a basis to know of its
potential liability some time before it notified
Diamond and that Century thus failed to perform its
own contractual duty to provide notice "as soon as
practicable." (Answer ¶¶ 22-24.) Specifically,
Diamond alleges that Century came by such
knowledge during its earlier participation as a
nonparty witness in separate but similar litigation by
Gucci. Diamond argues that Century likely was
advised by its counsel then that it, too, could be a
litigation target, and that the requested attorney-client
communications are therefore "potentially critical" to
establishing Century's failure to provide timely notice
of a potential claim as required by the policy.
Diamond maintains that Century, by suing on the
policy, has put the timeliness of its notice in issue and
thus impliedly waived the privilege.

> FN1. The Court acknowledges Century's
> footnoted disclaimer, (Joint Submission n.
> 1), denying any concession to Diamond's
> arguments, and notes that its ruling does not
> assume any such concession.

Century demands that the subpoena be quashed to
preserve its attorney-client privilege. It argues that
the circumstances here do not support an implied
waiver, denying that it has placed in issue protected
information such that prohibiting Diamond from
reviewing that information would work a material
unfairness.

### DISCUSSION

The question, then, is whether Century has impliedly
waived the attorney-client privilege with respect to
the information sought. Pursuant to Federal Rule of
Evidence 501 and given its diversity jurisdiction over
this case, the Court has considered the applicable
common law of privilege and the substantive state

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2006 WL 2355323 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2006 WL 2355323)

law governing the dispute, and concludes that Century has, indeed, waived the privilege with respect to some of the protected material, Fed.R.Civ.P. 26(c). The Court, therefore, will enforce the subpoena, as modified below.Fed R. Civ. P. 45(c)(3)(A).

**\*2** The parties do not dispute the significance of the attorney-client privilege. As the highest courts of the nation and New York have stated, the certainty of confidentiality is crucial both to public and private interests, because it encourages full, candid communications between attorney and client and thus effective legal representation. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); Priest v. Hennessey, 51 N.Y.2d 62, 67-68 (1980). The privilege thus outweighs the general imperative that information be made available to promote the process of adjudication. See 3 J. Weinstein, Evidence, §§ 503.01-503.03 (2d ed.2006).

The privilege may, however, be deemed impliedly waived, where the privilege-holder has placed protected communications in issue such that withholding that information from its adversary would be unfair. See United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir.1991) (citations omitted); Weinstein, supra, at § 503.41. A waiver may be found where (1) a party asserts the privilege as a result of some affirmative act, such as filing suit; (2) that party placed the privileged information in issue via its affirmative act; and, (3) allowing the privilege would deny the opposing party access to information vital to its defense. Weinstein, supra, § 503.41, citing Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D.Wash.1975). The formula is useful, but it is important to recognize its underlying purpose: to enforce the equitable principle of fairness while allowing exceptions to the privilege only where necessary. The "overarching consideration is whether allowing the privilege to protect against disclosure of the information would be 'manifestly unfair' to the opposing party."Home Indem. Co. v. Lane Powell Moss and Miller, 43 F.3d 1322, 1326 (9th Cir.1995), citing Hearn, supra, at 581.

In this case, Century has placed the privileged material in issue by suing on an insurance contract that required provision of timely notice (Am.Compl.¶ 12), where the law bases timeliness on the knowledge of the insured, and where any evidence relating to

Century's knowledge that may be found in the protected communication is not likely discoverable from another source.

The timeliness of notice is manifestly material to this case, as "[c]ompliance with the notice requirements set forth in an insurance contract is a condition precedent to recovery under New York law, and failure by the insured to comply with such requirements relieves the insurer of liability."Utica Mut. Ins. Co. v. Fireman's Fund Ins. Companies, 748 F.2d 118, 121 (2d Cir.1984) (citations omitted). New York law recognizes an insurer's right to require timely notice, because notice is important in managing the costs of coverage. Id. at 121.The time that an insured became aware of liability-triggering facts is central to determining the notice question, because "New York law ... also requires that the time of discovery be determined according to an objective test, based on the conclusions that a reasonable person would draw from facts known the insured." Id. at 122 (emphasis added). "Whether [a party] complied with the notice provisions ... depends on when [the party] discovered that there had been misconduct resulting in a loss."Id. at 121 (emphasis in original). Moreover, while "[t]here may be circumstances, such as lack of knowledge ... or a reasonable belief in nonliability, that will excuse or explain delay in giving notice, ... the insured has the burden of showing the reasonableness of such excuse."White v. City of New York, 81 N.Y.2d 955, 957 (1993) (citation omitted).

