REDACTED VERSION

**ORIGINAL FILED UNDER SEAL
SUBJECT TO
CONFIDENTIALITY ORDER**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

AIU INSURANCE COMPANY,

                          Plaintiff,

       -against-

TIG INSURANCE COMPANY,

                       Defendant.

-------------------------------------------------------------X

:
:
:   Civil Action No.: 07 CIV 7052 (SHS)
:
:
:
:
:
:
:

**AIU INSURANCE COMPANY'S
MEMORANDUM OF LAW IN OPPOSITION TO
TIG INSURANCE COMPANY'S MOTION TO COMPEL**

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

Of counsel:

    William A. Maher (WM-9470)
    Marc L. Abrams (MA-6600)

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 3

     A.    The Claims and Defenses in this Matter ........................................ 3

     B.    TIG Executes a Pledge of Confidentiality ...................................... 5

     C.    AIU Complies with its Discovery Obligations ............................... 6

     D.    TIG Seeks Additional Discovery .................................................... 7

     E.    The Forty-Eight Insulations and Boiler Litigations ....................... 7

ARGUMENT ..................................................................................................... 9

I.     THE COURT SHOULD PROTECT AIU'S
     PRIVILEGED MATERIALS FROM DISCOVERY ................................. 9

     A.    The "At Issue" Doctrine is Inapplicable to this Proceeding .......... 10

## REDACTED

II.    THE DOCUMENTS RELATING TO COLLATERAL LITIGATION
     ARE NOT MATERIAL TO TIG'S DEFENSES ................................... 18

III.   AIU HAS PRODUCED ALL DOCUMENTS THAT WERE PRODUCED
     IN THE COVERAGE LITIGATION APPLICABLE TO TIG'S DEFENSES ............... 21

IV.   AIU HAS PERFORMED A DILIGENT ELECTRONIC SEARCH
     OF ITS RECORDS .......................................................................... 22

CONCLUSION.................................................................................................. 24

## TABLE OF AUTHORITIES

Page

**Cases**

Allen v. West-Point Pepperell, Inc.,
    848 F. Supp. 423 (S.D.N.Y. 1994) ..............................................................9, 11

American Home Assur. Co. v. International Ins. Co.,
    90 N.Y.2d 433, 661 N.Y.S.2d 584 (N.Y. 1997) ............................................14

Ballow Brasted O'Brien & Rusin P.C. v. Logan,
    435 F.3d 235, 2006 U.S. App. LEXIS 1378 (2nd Cir. N.Y. 2006)...................9

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,
    2000 U.S. Dist. LEXIS 11634 (S.D.N.Y. Aug. 14, 2000) ............................12

Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.,
    2002 U.S. Dist. LEXIS 23322 (S.D.N.Y. Dec. 5, 2002) ...............................12

Brandon v. Nationwide Mut. Ins. Co.,
    97 N.Y.2d 491, 743 N.Y.S.2d 53 (2002) ......................................................14

Century 21, Inc. v. Diamond State Ins. Co.,
    2006 U.S. Dist. LEXIS 56733 (S.D.N.Y. 2006)...............................11, 13, 14

Christiania General Ins. Corp. of New York v. Great American Ins. Co.,
    979 F.2d 268 (2d Cir. 1992)..........................................................................14

Fletcher v. Atex, Inc.,
    156 F.R.D. 45 (S.D.N.Y. 1994) ....................................................................18

Gulf Ins. Co. v. Transatlantic Reins. Co.,
    13 A.D.3d 278, 788 N.Y.S.2d 44 (1st Dep't 2004) .......................................17

Home Indem. Co. v. Lan Powell Moss and Miller,
    43 F.3d 1322 (9th Cir. 1995) ........................................................................11

Klos v. Polskie Linie Lotnicze,
    133 F.3d 164 (2d Cir. 1997)..........................................................................16

North River Ins. Co. v. Columbia Cas. Co.,
    1995 U.S. Dist. LEXIS 53 (S.D.N.Y. 1995).................................................15

N. River Ins. Co. v. Philadelphia Reinsurance Corp.,
    797 F. Supp. 363 (D.N.J. 1992) ....................................................................11

Ohio Cas. Group- v. Am. Int'l Specialty Lines Ins. Co.,
    2006 U.S. Dist. LEXIS 52070 (S.D.N.Y. Jul. 25, 2006) ....................................................11

OneBeacon Ins. Co. v. Forman Int'l, Ltd.,
    2006 U.S. Dist LEXIS 90970 (S.D.N.Y. Dec. 15, 2006) ......................................10, 11, 15

Oxyn Telecom., Inc. v. Onse Telecom,
    2003 U.S. Dist LEXIS 2671 (S.D.N.Y. Feb. 25, 2003) ....................................................12

Royal Indemnity Co. v. Salomon Smith Barney, Inc.,
    2004 N.Y. Misc. LEXIS 1052, 791 N.Y.S.2d 873 (Sup. Ct. N.Y. County 2004) .......13, 14

Sharper Image Corp. v. Honeywell Int'l, Inc.,
    222 F.R.D. 621 (N.D. Cal. 2004)....................................................................................18

Spectrum Systems Int'l Corp. v. Chemical Bank,
    78 N.Y.2d 371, 575 N.Y.S.2d 809 (1991) ......................................................................10

Standard Chartered Bank PLC v. Ayala Int'l Holdings,
    111 F.R.D. 76, (S.D.N.Y. 1986) ....................................................................................13

The Chase Manhattan Bank N.A. v. Drysdale Sec., Corp.,
    587 F. Supp. 57 (S.D.N.Y. 1984) .............................................................................11, 13

The Scotts Company, LLC v. Liberty Mutual Ins.,
    2007 U.S. Dist. LEXIS 43005 (E.D. Ohio June 12, 2007)................................................23

Tribune Co. v. Purcigliotti,
    1997 U.S. Dist. LEXIS 228 (S.D.N.Y. Jan. 10, 1997).....................................................12

