# Exhibit A

William A. Maher (WM-9470)
Marc L. Abrams (MA-6600)
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
(212) 382-3300

Attorneys for Plaintiff AIU Insurance Company



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

AIU INSURANCE COMPANY,

              Plaintiff,

    -against-

TIG INSURANCE COMPANY,

              Defendant.

---------------------------------------------------------x

**JUDGE STEIN**

**ECF DOCUMENT**

Civil Action No. **07 CIV 7052**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff AIU Insurance Company ("AIU"), by and through its undersigned

attorneys, Wollmuth Maher & Deutsch LLP, for its Complaint against defendant TIG

Insurance Company ("TIG") alleges, upon knowledge as to itself and its own acts and

upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This action seeks damages and other relief in connection with TIG's

failure to pay amounts due in accordance with certain facultative reinsurance agreements

entered between AIU and International Insurance Company ("IIC"); in or around 2003,

IIC merged into TIG. Under these reinsurance agreements, IIC agreed to indemnify AIU

for payments made by AIU pursuant to certain underlying umbrella insurance policies that AIU issued to its insured, Foster Wheeler Corporation, and its insured's affiliates (collectively, "Foster Wheeler").

2.    Although AIU paid significant reinsurance premiums to IIC in return for this reinsurance protection, and despite the fact that the reinsurance agreements give rise to legally binding obligations, TIG, as the successor to IIC, has wrongfully refused to pay what is due and owing under these agreements. Accordingly, AIU brings this action for breach of contract and declaratory relief in order to recover the damages and other relief to which it is entitled as a result of TIG's conduct.

## THE PARTIES

3.    Plaintiff AIU is an insurance company that is organized under the laws of the State of New York and maintains its principal place of business in New York.

4.    Defendant TIG is an insurance company that is organized under the laws of the State of California and maintains its principal place of business in Texas.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because AIU and TIG are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.    This Court has personal jurisdiction over TIG because: (i) the operative reinsurance agreements were issued in New York; (ii) these reinsurance agreements were issued on the paper of IIC's corporate parent, Crum & Forster Insurance Companies, which also was located in New York; (iii) the reinsurance agreements were subsequently distributed to AIU in New York; (iv) TIG has transacted and continues to transact

2

substantial business in New York; and (v) TIG is an insurance company licensed by the New York State Department of Insurance.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

## BACKGROUND

8.    Reinsurance is a type of insurance in which an insurer transfers to a reinsurer some or all of the risk that the insurer has assumed under one or more insurance policies. The reinsurer is paid a premium in accordance with the terms of the reinsurance agreement. The original insurer is known as the "cedent" or "ceding insurer" and it is said to "cede" risk, and premium, to the reinsurer. In this case, AIU, as cedent, transferred certain risks discussed below to IIC, as reinsurer. When IIC subsequently merged into TIG, these risks were assumed by TIG.

9.    The reinsurance that IIC provided to AIU is referred to as "facultative reinsurance," which is a type of reinsurance coverage that applies to a single policy or risk and is negotiated on an individual basis.

### The Relevant Agreements

10.    Between 1978 and 1982, as well as in certain other years not relevant to this dispute, Liberty Mutual Insurance Company and its affiliates ("Liberty Mutual") issued primary general liability insurance policies to Foster Wheeler (the "Primary Policies") in the amount of $1 million per occurrence and in the aggregate.

11.    Sitting directly above certain of the Primary Policies were four Umbrella Liability Policies that AIU issued to Foster Wheeler bearing policy numbers 75-100789,

3

75-101149, 75-101988, and 75-102083 (collectively, the "Umbrella Policies"). The Umbrella Policies were effective from October 1, 1978 until October 1, 1982 and contained limits of $20 million per occurrence and in the aggregate for claims in excess of Liberty Mutual's $1 million limits under the Primary Policies.

12.     In order to reinsure its exposure under the Umbrella Policies, AIU entered into four facultative reinsurance agreements with IIC covering the same time periods as the Umbrella Policies: i.e., from October 1, 1978 until October 1, 1982. These reinsurance agreements included: (i) certificate numbers CFR-0062, CFR-0063, and CFR-0064, covering the period from October 1, 1978 until October 1, 1979; (ii) certificate numbers CFR-0071, CFR-0072, and CFR-0073, covering the period from October 1, 1979 until October 1, 1980; (iii) certificate numbers CFR-0085, CFR-0086, and CFR-0087, covering the period from October 1, 1980 until October 1, 1981; and (iv) an additional certificate covering the period from October 1, 1981 until October 1, 1982 (collectively, the "Reinsurance Agreements").

13.     Under the Reinsurance Agreements, IIC agreed to indemnify AIU for a portion of losses and loss expenses that AIU incurred under the Umbrella Policies.

14.     More specifically, in connection with Umbrella Policy 75-100789, IIC agreed inter alia, to pay with respect to "each occurrence," a 60 percent share of AIU's first $5 million of exposure, a 31.28 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; in connection with Umbrella Policy 75-101149, IIC agreed inter alia, to pay with respect to "each occurrence," a 70 percent share of AIU's first $5 million of exposure, a 25.78 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10

4

million of exposure; in connection with Umbrella Policy 75-101988, IIC agreed, <u>inter</u> <u>alia</u>, to pay with respect to "each occurrence," an 80 percent share of AIU first $5 million of exposure, a 35 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; and with respect to Umbrella Policy 75-102083, IIC agreed, <u>inter alia</u>, to pay with respect to "each occurrence" a 25 percent share of AIU's exposure of $10 million in excess of $10 million.

