# Exhibit D

William A. Maher (WM-9470)
Marc L. Abrams (MA-6600)
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
(212) 382-3300

Attorneys for Plaintiff AIU Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

AIU INSURANCE COMPANY,

               Plaintiff,

      -against-                        Case No. 07-cv-7052 (SHS)

TIG INSURANCE COMPANY,

               Defendant.

-------------------------------------------------------------x

### AIU INSURANCE COMPANY'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO TIG INSURANCE COMPANY'S FIRST SET OF INTERROGATORIES

AIU Insurance Company ("AIU"), by and through its undersigned attorneys, Wollmuth Maher & Deutsch LLP, hereby provides the following supplemental responses and objections to the Interrogatories propounded by TIG Insurance Company ("TIG"):

### GENERAL OBJECTIONS

AIU hereby incorporates the General Objections set forth in AIU's Responses and Objections to TIG Insurance Company's First Set of Interrogatories, dated December 12, 2007.

**SPECIFIC RESPONSES AND OBJECTIONS**
**TO THE INDIVIDUAL INTERROGATORIES**

**INTERROGATORY NO. 1**

**Identify the person or persons, on behalf of Plaintiff, most knowledgeable with respect to the existence and maintenance of each category of documents requested in TIG Insurance Company's First Set of Document Requests.**

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 1**

AIU hereby incorporates its responses and objections set forth in AIU's

Responses and Objections to TIG Insurance Company's First Set of Interrogatories,

Interrogatory No. 1, and supplements its response as follows. Subject to these objections and its

General Objections, AIU states that the following persons may have knowledge with respect to

the existence and maintenance of the various categories of documents requested in TIG

Insurance Company's First Set of Document Requests:

1.  Richard E. Kafaf
    c/o AIG Domestic Claims, Inc.
    101 Hudson Street, 29th Floor
    Jersey City, New Jersey 07302

    Mr. Kafaf may have knowledge regarding the existence and maintenance
    of documents concerning AIU's billing and collection of claims submitted
    under the Reinsurance Agreements relating to Foster Wheeler.[1]

2.  Werner Ahrenstedt
    c/o American International Underwriters
    72 Wall Street, 14th Floor
    New York, New York 10005

    Mr. Ahrenstedt may have knowledge regarding the existence and
    maintenance of documents concerning AIU's handling of claims
    submitted under the Umbrella Policies and/or relating to Foster Wheeler,
    as well as AIU's billing and collection of claims submitted under the
    Reinsurance Agreements relating to Foster Wheeler.

---

[1] All capitalized terms shall have the same meaning ascribed to them in Plaintiff AIU Insurance Company's First
Request for the Production of Documents to Defendant TIG Insurance Company, dated November 12, 2007.

2

3.   <u>Dianne Proimos</u>
c/o American International Underwriters
72 Wall Street, 14th Floor
New York, New York 10005

Ms. Proimos may have knowledge regarding the existence and
maintenance of documents concerning AIU's handling of claims
submitted under the Umbrella Policies relating to Foster Wheeler.

4.   <u>Judy Marotti</u>
c/o Lynberg & Watkins
888 South Figueroa Street
Sixteenth Floor
Los Angeles, California 92868

Ms. Marotti may have knowledge regarding the existence and
maintenance of documents concerning AIU's handling of claims
submitted under the Umbrella Policies relating to Foster Wheeler.

5.   <u>Steven Parness</u>
c/o AIG Domestic Claims, Inc.
101 Hudson Street, 29th Floor
Jersey City, New Jersey 07302

Mr. Parness may have knowledge regarding the existence and
maintenance of documents concerning AIU's handling of claims
submitted under the Umbrella Policies relating to Foster Wheeler.

AIU further states that all witnesses identified herein are to be contacted

exclusively through AIU's counsel.

## INTERROGATORY NO. 2

**Identify each and every person who provided information used or considered in
responding to these interrogatories and to TIG's First Set of Document Requests.**

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 2

AIU hereby incorporates its responses and objections set forth in AIU's

Responses and Objections to TIG Insurance Company's First Set of Interrogatories,

Interrogatory No. 2, and supplements its response as follows. Subject to these objections and its

3

General Objections, AIU states that the following persons may have provided material factual information used or considered in responding to these interrogatories and/or to TIG's First Set of Document Requests:

Steven Parness
Dianne Proimos
Richard E. Kafaf
Werner Ahrenstedt
William Mezick
Jeffrey Millstone
James Dolan

## INTERROGATORY NO. 3

**Identify each and every person with knowledge of or information concerning the negotiation, purchase or issuance of the Reinsurance Contracts, including but not limited to any such persons employed by or associated with Plaintiff, Plaintiff's Broker, Johnson and Higgins of New York, Crum & Forster Insurance Companies, International Insurance Company or Willis Faber & Dumas, Ltd.**

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 3

AIU hereby incorporates its responses and objections set forth in AIU's Responses and Objections to TIG Insurance Company's First Set of Interrogatories, Interrogatory No. 3, and supplements its response as follows. Subject to these objections and its General Objections, AIU states that at the present time, it is unaware of any persons currently employed by or associated with AIU that were involved in, or have knowledge or information concerning, the negotiation, purchase or issuance of the Reinsurance Contracts. To the extent that in the course of reviewing production documents, AIU learns of such persons, it will supplement this response accordingly.

