

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/5/08

BUTLER RUBIN SALTARELLI & BOYD LLP

January 28, 2008

Direct Dial: (312) 696-4478
Direct Fax: (312) 873-4328
jaldort@butlerrubin.com

**BY FACSIMILE**

Honorable Sidney H. Stein
c/o Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1010
New York, NY 10007
FAX (212) 805-0087

**MEMO ENDORSED**

Re:  AIU Insurance Co. v. TIG Insurance Co., 07 CV 7052 (SHS)

[Handwritten memo endorsement:] 5/5/08 TIG is directed to respond to doc demands #5, 6 & 8. Documents relating to Foster Wheeler's direct claims against TIG (and IIC) are relevant + reasonably calculated to lead to the discovery of admissible evidence, especially where, as here, TIG has asserted the defense of late notice. Unigard is not to the contrary as a discovery issue. So ordered. Sidney H. Stein, USDJ.

Dear Judge Stein:

In accordance with the Court's direction at the status conference on January 18, 2008, TIG Insurance Company ("TIG") herewith presents its position with respect to the pending discovery dispute. AIU's demand for discovery of documents relates not to TIG's reinsurance of AIU, but to TIG's direct insurance of Foster Wheeler Corporation, including TIG's participation as a direct insurer in the coverage litigation between Foster Wheeler and its direct insurers. For the reasons set forth more fully below, TIG submits that AIU's request for discovery of these materials should be denied because the requests do not seek materials that are relevant or likely to lead to admissible evidence pursuant to Federal Rule of Civil Procedure 26(b)(1).

**I.  Background**

As the Court is aware, this action relates to alleged breaches of contract under certain facultative reinsurance certificates (the "Reinsurance Contracts") entered into between AIU and TIG's predecessor, International Insurance Company ("IIC"). AIU contends that TIG, as the successor to IIC, failed to pay amounts billed under the Reinsurance Contracts as a result of AIU's settlement with its insured, Foster Wheeler. TIG asserts that AIU breached its obligations under the Reinsurance Contracts by, among other things, failing to comply with the prompt notice provisions. TIG further asserts that the late notice caused it tangible economic injury consisting of TIG's commutation of a portion of its retrocessional reinsurance coverage without the benefit of notice of the AIU claim.

**II.  Discovery Requests in Issue**

The AIU document requests at issue in this dispute are set forth below:

> **REQUEST NO. 5:** All documents relating to notices or communications from Foster Wheeler to TIG and/or IIC concerning coverage of asbestos related claims.

Honorable Sidney H. Stein
January 28, 2008
Page 2

> **REQUEST NO. 6:** All documents relating to TIG and/or IIC's evaluation and/or assessment and/or consideration of any requests or demands for insurance coverage from Foster Wheeler.
>
> **REQUEST NO. 8:** All documents concerning the Foster Wheeler Coverage Litigation.

TIG stated the following response to Requests 5, 6, and 8:

> **ANSWER:** TIG objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, and it calls for the production of information that is not reasonably calculated to lead to the discovery of admissible evidence because it could be construed to seek documents unrelated to the losses AIU ceded to the Reinsurance Agreements. TIG also asserts its General Objections.

During the parties' meet and confer sessions, the parties focused on TIG's objection that the requests sought information that was not reasonably calculated to lead to the discovery of admissible evidence. AIU contended that the requested documents were relevant to what AIU characterized as TIG's suggestion that it was unaware of Foster Wheeler Asbestos losses. AIU further contended that the documents were relevant because they relate to the same underlying Foster Wheeler asbestos losses for which AIU seeks reimbursement in this litigation. AIU contended that the documents could show TIG's understanding of the exposure relating to the Foster Wheeler losses, the reasonableness of AIU's allocation of the settlement, and whether TIG maintained inconsistent positions as a direct insurer of Foster Wheeler versus as a reinsurer of AIU.

TIG explained that documents relating to its direct insurance coverage of Foster Wheeler, including its participation in the Foster Wheeler coverage litigation, did not have any connection to the pending litigation because according to Second Circuit precedent, notice to TIG's direct insurance department of claims under its direct policies of insurance does not constitute notice to the assumed reinsurance department of claims under assumed reinsurance contracts.

### III. Argument

Federal Rule of Civil Procedure 26(b)(1) provides that with respect to the scope of discovery, except where otherwise limited by the court, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The Supreme Court has construed Rule 26(b)(1) broadly. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Nonetheless, courts of this Circuit have recognized that, for practical reasons, parties should not be allowed to "roam in the shadow zones of relevancy to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Surety Ass'n of Am. v. Republic Ins. Co.*, 388 F.2d 412, (2d Cir. 1967) (quoting *Broadway & Ninety-Sixth St. Realty Co. v. Loew's Inc.*, 21 F.R.D. 347, 352 (S.D.N.Y. 1958)); *see also, e.g., Spina v. Our Lady of Mercy Med. Ctr.*, No. 97

Honorable Sidney H. Stein
January 28, 2008
Page 3

CIV 4661 (RCC), 2001 WL 630481, *2 (S.D.N.Y. June 7, 2001). Thus, courts have circumscribed the otherwise broad discovery rule where appropriate. *Blum v. Schlegel*, 150 F.R.D. 38, 39 (W.D.N.Y. 1993) ("[C]ourts in the Second Circuit have frequently denied discovery requests for information that has no conceivable bearing on the case.")

