# ALDORT DECLARATION

# EXHIBIT A

# WOLLMUTH MAHER & DEUTSCH LLP

500 FIFTH AVENUE

NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

February 4, 2008

**BY FACSIMILE**

Honorable Sidney H. Stein
United States District Court
Southern District of New York
500 Pearl Street, Room 1010
New York, NY 10007

    Re:    AIU Insurance Company ("AIU") v. TIG Insurance Company ("TIG")
            Case No. 07-cv-7052 (SHS)

Dear Judge Stein:

        This firm represents Plaintiff AIU in the above-referenced matter. For the reasons articulated by the Court in AIU's favor at the January 18, 2008 Status Conference (the "Status Conference"), and as set forth more fully below, AIU is entitled to discovery relating to TIG's handling of the insurance claim brought against it by the Foster Wheeler Corporation ("Foster Wheeler"), and the Court should reject the relief sought by TIG in its letter application dated January 28, 2008 (the "TIG Letter") in its entirety.

## I.    Preliminary Statement

        As the Court is aware from prior pleadings in this matter, between October 1, 1978 and October 1, 1982, AIU issued four umbrella insurance policies to Foster Wheeler, a manufacturer and installer of boilers and other steam generating and heat exchange equipment. For each of these policies, AIU obtained reinsurance (on a facultative basis) from TIG's predecessor International Insurance Company ("IIC"), whereby IIC reinsured a significant portion of AIU's exposure, and AIU paid IIC substantial premiums for accepting these risks. Because hundreds of thousands of asbestos claims were asserted against Foster Wheeler, Foster Wheeler and its primary and excess insurers, including AIU, became involved in coverage litigation in New York and New Jersey courts (the "Coverage Litigation"). Notably, IIC (and certain other TIG affiliates) were parties to the Coverage Litigation because IIC maintained its own direct exposure to Foster Wheeler presumably arising out of IIC's issuance of its own excess policies to Foster Wheeler. In other words, TIG (as successor to IIC) insured Foster

Wheeler's asbestos exposures both directly, as an excess insurer, and as a reinsurer of AIU's umbrella policies issued to Foster Wheeler.

In June 2006, AIU and its corporate affiliates reached a settlement with Foster Wheeler, whereby AIU began making substantial payments to Foster Wheeler. In turn, AIU sought reimbursement of such settlement payments from its reinsurers, including TIG (which had become the corporate successor of IIC in 2003). TIG refused to reimburse AIU on the grounds of late notice and other defenses – even though IIC (and other TIG affiliates) were directly involved in the Coverage Litigation.

## II.   The Discovery Requests and TIG's Objections

TIG's principal defense is this proceeding is late notice – i.e., that it did not possess sufficient notice of the Foster Wheeler asbestos exposures at issue. More specifically, TIG is claiming that it entered into certain commutations and that the absence of notice allegedly "caused TIG to commute for fewer dollars than TIG otherwise would have commuted for had it had such notice." See Answer, Second Affirmative Defense. Additionally, TIG also asserts as a defense that amounts paid by AIU in settlement of Foster Wheeler asbestos losses may be outside the scope of the policies TIG reinsures. See Answer, Sixth and Seventh Affirmative Defenses. However, TIG does not dispute that it had independent knowledge of Foster Wheeler asbestos losses through its own direct coverage of Foster Wheeler.

In order to test TIG's knowledge and handling of the Foster Wheeler claims, AIU issued the following document requests:

   5. All documents relating to notices or communications from Foster Wheeler to TIG and/or IIC concerning coverage of asbestos related claims.

   6. All documents relating to TIG and/or IIC's evaluation and/or assessment and/or consideration of any requests or demands for insurance coverage from Foster Wheeler; and

   * * *

   8. All documents concerning the Foster Wheeler Coverage Litigation.

See Requests Nos. 5, 6, & 8, AIU's First Request for the Production of Documents, dated November 12, 2007 at p. 9.