**\*3** Seeking the benefit of its insurance contract, plaintiff Century has put its knowledge in issue by affirmatively claiming that it fulfilled its own duty of providing due notice. As Diamond notes, under New York law, untimely notice is not an affirmative defense that it must raise; rather, timely notice is a condition precedent that the insured must plead and prove in order to demonstrate coverage. SSBSS Realty Corp. v. Pub. Serv. Mut. Ins. Co., 677 N .Y.S.2d 136, 137-38 (1st Dept.1998). Century has implicitly recognized this obligation, in that its complaint affirmatively alleges that, "[u]pon being served with the Complaint ... in the Gucci Action, Century 21 promptly provided Diamond State with a copy ... duly placing Diamond State on notice."(Am.Compl. ¶ 12.) Yet New York law does not assume that notice is timely if the insured notifies the insurer upon being sued. The timeliness

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 3
Not Reported in F.Supp.2d, 2006 WL 2355323 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 2355323)**

determination is fact-specific and depends on what was known to the insured party, and when. *See Utica, supra; White, supra.* In this dispute, because Century seeks the benefit of a contract in part by alleging it has not forfeited that benefit by its own breach, Diamond should in fairness be permitted to develop facts showing that Century did in fact commit the breach of untimely notice.

Moreover, it is reasonable to believe that the privileged material disputed here contains evidence relevant to Century's knowledge of potential liability that is not otherwise available. Attorney-client communications-specifically, evidence that counsel had advised the insured of its potential liability-formed the basis for inferring insured's breach of a timely notice provision in Utica. *Utica, supra,* at 120-121. The parties' joint submission here identifies the disputed communications as having occurred prior to Gucci's action against Century, while Century was involved as a non-party witness in a separate but similar case. It is reasonable to expect both that Century's own possible liability would have been discussed with counsel at that time and that, as with any potential defendant, any allusions to such liability would have been confined to those attorney-client communications. For the same reason, any unprotected information revealed during Century's testimony as a non-party witness would be unlikely to yield evidence regarding its own liability. Thus, upholding the privilege with respect to the disputed attorney-client communications might very well preclude defendant Diamond from developing facts essential to the issue of notice and thus of contract enforceability.[FN2]

> FN2. Century cites *Stone & Webster Management Consultants, Inc. v. The Travelers Indemnity Company,* No. 94 Civ. 6619(RPP), 1995 WL 241884 (S.D.N.Y. April 26, 1995), in which the Court found no waiver in somewhat similar circumstances. To the extent that the court in *Stone* concluded that it was the insurer, rather than the insured, who put in issue the timeliness of notice, the opinion appears inconsistent with the substantive law of New York as discussed above. This Court finds the contrary reasoning in *Royal Indemnity Co. v. Salomon Smith Barney, Inc.,* No. 125889/99, 2004 WL 1563259 (Sup.Ct. N.Y. Co. June

29, 2004), more persuasive. In *Royal Indemnity,* the court noted that the insured bears the burden of establishing timely notice and ruled that the insured in that case could not seek to establish timely notice "while at the same time refusing to disclose the information that would either prove or disprove that threshold assertion." *Id.* at *8. In any event, the relevant ruling in *Stone* ultimately turned on the court's apparent skepticism regarding the likelihood that the documents would contain relevant information. 1995 WL 241884 at *4. Such determinations are based on the particular facts of the case, and here, as discussed above, this Court is persuaded of the potential significance of the documents at issue.

Exceptions to the attorney-client privilege should be construed narrowly, however, in order not to swallow the rule. The rationale of the "at issue" exception is to prevent the unfairness of allowing Century to withhold information critical to establishing when it was reasonably on notice of potential liability and thus obliged to notify its insurer. Diamond's subpoena seeks sweeping disclosure of all documents relating to the prior *Gucci* litigation, including counsel's "entire litigation file" in that matter. This demand encompasses all manner of attorney-client privileged and work-product protected documents having nothing to do with Century's potential liability for the marketing of allegedly infringing goods.

*4 Were there no question of privilege, the expansive scope of discovery would most likely lead to the disclosure of all such files as potentially relevant, at least absent excessive burden on the subpoenaed party. In this instance, however, the importance of the privilege, and the narrow rationale of the waiver exception, counsels a different result. Accordingly, the subpoena will be enforced only to the extent that counsel will be required to produce any documents in its files concerning communications with Century, before April 25, 2002, in which potential liability of Century to Gucci is discussed.

### CONCLUSION

The claim of privilege is overruled to the extent provided above, and the subpoena will be enforced as

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 2355323 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 2355323)**

modified.

SO ORDERED.

S.D.N.Y.,2006.
Century 21, Inc. v. Diamond State Ins. Co.
Not Reported in F.Supp.2d, 2006 WL 2355323
(S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy
Slip Copy, 2007 WL 402943 (S.D.N.Y.)
**(Cite as: Slip Copy, 2007 WL 402943)**

Page 1

**H**Long v. Marubeni American Corp.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Kevin LONG and Ludvic Presto, Plaintiffs,
v.
MARUBENI AMERICA CORPORATION, et al.,
Defendants.
**No. 05 Civ.639(GEL)(KNF).**

Feb. 2, 2007.