Treppel v. Biovail Corp.,
    233 F.R.D. 363 (S.D.N.Y. 2006) ....................................................................................22

Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.,
    79 N.Y.2d 576, 584 N.Y.S.2d 290 (1992) ......................................................................14

United States v. United Shoe Mach. Corp.,
    89 F. Supp. 357 (D. Mass. 1950) ....................................................................................16

Upjohn v. United States,
    449 U.S.383 (1981)........................................................................................................10

**Rules**

CPLR 3101................................................................................................................9

Fed. R. Civ. P. 26(b)(1)...................................................................................18, 21, 22

Plaintiff AIU Insurance Company ("AIU"), by its attorneys, Wollmuth Maher & Deutsch LLP, respectfully submits this memorandum of law, together with the Declaration of Marc L. Abrams ("Abrams Dec."), dated April 30, 2008, in opposition to the Motion to Compel dated April 16, 2008 (the "Motion") submitted by TIG Insurance Company ("TIG").

## PRELIMINARY STATEMENT

In this proceeding, AIU has devoted significant resources to responding to TIG's discovery requests, including the production of roughly 53,000 pages of hard or electronic documents. These materials include numerous documents relating to the claims and underwriting files relevant to this matter as well as numerous non-privileged documents maintained by AIU or its coverage counsel in connection with the insurance coverage proceedings involving Foster Wheeler and its direct and excess insurers, including AIU (the "Foster Wheeler Coverage Litigation"). Notwithstanding these efforts, TIG is pressing AIU for even greater discovery, including: (i) the production of legal communications between AIU and its coverage counsel (Cozen & Connor) in the Foster Wheeler Coverage Litigation; (ii) the production of documents relating to various other litigation proceedings separate and apart from the Foster Wheeler Coverage Litigation, despite that these litigations took place roughly twenty years ago and have nothing to do with this proceeding; (iii) the production of certain confidential documents relating to AIU's other reinsurers; and (iv) additional electronic searches for seven witnesses beyond the numerous electronic searches that AIU has already undertaken and continues to undertake.

TIG's additional discovery requests border on harassment and should be rejected by this Court:

First, the coverage counsel documents are indisputably privileged and AIU has not

waived the applicable privileges based on the "at issue" doctrine. As a legal and factual matter, TIG's invocation of this doctrine is deficient because, absent special circumstances, New York law does not extend it to cover cases <u>not</u> involving advice of counsel issues, AIU has not placed notice "at issue" in this litigation, and, in any case, the coverage counsel materials sought by TIG would have little or no bearing on TIG's purported notice defense.

**REDACTED**

<u>Second</u>, TIG is not entitled to AIU's files and documents for various litigation proceedings bearing no relation to the Foster Wheeler Coverage Litigation. As set forth below, the various other litigation proceedings that TIG seeks discovery for – which took place in the 1980s and early 1990s – have <u>nothing</u> to do with the hundreds of thousands of asbestos claims brought against Foster Wheeler, the ensuing Foster Wheeler Coverage Litigation, AIU's settlement of this litigation, or AIU's recovery of reinsurance proceeds relating to this litigation. Any discovery of these documents – to the extent they even exist – would result in AIU having to chase down voluminous, decades-old materials from law firms that may no longer even exist, notwithstanding the irrelevance of such materials.

<u>Third</u>, TIG is not entitled to documents relating to AIU's other reinsurers besides TIG,

regardless of whether such documents were produced in the Foster Wheeler Coverage Litigation. TIG has asserted no rationale for the production of these materials, and TIG itself has redacted its own production materials when they relate to TIG's other insurers or reinsurers.

Fourth, TIG is not entitled to force AIU into undertaking electronic e-mail searches for any AIU employee merely because TIG has identified such an employee in one of the 53,000 documents that AIU has produced in this matter. AIU has already undertaken (and continues to undertake) burdensome electronic searches for eight relevant corporate witnesses – i.e., all of the witnesses listed in AIU's Interrogatory Responses – as well as for the law firm that represented AIU in the Foster Wheeler Coverage Litigation. TIG may not force AIU to undertake electronic searches for an additional seven witnesses, all of whom apparently bear little or no relation to the claims or defenses before the Court in this litigation.

## STATEMENT OF FACTS

In its brief, TIG has submitted a ten page "Statement of Facts" which oftentimes reads like a post-trial brief.[1] Rather than engaging in pointless and unnecessary refutations of TIG's "facts," AIU sets forth below a statement of facts that are relevant to TIG's discovery motion.

### A.    The Claims and Defenses in this Matter

As the Court is aware from prior pleadings in this matter, between October 1, 1978 and October 1, 1982, AIU issued four umbrella insurance policies (the "Umbrella Policies") to Foster Wheeler, a manufacturer and installer of boilers and other steam generating and heat exchange

---

**REDACTED**

3

equipment.[2]  See Abrams Dec., Ex. A ¶ 11; ¶ 18.  For each of these Umbrella Policies, AIU

obtained reinsurance on a facultative basis from TIG's predecessor International Insurance

Company ("IIC"), whereby IIC agreed to reinsure a significant portion of AIU's exposure, and

AIU paid IIC substantial premiums for accepting these risks (the "Reinsurance Agreements").

See id. ¶¶ 12-17.

        Because hundreds of thousands of asbestos claims were asserted against Foster Wheeler,

Foster Wheeler and its primary and excess insurers, including AIU, became involved in the

Coverage Litigation in New York and New Jersey courts beginning in 2001.  Id. at ¶¶ 18-19.

Notably, IIC (and certain other TIG affiliates) were parties to the Coverage Litigation because

IIC maintained its own direct exposure to Foster Wheeler presumably arising out of IIC's

issuance of its own excess policies to Foster Wheeler.  See Abrams Dec., Ex. H.  In other words,

TIG (as successor to IIC) insured Foster Wheeler's asbestos exposures both directly, as an excess

insurer, and as a reinsurer of AIU's umbrella policies issued to Foster Wheeler.  Id.; see also

Abrams Dec., Ex. E at ¶ 8.