15.    The Reinsurance Agreements provide that "[a]ll claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, with respect to business accepted on an excess of loss basis and in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability with respect to business accepted on a pro rata basis, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award."

16.    The Reinsurance Agreements also provide that "[p]ayment of its proportion of loss and expense paid by the Company will be made by the Reinsurer to the Company promptly following receipt of proof of loss."

17.    In exchange for its agreement to reinsure AIU in accordance with the terms of the Reinsurance Agreements, IIC accepted substantial premium payments from AIU.

### The Underlying Claims

18.    Foster Wheeler was a manufacturer and installer of boilers and other steam generating and heat exchange equipment for various utilities and other industries. Since the late 1970s, hundreds of thousands of asbestos claims have been asserted against Foster Wheeler.

19.    Foster Wheeler was engaged in coverage litigation with Liberty Mutual (and various of its other excess and umbrella insurers, including AIU) as to the coverage obligations under the Primary Policies (as well as the coverage obligations under various other primary, excess and umbrella policies) relating to asbestos claims asserted against it.  In or around June 2003, Foster Wheeler and Liberty Mutual ultimately settled their respective claims against one another, thereby exhausting coverage under the Primary Policies.  Foster Wheeler then sought insurance payments from certain excess and umbrella insurers, including AIU, in the action entitled Foster Wheeler LLC v. Affiliated FM Ins. Co., et al, Index No. 60777/01 (Supreme Court, New York County) (the "Coverage Action").

20.    After negotiations between Foster Wheeler, AIU, and certain of AIU's corporate affiliates, AIU and certain of its corporate affiliates reached a settlement with Foster Wheeler and entered into a confidential settlement agreement dated as of June 30, 2006 (the "Settlement Agreement").  Thereafter, AIU and certain of its corporate affiliates were dismissed from the Coverage Action.

21.    In accordance with the terms of the Settlement Agreement, AIU has made substantial payments to Foster Wheeler under the Umbrella Policies.

22.    AIU has provided TIG with information related to the coverage claims asserted by Foster Wheeler and the Settlement Agreement.

### The Reinsurance Billings

23.    On or around March 26, 2007, AIU submitted a reinsurance billing and proofs of loss to RiverStone Reinsurance Services LLC ("RiverStone"), the entity that administers reinsurance claims on behalf of TIG.

24.    AIU has subsequently submitted additional billings and proofs of loss to RiverStone, including correspondence dated June 22, 2007, which indicated that as of that date, TIG owed AIU approximately $12,300,454 in reinsurance billings submitted under the Reinsurance Agreements in connection with payments AIU has made under the Settlement Agreement.

25.    Despite AIU's requests for payment, and the fact that AIU has fulfilled all of its obligations under the Reinsurance Agreements, TIG has failed to fulfill its obligation under the Reinsurance Agreements to pay the billed amounts which are due and owing under the terms of the Reinsurance Agreements.

### COUNT I
### (Breach of Contract)

26.    AIU repeats and realleges the allegations set forth in paragraphs 1 through 25 as though fully set forth herein.

27.    Under the Reinsurance Agreements, TIG, as the successor to IIC, has an obligation and a duty to reimburse AIU for its share of losses and loss expenses in connection with the Umbrella Policies issued to Foster Wheeler.

7

28.     By failing to pay its share of AIU's losses and loss expenses, TIG has breached its obligation and duty to reinsure and indemnify AIU, as required by the Reinsurance Agreements.

29.     As a result of TIG's breach of the Reinsurance Agreements, AIU has suffered damages in the amount of at least $12,300,454 plus interest.

### COUNT II
### (Declaratory Relief)

30.     AIU repeats and realleges the allegations set forth in paragraphs 1 through 29 as though fully set forth herein.

31.     TIG has failed to acknowledge its liability under the Reinsurance Agreements for the losses and loss expenses submitted to it by AIU in connection with the Settlement Agreement.

32.     There is an actual controversy between AIU and TIG as to their respective rights and liabilities under the Reinsurance Agreements.

33.     AIU is entitled to a declaration, in accordance with 28 U.S.C. § 2201, that the Reinsurance Agreements are in full force and effect and that TIG is obligated to make timely payments to AIU in such amounts as have already become due and may become due in the future insofar as claims are ceded under the Reinsurance Agreements in connection with the Settlement Agreement.