4

## INTERROGATORY NO. 4

Identify each and every person having any knowledge of or participation in any negotiations associated with Plaintiff's issuance of policies to Foster Wheeler, including but not limited to any person employed by or associated with Foster Wheeler, Foster Wheeler's broker, Plaintiff, Johnson and Higgins of New York, Crum & Forster Insurance Companies, International Insurance Company or Willis, Faber & Dumas, Ltd.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 4

AIU hereby incorporates its responses and objections set forth in AIU's

Responses and Objections to TIG Insurance Company's First Set of Interrogatories,

Interrogatory No. 4, and supplements its response as follows. Subject to these objections and its

General Objections, AIU states that at the present time, it is unaware of any persons currently

employed by or associated with AIU that have knowledge of or participated in any negotiations

associated with AIU's issuance of policies to Foster Wheeler. To the extent that in the course of

reviewing production documents, AIU learns of such persons, it will supplement this response

accordingly.

## INTERROGATORY NO. 7

Identify each and every person who participated in, considered, approved or authorized the Settlement.

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 7

AIU hereby incorporates its responses and objections set forth in AIU's

Responses and Objections to TIG Insurance Company's First Set of Interrogatories,

Interrogatory No. 7, and supplements its response as follows. Subject to these objections and its

General Objections, AIU states that Judy Marotti, Steven Parness and James Dolan participated

in the negotiation of the Settlement Agreement and that Steven Parness was authorized to

finalize and enter into the Settlement Agreement. In the course of the settlement approval

process, Mr. Parness notified other executives of the AIG Companies of the settlement, and to

the extent that Mr. Parness did so in writing, and to the extent such documents are not privileged, AIU will produce such materials. Finally, please note that as set forth in our meet and confer conference, AIU is unable to provide a response with respect to the involvement of persons in the Settlement who are unaffiliated with AIU and/or its affiliates.

## INTERROGATORY NO. 11

**Identify each and every person who, on behalf of Plaintiff, was responsible for notifying Plaintiff's treaty reinsurers of claims or losses from 1978 to the present.**

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 11

AIU hereby incorporates its responses and objections as set forth in AIU's Responses and Objections to TIG Insurance Company's First Set of Interrogatories, Interrogatory No. 11, and supplements its response as follows. Subject to these objections and its General Objections, AIU refers TIG to its response to TIG's Interrogatory No. 9. AIU reserves its right to supplement this response, as set forth in its General Objections.

## INTERROGATORY NO. 17

**Identify each and every person who, on behalf of Plaintiff, received any notice of asbestos losses from Foster Wheeler, regardless of whether the notice was or could be described as a precautionary, preliminary, initial or supplemental.**

## OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 17

AIU hereby incorporates its responses and objections as set forth in AIU's Responses and Objections to TIG Insurance Company's First Set of Interrogatories, Interrogatory No. 17, and supplements its response as follows. Subject to these objections and its General Objections, AIU states that at the present time, it is unaware of any persons employed by or associated with AIU that received notice of asbestos losses from Foster Wheeler. To the extent that in the course of reviewing production documents, AIU learns of such persons, it will supplement this response accordingly.

6

Dated: February 28, 2008
     New York, New York

WOLLMUTH MAHER & DEUTSCH LLP

William A. Maher (WM-9470)
Marc L. Abrams (MA-6600)

500 Fifth Avenue
New York, New York 10110
Tel.: (212) 382-3300

Attorneys for Plaintiff AIU Insurance Company

TO:    Sean Thomas Keely, Esq.
       Lovells LLP
       590 Madison Avenue
       New York, New York 10022

and   James I. Rubin, Esq.
       Catherine E. Isely, Esq.
       Julie Rodriguez Aldort, Esq.
       Amy Pines, Esq.
       Butler Rubin Saltarelli & Boyd LLP
       70 West Madison, Suite 1800
       Chicago, Illinois 60602

<u>VERIFICATION</u>

I affirm under penalty of perjury that I have reviewed the Supplemental

Responses and Objections of AIU Insurance Company to TIG Insurance Company's First

Set of Interrogatories and that the facts stated therein are true and correct to the best of

my knowledge, information and belief.