For example, in *Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*, 390 F. Supp. 2d 459, 464 (S.D.N.Y. 2003), an action against an investment banker alleging breach of underwriting contracts in an in initial public offering, the court denied the plaintiff's motion to compel production of the defendant's "Chinese Wall" policy for operating its investment banking and analyst division. Xpedior asserted that the policy was relevant as general background and as preliminary damages discovery, explaining that to the extent that there was a conflict of interest between analysts and investment bankers, defendant's valuations of the entity presenting the initial public offering would be compromised. The court held that Xpedior failed to show that the information was relevant because the policy itself would not be probative of whether it was followed or whether there was an actual conflict of interest.

In *Funai Electric Co., Ltd. v. Orion Electric Co., Ltd.*, Nos. 02 Civ. 2605 (AGS) (JCF), 01 Civ. 3501 (AGS) (JCF), 2002 WL 1808419, *3 (S.D.N.Y. Aug. 7, 2002), defendant Orion sought documents relating to quality control and customer satisfaction for the product subject to the patent in dispute to show that the patent was invalid. The court denied Orion's motion to compel stating that the case law provided that although commercial success is relevant to patent invalidity, the information requested was not directly linked to commercial success. *Id. See also City of New York v. Group Health, Inc.*, No. 06 Civ. 13122 (KMK) (RLE), 2007 WL 1219684, *2-3 (S.D.N.Y. April 23, 2007) (denying discovery on relevance grounds because plaintiff could not establish that the requested documents would have any relevance without the plaintiff first obtaining certain confidential information from third parties); *MacNamara v. The City of New York*, No. 04 Civ. 9612 (KMK) (JCF), 2006 WL 3298911, *6-7 (S.D.N.Y. Nov. 13, 2006) (denying motion to compel production of photos of arrestees in civil rights action because plaintiffs failed to show that request for photos was reasonably calculated to lead to the discovery of admissible evidence).

As in these aforementioned cases, the discovery should be circumscribed with respect to the dispute at bar because AIU has not shown that the requested materials are relevant or that they are reasonably calculated to lead to the discovery of admissible evidence. To be clear, AIU seeks documents relating to TIG's *direct* insurance of Foster Wheeler. TIG's coverage of Foster Wheeler is under policies entirely unrelated to the certificates of reinsurance TIG issued to AIU. The division of TIG responsible for handling the TIG policies issued to Foster Wheeler is not the same division responsible for handling assumed reinsurance. Thus, even if TIG's direct insurance division had knowledge of the Foster Wheeler claims, that knowledge that would not be sufficient to establish constructive notice of a claim by AIU under the facultative reinsurance certificates.

Honorable Sidney H. Stein
January 28, 2008
Page 4

Indeed, in *Unigard Security Ins. Co., Inc. v. North River Ins. Co.*, 4 F.3d 1049 (2d Cir. 1993), applying New York law,[1] the Second Circuit found that notice under a reinsurance "treaty" covering the same underlying risk as certain "facultative reinsurance certificates" did not constitute notice under the facultative reinsurance certificates at issue. Further, the court held that the notices under the treaty did not require the reinsurer to investigate whether it had facultative reinsurance certificates for the same insured. The court noted that to hold otherwise would shift the responsibility of notice from the cedent to the reinsurer in contravention of the notice requirements of the reinsurance contracts. *Id.* at 1067. The court's analysis recognized that the reinsurance market depends on cedent insurers providing this information to reinsurers and that, were it otherwise, reinsurers would be forced to duplicate the efforts of ceding insurers. *Id.* The court further noted that in reinsurance contracts, the burden of collecting and providing information is placed on the party who can meet that burden at the least cost, *i.e.*, the ceding insurer. *Id.*

As in *Unigard*, two completely separate TIG divisions issued the direct insurance coverage to Foster Wheeler and the facultative reinsurance coverage to AIU. The fact that TIG's direct insurance division may have had knowledge of the Foster Wheeler asbestos claims against the direct policies of insurance did not thereby mean that TIG's reinsurance division had constructive notice or was tasked with investigating whether it had issued any reinsurance contracts that were arguably implicated by the same losses.

Moreover, TIG's handling of the Foster Wheeler claims under its direct insurance policies can shed no light on whether AIU complied with its obligations under the Reinsurance Contracts. The matters are subject to distinct contractual obligations, policy terms, and factual circumstances. Accordingly, the information sought by AIU simply is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence. For these reasons, TIG requests that the Court deny AIU's requests for these materials.

Respectfully submitted,

*Julie Rodriguez Aldort*

Julie Rodriguez Aldort

cc: William A. Maher
    Marc L. Abrams
    Sean Keely
    James I. Rubin
    Catherine E. Isely

---

[1] The issue of which state's law applies to this matter remains in dispute. TIG contends that Illinois law controls.