TIG has refused production of these materials on the following grounds:

   **ANSWER:** TIG objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, and it calls for the production of information that is not reasonably calculated to lead to the discovery of admissible evidence because it could be construed to seek documents unrelated to the losses that AIU ceded to the Reinsurance Agreements. TIG also asserts its General Objections in response to this Request.

2

.02/04/'2008 17:45 FAX 212 382 0050           WOLLMUTH MAHER DEUTSCH                    ☒004/006

See TIG's Answers and Objections to AIU's First Set of Document Requests, dated December 12, 2007 at pp. 7-9.

As part of the meet-and-confer process, and in accordance with Federal Rule of Civil Procedure (a "Rule" or the "Rules") 37(a)(1), AIU indicated that the discovery it sought was relevant, at a minimum, to: (i) TIG's late notice defense, as it may demonstrate TIG's <u>actual</u> notice with respect to its potential exposure for losses referenced in AIU's Complaint, including <u>when</u> such notice occurred; (ii) the validity of TIG's attempt to second-guess AIU's handling and allocation of the Foster Wheeler settlement; and (iii) any positions that TIG took in the underlying litigation that may conflict with the positions it is now taking. In response, TIG again refused production of these materials on relevance grounds, relying upon the Second Circuit's decision in <u>Unigard Security Ins. Co. v. North River Ins. Co.</u>, 4 F.3d 1049 (2d Cir. 1993). For the reasons set forth below, the Court's initial inclination at the Status Conference that TIG's objections are unfounded is correct, and TIG should be ordered to produce the requested discovery in an expeditious manner.

### III. Rule 26 Requires TIG to Produce the Disputed Materials

The threshold requirement for discoverability under the Rules is whether the information sought is relevant "to the claim or defense" of any party and such information "need not be admissible at the trial if the discovery sought appears reasonably calculated to lead to the discovery of admissible evidence." See Rule 26(b)(1). The Second Circuit has recognized that Rule 26 is an "obviously broad rule that is liberally construed." <u>Daval Steel Prods. v. M/V Fakredine</u>, 951 F.2d 1357, 1367 (2d Cir. 1991) (quoting <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351(1978) (relevance under Rule 26(b)(1) is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case"); see also <u>Ferguson v. Lion Holding, Inc.</u>, 2005 U.S. Dist. LEXIS 9789, at *5 (S.D.N.Y. 2005) ("relevance, for purposes of discovery, is an extremely broad concept"). Under this inquiry, discovery is relevant if there is "[a]ny <u>possibility</u> that the information sought may be relevant to the subject matter of the action." <u>Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicecenter of Haverstraw, Inc.</u>, 2003 U.S. Dist. LEXIS 15917, at *17 (S.D.N.Y. 2003) (citation omitted) (emphasis added).[1] In order for an objecting party to avoid producing materials based on lack of relevance, it must demonstrate that the requested documents either do not fall within the liberal conception of relevance set forth above or that the discovery is of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure. See <u>Burke v. New York City Police Dept.</u>, 115 F.R.D. 220, 224 (S.D.N.Y. 1987).

Here, TIG has not come close to meeting its considerable burden. In essence, TIG is placing the issue of whether and when it was notified of the Foster Wheeler claims before the Court in this litigation, but is then refusing to produce documents that may have put it on

---

[1] See also <u>Estee Lauder, Inc. v. Fragrance Counter, Inc.</u>, 189 F.R.D. 269, 274 (S.D.N.Y. 1999) ("It is well-settled within this Circuit that 'any possibility' that the sought-after information may be relevant to the subject matter of the action will satisfy Rule 26(b)(1)'s requirements") (citations omitted); <u>Morse/Diesel, Inc. v. Fidelity & Deposit Co.</u>, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (the term "reasonably calculated" in Rule 26(b)(1) means "any possibility that the information sought may be relevant to the subject matter of the action").