MEMORANDUM AND ORDER

FOX, Magistrate J.
**\*1** On May 22, 2006, and again on May 24, 2006, the defendants disclosed to the plaintiffs two memoranda they contend were inadvertently released to the plaintiffs and should have been withheld from disclosure under the attorney-client communication privilege and the work product doctrine.[FN1] During a December 14, 2006 deposition, the defendants realized that the plaintiffs possessed one of the memoranda. At that time, the defendants announced that the memorandum constituted attorney work product and had been disclosed inadvertently. The defendants asked the plaintiffs to refrain from using the document and to return it to the defendants "forthwith." The plaintiffs advised the defendants that any protection the document might have enjoyed was waived by the defendants because of the multiple times the defendants had provided the memorandum to them.

> FN1. The memoranda were provided to the plaintiffs twice because the plaintiffs were unable to view the documents in the electronic format in which they were received on May 22, 2006. To rectify that problem, the memoranda were provided to the plaintiffs anew, on May 24, 2006, in a different format.

The following day, the defendants discovered that the second memorandum, which they contend is also protected from disclosure by the work-product doctrine, had also been disclosed to the plaintiffs,

inadvertently. The defendants advised the plaintiffs of their discovery, through a writing, informed them that both memoranda constituted attorney-work product and demanded that the plaintiffs return the memoranda to them.

In response, the plaintiffs submitted a writing to the Court through which they presented the controversy to it, for resolution. Thereafter, the defendants wrote to the Court and urged it to find that the pertinent memoranda are not only protected by the work-product doctrine, but are also shielded from disclosure by the attorney-client communication privilege. The defendants explained that two teams of attorneys-one in New York and the other in the District of Columbia-reviewed material potentially responsive to the plaintiffs' discovery demands before determining that approximately 158,730 documents comprised of 1.5 million pages should be disclosed to the plaintiffs. According to the defendants, despite their predisclosure review exercises, the two memoranda were disclosed, inadvertently. Therefore, the defendants requested that the Court issue an order barring the plaintiffs from using the memoranda in this action.

The plaintiffs oppose the defendants' application. They contend the two memoranda are not protected by the work-product doctrine and, alternatively, that the defendants have waived any asserted privilege by failing to take precautions to prevent the disclosure of the memoranda and by failing repeatedly to safeguard the documents from disclosure to them.

The work-product doctrine prohibits a litigant from making unwarranted inquiries into the files and the mental impressions of an adverse party's legal counsel. See*Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 393 (1947). After conducting an *incamera* review of the two memoranda and considering the parties' respective written submissions, the Court finds that the two memoranda are attorney work product and are protected from disclosure by the work-product doctrine. Typically, the voluntary production of a document that is shielded from disclosure by the work-product doctrine waives any claim by a litigant that the document may be withheld from disclosure under

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 402943 (S.D.N.Y.)
**(Cite as: Slip Copy, 2007 WL 402943)**

Page 2

that doctrine. *See* *U.S. v. Rigas,* 281 F.Supp.2d 733, 737 (S.D.N.Y.2003).

**\*2** In order to determine whether the work-product doctrine protection has been waived by a litigant's alleged inadvertent disclosure(s) of material, the courts in this judicial district typically weigh four factors: (1) the reasonableness of the precautions taken by a party to avoid the inadvertent disclosure of privileged documents; (2) the volume of material disclosed during discovery, compared to the volume of the specific disclosure at issue; (3) the length of time taken by the producing party to correct the disclosure error; and (4) the overarching issue of fairness. *See* *id.* at 737-38.

In the case at bar, the Court cannot say definitively that the defendants' decision to divide the responsibility for conducting predisclosure document reviews among teams of attorneys in two different cities, rather than assigning responsibility for performing that task exclusively to attorneys in New York, who appear to be directing the litigation, was unreasonable. However, that decision contributed greatly to the disclosure mishap that occasioned the instant application. In any event, the Court finds that, in the light of: (a) the total number of documents produced by the defendants to the plaintiffs during discovery; (b) the defendants' immediate assertion of the work-product doctrine protection, after becoming aware of the disclosures; (c) the defendants' prompt request for the return of the documents; and (d) the lack of any showing that invoking the work-product doctrine protection with respect to the memoranda will prejudice the plaintiffs, the inadvertent voluntary disclosure of the memoranda does not constitute a waiver by the defendants of the work-product doctrine's protection. Therefore, the plaintiffs must return the pertinent memoranda to the defendants and, pursuant to Fed.R.Civ.P. 26(c), they shall not use the information gleaned from the memoranda for any purpose in this litigation.[FN2]

> FN2. Inasmuch as the Court has determined that the memoranda are shielded from disclosure by the work-product doctrine, no analysis of the attorney-client communication privilege, as it relates to the two memoranda is needed.

SO ORDERED:

S.D.N.Y.,2007.
Long v. Marubeni American Corp.
Slip Copy, 2007 WL 402943 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.