        In June 2006, AIU and its corporate affiliates reached a settlement (the "Settlement")

with Foster Wheeler, whereby AIU began making substantial payments to Foster Wheeler.

Abrams Dec., Ex. A at ¶¶ 20-21.  In turn, AIU sought reimbursement of such settlement

payments from its reinsurers, including TIG (which had become the corporate successor of IIC in

2003).  Id. at ¶¶ 23-25; see also Abrams Dec., Ex. E at ¶ 8.  TIG refused to reimburse AIU on the

grounds of late notice and other defenses – even though IIC (and other TIG affiliates) were

directly involved in the Foster Wheeler Coverage Litigation.  See Abrams Dec., Ex. E at pp. 14-

16; Ex. H.

---

[2]  The Umbrella Policies were "low attaching" coverages.  Put differently, Foster Wheeler maintained a "tower" of
insurance coverage over and above the Umbrella Policies, totaling between $150 million and $225 million in overall
insurance coverage, as between October 1, 1978 and October 1, 1982, depending on the particular year.

**B.    TIG Executes a Pledge of Confidentiality**

After receiving a notice from AIU relating to the Foster Wheeler Settlement in January 2007, TIG began requesting information concerning the Foster Wheeler Coverage Litigation and the Settlement, and on May 15, 2007 TIG requested an inspection of AIU's records.[3] See Aldort Dec., Exs. 16, 17; see also TIG Br. at pp. 4-5.  In advance of the inspection, on July 2, 2007, TIG offered and executed the Confidentiality Pledge.  See Pascale Dec., Exh. A.  The Confidentiality Pledge contained the following clauses:

> WHEREAS:  Some of the documents to be inspected, as well as any additional information obtained from AIU or its attorneys and representatives, may include attorney-client communications between AIU and its counsel which are privileged and confidential and/or which may contain attorney-work product, disclosure of which may be prejudicial to the interest of AIU in the defense of underlying legal actions . . .

> WHEREAS:  AIU and the Reinsurer share a common interest in the evaluation and defense of the underlying actions and the Reinsurer does not desire to cause any waiver of the attorney-client privilege or of the work product protection.

> **Therefore, it is agreed by Reinsurer as follows:**

> 1.    Reinsurer agrees that it is in the best interest of both AIU and Reinsurer to preserve and protect such privileges and protection as may be applicable to any of the documents examined and as unintended or inadvertent waiver of any such privilege or protections could be prejudicial to AIU and the Reinsurer.

> 2.    Reinsurer agrees that any disclosure of such information to Reinsurer or its representatives is not intended to diminish in any way the privileged and confidential nature of such materials nor shall it constitute a waiver of any applicable privilege, including the attorney-client privilege, work-product privilege, the joint-interest privilege or any other applicable privilege.

---

[3] TIG also attempts to slip into its factual statement the contention that it was undertaking the inspection "[a]t the direction of TIG's counsel." TIG Br. at p. 5.  TIG never indicated this fact to AIU prior to or during the inspection process. See Aldort Dec., Exs 16 and 17.

Id. at p. 1. Mr. Pascale, who has submitted a declaration in connection with the Motion,

executed the Confidentiality Pledge, binding TIG to the foregoing representations.[4] TIG's

representative, Buxbaum Loggia, also executed the Pledge.    Id. at p. 2. These representations

expressly "survive[d] any termination of this Agreement." Id.

**C.    AIU Complies with its Discovery Obligations**

After AIU commenced this proceeding and this Court entered a scheduling order, TIG

served twenty-eight document requests on AIU as well as eighteen Interrogatories on or around

October 25, 2007. See Aldort Dec., Ex. 21; see also Abrams Dec., Ex. B. AIU and its counsel

have devoted significant resources in responding to TIG's discovery requests. These efforts have

resulted in the production of roughly 53,000 pages of electronic and hard documents including,

but not limited to the following materials:

- AIU and its coverage counsel's litigation files and documents relating to the Foster Wheeler Coverage Litigation (to the extent such materials were not subject to privileges);

- Underwriting files in connection with the Reinsurance Agreements;

- Reinsurance claims files maintained by AIU in connection with the cession of its Foster Wheeler claims to TIG under the Reinsurance Agreements;

- Billings and notices to TIG in connection with these claims;

- AIU's notices and billings of its Foster Wheeler claims to its facultative reinsurers besides TIG.[5]

---

**REDACTED**

[5] These documents have been redacted to preserve AIU's confidentiality with respect to the identity of its other reinsurers.

Abrams Dec., ¶ 3.  In undertaking these efforts, AIU and/or its counsel have conducted and/or supervised numerous document inspections and electronic searches for responsive materials and continue to do so.  Id. at ¶ 4.  Indeed, AIU has performed electronic searches, and continues to electronically search the files of all witnesses that it designated in its Interrogatory Responses, including the files of:  (1) Steve Parness; (2) Paul Colon; (3) Richard Kafaf; (4) William Mezick; (5) Judy Marotti; (6) Werner Ahrenstedt; (7) Jeffrey Millstone; (8) Diane Proimos and (9) certain Cozen & O' Connor attorneys involved in the Coverage Litigation.[6]  Id. at ¶ 5; see also Exs. C and D.

**D.    TIG Seeks Additional Discovery**

Apparently unsatisfied with AIU's efforts, TIG petitions this Court for additional discovery from AIU including its privileged coverage counsel files, its production files relating to its other reinsurers and for additional electronic discovery searches beyond those already undertaken.  See TIG Br. at pp. 11-16; 23-24.  TIG also seeks documents relating to various underlying asbestos and other tort litigations collaterally involving AIU that are separate and apart from the Foster Wheeler Coverage Litigation, which TIG refers to as the Other Asbestos Claims or the Boiler Claims.  See TIG Br. at pp. 16-22.  The discovery sought here by TIG requires a brief factual explanation as to the nature of these proceedings.