WHEREFORE, Plaintiff AIU respectfully requests that this Court enter judgment in its favor, and against TIG, as follows:

A.     A judgment that TIG has breached the Reinsurance Agreements;

B.     Compensatory damages in the total amount of $12,300,454, plus interest;

C.   A declaration that TIG must reimburse AIU for its share of current and

future losses and loss expenses under the Reinsurance Agreements in

connection with payments under the Settlement Agreement;

D.   Reasonable costs and fees incurred in bringing this action; and

E.   Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 7, 2007
       New York, New York

WOLLMUTH MAHER & DEUTSCH LLP

By: _____
      William A. Maher (WM-9470)
      Marc L. Abrams (MA-6600)

500 Fifth Avenue
New York, NY 10110
(212) 382-3300

Attorneys for Plaintiff AIU Insurance Company

# Exhibit
# B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x

AIU INSURANCE COMPANY,          :

       Plaintiff,           :

   -against-            :      Civil Action No. 07 CIV 7052

TIG INSURANCE COMPANY,        :

      Defendant.         :

-----------------------------------------------------x

## TIG INSURANCE COMPANY'S FIRST SET OF INTERROGATORIES

Defendant TIG Insurance Company, ("TIG"), as successor-in-interest to International

Insurance Company, and pursuant to Rule 33 of the Federal Rules of Civil Procedure and Rule

33.3(c) of the Local Civil Rules for the United States District Court for the Southern District of

New York (the "Local Civil Rules"), hereby propounds the following interrogatories to the

Plaintiff AIU Insurance Company, and requests that each interrogatory be answered in writing

and under oath within thirty (30) days of service.

### DEFINITIONS AND INSTRUCTIONS

1. "Plaintiff" means AIU Insurance Company, its predecessors, successors, and assigns, and

    all other persons acting or purporting to act on its behalf, individually or collectively,

    including but not limited to any officers, directors, employees, partners, corporate parent,

    subsidiaries or affiliates of AIU Insurance Company, such as AIG Insurance Company.

- 1 -

2.  "Reinsurance Contracts" means those contracts defined in the Paragraph 12 of the Complaint as the "Reinsurance Agreements," specifically certificate numbers CFR-0062, CFR-0063, and CFR-0064, covering the period from October 1, 1978 until October 1, 1979; certificate numbers CFR-0071, CFR-0072, and CFR-0073, covering the period from October 1, 1979 until October 1, 1980; certificate numbers CFR-0085, CFR-0086, and CFR-0087, covering the period from October 1, 1980 until October 1, 1981; and "an additional certificate covering the period from October 1, 1981 until October 1, 1982," without waiver of TIG's denial in Paragraph 12 of the Answer with respect to the alleged "additional certificate covering the period from October 1, 1981 until October 1, 1982."

3.  "Foster Wheeler" means Foster Wheeler Corporation, and any parent, subsidiary, affiliate, director, officer or employee.

4.  "Plaintiff's Foster Wheeler Policies" means those policies defined in the Paragraph 11 of the Complaint as the "Umbrella Policies," specifically policy numbers 75-100789, 75-101149, 75-101988, and 75-102083.

5.  "Complaint" means the complaint Plaintiff filed in the above-captioned action on August 7, 2007.

6.  "Answer" shall refer to the answer and affirmative defenses filed by TIG in this action on or about September 17, 2007.

7.  "Settlement" means the June 30, 2006 settlement between Foster Wheeler and Plaintiff.

8.  "Coverage Attorney" means any attorney or law firm retained by Plaintiff to provide any legal services or legal advice concerning any obligations Plaintiff had or was alleged to have to Foster Wheeler.

9. "Foster Wheeler's Broker" means any entity or agent that provided insurance brokerage services to Foster Wheeler with respect to insurance coverage provided by Plaintiff to Foster Wheeler.

10. "Plaintiff's Broker" means any entity or agent that provided reinsurance brokerage services to Plaintiff with respect to insurance coverage provided by Plaintiff to Foster Wheeler.

11. When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

12. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise.

13. "Person" means any natural person or any business, legal or governmental entity of association.

14. "Concerning" means relating to, referring to, describing, evidencing or constituting.

15. The terms "all" and "each" shall be construed as all and each.

16. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

17. The use of the singular form of any word includes the plural and vice versa.

- 3 -

18. The particularity or generality of any one request shall not limit your response to any other request.

19. In answering these interrogatories, furnish all information that is known or available to you regardless of whether this information is possessed directly by you or your agent, employees, representatives or other persons acting or appearing to act on your behalf and, unless privileged, by your attorneys.

20. When the information requested is not within Plaintiff's personal knowledge, but is within the knowledge of Plaintiff's attorney, agent, servant, or employee, Plaintiff's shall answer the information fully but state that such answer is not within Plaintiff's personal knowledge. The purpose of these interrogatories is to discover all witnesses known to Plaintiff, or its agents, servants, employees, and/or attorneys. These interrogatories should be answered in that spirit.

21. Each interrogatory listed below shall be continuing in nature and shall be modified or supplemented to include any additional information, knowledge or data that is later discovered by you or your agents. If you do not have all the information that you need to make a complete response to an interrogatory, provide all of the information that you do have, state that your information is incomplete, identify the information you would need to make a complete response, and provide a supplemental response when you obtain more information.

22. All objections or answers to interrogatories that fail or refuse to fully respond to any interrogatory on the ground of any claim of privilege of any kind whatsoever shall comply fully with Local Rule 26.2:

- 4 -

A.    Each interrogatory, including subparts, must be answered separately, fully and completely. If you do not respond to part of an interrogatory as objectionable, respond to the remaining parts of the interrogatory to which you do not object.