Steven Parness (As to certain portions of Supplemental Interrogatory Answers Numbers

1, 2, 3, 4, 7, 11, & 17)


Dianne Proimos (As to certain portions of Supplemental Interrogatory Answers Numbers

1, 2, 3, 4, 11, & 17)


Richard Kafaf (As to certain portions of Supplemental Interrogatory Answers Numbers 1,

2, 3, & 11)


Dated: February 28, 2008

<u>**VERIFICATION**</u>

I affirm under penalty of perjury that I have reviewed the Supplemental Responses and Objections of AIU Insurance Company to TIG Insurance Company's First Set of Interrogatories and that the facts stated therein are true and correct to the best of my knowledge, information and belief.

_____

Steven Parness (As to certain portions of Supplemental Interrogatory Answers Numbers 1, 2, 3, 4, 7, 11, &17)

*Dianne Proimos*

Dianne Proimos (As to certain portions of Supplemental Interrogatory Answers Numbers 1, 2, 3, 4, 11, & 17)

_____

Richard Kafaf (As to certain portions of Supplemental Interrogatory Answers Numbers 1, 2, 3, & 11)

Dated: February 28, 2008

<u>VERIFICATION</u>

I affirm under penalty of perjury that I have reviewed the Supplemental Responses and Objections of AIU Insurance Company to TIG Insurance Company's First Set of Interrogatories and that the facts stated therein are true and correct to the best of my knowledge, information and belief.

_____

Steven Parness (As to certain portions of Supplemental Interrogatory Answers Numbers 1, 2, 3, 4, 7, 11, &17)

_____

Dianne Proimos (As to certain portions of Supplemental Interrogatory Answers Numbers 1, 2, 3, 4, 11, & 17)

_____

Richard Kafaf (As to certain portions of Supplemental Interrogatory Answers Numbers 1, 2, 3, & 11)

Dated: February 28, 2008

# Exhibit E

Sean Thomas Keely (SK-8593)
LOVELLS LLP
590 Madison Avenue
New York, New York 10022
(212) 909-0600
sean.keely@lovells.com

James I. Rubin (*pro hac vice*)
Catherine E. Isely (*pro hac vice*)
Julie Rodriguez Aldort (*pro hac vice*)
BUTLER RUBIN SALTARELLI & BOYD
70 W. Madison, Suite 1800
Chicago, Illinois 60602
(312) 444-9660

Attorneys for Defendant
TIG Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

AIU INSURANCE COMPANY,

                    Plaintiff,               Case No. 07-CV-7052 (SHS)

     -against-

TIG INSURANCE COMPANY,

                    Defendant.

------------------------------------------------------------x

## FIRST AMENDED ANSWER

     Defendant TIG INSURANCE COMPANY, for its First Amended Answer states as

follows:

### Nature of the Action

     1.     This action seeks damages and other relief in connection with TIG's failure to pay amounts due in accordance with certain facultative reinsurance agreements entered between AIU and International Insurance Company ("IIC"); in or around 2003, IIC merged into TIG.  Under

these reinsurance agreements, IIC agreed to indemnify AIU for payments made by AIU pursuant to certain underlying umbrella insurance policies that AIU issued to its insured, Foster Wheeler Corporation, and its insured's affiliates (collectively, "Foster Wheeler").

ANSWER:    TIG admits that the Complaint purports to seek damages and other relief. TIG

admits that AIU and IIC entered into certain facultative reinsurance agreements, but denies that

TIG has failed to pay amounts in fact due under those facultative reinsurance agreements. TIG

admits that, in or around 2003, IIC merged into TIG. TIG admits that, pursuant to the terms and

conditions of certain facultative reinsurance agreements, IIC agreed to reinsure AIU with respect

to certain underlying umbrella insurance policies that AIU issued to its insured, Foster Wheeler

Corporation, and its insured's affiliates. TIG denies any remaining allegations of Paragraph 1 not

specifically admitted herein.

2.    Although AIU paid significant reinsurance premiums to IIC in return for this reinsurance protection, and despite the fact that the reinsurance agreements give rise to legally binding obligations, TIG, as the successor to IIC, has wrongfully refused to pay what is due and owing under these agreements. Accordingly, AIU brings this action for breach of contract and declaratory relief in order to recover the damages and other relief to which it is entitled as a result of TIG's conduct.

ANSWER:    TIG admits that AIU paid reinsurance premiums to IIC for certain facultative

reinsurance agreements and admits that the reinsurance agreements give rise to legally binding

obligations by both parties, but denies that AIU has met its legally binding obligations under the

agreements. TIG admits that TIG is the successor to IIC with respect to the facultative

reinsurance agreements, but denies that TIG has wrongfully refused to pay sums allegedly due

and owing under these agreements. TIG admits that AIU's Complaint is styled as an action for

breach of contract and declaratory relief, but denies that AIU is entitled to recover damages and

other relief as a result of TIG's conduct. TIG denies any remaining allegations of Paragraph 2

not specifically admitted herein.