notice of these claims, or may demonstrate TIG's actual knowledge of these claims. In this sense, the documents that TIG seeks to withhold do not merely represent a "possibility" of being relevant to TIG's defense – rather, these documents are potentially dispositive of TIG's late notice defense. If, for instance, TIG's involvement and knowledge of the Foster Wheeler claims led it to consider its potential reinsurance exposure (and the potential value of commutations of its own reinsurance) arising out of the Foster Wheeler losses, these facts would significantly detract from TIG's defenses.[2] Additionally, the documents sought by AIU will test the persuasiveness of TIG's defense that the AIU settlement is outside the terms and conditions of the AIU policies – especially to the extent these documents reveal that TIG settled the same claims on the basis of similar (or even identical) policies. In sum, TIG should not be permitted to interpose these defenses, and to simultaneously refuse the production of documents that shed light on the vitality of the defenses it has raised.

As this Court indicated at the Status Conference, TIG's attempt to avoid its discovery obligations on the basis of Unigard Security Ins. Co. v. North River Ins. Co., 4 F.3d 1049 (2d Cir. 1993) is misplaced. The Unigard decision does not consider the appropriateness of discovery in the reinsurance context, but rather provides a substantive ruling on the merits. See Unigard, 4 F.3d at 1066-67 (finding that under New York law,[3] a cedent's notice to its reinsurer under a treaty need not constitute notice to the same reinsurer under facultative certificates between the same parties, although the reinsurer must still prove tangible economic injury to disclaim coverage). The Unigard case contains no prohibition regarding AIU's ability to discover what TIG knew about the Foster Wheeler claims and when TIG knew about these claims. If anything, the Unigard case supports broad discovery in this context insofar as the district court allowed the parties the opportunity to discover evidence of the appropriateness of notice before determining whether the cedent had satisfied its notice obligations.

Finally, TIG's reliance on Unigard is misguided because TIG is forced to resort to untested factual assertions in order to try to make a comparison between it and the reinsurer in that matter. See TIG Letter at 5 ("As in Unigard, two completely separate TIG divisions issued the direct coverage to Foster Wheeler and the facultative reinsurance coverage to AIU. The fact that TIG's direct insurance division may have had knowledge of the Foster Wheeler asbestos claims against the direct policies of insurance did not thereby mean that TIG's reinsurance division had constructive notice or was tasked with investigating whether it had issued any reinsurance contracts that were arguably implicated by the same losses"). TIG forgets that the discovery process entitles AIU to test the accuracy of these unsworn factual statements, which have been offered here for the first time by TIG's counsel. In a similar manner, TIG's decision to put the appropriateness of notice before the Court allows AIU to test the issue of when and to what extent TIG actually knew about the Foster Wheeler claim – rather than to take TIG's word for it. Once the discovery process is complete, the Court may then entertain argument as to

---

[2] Under New York law, a reinsurer asserting late notice must prove prejudice in the form of tangible economic injury. See, e.g., Unigard Security Ins. Co. v. North River Ins. Co., 4 F.3d 1049 (2d Cir. 1993). The discovery that AIU seeks is relevant to this inquiry too.

[3] TIG's invocation of New York substantive law does, at a minimum, demonstrate that TIG recognizes the law of New York to be applicable to this dispute, at the very least, in situations where this law may be of benefit to TIG.

whether AIU satisfied its notice obligations to TIG and whether TIG suffered prejudice in accordance with the Unigard decision. That time is not now.

       For the foregoing reasons, AIU is entitled to discovery of the documents sought in its Document Requests Nos. 5, 6 and 8 and TIG should be ordered to produce responsive materials expeditiously.

       Respectfully submitted,

       */s/ William A. Maher*
       William A. Maher

cc: James I. Rubin
    Catherine E. Isely
    Sean Thomas Keely
    Julie Rodriguez Aldort

# ALDORT DECLARATION

# EXHIBIT B

# FILED UNDER SEAL