**E.    The Forty-Eight Insulations and Boiler Litigations**

Starting in the 1970s, thousands of asbestos plaintiffs brought claims against Forty-Eight Insulations Inc. ("Forty-Eight Insulations"), a small, non-public Illinois company that manufactured products containing asbestos between the 1920s and 1970 and that was placed into

---

[6] Collectively, these witnesses have knowledge regarding AIU's preparation, billing, and collection of claims submitted under the Reinsurance Agreement relating to Foster Wheeler, as well as AIU's handling and resolution of the Foster Wheeler Coverage Litigation. See Abrams Dec., Exs. C and D.  As the Reinsurance Agreements were entered into between 1978 and 1982, there are no email searches that would capture relevant underwriting materials.

bankruptcy in or around 1985.  Abrams Decl., Ex. G at ¶¶ 3, 7, 8.  Forty-Eight Insulations and

its various direct and excess insurers (which did not include AIU) became involved in at least

five separate proceedings relating to coverage for these claims, including proceedings in the

Northern District of Illinois as well as the Southern District of Michigan and (eventually) the

Sixth Circuit.  See In re Forty-Eight Insulations, Inc., 109 B.R. 315, 317 (N.D. Ill. Bankr. 1989).[7]

In or around 1989, certain insurers joined Foster Wheeler as a defendant in one of the

actions, based on the allegation that Foster Wheeler had subsequently acquired Forty-Eight

Insulations in 1973 – i.e., several years after Forty-Eight Insulations had stopped manufacturing

asbestos products – thereby presumably exposing it and its insurance carriers to potential

liability.  Id. at 317-19.  It appears that AIU and its affiliates retained a law firm that no longer

exists named Gleason, McGuire & Shreffler to defend it in connection with the Forty-Eight

Insulations litigation.  See Abrams Dec., ¶ 6; see also Abrams Dec, Ex. I.

Once Foster Wheeler became named as a defendant in the Forty-Eight Insulations

litigation, and it became clear that there was an attempt to reach Foster Wheeler's insurance

coverage, Foster Wheeler apparently provided notice to AIU, which subsequently generated a

notice to its reinsurers including TIG.  See Abrams Dec., Ex. F.  The Forty-Eight Insulations

litigation is separate and apart from the hundreds and thousands of asbestos claims brought

against Foster Wheeler directly, which ultimately led to the Foster Wheeler Coverage Litigation

involving AIU, the Foster Wheeler Settlement entered by AIU, and the reinsurance recovery that

is the subject of this proceeding.  Put differently, AIU is not seeking reimbursement in this

---

[7] The In Re Forty-Eight Insulations case describes Forty-Eight Insulations' further involvement in four other cases
consolidated before the court: (1) Forty-Eight Insulations, Inc. v. American Home Assurance Company, et al., Case
No. 87 10789, Adv. No. 87 A 1003; (2) Affiliated FM Insurance Company v. Forty-Eight Insulations, Inc., Case No.
88 C 1209, Adv. No. 86 A 1484; (3) Lumbermens Mutual Casualty Co., v. Forty-Eight Insulations, Inc., Case No.
88 C 1209, Adv. No. 87 A 0914; and (4) Lumbermens Mutual Casualty Co. v. Foster Wheeler Corporation,  No. 84
C 34302, Adv. No. 87 A 0914.

proceeding for any settlement or resolution of Forty-Eight Insulations claims. See Abrams Dec., Ex. A.

TIG also seeks production of materials apparently relating to two boiler explosions that took place aboard Navy vessels in 1981 resulting in litigation against Foster Wheeler, and AIU subsequently issuing minimal payments to the claimants in or around 1992. See TIG Br. at pp. 21-23; see also Aldort Dec., Ex. 5 at p.2. And TIG also seeks the production of notices provided by AIU to TIG as well as notices provided to AIU's other reinsurers regarding these boiler explosion claims. See TIG Br. at pp. 21-22. Again, these boiler explosion claims are separate and apart from the hundreds and thousands of asbestos claims brought against Foster Wheeler directly and the ensuing Foster Wheeler Coverage Litigation. Materials in AIU's possession do not reveal which law firm, if any, represented AIU in these matters. Abrams Dec., ¶ 7.

## ARGUMENT

## I.  THE COURT SHOULD PROTECT AIU'S PRIVILEGED MATERIALS FROM DISCOVERY

The attorney-client privilege and work product doctrine have long been recognized in the State of New York[8] and the federal courts. New York's Civil Practice Law and Rules ("CPLR") establishes three categories of protected materials:  (1) privileged matter, which is absolutely immune from discovery (see CPLR § 3101(b)); an attorney's work product, which is also absolutely immune (see id. § 3101(c)); and trial preparation materials, which are subject to disclosure only on a showing of substantial need and undue hardship in obtaining the substantial

---

[8]  For the third time in this proceeding, TIG has invoked the application of New York law. See TIG Br. at 11, n.6. Pursuant to Federal Rule of Evidence 501, where state law "supplies the rule of decision," issues concerning the privilege "shall be determined in accordance with state law." AIU maintains that New York law governs the substantive issues in this case; as such, New York law governs issues concerning the attorney-client privilege. See Allen v. West-Point Pepperell, Inc., 848 F. Supp. 423, 427 (S.D.N.Y. 1994) (overruled on other grounds by Ballow Brasted O'Brien & Rusin P.C. v. Logan, 435 F.3d 235, 2006 U.S. App. LEXIS 1378 (2nd Cir. N.Y. 2006) (because "substantive law of New York governs this action," pursuant to "Rule 501, New York law must also guide the Court's determination of the attorney-client privilege issue").

equivalent of the matters by other means.  See id. § 3101(d)(2).  See also Spectrum Systems Int'l

Corp. v. Chemical Bank, 78 N.Y.2d 371,376-377, 575 N.Y.S.2d 809, 813 (1991).