B.    With respect to each interrogatory, identify all documents that were used or referred to in any manner in drafting or preparing the answer and identify all persons who participated or were consulted in any regard in the drafting or preparation of the answer.

C.    Where information is not produced because of a claim of privilege, the information required by Rule 26.2(a)(2) of the Local Civil Rules shall be provided.

23. The definitions set forth in Rule 26.3(c) of the Local Civil Rules and the rules of construction set forth in Rule 26.3(d) of the Local Civil Rules shall apply to these interrogatories.

<u>INTERROGATORIES</u>

1.    Identify the person or persons, on behalf of Plaintiff, most knowledgeable with respect to the existence and maintenance of each category of documents requested in TIG Insurance Company's First Set of Document Requests.

**<u>RESPONSE:</u>**

2.    Identify each and every person who provided information used or considered in responding to these interrogatories and to TIG's First Set of Document Requests.

**<u>RESPONSE:</u>**

3.    Identify each and every person with knowledge of information concerning the negotiation, purchase or issuance of the Reinsurance Contracts, including but not limited to any

- 5 -

such persons employed by or associated with Plaintiff, Plaintiff's Broker, Johnson and Higgins of

New York, Crum & Forster Insurance Companies, International Insurance Company or Willis,

Faber & Dumas, Ltd.

**RESPONSE:**

4.      Identify each and every person having any knowledge of or participation in any

negotiations associated with Plaintiff's issuance of policies to Foster Wheeler, including but not

limited to any persons employed by or associated with Foster Wheeler, Foster Wheeler's Broker,

Plaintiff, Johnson and Higgins of New York, Crum & Forster Insurance Companies, International

Insurance Company or Willis, Faber & Dumas, Ltd.

**RESPONSE:**

5.      Identify each and every person, including but not limited to claim handlers, their

supervisors and in-house legal counsel, who, on behalf of Plaintiff, has at any time participated in

or been responsible for handling, adjusting, processing, analyzing, auditing, working on or

responding to the request by Foster Wheeler for coverage for asbestos related claims pursuant to

Plaintiff's Foster Wheeler Policies.

**RESPONSE:**

6.    Identify each and every person who on behalf of Plaintiff served as Coverage Counsel with respect to asbestos related claims arising or alleged to arise under Plaintiff's Foster Wheeler Policies.

**RESPONSE:**

7.    Identify each and every person who participated in, considered, approved or authorized the Settlement.

**RESPONSE:**

8.    Identify each and every person who participated in, considered, approved or authorized Plaintiff's allocation of the Settlement.

**RESPONSE:**

9.    Identify each and every person who, on behalf of Plaintiff, was responsible for notifying TIG of any claims or losses subject to the Reinsurance Contracts from 1978 to the present.

**RESPONSE:**

10.    Identify each and every person who, on behalf of Plaintiff, was responsible for notifying Plaintiff's facultative reinsurers of claims or losses from 1978 to the present.

**RESPONSE:**

11.　　Identify each and every person who, on behalf of Plaintiff, was responsible for notifying Plaintiff's treaty reinsurers of claims or losses from 1978 to the present.

**RESPONSE:**

12.　　Identify each and every person who, on behalf of Plaintiff, was responsible for billing Defendant for the amounts alleged to be due as set forth in the Complaint.

**RESPONSE:**

13.　　Identify each and every person involved in the preparation, drafting, editing, consideration, approval or issuance of Plaintiff's August 16, 2006 Report to Reinsurers.

**RESPONSE:**

14.　　Identify each and every person involved in the preparation, drafting, editing, consideration, approval or issuance of Plaintiff's January 25, 2007 Notice of Claim to Defendant.

**RESPONSE:**

15.　　Identify each and every person involved in the preparation, drafting, editing, consideration, approval or issuance of Plaintiff's December 23, 2003 Initial Serious Accident Report or Plaintiff's July 14, 2006 Supplemental Serious Accident Report.

**RESPONSE:**

16.    Identify each and every person involved in the estimating, setting, posting, evaluating, revising or supplementing of Plaintiff's reserves with respect to the Foster Wheeler asbestos losses preceding or extinguished by the Settlement.

**RESPONSE:**

17.    Identify each and every person who, on behalf of Plaintiff, received any notice of asbestos losses from Foster Wheeler, regardless of whether the notice was or could be described as a precautionary, preliminary, initial or supplemental.