2

### The Parties

3.      Plaintiff AIU is an insurance company that is organized under the laws of the State of New York and maintains its principal place of business in New York.

ANSWER:      TIG is without knowledge or information sufficient to form a belief as to the truth of Paragraph 3, and therefore denies same.

4.      Defendant TIG is an insurance company that is organized under the laws of the State of California and maintains its principal place of business in Texas.

ANSWER:      TIG admits that it is an insurance company that is organized under the laws of the State of California. TIG denies that it maintains its principal place of business in Texas. Further answering, TIG states that it maintains its principal place of business in New Hampshire.

### Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because AIU and TIG are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

ANSWER:      TIG admits that the amount in controversy exceeds $75,000, exclusive of interest and costs. TIG is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 5, and therefore denies same.

6.      This Court has personal jurisdiction over TIG because: (I) the operative reinsurance agreements were issued in New York; (ii) these reinsurance agreements were issued on the paper of IIC's corporate parent, Crum & Forster Insurance Companies, which also was located in New York; (iii) the reinsurance agreements were subsequently distributed to AIU in New York; (iv) TIG has transacted and continues to transact substantial business in New York; and (v) TIG is an insurance company licensed by the New York State Department of Insurance.

ANSWER:      TIG admits that this Court has personal jurisdiction over TIG, that TIG has transacted business in New York and that TIG is an insurance company licensed by the New York State Department of Insurance. TIG denies that TIG continues to transact business in New

3

York, and further denies that the operative reinsurance agreements were issued in New York or

that the agreements were issued "on the paper of IIC's corporate parent, Crum & Forster

Insurance Companies." TIG is without knowledge or information sufficient to form a belief as to

the truth of the allegation that "the reinsurance agreements were subsequently distributed to AIU

in New York," and therefore denies same. TIG denies any further allegations of Paragraph 6 not

specifically admitted herein.

      7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) in that a
substantial part of the events or omissions giving rise to the claims occurred in this district.

ANSWER:    TIG admits that venue is proper pursuant to 28 U.S.C. § 1391 (a) (1), but denies

that venue is proper pursuant to 28 U.S.C. § 1391 (a) (2) and further denies that a substantial part

of the events or omissions giving rise to the claims occurred in this district. TIG denies any

further allegations of Paragraph 7 not specifically admitted herein.

## Background

      8.     Reinsurance is a type of insurance in which an insurer transfers to a reinsurer
some or all of the risk that the insurer has assumed under one or more insurance policies. The
reinsurer is paid a premium in accordance with the terms of the reinsurance agreement. The
original insurer is known as the "cedent" or "ceding insurer" and it is said to "cede" risk, and
premium, to the reinsurer. In this case, AIU, as cedent, transferred certain risks discussed below
to IIC, as reinsurer. When IIC subsequently merged into TIG, these risks were assumed by TIG.

ANSWER:    TIG admits the first two sentences of Paragraph 8 and the third sentence of

Paragraph 8 except for the phrase "and is said to 'cede' risk and premium to the reinsurer." TIG

admits that IIC merged into TIG. TIG denies any further allegations of Paragraph 8 not

specifically admitted herein.

4

9.    The reinsurance that IIC provided to AIU is referred to as "facultative reinsurance," which is a type of reinsurance coverage that applies to a single policy or risk and is negotiated on an individual basis.

ANSWER:    Admitted.

### The Relevant Agreements

10.    Between 1978 and 1982, as well as in certain other years not relevant to this dispute, Liberty Mutual Insurance Company and its affiliates ("Liberty Mutual") issued primary general liability insurance policies to Foster Wheeler (the "Primary Policies") in the amount of $1 million per occurrence and in the aggregate.

ANSWER:    TIG admits that, between 1978 and 1982, Liberty Mutual Insurance Company and

its affiliates issued primary general liability insurance policies to Foster Wheeler in the amount

of $1 million per occurrence and in the aggregate where applicable. TIG is without knowledge

or information sufficient to form a belief as to the truth of the allegation as to "certain other years

not relevant to this dispute," and therefore denies same. TIG denies any further allegations of

Paragraph 10 not specifically admitted herein.

11.    Sitting directly above certain of the Primary Policies were four Umbrella Liability Policies that AIU issued to Foster Wheeler bearing policy numbers 75-100789, 75-101149, 75-101988, and 75-102083 (collectively, the "Umbrella Policies"). The Umbrella Policies were effective from October 1, 1978 until 1982 and contained limits of $20 million per occurrence and in the aggregate for claims in excess of Liberty Mutual's $1 million limits under the Primary Policies.