The CPLR provision governing attorney-client privilege is merely a codification or re-

enactment of the common law.  Spectrum Systems, 78 N.Y.2d at 377.  The importance of the

privilege has long been recognized by the United States Supreme Court and has continually been

reaffirmed.  See, e.g., Upjohn v. United States, 449 U.S. 383, 389-390 (1981) (and cases cited

therein).

As a threshold matter, TIG does not question that the documents its seeks — namely, all

"coverage counsel" materials from the Foster Wheeler Coverage Litigation as well as coverage

counsel materials from the Forty-Eight Insulations and Boiler Litigations — are privileged

communications, and, therefore, that issue is not before the Court.  Rather, TIG claims that AIU

has waived these privileges by (i) placing "at issue" the claim that it provided timely notice to

TIG and

## REDACTED

Both of these arguments are without

merit and are refuted below.

### A.    The "At Issue" Doctrine is
### Inapplicable to this Proceeding

TIG's claim that AIU waived applicable privileges by placing privileged communications

"at issue" in this litigation, TIG Br. at pp. 11-15, suffers from both legal and factual deficiencies.

First, as a legal matter, TIG misconstrues this limited exception to the privilege.  The "at

issue" exception applies only where a party puts the contents of privileged communications "at

issue by asserting a claim or defense it intends to prove through disclosure of that

communication."  OneBeacon Ins. Co. v. Forman Int'l, Ltd., 2006 U.S. Dist LEXIS 90970, at *

27 (S.D.N.Y. Dec. 15, 2006).  The "overarching consideration" of the "at issue" exception is

"whether allowing the privilege to protect against disclosure of the information would be 'manifestly unfair' to the opposing party." Century 21, Inc. v. Diamond State Ins. Co., 2006 U.S. Dist. LEXIS 56733, at *5 (S.D.N.Y. 2006) (quoting Home Indem. Co. v. Lan Powell Moss and Miller, 43 F.3d 1322, 1326 (9th Cir. 1995). As an exception to the privilege, it "should be construed narrowly," Century 21, 2006 U.S. Dist. LEXIS 56733, at *10, and the party advocating the "at issue" exception must overcome a "particularly high" burden "to pierce the attorney-client privilege." The Chase Manhattan Bank N.A. v. Drysdale Sec., Corp. 587 F. Supp. 57, 58 (S.D.N.Y. 1984).

    The courts in the Southern District of New York appear to construe the "at issue" waiver even more narrowly than other in other jurisdictions. See Allen v. West-Point Pepperell, Inc., 848 F. Supp. 423, 429 (S.D.N.Y. 1994) (noting that the broad interpretation of the "'at issue' waiver" has "been the subject of significant legal and academic criticism"); One Beacon, 2006 U.S. Dist. LEXIS 90970, at * 27-29 (citing cases). In One Beacon, for example, the court determined that there was no waiver where plaintiff "has not relied on the 'advice of counsel' to supply an element of any claim, nor has it injected an 'advice of counsel' defense in the case." Id. at *28. See also Ohio Cas. Group- v. Am. Int'l Specialty Lines Ins. Co., 2006 U.S. Dist. LEXIS 52070, at * 12-13 (S.D.N.Y. Jul. 25, 2006) ("An at issue waiver will commonly occur when a defendant asserts an advice-of-counsel defense"); The Chase Manhattan Bank v. Drysdale Sec., Corp. 587 F. Supp. 57, 58 (S.D.N.Y. 1984)("Implied waiver of the privilege occurs only through an affirmative act of the part of the one who holds it"); Cf. N. River Ins. Co. v. Philadelphia Reinsurance Corp., 797 F. Supp. 363, 370 (D.N.J. 1992) ("waiver of the attorney-client privilege [occurs] when a party puts 'in issue' the contents of an attorney-client communication") (emphasis in original).

As this Court observed in Drysdale Sec., Corp.,

> It cannot be possible for [defendant] to justify breaching [plaintiff's]
> privilege by reason of its own pleading of an affirmative defense. That
> would give an adversary who is a skillful pleader the ability to render the
> privilege a nullity.

587 F. Supp. at 59 (emphasis in original). See also Bovis Lend Lease, LMB, Inc. v. Seasons

Contracting Corp., 2002 U.S. Dist. LEXIS 23322, at *53 (S.D.N.Y. Dec. 5, 2002) ("Generally,

where a party does not itself place in issue the matter as to which the privileged communications

are relevant, the privilege is not waived"); Bank Brussels Lambert v. Credit Lyonnais (Suisse)

S.A., 2000 U.S. Dist. LEXIS 11634, at *4-5 (S.D.N.Y. Aug. 14, 2000) (defendant's "own

initiative in its pleading . . . cannot create a waiver"); Tribune Co. v. Purcigliotti, 1997 U.S. Dist.

LEXIS 228, at *30 (S.D.N.Y. Jan. 10, 1997) (although the non-privileged party is "free to

attempt to demonstrate the converse conclusion . . . they cannot justify breaching plaintiff's

privileges based on defenses they chose to assert"). In addition, a finding of waiver "must be

predicated upon a showing that prejudice will result in the absence of disclosure." Oxyn

Telecom., Inc. v. Onse Telecom, 2003 U.S. Dist LEXIS 2671, at *24 (S.D.N.Y. Feb. 25, 2003).

See also Tribune Co., 1997 U.S. Dist. LEXIS 228, at *29 ("The 'at issue' standard . . . requires a

showing of critical relevance or vital need").