**RESPONSE:**

18.    Identify each and every person who Plaintiff may call as a fact or expert witness at trial.

**RESPONSE:**

Dated: October 25, 2007

Respectfully submitted,

TIG Insurance Company

By: _____
       Sean Thomas Keely (SK-8593)

Sean Thomas Keely (SK-8593)
Lovells LLP
590 Madison Avenue
New York, New York   10022
(212) 909-0600

- 9 -

James I. Rubin (Admitted *pro hac vice*)
Catherine E. Isely (Admitted *pro hac vice*)
Julie Rodriguez Aldort (Admitted *pro hac vice*)
Amy Pines (Admitted *pro hac vice*)
Butler Rubin Saltarelli & Boyd LLP
70 West Madison, Ste. 1800
Chicago, Illinois 60602
(312) 444-9660

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on October 25, 2007, he caused the foregoing *TIG Insurance Company's First Set of Interrogatories* to be served on the following attorneys via messenger:

William A. Maher, Esq.
Marc L. Abrams, Esq.
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York   10110

                                            _____
                                            Sean Thomas Keely (SK-8593)

W0057086v5

- 11 -

# Exhibit
# C

William A. Maher (WM-9470)
Marc L. Abrams (MA-6600)
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
(212) 382-3300

Attorneys for Plaintiff AIU Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
AIU INSURANCE COMPANY,                                :
                                                      :
                          Plaintiff,                  :
                                                      :    Case No. 07-cv-7052 (SHS)
          -against-                                   :
                                                      :
TIG INSURANCE COMPANY,                                :
                                                      :
                          Defendant.                  :
                                                      :
------------------------------------------------------x

## AIU INSURANCE COMPANY'S RESPONSES AND OBJECTIONS
## TO TIG INSURANCE COMPANY'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure (the "Rules"), AIU

Insurance Company ("AIU"), by and through its undersigned attorneys, Wollmuth Maher &

Deutsch LLP, hereby objects and responds to the First Set of Interrogatories, dated October 25,

2007 (the "Interrogatories") propounded by TIG Insurance Company ("TIG"), as follows:

## GENERAL OBJECTIONS

1.      AIU's specific objections to each Interrogatory are in addition to the

general limitations and objections set forth in this section. These limitations and objections

form a part of the response to each Interrogatory and are set forth here to avoid the duplication

and repetition of restating them for each response. The absence of a reference to a specific

General Objection should not be construed as a waiver of any General Objection with respect to each Interrogatory.

2.     AIU objects to the definitions and instructions contained in the Interrogatories, and to the Interrogatories, to the extent that they are vague, ambiguous, overbroad and unduly burdensome.

3.     In particular, AIU objects to the definition of "Plaintiff" contained in the Interrogatories. Apart from the fact that there is no such entity as "AIG Insurance Company," several other corporate affiliates of AIU were involved in coverage litigation with Foster Wheeler in connection with insurance policies purportedly issued by these affiliates to Foster Wheeler. Any information relating to obligations as between Foster Wheeler and AIU's corporate affiliates is irrelevant to the subject matter of this litigation, and, accordingly, such information will not be provided. Moreover, AIU objects to any other definitions contained in the Interrogatories that uses the term "Plaintiff" (for instance, "Plaintiff's Broker", "Plaintiff's Foster Wheeler Policies") on the same grounds.

4.     In particular, AIU also objects to the definition of "Coverage Attorney" contained in the Interrogatories because it would necessarily apply to all potential representations in connection with the Foster Wheeler Policies, and, therefore, would include representations unrelated to the claims that form the subject matter of this proceeding. Accordingly, AIU will interpret the term "Coverage Counsel" to mean any law firms representing AIU in connection with the Foster Wheeler Coverage Litigation, as this term is defined in AIU's First Request for the Production of Documents to Defendant TIG Insurance Company.

2

5.      AIU objects to the Interrogatories to the extent that they purport to impose obligations on AIU beyond what is required by the Rules.

6.      AIU objects to the Interrogatories to the extent that they seek, or can be construed to seek, information that is privileged under law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or immunity. Such information will not be provided. In the event that any such information is provided, such disclosure or production is inadvertent and does not constitute a waiver of any such privilege or immunity.

7.      AIU objects to the Interrogatories to the extent that they seek information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that they seek information concerning subjects other than those relevant to the claims and defenses of any party.

8.      AIU objects to the Interrogatories to the extent that they call for the production of confidential information, including sensitive commercial or proprietary information or information protected from disclosure by law, court order, or any agreement with respect to confidentiality or nondisclosure.

9.      AIU objects to the Interrogatories to the extent that they seek information concerning any act or omission by any person other than AIU.

10.      AIU objects to the Interrogatories to the extent that they seek information that is in the possession, custody or control of TIG or third parties. In particular, and without limiting the foregoing, AIU objects to the Interrogatories to the extent that they seek information in the possession, custody or control of TIG. In all such instances, the discovery is obtainable from another source – TIG itself – that is more convenient, less burdensome and less expensive.

11.    AIU objects to the Interrogatories to the extent that the information sought by them can be obtained through another discovery device in a manner that is more convenient, less burdensome and/or less expensive.

12.    AIU objects to the Interrogatories because they exceed the permissible limit on Interrogatories set by the Rules insofar as under Rule 33(a), no more than 25 interrogatories may be served, including all discrete subparts.

13.    Insofar as AIU has responded to an Interrogatory to which it has objected, AIU reserves the right to maintain such objections and such objection is not waived in any respect by the provision of a response.

14.    To the extent that AIU responds to any Interrogatory, it does so without conceding the relevance or materiality of such response, and without prejudice to its right to object to further discovery on such subject matter or to object to the admissibility of any such response at the time of hearing or trial.

15.    These responses and objections are based upon AIU's present knowledge, information and belief.  The responses and objections are subject to amendment as AIU acquires additional information and completes its review and analysis.  AIU reserves the right to rely upon any facts, documents or other evidence which may hereafter develop or come to its attention.