ANSWER:    TIG admits that sitting directly above certain of the Primary Policies were three

umbrella liability policies that AIU issued to Foster Wheeler bearing policy numbers 75-100789,

75-101149 and 75-101988 (collectively "Certain Umbrella Policies"), in effect from October 1,

1978 until October 1, 1981, with limits of $20 million per occurrence and in the aggregate where

applicable for claims in excess of Liberty Mutual's $1 million limits under the Primary Policies.

TIG is without knowledge or information sufficient to form a belief as to the truth of the

allegations as to Policy No. 75-102083, and therefore denies same. TIG denies any further allegations of Paragraph 11 not specifically admitted herein.

12.    In order to reinsure its exposure under the Umbrella Policies, AIU entered into four facultative reinsurance agreements with IIC covering the same time periods as the Umbrella Policies: i.e., from October 1, 1978 until October 1, 1982. These reinsurance agreements included: (1) certificate numbers CFR-0062, CFR-0063, and CFR-0064, covering the period from October 1, 1978 until October 1, 1979; (ii) certificate numbers CFR-0071, CFR-0072, and CFR-0073, covering the period from October 1, 1979 until October 1, 1980; (iii) certificate numbers CFR-0085, CFR-0086, and CFR-0087, covering the period from October 1, 1980 until October 1, 1981; and (iv) an additional certificate covering the period from October 1, 1981 until October 1, 1982 (collectively, the "Reinsurance Agreements").

ANSWER:    TIG is without knowledge with respect to AIU's intentions and, therefore, denies

Paragraph 12, except that TIG admits that AIU and TIG entered into certain reinsurance

agreements, including certificate numbers CFR-0062, CFR-0063, and CFR-0064, covering the

period from October 1, 1978 until October 1, 1979; (ii) certificate numbers CFR-0071, CFR-

0072, and CFR-0073, covering the period from October 1, 1979 until October 1, 1980; and (iii)

certificate numbers CFR-0085, CFR-0086, and CFR-0087, covering the period from October 1,

1980 until October 1, 1981 (collectively "Certain Reinsurance Agreements"). TIG denies that

the parties' reinsurance agreements include "an additional certificate covering the period from

October 1, 1981 until October 1, 1982." TIG denies any further allegations of Paragraph 12 not

specifically admitted herein.

13.    Under the Reinsurance Agreements, IIC agreed to indemnify AIU for a portion of losses and loss expenses that AIU incurred under the Umbrella Policies.

ANSWER:    TIG admits that, subject to the terms, conditions and exclusions of the Certain

Reinsurance Agreements and the implied terms, including the duty of utmost good faith, IIC

agreed to reinsure AIU for a portion of losses and loss expenses that AIU incurred under the

6

Certain Umbrella Policies. TIG denies any further allegations of Paragraph 13 not specifically admitted herein.

14. More specifically, in connection with Umbrella Policy 75-100789, IIC agreed inter alia, to pay with respect to "each occurrence," a 60 percent share of AIU's first $5 million of exposure, a 31.28 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; in connection with Umbrella Policy 75-101149, IIC agreed inter alia, to pay with respect to "each occurrence," a 70 percent share of AIU's first $5 million of exposure; a 25.78 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; in connection with Umbrella Policy 75-101988, IIC agreed, inter alia, to pay with respect to "each occurrence," an 80 percent share of AIU first $5 million of exposure, a 35 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; and with respect to Umbrella Policy 75-102083, IIC agreed, inter alia, to pay with respect to "each occurrence" a 25 percent share of AIU's exposure of $10 million in excess of $10 million.

ANSWER: TIG admits that, subject to the terms, conditions and exclusions of the Certain Reinsurance Agreements and the implied terms, including the duty of utmost good faith, IIC agreed to reinsure: (i) Umbrella Policy 75-100789 for $3 million part of $5 million for AIU's first $5 million of exposure, $1.5909 million part of $5 million for AIU's $5 million excess of $5 million exposure layer, and $2.5 million part of $10 million for AIU's $10 million excess of $10 million exposure layer; (ii) Umbrella Policy 75-101149 for $3 million part of $5 million for AIU's first $5 million of exposure, $1.289150 million part of $5 million for AIU's $5 million excess of $5 million exposure layer, and $2.5 million part of $10 million for AIU's $10 million excess of $10 million exposure layer; and (iii) Umbrella Policy 75-101989 for $4 million part of $5 million for AIU's first $5 million of exposure, $1.75 million part of $5 million for AIU's $5 million excess of $5 million exposure layer, and $2.5 million part of $10 million for AIU's $10 million excess of $10 million exposure layer. TIG denies that it agreed to reinsure Umbrella Policy 75-102083. TIG denies any further allegations of Paragraph 14 not specifically admitted herein.