Second, as a factual matter, TIG has not come close to meeting the extraordinary burden

set forth above. At the outset, advice of counsel is not a claim or defense in this proceeding and

AIU has never represented or implied that it intends to prove that TIG has breached the

Reinsurance Agreements by failing to reimburse it for its share of the Foster Wheeler Settlement

through reliance on any attorney-client communications withheld from discovery. And, in any

case, the issue of timely notice has not been placed "at issue" by AIU – it is not even mentioned

in the Complaint. See Abrams Dec., Ex. A. Rather, "timely notice" is a defense to payment that

12

TIG has asserted in this matter. See Abrams Dec., Ex E at pp. 14-16. Thus, TIG seeks to do here exactly what the Drysdale Court forbade: i.e., "skillfully" pleading an affirmative defense in an effort to render AIU's privileges a "nullity."

TIG is also unable to demonstrate that it would be prejudiced without the disclosure of the privileged materials it seeks. This is because the legal advice AIU received from its coverage counsel is not determinative of whether and when AIU placed TIG on notice. Rather, this purported defense rests on the actual "raw" documents and the facts of the Foster-Wheeler coverage claims resolved. TIG has been provided and, to the extent that production is not complete, will continue to be provided, with the "raw" case documents related to the underlying claims and coverage dispute. See Aldort Dec., Exs. 7 and 9. Coverage counsel's privileged analysis of the meaning of these documents, however, is neither necessary nor relevant to TIG's burden of proof. In sum, TIG is not precluded or otherwise hampered in its ability to make or prove its alleged defense through its review of the very same materials upon which AIU's coverage counsel opined. See Standard Chartered Bank PLC v. Ayala Int'l Holdings, 111 F.R.D. 76, 81-82 (S.D.N.Y. 1986) (a party "must itself reveal what it knew" about the issue in question, but movant "is not entitled to learn from [that party] what [that party's] lawyers told it concerning" that issue).

Third, the cases cited by TIG in favor of application of the "at-issue" doctrine have no application to this matter. See TIG Br. at 11-14. In Century 21 and Royal Indemnity, the Courts reasoned that in the insurance context, because the issue of untimely notice is not an affirmative defense, but rather is a condition precedent (at least under New York law) to coverage, and therefore, the insured had "injected" the notice issue into the case simply because it sought the benefit of the insurance contract. Century 21, 2006 U.S. Dist. LEXIS 56733, at *7; Royal

Indemnity Co. v. Salomon Smith Barney., 2004 N.Y. Misc. LEXIS 1052, 791 N.Y.S.2d 873

(Sup. Ct. N.Y. County 2004), at *9.

This reasoning is not applicable in the reinsurance context. Under well settled New York

law, a notice provision will excuse performance under a reinsurance contract only where the

reinsurer has shown both untimely notice and prejudice. See Brandon v. Nationwide Mut. Ins.

Co., 97 N.Y.2d 491, 496-97, 743 N.Y.S.2d 53, 56 (2002); American Home Assur. Co. v.

International Ins. Co., 90 N.Y.2d 433, 437, 661 N.Y.S.2d 584, 585; Unigard Sec. Ins. Co., Inc. v.

North River Ins. Co., 79 N.Y.2d 576, 578, 584 N.Y.S.2d 290, 290 (1992).[9]  Put differently, a

contractual duty in a reinsurance contract "will not be construed as a condition precedent absent

clear language" that the parties intended to make it a condition precedent. Unigard , 79 N.Y.2d

at 581, 584 N.Y.S.2d at 292. See also Christiania General Ins. Corp. of New York v. Great

American Ins. Co., 979 F.2d 268, 273 (2d Cir. 1992).

Here, there can be no dispute that the reinsurance contract between AIU and TIG does

not make notice a condition precedent. Rather, the notice provision in each Reinsurance

Agreement is generically placed among the various terms and conditions. See Aldort Dec., Ex.

12 (TIG 1163). In fact, in Unigard, the Court found that an identical notice provision, which was

also included in the "terms and provisions" was not a condition precedent. 79 N.Y.2d at 582,

584 N.Y.S.2d at 293. Thus, the entire logic behind the Century 21 and Royal Indemnity

decisions – i.e., that merely by seeking enforcement of an insurance agreement the insured

unilaterally injected notice as an issue before the Court because notice was a condition precedent

---

[5]  The reasoning of these cases, equally applicable here, is based on the "significant and basic difference between
primary and reinsurance contracts." Unigard, 79 N.Y.2d at 582, 584 N.Y.S.2d at 293. As the Unigard Court
observed, under a certificate of reinsurance, unlike a primary insurance contract, the reinsurer does not indemnify
the primary insured. Id. Indeed, the reinsurer has no duty to primary insured whatsoever. Rather, the reinsurer
owes duties solely to the primary insurer, or cedent. Id. Unlike the primary insurer, the reinsurer, may not be held
liable to the insured for a breach of the primary insurer's duties. Id. at 583, 584 N.Y.S.2d at 293.

– does not exist here. There is no basis for extending the rationale of these cases to the reinsurance context.

Fourth, TIG asserts that AIU has placed the coverage counsel materials at issue because TIG is entitled to challenge the "reasonableness" of AIU's Foster Wheeler Settlement. See TIG Br. at p.15. The reason that TIG's brief offers no citation for this proposition is because there is none. In fact, TIG has not placed the issue of the "reasonableness" of AIU's settlement before the Court in this litigation; to the contrary, TIG has never asserted an affirmative defense on these grounds. See Abrams Dec., Ex. E. TIG may not cite the "at issue" doctrine to seek discovery of claims or defenses that are not at issue.

Moreover, AIU does not place privileged materials "at issue" merely through alleging (implicitly or otherwise) that its settlement with Foster Wheeler was reasonable and performed in good faith  See North River Ins. Co. v. Columbia Cas. Co., U.S. Dist. LEXIS 53 at *6 (S.D.N.Y. 1995). The reasonableness of AIU's settlement would not be determined by the coverage counsel documents that TIG seeks here. One Beacon, 1006 U.S. Dist. LEXIS 90970, at *29; id. ("The content of any legal advice would therefore not necessarily be at issue in determining the reasonableness of any settlement").