16.    The objections asserted by AIU are asserted in good faith, based upon counsel's evaluation of AIU's discovery obligations in this matter.  Nevertheless, AIU offers and stands ready to confer with TIG's counsel in an effort to resolve or narrow to the greatest extent possible any dispute between the parties concerning AIU's responses and objections.

4

## SPECIFIC RESPONSES AND OBJECTIONS
## TO THE INDIVIDUAL INTERROGATORIES

AIU incorporates each of the foregoing General Objections in its responses and objections to each individual Interrogatory. Without waiving the foregoing General Objections, and subject thereto, AIU responds to each individual Interrogatory as follows:

### INTERROGATORY NO. 1

**Identify the person or persons, on behalf of Plaintiff, most knowledgeable with respect to the existence and maintenance of each category of documents requested in TIG Insurance Company's First Set of Document Requests.**

### OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 1

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Interrogatory No. 1 because it requests the designation of witnesses for each separate document request, thereby constituting 28 separate interrogatories, which exceeds the permissible limit on Interrogatories set by the Rules. Under Rule 33(a), no more than 25 interrogatories may be served, including all discrete subparts. AIU further objects to Interrogatory No. 1 because many of the requests in TIG's First Set of Document Requests are vague, ambiguous, overbroad, unduly burdensome and seek documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, as set forth in AIU's Responses and Objections to TIG Insurance Company's First Set of Document Requests, and AIU cannot designate persons knowledgeable with respect to these requests. Subject to and without waiver of the foregoing objections, including the General Objections, AIU responds that at the present time the following witnesses have significant involvement with respect to the maintenance of those documents to be produced in conjunction with AIU's Objections and Responses to TIG's First Set of Document Requests:  Richard E. Kafaf, Werner Ahrenstedt,

Dianne Proimos, Judy Marotti and Steven Parness. AIU reserves its right to supplement this response, as set forth in its General Objections.

## INTERROGATORY NO. 2

**Identify each and every person who provided information used or considered in responding to these interrogatories and to TIG's First Set of Document Requests.**

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 2

AIU objects to Interrogatory No. 2 because it seeks information that is privileged under law, whether under the attorney-client privilege, the work-product doctrine, or other privilege or immunity.

## INTERROGATORY NO. 3

**Identify each and every person with knowledge of information concerning the negotiation, purchase or issuance of the Reinsurance Contracts, including but not limited to any such persons employed by or associated with Plaintiff, Plaintiff's Broker, Johnson and Higgins of New York, Crum & Forster Insurance Companies, International Insurance Company or Willis Faber & Dumas, Ltd.**

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 3

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Interrogatory No. 3 to the extent it assumes any of the above entities were agents of AIU. AIU further objects to Interrogatory No. 3 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, including the General Objections, AIU will produce business records responsive to this request in accordance with Rule 33(d), Local Civil Rule 33.1, and the discovery schedule agreed to by the parties.

INTERROGATORY NO. 4

Identify each and every person having any knowledge of or participation in any negotiations associated with Plaintiff's issuance of policies to Foster Wheeler, including but not limited to any person employed by or associated with Foster Wheeler, Foster Wheeler's broker, Plaintiff, Johnson and Higgins of New York, Crum & Forster Insurance Companies, International Insurance Company or Willis, Faber & Dumas, Ltd.

OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 4

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Interrogatory No. 4 to the extent it assumes any of the above entities were agents of AIU. AIU further objects to Interrogatory No. 4 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 5

Identify each and every person, including but not limited to claim handlers, their supervisors and in-house legal counsel, who, on behalf of Plaintiff, has at any time participated in or been responsible for handling, adjusting, processing, analyzing, auditing, working on or responding to the request by Foster Wheeler for coverage for asbestos related claims pursuant to Plaintiff's Foster Wheeler Policies.

OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 5

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Interrogatory No. 5 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence especially to the extent that it seeks information concerning the Foster Wheeler Policies generally, without regard to any particular claim or loss. Subject to and without waiver of the foregoing objections, including the General Objections, AIU responds that based on its present understanding, the following persons have had involvement in handling the Foster Wheeler Coverage Litigation, as that term is defined in AIU's First Request for the

Production of Documents: Steven Parness, Judy Marotti, Dianne Proimos and Werner Ahrenstedt. AIU reserves its right to supplement this response, as set forth in its General Objections.

## INTERROGATORY NO. 6

**Identify each and every person who on behalf of Plaintiff served as Coverage Counsel with respect to asbestos related claims arising or alleged to arise under Plaintiff's Foster Wheeler Policies.**

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 6

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3 as well as the term "Coverage Counsel" for the reasons set forth in General Objection No. 4. AIU further objects to Interrogatory No. 6 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence especially to the extent that it seeks information concerning the Foster Wheeler Policies generally, without regard to any particular claim or loss. Subject to and without waiver of the foregoing objections, including the General Objections, AIU responds that it and certain of its affiliates retained the law firm of Cozen O'Connor in connection with the Foster Wheeler Coverage Litigation, as that term is defined in AIU's First Request for the Production of Documents. Although several Cozen O'Connor attorneys were, at various times, staffed on this matter, the lead attorneys were James B. Dolan and Thomas Wilkinson, Jr.