7

15.    The Reinsurance Agreements provide that "[a]ll claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, with respect to business accepted on an excess of loss basis and in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability with respect to business accepted on a pro rata basis, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award."

ANSWER:    Admitted as to the Certain Reinsurance Agreements only.  TIG denies any further allegations of Paragraph 15 not specifically admitted herein.

16.    The Reinsurance Agreements also provide that "[p]ayment of its proportion of loss and expense paid by the Company will be made by the Reinsurer to the Company promptly following receipt of proof of loss."

ANSWER:    Admitted as to the Certain Reinsurance Agreements only.  TIG denies any further allegations of Paragraph 16 not specifically admitted herein.

17.    In exchange for its agreement to reinsure AIU in accordance with the terms of the Reinsurance Agreements, IIC accepted substantial premium payments from AIU.

ANSWER:    TIG admits that, in exchange for its agreement to reinsure AIU in accordance with the terms, conditions and exclusions of the Certain Reinsurance Agreements, as well as the implied terms, including the duty of utmost good faith, IIC accepted premium payments from AIU.  TIG denies any further allegations of Paragraph 17 not specifically admitted herein.

## The Underlying Claims

18.    Foster Wheeler was a manufacturer and installer of boilers and other steam generating and heat exchange equipment for various utilities and other industries.  Since the late 1970s, hundreds of thousands of asbestos claims have been asserted against Foster Wheeler.

ANSWER:    TIG admits that, in 2007, TIG first received notice from AIU that included information from AIU that Foster Wheeler was a manufacturer and installer of boilers and other

8

steam generating and heat exchange equipment for various utilities and other industries, and that,

since the late 1970s, hundreds of thousands of asbestos claims have been asserted against Foster

Wheeler. TIG denies any further allegations of Paragraph 18 not specifically admitted herein.

     19.    Foster Wheeler was engaged in coverage litigation with Liberty Mutual (and various of its other excess and umbrella insurers, including AIU) as to the coverage obligations under the Primary Policies (as well as the coverage obligations under various other primary, excess and umbrella policies) relating to asbestos claims asserted against it. In or around June 2003, Foster Wheeler and Liberty Mutual ultimately settled their respective claims against one another, thereby exhausting coverage under the Primary Policies. Foster Wheeler then sought insurance payments from certain excess and umbrella insurers, including AIU, in the action entitled Foster Wheeler LLC v. Affiliated FM Ins. Co., et al, Index No. 60777/01 (Supreme Court, New York County) (the "Coverage Action").

ANSWER:    TIG admits that, in 2007, TIG first received notice from AIU that included

information from AIU that: (i) Foster Wheeler was engaged in coverage litigation with Liberty

Mutual (and various of its other excess and umbrella insurers, including AIU) as to the coverage

obligations under the Primary Policies (as well as the coverage obligations under various other

primary, excess and umbrella policies) relating to asbestos claims asserted against it; (ii) in or

around June 2003, Foster Wheeler and Liberty Mutual ultimately settled their respective claims

against one another, thereby exhausting coverage under the Primary Policies; and (iii) Foster

Wheeler sought insurance payments from certain excess and umbrella insurers, including AIU, in

the action entitled Foster Wheeler LLC v. Affiliated FM Ins. Co., et al, Index No. 60777/01

(Supreme Court, New York County) (the "Coverage Action"). TIG denies any further

allegations of Paragraph 19 not specifically admitted herein.

20.     After negotiations between Foster Wheeler, AIU, and certain of AIU's corporate affiliates, AIU and certain of its corporate affiliates reached a settlement with Foster Wheeler and entered into a confidential settlement agreement dated as of June 30, 2006 (the "Settlement Agreement"). Thereafter, AIU and certain of its corporate affiliates were dismissed from the Coverage Action.

ANSWER:    TIG admits that, in 2007, TIG first received notice from AIU that included

information from:  (i) AIU that after negotiations between Foster Wheeler, AIU, and certain of

AIU's corporate affiliates, AIU and certain of its corporate affiliates reached a settlement with

Foster Wheeler and entered into a confidential settlement agreement dated as of June 30, 2006

(the "Settlement Agreement"); and (ii) that, thereafter, AIU and certain of its corporate affiliates

were dismissed from the Coverage Action.  TIG denies any further allegations of Paragraph 20

not specifically admitted herein.


21.     In accordance with the terms of the Settlement Agreement, AIU has made substantial payments to Foster Wheeler under the Umbrella Policies.