**REDACTED**

15

**REDACTED**

16

**REDACTED**

**REDACTED**

II.   **THE DOCUMENTS RELATING TO
      COLLATERAL LITIGATION ARE
      NOT MATERIAL TO TIG'S DEFENSES**

As a threshold matter, in its effort to compel production of materials relating to litigations

other than the Foster Wheeler Coverage Litigation, TIG misstates the relevant discovery

standard. TIG only cites the pre-2000 discovery standard that a party "need only demonstrate

that the documents are relevant to the <u>subject matter</u> involved in the action," TIG Br. at p. 17

(emphasis added), such that permissible discovery includes "any information that appears

reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u> (quoting <u>Fletcher v.</u>

<u>Atex, Inc.</u>, 156 F.R.D. 45, 48 (S.D.N.Y. 1994). In 2000, the Rules were modified to narrow and

clarify permissible discovery to include "any matter, not privileged, that is relevant to the claim

or defense of any party." Fed. R. Civ. P. 26(b)(1). <u>See, e.g.</u>, <u>Sharper Image Corp. v. Honeywell</u>

<u>Int'l, Inc.</u>, 222 F.R.D. 621, 639 (N.D. Cal. 2004) ("The amended version of [Rule 26(b)], which

clearly intended to shrink the universe of presumptively accessible material, declares that matter

sought through discovery must be 'relevant to the claim or defense of any party'").

This distinction is crucial here. To the extent that documents relate to the particular

reinsurance claim or defense in this litigation -- <u>i.e.</u>, whether TIG has breached the Reinsurance

Agreements by failing to reimburse it for payments made under the Foster Wheeler Settlement in

connection with the Foster Wheeler Coverage Litigation -- AIU has undertaken to produce such

documents. <u>See</u> Aldort Dec., Exs. 1, 7 and 9. However, to the extent documents relate solely to

the Forty-Eight Insulations or the Boiler Litigations -- which are separate and unrelated litigation

events -- AIU will not produce such materials as they are not relevant to a claim or defense of

18

any party.[11]  Id.  Finally, to the extent it is unclear from the documents whether they relate to the

Foster Wheeler litigation on the one hand, or the Forty-Eight Insulations or Boiler Litigations on

the other, AIU has undertaken to produce such documents.  Id.  In response to these common-

sense distinctions, TIG attempts to set-up four roadblocks discussed below.

    First, TIG claims that it needs materials related to the Forty-Eight Insulations and Boiler

Litigations because these documents "demonstrate AIU's historical knowledge of asbestos

claims against Foster Wheeler and therefore speak to the issue of when AIU was obligated to

provide notice under the Reinsurance Contracts." TIG Br. at p. 17.  As noted above, AIU has

already produced the notices provided to IIC related to the Forty-Eight Insulations claims, and

these notices were created and provided many years before the 2006 Settlement of the Foster-

Wheeler asbestos coverage claims. TIG, however, has never explained how production in this

action of the underlying claims and the coverage dispute materials related to Forty-Eight

Insulations would have any bearing on TIG's obligations to reimburse AIU for payments made

under the 2006 Settlement with Foster-Wheeler.  Furthermore, there is no nexus between the

Boiler Litigations (non-asbestos claims) and AIU's "historical knowledge of [Foster-Wheeler]

asbestos claims".  TIG is simply engaged in a fishing expedition.

    Second, TIG claims entitlement to discovery of the collateral litigations to support its

new allegation that AIU did not maintain sufficient practices and controls to place it on notice

with regard to its Foster Wheeler exposures.  See TIG Br. at pp. 21-22.  However, TIG should

not be permitted to undertake discovery of AIU's notice practices for claims against AIU

unrelated to this lawsuit, especially where, as here, these lawsuits took place as much as some

---

[11] There is one exception to this rule.  That is, AIU's actual notices to TIG of its potential exposure under the
Reinsurance Agreements relating to the Forty-Eight Insulations claims, which may have had the effect of putting
TIG on actual or constructive notice with respect to TIG's Foster Wheeler related claims under the Reinsurance
Agreements. AIU has produced such materials.

twenty years before the Coverage Litigation, i.e., the event of which TIG claims that it did not receive notice. Rather, TIG's efforts for discovery of AIU's notice practices must have reasonable parameters regarding timing and subject matter. TIG's apparent view that it is entitled to all discovery across all claims and all dates involving the Reinsurance Agreements is overbroad, unduly burdensome and unlikely to lead to the production of admissible evidence.

Finally, TIG claims that production of files relating to the Forty-Eight Insulations and Boiler Litigations would not be unduly burdensome because they amount to just "one box". TIG Br. at p. 20. As AIU has explained on numerous occasions, the "one box" estimate relates only to documents that AIU's counsel possesses relating to the Forty-Eight Insulations Litigation that were collected by AIU's coverage counsel in connection with the Foster Wheeler Coverage Litigation. Aldort Dec., Exs. 6, 7 & 9. But these documents may represent the tip of the iceberg and TIG has never represented that it would be satisfied with the production of the documents contained in the "one box", or even with any additional documents AIU might locate in-house. Id. As set forth above, from the late 1980s until 1995, AIU and its affiliates apparently retained the firm of Gleason, McGuire & Shreffler to represent it in the various litigation proceedings involving Forty-Eight Insulations. Abrams Dec., ¶ 6. Based on internet searches and searches of databases such as Martindale and Lexis, it does not appear that this firm even exists today, but under TIG's expansive discovery wishes, AIU would be obligated to conduct a time-consuming and potentially costly search for these documents. See Abrams Dec., ¶ 6 and Exhibit I. [12]

It is equally unclear from materials currently in AIU's possession which firm, if any, represented AIU in the Boiler Litigation. Abrams Dec., ¶ 7. Any benefit from the collection of

---

[12] TIG makes the point that AIU must provide a corporate affidavit regarding the burdensome of producing these materials. TIG misunderstands this requirement. The point here is that many of the documents sought by TIG are not maintained by AIU – they are maintained (perhaps) by AIU's coverage counsel in these matters. Accordingly, AIU need not submit an affidavit regarding the burdensomeness of documents that it does not even maintain.

these documents (which is minimal, if not completely non-existent, given that they are not asbestos claims and do not relate to claims or defenses in this litigation) would be substantially outweighed by the burden of producing these materials, especially given obvious difficulties in locating them, the potentially large amount of responsive materials, and the age of the documents.