## INTERROGATORY NO. 7

**Identify each and every person who participated in, considered, approved or authorized the Settlement.**

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 7

AIU objects to Interrogatory No. 7 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence. AIU further objects to Interrogatory No. 7 on the grounds that

the terms "participated in" and "considered" are vague and ambiguous and could be read to

require the designation of persons who are irrelevant to the subject matter of this proceeding.

AIU further objects to Interrogatory No. 7 on the grounds that it seeks information that is in the

possession, custody or control of third parties. Subject to and without waiver of the foregoing

objections, including the General Objections, AIU responds that based on its present

understanding, the following persons participated in the Settlement on behalf of AIU and/or

certain of its affiliates: Judy Marotti, Steven Parness and James B. Dolan. AIU reserves its right

to supplement this response, as set forth in its General Objections.

### INTERROGATORY NO. 8

**Identify each and every person who participated in, considered, approved or authorized
Plaintiff's allocation of the Settlement.**

### OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 8

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection

No. 3. AIU further objects to Interrogatory No. 8 on the grounds that it is overbroad, unduly

burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence. AIU further objects to Interrogatory No. 8 on the grounds that

the terms "participated in" and "considered" are vague and ambiguous and could be read to

require the designation of persons who are irrelevant to the subject matter of this proceeding.

Subject to and without waiver of the foregoing objections, including the General Objections,

AIU responds that based on its present understanding, the following persons participated in the

allocation of the Settlement on behalf of AIU and/or certain of its affiliates: Judy Marotti and

Steven Parness. AIU reserves its right to supplement this response, as set forth in its General

Objections.

9

### INTERROGATORY NO. 9

Identify each person and every person who, on behalf of Plaintiff, was responsible for notifying TIG of any claims or losses subject to the Reinsurance Contracts from 1978 to the present.

### OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 9

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Interrogatory No. 9 on the grounds that it is vague, overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, especially insofar as it relates to claims or losses having nothing to do with the subject matter of this proceeding. Subject to and without waiver of the foregoing objections, including the General Objections, AIU responds that based on its present understanding, the following persons had involvement with regard to notice on behalf of AIU to TIG in connection with the Foster Wheeler Coverage Litigation as that term is defined in AIU's First Request for the Production of Documents: Dianne Proimos, Judy Marotti, Steven Parness, Werner Ahrenstedt and Richard Kafaf. AIU reserves its right to supplement this response, as set forth in its General Objections.

### INTERROGATORY NO. 10

Identify each and every person who, on behalf of Plaintiff, was responsible for notifying Plaintiff's facultative reinsurers of claims and losses from 1978 to the present.

### OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 10

AIU refers to its Objections and Response to Interrogatory No. 9, above, as if fully set forth herein.

### INTERROGATORY NO. 11

Identify each and every person who, on behalf of Plaintiff, was responsible for notifying Plaintiff's treaty reinsurers of claims or losses from 1978 to the present.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 11**

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Interrogatory No. 11 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, especially insofar as it seeks information having nothing to do with the subject matter of this proceeding.

**INTERROGATORY NO. 12**

Identify each and every person who, on behalf of Plaintiff, was responsible for billing Defendant for the amounts alleged to be due as set forth in the Complaint.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 12**

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. Subject to and without waiver of the foregoing objections, including the General Objections, AIU responds that based on its present understanding, the following persons were primarily involved in billing TIG in connection with the losses described in the Complaint: Richard E. Kafaf, William Mezick, and Werner Ahrenstedt. AIU reserves its right to supplement this response, as set forth in its General Objections.

**INTERROGATORY NO. 13**

Identify each and every person involved in the preparation, drafting, editing, consideration, approval or issuance of Plaintiff's August 16, 2006 Report to Reinsurers.

11

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 13

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Interrogatory No. 13 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, including the General Objections, AIU responds that based on its present understanding, the following persons had involvement with the preparation and drafting of the correspondence referenced in Interrogatory No. 13: Judy Marotti and Steven Parness. AIU reserves its right to supplement this response, as set forth in its General Objections.

## INTERROGATORY NO. 14

**Identify each and every person involved in the preparation, drafting, editing, consideration, approval or issuance of Plaintiff's January 25, 2007 Notice of Claim to Defendant.**

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 14

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Interrogatory No. 14 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, including the General Objections, AIU responds that based on its present understanding, the following person had involvement with the preparation and drafting of a correspondence dated January 25, 2007 issued to Michael Staley at Riverstone Insurance Company: Richard Kafaf. AIU reserves its right to supplement this response, as set forth in its General Objections.

12

**INTERROGATORY NO. 15**

**Identify each and every person involved in the preparation, drafting, editing, consideration, approval or issuance of Plaintiff's December 23, 2003 Initial Serious Accident Report or Plaintiff's July 14, 2006 Supplemental Serious Accident Report.**

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 15**

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Interrogatory No. 15 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, including the General Objections, AIU responds that based on its present understanding, the following persons had involvement with regard to the documents referenced in Interrogatory No. 15: Dianne Proimos, Werner Ahrenstedt, Judy Marotti and Steven Parness. AIU reserves its right to supplement this response, as set forth in its General Objections.