ANSWER:    TIG admits that, in 2007, TIG first received notice from AIU that included

information from AIU that, in accordance with the terms of the Settlement Agreement, AIU had

made payments to Foster Wheeler under the Umbrella Policies.  TIG is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of Paragraph

21, and therefore denies same.


22.     AIU has provided TIG with information related to the coverage claims asserted by Foster Wheeler and the Settlement Agreement.

ANSWER:    TIG admits that AIU first provided TIG with information related to the coverage

claims asserted by Foster Wheeler and the Settlement Agreement in 2007, but denies that the

information provided has been sufficient or timely.  TIG denies any remaining allegations of

Paragraph 22 not specifically admitted herein.


10

### The Reinsurance Billings

23.    On or around March 26, 2007, AIU submitted a reinsurance billing and proofs of loss to RiverStone Reinsurance Services LLC ("RiverStone"), the entity that administers reinsurance claims on behalf of TIG.

ANSWER:    TIG admits that, on or around March 26, 2007, AIU submitted documents styled

as a reinsurance billing and what AIU calls "proofs of loss" to RiverStone Reinsurance Services

LLC, and admits that Riverstone Reinsurance Services LLC is the entity that administers

reinsurance claims on behalf of TIG.    TIG denies that the information provided by AIU has been

sufficient or timely.    TIG denies any remaining allegations of Paragraph 23 not specifically

admitted herein.

24.    AIU has subsequently submitted additional billings and proofs of loss to RiverStone, including correspondence dated June 22, 2007, which indicated that as of that date, TIG owed AIU approximately $12,300,454 in reinsurance billings submitted under the Reinsurance Agreements in connection with payments AIU has made under the Settlement Agreement.

ANSWER:    TIG admits that AIU has submitted additional billings and what AIU calls "proofs

of loss" to RiverStone, including correspondence dated June 22, 2007, which asserted that as of

that date, TIG owed AIU approximately $12,300,454 in reinsurance billings submitted under the

Certain Reinsurance Agreements in connection with payments AIU has made under the

Settlement Agreement.    TIG denies that TIG owes AIU approximately $12,300,454 in

reinsurance billings submitted under the Reinsurance Agreements in connection with payments

AIU has made under the Settlement Agreement and denies that the information provided has

been sufficient or timely.    TIG denies any remaining allegations of Paragraph 24 not specifically

admitted herein.

25.    Despite AIU's requests for payment, and the fact that AIU has fulfilled all of its obligations under the Reinsurance Agreements, TIG has failed to fulfill its obligation under the

11

Reinsurance Agreements to pay the billed amounts which are due and owing under the terms of the Reinsurance Agreements.

ANSWER:    TIG admits that AIU has made requests for payment under the Certain Reinsurance Agreements, but TIG denies that AIU has fulfilled all of its obligations under the Reinsurance Agreements.  TIG denies that it has an obligation under the Reinsurance Agreements to pay the billed amounts and denies that the billed amounts are due and owing under the terms of the Reinsurance Agreements.  TIG denies any remaining allegations of Paragraph 25 not specifically admitted herein.  Further answering, AIU (i) breached its express obligation under the Certain Reinsurance Agreements to provide prompt notice of the Foster Wheeler claims to TIG; (ii) breached its duty of utmost good faith implied in the Certain Reinsurance Agreements to provide prompt notice of the Foster Wheeler claims to TIG; and (iii) breached its express obligation under the Certain Reinsurance Agreements to make AIU's records available for TIG's inspection and to place AIU's records at TIG's disposal at reasonable times.

<u>COUNT I</u>
<u>(Breach of Contract)</u>

26.    AIU repeats and realleges the allegations set forth in paragraphs 1 through 25 as though fully set forth herein.

ANSWER:    TIG repeats and realleges the responses set forth in paragraphs 1 through 25 as though fully set forth herein.

27.    Under the Reinsurance Agreements, TIG, as the successor to IIC, has an obligation and a duty to reimburse AIU for its share of losses and loss expenses in connection with the Umbrella Policies issued to Foster Wheeler.

ANSWER:    Denied.

12

28.    By failing to pay its share of AIU's losses and loss expenses, TIG has breached its obligation and duty to reinsure and indemnify AIU, as required by the Reinsurance Agreements.

ANSWER:    Denied.

29.    As a result of TIG's breach of the Reinsurance Agreements, AIU has suffered damages in the amount of at least $12,300,454 plus interest.

ANSWER:    Denied.

## COUNT II
### (Declaratory Relief)

30.    AIU repeats and realleges the allegations set forth in paragraphs 1 through 29 as though fully set forth herein.

ANSWER:    TIG repeats and realleges the responses set forth in paragraphs 1 through 29 as

though fully set forth herein.