### III.    AIU HAS PRODUCED ALL DOCUMENTS THAT WERE PRODUCED IN THE COVERAGE LITIGATION APPLICABLE TO TIG'S DEFENSES

TIG claims that AIU must produce in this matter all documents that AIU produced under confidentiality in connection with the Foster Wheeler Coverage Litigation. TIG Br. at p. 23. AIU has actually produced these materials already, except in two instances: (1) to the extent they relate to the Forty-Eight Insulations Litigation; (2) to the extent they relate to AIU's other reinsurers. Aldort Dec., Exs. 1, 7 and 9. As to the first exception, AIU has already set forth its grounds for withholding production of the Forty-Eight Insulations materials. See supra at pp.17-21. As to the second exception, TIG has offered no reason why it requires the production of materials relating to AIU's relationships with its other reinsurers. See TIG Br. at p. 23. These documents are obviously sensitive, especially to the extent AIU becomes involved in potential disputes with other reinsurers relating to these claims. Perhaps arising out of a similar concern, TIG itself has redacted hundreds of documents produced to AIU on the grounds that these documents involve information relating to TIG's other insurers or reinsurers. See, e.g., Abrams Dec. Ex. J. Given TIG's failure to indicate why these documents are relevant to its claims as well as TIG's own attempts to withhold sensitive information relating to other (re)insurers, it appears that TIG's only motivation for seeking these materials here is for harassment purposes.

## IV.    AIU HAS PERFORMED A DILIGENT
##           ELECTRONIC SEARCH OF ITS RECORDS

TIG's assertion that AIU has "refus[ed] to perform a diligent search for electronic documents," TIG Br. at 23, is inaccurate. A party's burden pursuant to FRCP 26, including electronic discovery, is to "conduct a diligent search" for the document requested. Treppel v. Biovail Corp., 233 F.R.D. 363, 374 (S.D.N.Y. 2006). A diligent search involves "developing a reasonably comprehensive search strategy." Id. Such a reasonably comprehensive search strategy could include "identifying key employees and reviewing any of their files that are likely to be relevant to the claims in the litigation." Id. By identifying the key persons that are likely to have information material to the litigation, and conducting and/or supervising searches for electronic material in those persons files, AIU had met is burden for discovery under the Rules.

As described above, AIU and its counsel have conducted and/or supervised numerous document inspections and electronic searches for responsive materials, and continue to do so. Abrams Dec., ¶ 4. More specifically, AIU has electronically searched and continues to electronically search the files of all witnesses that it designated in its Interrogatory Responses as being the material witnesses with knowledge of the issues in this litigation, including the files of: (1) Steve Parness; (2) Paul Colon; (3) Richard Kafaf; (4) William Mezick; (5) Judy Marotti; (6) Werner Ahrenstedt; (7) Jeffrey Millstone; and (8) Diane Proimos. Id. at ¶ 5. In addition, AIU has undertaken the effort of conducting electronic searches of files maintained by AIU's coverage counsel in connection with the Foster Wheeler Coverage Litigation, and producing non-privileged documents located. Id.

Above and beyond the persons cited above, TIG demands that AIU perform electronic search for another seven individuals on the grounds that TIG has purportedly "identified each of these individuals through their authorship or receipt of key documents." TIG Br. at p. 24. TIG

22

fails, however, to describe the alleged "key" documents referencing these individuals or why conducting electronic searches for these individuals would result in information that outweighs the significant burden such discovery would entail.  Moreover, it is obvious that at least several of the persons on TIG's list are simply names cited in Mr. Pascale's notes from the July 2007 audit, some concerning documents over twenty years old.. <u>See</u> Pascale Dec, Ex. B (TIG 15920 ("4/26/88 letter . . . Peter Kuchar")); <u>id.</u> (TIG 15921 ("12/26/89 letter from Neil McHugh"); <u>id.</u> (TIG·15927 (7/10/92 ("letter to . . . Polly James")); <u>id.</u> (TIG 15930 ("7/9/96 letter from Patrick Smith")).  TIG fails to explain why AIU should conduct electronic searches for names referenced in documents authored before the popularization of e-mail.

Under the Rules, a party is "no more entitled to access to a defendant's electronic information storage systems than to defendant's warehouses storing paper documents." <u>The Scotts Company, LLC v. Liberty Mutual Ins.</u>, 2007 U.S. Dist. LEXIS 43005, at *5 (E.D. Ohio June 12, 2007).  Notwithstanding TIG's assertions, AIU has conducted a diligent search for electronic materials and it does not have an obligation to conduct electronic searches for every individual identified by TIG whose name appears in the voluminous discovery materials produced by AIU.

## **CONCLUSION**

For all of the foregoing reasons, this Court should deny TIG Insurance Company's

motion to compel in its entirety.


Dated: April 30, 2008
      New York, New York


                     WOLLMUTH MAHER & DEUTSCH LLP


                     By: _____
                            William A. Maher (WM-9470)
                            Marc L. Abrams (MA-6600)


                     500 Fifth Avenue
                     New York, New York  10110
                     (212) 382-3300


                     *Attorneys for Plaintiff AIU Insurance Company*