**INTERROGATORY NO. 16**

**Identify each and every person involved in the estimating, setting, posting, evaluating, revising or supplementing of Plaintiff's reserves with respect to the Foster Wheeler asbestos losses preceding or extinguished by the Settlement.**

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 16**

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection No. 3. AIU further objects to Interrogatory No. 16 on the grounds that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, especially insofar as it relates to claims, losses or reserves having nothing to do with the subject matter of this proceeding. Subject to and without waiver of the foregoing objections, including the General Objections, AIU responds that based on its present understanding, the following persons were involved in the reserving of AIU's potential

13

exposures in connection with the losses in the Foster Wheeler Coverage Litigation as that term is

defined in AIU's First Request for the Production of Documents: Dianne Proimos,

Jeffrey Millstone, Steve Parness and Judy Marotti. AIU reserves its right to supplement this

response, as set forth in its General Objections.

## INTERROGATORY NO. 17

**Identify each and every person who, on behalf of Plaintiff, received any notice of asbestos losses from Foster Wheeler, regardless of whether the notice was or could be described as a precautionary, preliminary, initial or supplemental.**

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 17

AIU objects to the term "Plaintiff" for the reasons set forth in General Objection

No. 3. AIU further objects to Interrogatory No. 17 on the grounds that it is overbroad, unduly

burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence, especially insofar as it relates to claims or losses having

nothing to do with the subject matter of this proceeding. Subject to and without waiver of the

foregoing objections, including the General Objections, AIU will produce business records

responsive to this request in accordance with Rule 33(d), Local Civil Rule 33.1, and the

discovery schedule agreed to by the parties.

## INTERROGATORY NO. 18

**Identify each and every person who Plaintiff may call as a fact or expert witness at trial.**

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 18

AIU objects to Interrogatory No. 18 on the ground that it is premature given that

discovery has only recently commenced and AIU has not presently retained any expert witnesses

in connection with this matter. Upon the conclusion of fact and expert discovery, and in

accordance with any scheduling orders issued by the Court, AIU will reconsider this Request and

provide any disclosures mandated by the Rules or the Court's Individual Rules.

Dated: December 12, 2007
     New York, New York

                  WOLLMUTH MAHER & DEUTSCH LLP

                  William A. Maher (WM-9470)
                  Marc L. Abrams (MA-6600)

                  500 Fifth Avenue
                  New York, New York 10110
                  Tel.: (212) 382-3300

                  Attorneys for Plaintiff AIU Insurance Company

TO:    Sean Thomas Keely, Esq.
       Lovells LLP
       590 Madison Avenue
       New York, New York 10022

and    James I. Rubin, Esq.
       Catherine E. Isely, Esq.
       Julie Rodriguez Aldort, Esq.
       Amy Pines, Esq.
       Butler Rubin Saltarelli & Boyd LLP
       70 West Madison, Suite 1800
       Chicago, Illinois 60602

## VERIFICATION

I affirm under penalty of perjury that I have reviewed the Responses and Objections of AIU Insurance Company to TIG Insurance Company's First Set of Interrogatories and that the facts stated therein are true and correct to the best of my knowledge, information and belief, as set forth below.

_____

Steven Parness (As to certain portions of Interrogatory Answers Numbers 1, 5, 6, 7, 8, 9; 10, 13, 15, & 16)


_____

Diane Proimos (As to certain portions of Interrogatory Answers Numbers 1, 5, 6, 9, 10, 15, & 16)


_____

Richard Kafaf (As to certain portions of Interrogatory Answers Numbers 1, 9, 10, 12, & 14)


Dated: December 12, 2007

16

<u>**VERIFICATION**</u>

I affirm under penalty of perjury that I have reviewed the Responses and Objections of AIU Insurance Company to TIG Insurance Company's First Set of Interrogatories and that the facts stated therein are true and correct to the best of my knowledge, information and belief, as set forth below.

_____

Steven Parness (As to certain portions of Interrogatory Answers Numbers 1, 5, 6, 7, 8, 9, 10, 13, 15, & 16)

_____

Dianne Proimos (As to certain portions of Interrogatory Answers Numbers 1, 5, 6, 9, 10, 15, & 16)

_____

Richard Kafaf (As to certain portions of Interrogatory Answers Numbers 1, 9, 10, 12, & 14)

Dated: December 12, 2007

16

<u>VERIFICATION</u>

I affirm under penalty of perjury that I have reviewed the Responses and

Objections of AIU Insurance Company to TIG Insurance Company's First Set of Interrogatories

and that the facts stated therein are true and correct to the best of my knowledge, information and

belief, as set forth below.

_____

Steven Parness (As to certain portions of Interrogatory Answers Numbers 1, 5, 6, 7, 8, 9, 10, 13, 15, & 16)

_____

Diane Proimos (As to certain portions of Interrogatory Answers Numbers 1, 5, 6, 9, 10, 15, & 16)

Richard Kafaf (As to certain portions of Interrogatory Answers Numbers 1, 9, 10, 12, & 14)

Dated: December 12, 2007

16