31.    TIG has failed to acknowledge its liability under the Reinsurance Agreements for the losses and loss expenses submitted to it by AIU in connection with the Settlement Agreement.

ANSWER:    Denied.

32.    There is an actual controversy between AIU and TIG as to their respective rights and liabilities under the Reinsurance Agreements.

ANSWER:    Admitted.

33.    AIU is entitled to a declaration, in accordance with 28 U.S.C. § 2201, that the Reinsurance Agreements are in full force and effect and that TIG is obligated to make timely payments to AIU in such amounts as have already become due and may become due in the future insofar as claims are ceded under the Reinsurance Agreements in connection with the Settlement Agreement.

ANSWER:    Denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

AIU's claims are barred in whole or in part by AIU's preceding breach of the Reinsurance Agreements' provision requiring that AIU provide prompt notice of any occurrence or accident which appears likely to involve the reinsurance.

### SECOND AFFIRMATIVE DEFENSE

AIU's claims are barred in whole or in part by AIU's preceding breach of the Reinsurance Agreements' provision requiring that AIU provide prompt notice of any occurrence or accident which appears likely to involve the reinsurance. As a result, TIG entered into commutations of certain of its outwards reinsurance coverage without notice of Foster Wheeler's claims against AIU. The absence of such notice caused TIG to commute for fewer dollars than TIG otherwise would have commuted had it had such notice. As a result, TIG suffered prejudice and/or tangible economic injury in the form of lost reinsurance recoveries.

### THIRD AFFIRMATIVE DEFENSE

AIU's claims are barred in whole or in part by AIU's preceding breach of the Reinsurance Agreements' provision requiring that AIU provide prompt notice of any occurrence or accident which appears likely to involve the reinsurance. As a result, TIG suffered prejudice and/or tangible economic injury as a result of not receiving notice to set appropriate reserves under the Reinsurance Agreements.

14

### FOURTH AFFIRMATIVE DEFENSE

AIU's claims are barred in whole or in part by AIU's preceding breach of the Reinsurance Agreements' provision requiring that AIU shall make available for inspection and place at the disposal of the TIG at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

### FIFTH AFFIRMATIVE DEFENSE

AIU's claims are barred in whole or in part by the doctrine of estoppel, in that, as a result of AIU's acts and/or omissions, TIG justifiably and detrimentally relied on the absence of prompt notice by AIU advising TIG under the Reinsurance Agreements of the Foster Wheeler claims, suits or proceedings. As a result, TIG enter into commutations of certain of its outwards reinsurance coverage without notice of Foster Wheeler's claims against AIU. The absence of such notice caused TIG to commute for fewer dollars than TIG otherwise would have commuted had it had such notice. As a result, TIG suffered prejudice and/or tangible economic injury in the form of lost reinsurance recoveries.

### SIXTH AFFIRMATIVE DEFENSE

Some or all of the claims paid by AIU to Foster Wheeler may be excluded from the coverage provided by one or more of the Reinsurance Agreements.

### SEVENTH AFFIRMATIVE DEFENSE

AIU has the burden to establish that the claims paid under its settlement with Foster Wheeler are within the terms and conditions of the policies ceded to the Reinsurance Contracts

15

and are otherwise properly allocated to those policies.  AIU has not met its burden on these

points.

EIGHTH AFFIRMATIVE DEFENSE

AIU'S claims are barred in whole or in part by AIU's failure to institute or maintain

effective practices, procedures and controls to ensure that it would comply with its contractual

obligation to provide TIG prompt notice of any occurrence or accident which appears likely to

involve the reinsurance.

**JURY DEMAND**

TIG demands a trial by jury on all issues so triable.


Dated: New York, New York
      April 22, 2008


           LOVELLS LLP

By: _____
           Sean Thomas Keely (SK-8593)
           590 Madison Ave.
           New York, New York 10022
           Phone: (212) 909-0600
           Fax:   (212) 909-0660
           sean.keely@lovells.com

           James I. Rubin (IL 02413191- admitted *pro hac vice*)
           Catherine E. Isely (IL 06237505 - admitted *pro hac vice*)
           Julie Rodriguez Aldort (IL 6271412, admitted *pro hac vice*)
           BUTLER RUBIN SALTARELLI & BOYD
           70 W. Madison, Suite 1800
           Chicago, Illinois 60602
           (312) 444-9660

           Attorneys for Defendant
           TIG Insurance Company

16

To:    William A. Maher, Esq.
       Marc L. Abrams, Esq.
       WOLLMUTH MAHER & DEUTSCH LLP
       500 Fifth Avenue
       New York, New York 10110
       (212) 382-3300

       Attorneys for Plaintiff
       AIU Insurance Company

W0065071v1

17

# Exhibit F

**REDACTED**