UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                 :

AIU INSURANCE COMPANY,              :        Civil Action No.: 07 CIV 7052 (SHS)

                    Plaintiff,    :
      -against-                :
                                   :
TIG INSURANCE COMPANY,        :
                                 :
                Defendant.    :
-------------------------------------------------------------------X

## AIU INSURANCE COMPANY'S
## MEMORANDUM OF LAW IN
## <u>SUPPORT OF ITS MOTION TO COMPEL</u>

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

Of counsel:

    William A. Maher (WM-9470)
    Marc L. Abrams (MA-6600)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

    A.    The Claims and Defenses in this Matter ................................................................ 2

    B.    TIG Inspects AIU's Records ................................................................................. 3

    C.    AIU Seeks Discovery in this Matter ..................................................................... 4

ARGUMENT ..................................................................................................................... 6

I.    AIU IS ENTITLED TO THE PRODUCTION OF TIG'S CLAIMS FILES, INSPECTION FILES AND COMMUTATION DOCUMENTS ........................................ 7

    A.    Case Law in this Jurisdiction and Others Does Not Allow TIG to Cloak the Disputed Documents In Privilege ......................................................... 7

    B.    TIG Should be Compelled to Produce Its Audit and Claims Files ...................... 11

    C.    TIG Should be Compelled to Produce Its Commutation Files ............................ 13

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

Aetna Cas. & Surety Co. v. Certain Underwriters at Lloyd's,
    263 A.D.2d 367, 692 N.Y.S. 2d 384 (1st Dep't 1999) ........................................................10

Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co.,
    1994 U.S. Dist. LEXIS 13216 (S.D.N.Y. Sept.16, 1994)...............................................7-8

Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co.,
    1994 U.S. Dist. LEXIS 17768 (S.D.N.Y. Dec. 13, 1994) .................................................9

Compagnie Francaise d' Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.,
    105 F.R.D. 16 (S.D.N.Y. 1984) .............................................................................................7

Employers Reinsurance Corp. v. Mid-Continent Cas. Co.,
    2002 U.S. Dist. LEXIS 9636 (D. Kan April 18, 2002)....................................................11

Employers Reinsurance Corp. v. Mid-Continent Cas. Co.,
    358 F.3d 757 (10th Cir. 2004) ............................................................................................11

In re Kidder Peabody Securities Litigation,
    168 F.R.D. 459 (S.D.N.Y. 1996) ..........................................................................................9

Medical Protective Co. v. Bubenik,
    2007 U.S. Dist. LEXIS 76382 (E.D. Mo. Oct. 15, 2007) ...............................................11

Mount Vernon Fire Insurance Co. v. Platt,
    1999 U.S. Dist. LEXIS 15984 (S.D.N.Y. Oct. 15, 1999) .................................................9

Mount Vernon Fire Insurance Co. v. Try 3 Building Services, Inc.,
    1998 U.S. Dist. LEXIS 16183 (S.D.N.Y. Oct. 14, 1998). .................................................8

OneBeacon Ins. Co. v. Forman Int'l, Ltd.,
    2006 U.S. Dist LEXIS 90970 (S.D.N.Y. Dec. 13, 2006) ..................................................7

Pete Rinaldi's Fast Foods, Inc. v. Great American Insurance Cos.,
    123 F.R.D. 198 (M.D.N.C. 1988) ...............................................................................8, 9, 11

Rossi v. Blue Cross & Blue Shield,
    73 N.Y.2d 588, 540 N.E.2d 703, 542 N.Y.S.2d 508 (1989)..............................................7

SEC v. Credit Bancorp, Ltd.,
    2002 U.S. Dist. LEXIS 627 (S.D.N.Y. Jan. 16, 2002)......................................7, 8

St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.,
    197 F.R.D. 620 (N.D. Iowa 2000) ........................................................................10

Tudor Insurance Co. v. McKenna Associates,
    2003 U.S. Dist. LEXIS 10853 (S.D.N.Y. June 25, 2003).....................................9

United States v. Adlman,
    134 F.3d 1194 (2d Cir. 1998)..............................................................................8, 9

US Fidelity & Guar. Co. v. Braspetro Oil Services Co.,
    2000 U. S. Dist. LEXIS 7939 (S.D.N.Y. June 7, 2000)........................................9

Weber v. Paduano,
    2003 U. S. Dist. LEXIS 858 (S.D.N.Y. Jan. 14, 2003)......................................7, 8

Westhemeco Ltd. V. New Hampshire Ins. Co.,
    82 F.R.D.702 (S.D.N.Y. 1979) .............................................................................9

## Rules

Fed. R. Civ. P. 26(b)(3)................................................................................................6

Fed. R. Civ. P. 37(a) ....................................................................................................6

Fed. R. Civ. P. 37(a)(2)(A) ..........................................................................................4

N.Y. C.P.L.R. § 4503(a) ..............................................................................................7

Plaintiff AIU Insurance Company ("AIU"), by its attorneys, Wollmuth Maher & Deutsch LLP, respectfully submits this memorandum of law, together with the Declaration of Marc L. Abrams ("Abrams Dec."), dated May 6, 2008, in support of its Motion to Compel, dated May 6, 2008 (the "Motion").

## PRELIMINARY STATEMENT

In this matter, TIG seeks to avoid payment under four reinsurance agreements entered into between it and AIU (the "Reinsurance Agreements") on the grounds that TIG purportedly received late notice of AIU's settlement of its exposures (the "Settlement") in connection with insurance coverage litigation (the "Foster Wheeler Coverage Litigation") between Foster Wheeler and its direct and excess insurers, including AIU, and, for that matter, TIG. Nonetheless, TIG does not want to produce the heart of its reinsurance claims file which presumably would detail TIG's understanding and review of this particular claim. Although TIG asserts that its reinsurance claims file only existed for six months, TIG seeks to withhold roughly 265 documents from it on the basis of the attorney client privilege and/or the work product doctrine. The documents withheld would appear to include TIG's analyses, investigation and notes regarding the reinsurance claim at issue here, as well as TIG's analyses and notes from its business inspection of AIU's records, which TIG conducted prior to commencement of this proceeding. And, TIG is attempting to withhold other documents relating to its defenses, including selected portions of its commutations files. These efforts should be rejected for the following reasons:

First, it is improper for TIG to essentially sanitize its reinsurance claims and audit files by designating virtually all substantive materials in these files as privileged. This conclusion obtains regardless of whether TIG handled this particular reinsurance claim by means of

professional claims handlers or whether TIG outsourced its claims handling and audit functions to its inside and outside attorneys.  Moreover, the fact that TIG never denied the reinsurance claim at issue here places a severe burden on TIG to demonstrate that these materials are truly privileged, which TIG has not (and cannot) satisfy.  Under a similar rationale, TIG may not cloak its actual business analysis of its commutations under applicable privileges either.

## STATEMENT OF FACTS

### A.    The Claims and Defenses in this Matter

As the Court is aware from prior pleadings in this matter, between October 1, 1978 and October 1, 1982, AIU issued four umbrella insurance policies (the "Umbrella Policies") to Foster Wheeler, a manufacturer and installer of boilers and other steam generating and heat exchange equipment.[1]  See Abrams Dec., Ex. A ¶ 11; ¶ 18.  For each of these Umbrella Policies, AIU obtained facultative reinsurance from TIG's predecessor International Insurance Company ("IIC") under the Reinsurance Agreements, whereby IIC agreed to reinsure a significant portion of AIU's exposure, and AIU paid IIC substantial premiums for accepting these risks.  See id. ¶ 8; ¶¶ 12-17; see also Abrams Dec., Ex. B at ¶ 8.

Because tens of thousands of asbestos claims were asserted against Foster Wheeler, Foster Wheeler and its primary and excess insurers, including AIU, became involved in the Foster Wheeler Coverage Litigation in New York and New Jersey courts beginning in 2001.  See Abrams Dec., Ex. A at ¶¶ 18-19.  Notably, IIC (and certain other TIG affiliates) were parties to the Foster Wheeler Coverage Litigation because IIC maintained its own direct exposure to Foster Wheeler presumably arising out of IIC's issuance of its own excess policies to Foster Wheeler.  See Abrams Dec., Ex. C.  In other words, TIG (as successor to IIC) insured Foster Wheeler's

---

[1] The Umbrella Policies were "low attaching" coverages.  Put differently, Foster Wheeler maintained a "tower" of insurance coverage over and above the Umbrella Policies, totaling between $150 million and $225 million in overall insurance coverage, as between October 1, 1978 and October 1, 1982, depending on the particular year.

asbestos exposures both directly, as an excess insurer, and as a reinsurer of AIU's umbrella policies issued to Foster Wheeler. Id.; see also Abrams Dec., Ex. B at ¶ 8.

In June 2006, AIU and its corporate affiliates entered into the Settlement with Foster Wheeler, whereby AIU began making substantial payments to Foster Wheeler. Abrams Dec., Ex. A at ¶¶ 20-21. In turn, AIU sought reimbursement of such settlement payments from its reinsurers, including TIG (which had become the corporate successor of IIC in 2003). Id. at ¶¶ 23-25; see also Abrams Dec., Ex. B at ¶ 8. TIG refused to reimburse AIU on the grounds of late notice and other defenses – even though IIC (and other TIG affiliates) were directly involved in the Foster Wheeler Coverage Litigation. See Abrams Dec., Ex. B at pp. 14-16; Ex. C.

**B.    TIG Inspects AIU's Records**

After receiving a notice from AIU relating to the Foster Wheeler Settlement in January 2007, TIG began requesting information concerning the Foster Wheeler Coverage Litigation and the Settlement. See Abrams Dec., Exs. D and E. Despite its current claim that TIG anticipated litigation with AIU from the moment it received the first billing, TIG requested an inspection of AIU's records. See Abrams Dec., Ex. F at pp. 4-5. TIG's audit request was not pursuant to any right of discovery (as parties were not in litigation). Rather, TIG attempted to invoke provisions contained in the Reinsurance Agreements allowing it access to AIU's claim records. See Abrams Dec., Ex. G at TIG 000005. In advance of the inspection, on July 2, 2007, TIG offered and executed the Confidentiality Pledge. See Abrams Dec., Ex. G. The Confidentiality Pledge contained the following clauses:

> WHEREAS: In accordance with the terms of the Reinsurance Agreements, the Reinsurer seeks to exercise its right to inspect certain files of AIU with regard to AIU's reinsurance claims . . . .
>
> WHEREAS: AIU and the Reinsurer share a common interest in the evaluation and defense of the underlying actions and the Reinsurer does not

> desire to cause any waiver of the attorney-client privilege or of the work
> product protection.

Id. at TIG 000005. Mr. Pascale, who submitted a declaration in connection with TIG's own

Motion to Compel, executed the Confidentiality Pledge, binding TIG to the foregoing

representations. Id. at TIG 000006. TIG's representative, Buxbaum Loggia, also executed the

Pledge. Id. Although TIG now claims that the inspection was conducted "[a]t the direction of

TIG's counsel," TIG never made AIU aware of this fact either before or during the inspection.

See Abrams Dec., Ex. F at p. 5; see also Abrams Dec., Exs. D and E. In fact, TIG stated the

opposite conclusion by supplying AIU with a Confidentiality Pledge stating that it was

exercising its contractual right under the Reinsurance Agreements to "to inspect certain files of

AIU with regard to AIU's reinsurance claims." See Abrams Dec., Ex. G at TIG 000005.

**C.    AIU Seeks Discovery in this Matter**

After AIU commenced this proceeding and this Court entered a scheduling order, AIU

served document requests on TIG on or around November 12, 2007. See Abrams Dec., Ex. H.

TIG submitted its Responses and Objections on December 12, 2007, see Abrams Dec., Ex. I, and

the parties exchanged a series of correspondences and held a series of phone conferences over

the next several months in accordance with Rule 37(a)(2)(A). (The correspondences pertaining

to TIG's discovery obligations are annexed to the Abrams Declaration as Exhibits J, K, and L).

There are at least two areas of disagreement regarding TIG's discovery responses, and they are

discussed briefly below:

First, among other things, AIU's document requests encapsulated a request for

documents relating to TIG's inspection of AIU's records referenced above, and more broadly,

documents appearing in TIG's assumed reinsurance claims files – i.e., the files that TIG

maintains regarding the reinsurance claim at issue before the Court. See, e.g., Abrams Dec., Ex.

H at Request Nos. 1(e) and 1(f) ("Documents relating to the handling, administration, review,

consideration and/or submission of claims under the Reinsurance Agreements; and Documents

relating to billings submitted under the Reinsurance Agreements."). TIG appears to be taking the

position that most (if not all) substantive documents in its reinsurance claims file – including

TIG's audit notes from the inspection as well as TIG's analysis regarding the reinsurance claim

at issue here – are subject to protection under the work product doctrine and/or attorney client

privilege.

> TIG's attorneys explained this position in a letter to AIU's counsel dated April 10, 2008:
>
> William Pascale and Joseph Loggia conducted the audit of AIU's files. <u>They prepared
> analyses regarding the audit at the direction of counsel in anticipation of litigation.</u> To
> the extent that documents relating to the audit were withheld, TIG logged such
> documents as privileged based on the work product doctrine or based on attorney/client
> communications.
>
> *    *    *
>
> Specifically, TIG received the first notice of the claims on January 31, 2007. AIU
> initiated litigation against TIG just over six months after providing the initial notice so
> there was not much opportunity for the file to accumulate significant volume. Thus your
> "surprise" at the limited volume of assumed file documents seems disingenuous.
>
> Further, as I explained during our conversation, the tardiness of AIU's notice raised legal
> concerns for TIG, <u>leading to an anticipation of litigation almost immediately . . . As you
> can easily glean from TIG's privilege log, TIG began consulting with its in-house
> reinsurance counsel one day after receiving the problematic notice and retained outside
> reinsurance counsel shortly thereafter</u> . . .

Abrams Dec., Ex. K.

The various claims and inspection documents that TIG seeks to withhold on the basis of

privilege are purportedly identified in TIG's Privilege and Redaction Logs. Abrams Dec., Exs.

M and N.[2]  Based on the rationale expressed by TIG's attorneys above, TIG is withholding 237

documents relating to its consideration of the reinsurance claim and redacting at least another 28

---

[2] Applicable "Attorneys Lists" prepared by TIG are attached beneath TIG's Privilege and Redaction Logs. <u>See</u> Abrams Dec., Exs. M and N.

documents, all which were authored in a six month time period (i.e., between the January 2007

Notice and the filing of the lawsuit in or around August 2007) on the basis of the attorney client

privilege or work product doctrine, or both.[3]  Many of these entries reference documents that

were not authored by attorneys and/or that appear to be handwritten notes created by the

applicable TIG claims handler.  Based on these tactics, AIU has almost no substantive

information from TIG's assumed reinsurance file to determine TIG's review or analysis of the

reinsurance claim before the Court.

     Second, during the meet and confer conferences, AIU expressed concern that "TIG has

produced limited internal documents relating to the commutations raised by TIG." Abrams Dec.,

Ex. J at p. 4.[4]  The reason that TIG has not produced such materials may be because TIG is

attempting to designate its commutation documents as privileged and confidential too.  In fact,

TIG has withheld 42 of its commutation related documents on the grounds that they represent

"legal analysis and assessment of the commutations."[5]

     As set forth below, the Court should compel discovery of all of the outstanding issues set

forth above.

## ARGUMENT

     Federal Rule of Civil Procedure ("Rule") 37 allows a court to enter an order compelling

parties to comply with discovery requests.  See Rule 37(a) (2007).   In turn, under Rule 26(b)(3),

three conditions must be satisfied in order to establish work product protection.  The material in

---

[3] With respect to TIG's Redaction Log, which is not numbered, these entries, at a minimum, include the 28 highlighted documents appearing as Exhibit N.  With respect to TIG's Privilege Log, these entries, at the minimum, include entries 35-90, 94-103, 105-139, 141-270; 274-279. See Abrams Dec., Ex. M and N.

[4] As this Court is aware, TIG has placed its commutations at issue in this dispute by attempting to defend the reinsurance claim on the grounds that AIU's purported late notice deprived TIG of extracting greater consideration in commutations with TIG's reinsurers.

[5] These documents would appear to include entries 1-34, 91-93, 104, 140, 271-273 appearing in the Privilege Log and certain entries on the Redaction Log, including documents bates labeled 11770 - 11772.  See Abrams Dec., Exs. M and N.

question must: (1) be a document or tangible thing, (2) <u>which was prepared in anticipation of</u> <u>litigation</u>, and (3) was prepared by or for a party, or by or for its representative.  <u>See Compagnie</u> <u>Francaise d' Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.</u>, 105 F.R.D. 16, 41 (S.D.N.Y. 1984) (emphasis added).  Under New York law,[6] the attorney-client privilege protects confidential communications between attorney and client relating to legal advice.  N.Y. C.P.L.R. § 4503(a); <u>Rossi v. Blue Cross & Blue Shield</u>, 73 N.Y.2d 588, 592, 540 N.E.2d 703, 705, 542 N.Y.S.2d 508, 510 (1989).  The burden is on the party asserting that the material is protected to show it was prepared in anticipation of litigation or that it was attorney client privileged.  <u>See Compagnie Francaise</u>, 105 F.R.D. at 41 (citations omitted); <u>OneBeacon Ins. Co.</u> <u>v. Forman Int'l, Ltd.</u>, 2006 U.S. Dist. LEXIS 90970, *9-10 (S.D.N.Y. Dec. 13, 2006) ("When a party seeks to compel discovery of purportedly privileged information, the burden of establishing the existence of an attorney-client privilege or work product protection rests with the party asserting the privilege/protection.") (citations omitted).

I.    **AIU IS ENTITLED TO THE PRODUCTION**
      **OF TIG'S CLAIMS FILES, INSPECTION**
      **FILES AND COMMUTATION DOCUMENTS**

      A.    **Case Law in this Jurisdiction and**
            **Others Does Not Allow TIG to Cloak**
            **the Disputed Documents in Privilege**

      As many courts have noted, it is sometimes difficult to determine whether documents prepared by an insurance company or its representatives are entitled to work-product protection because insurers are in the business of investigating and adjusting claims.  <u>See SEC v. Credit</u> <u>Bancorp, Ltd.</u>, 2002 U.S. Dist. LEXIS 627, * 5 (S.D.N.Y. January 16, 2002) (<u>citing Arkwright</u> <u>Mut. Ins. Co. v. National Union Fire Ins. Co.</u>, 1994 U.S. Dist. LEXIS 13216 (S.D.N.Y.

---

[6] In federal diversity actions such as this one, issues of attorney-client privilege are governed by New York law, the state which supplies the substantive law for this case.  <u>See Weber v. Paduano</u>, 2003 U. S. Dist. LEXIS 858, * 27 (S.D.N.Y. 2003) (citations omitted); <u>see also</u> AIU's Opposition to TIG' Motion to Compel at n. 8.

September 16, 1994)). Accordingly, courts in this jurisdiction, and federal courts in other jurisdictions, have developed a number of factors to facilitate their analysis.

First, the Second Circuit has adopted a "causation" test for determining whether a document was prepared in anticipation of litigation. SEC v. Credit Bancorp, 2002 U.S. Dist. LEXIS 627 at *6 (citing United States v. Adlman, 134 F.3d 1194, 1202-1203 (2d Cir. 1998)). Thus, the party seeking to withhold a document must demonstrate that the document it seeks to withhold was created "because of" the anticipation of litigation. See id. Accordingly, documents prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation do not qualify for protection. See id.

Second, courts frequently presume that investigative reports prepared by or for an insurer prior to a coverage decision are prepared in the ordinary course of the insurer's business and are not afforded work-product protection. Id. (citations omitted). In fact, as one court held:

> An insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to claims made on it by its insured.

See Pete Rinaldi's Fast Foods, Inc. v. Great American Insurance Cos., 123 F.R.D. 198, 202 (M.D.N.C. 1988) (emphasis added) (cited with approval by Mount Vernon Fire Insurance Co. v. Try 3 Building Services, Inc., 1998 U.S. Dist. LEXIS 16183, * 18 (S.D.N.Y. Oct. 14, 1998)); see also Weber v. Paduano, 2003 U.S. Dist. LEXIS 858, * 11 (S.D.N.Y. Jan. 14, 2003) (courts presented with work product disputes must be careful not to hold that documents are protected from discovery simply because of a party's "ritualistic incantation" that all documents created by insurers are made in preparation of litigation).

Third, in evaluating a claim of work product by an insurer, courts have developed another useful presumption that has been applied in the reinsurance context. That is, if an insurer or

reinsurer has actually declined the claim, documents subsequently drafted were created in anticipation of litigation; on the other hand, if the claim has not yet been rejected, "the documents are part of the claim investigation process and are not work product." See Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co., 1994 U.S. Dist. LEXIS 17768, at * 5 (S.D.N.Y. Dec. 13, 1994); see also Tudor Insurance Co. v. McKenna Associates, 2003 U.S. Dist. LEXIS 10853, * 8 (S.D.N.Y. June 25, 2003) ("An insurer's decision to decline coverage is typically the point at which the ordinary course of business ends and anticipation of litigation begins"). Moreover, if a reinsurer or insurer argues that it acted in anticipation of litigation before it formally denied the claim, there is a "strong presumption" that the documents are not created in anticipation of litigation and the party asserting the privilege bears the burden of persuasion by presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate. See Arkwright, 1994 U.S. Dist. LEXIS 17768, at * 5; Rinaldi, 123 F.R.D. at 203.

Fourth, it is well settled that "simply because an attorney participated in and supervised this process does not transform investigative documents into work product." See US Fidelity & Guar. Co. v. Braspetro Oil Services Co., 2000 U. S. Dist. LEXIS 7939, *44 (S.D.N.Y. June 7, 2000); see also Adlman, 134 F.3d at 1202 (where notes would have been prepared in essentially similar form irrespective of the possibility of litigation, they are not protected work product).[7] Thus, in the reinsurance context, New York courts have refused to designate documents as

---

[7] cf. Mount Vernon Fire Insurance Co. v. Platt, 1999 U.S. Dist. LEXIS 15984, at *9-10 (S.D.N.Y. Oct. 15, 1999)(finding that investigator's report was not protected by work product privilege because the insurance company would plainly have had to conduct a similar investigation in evaluating the claim, even in the absence of litigation); In re Kidder, Peabody Securities Litigation, 168 F.R.D. 459, 465-466 (S.D.N.Y. 1996) (no work product privilege attached to reports generated in internal investigation by outside counsel because court found that company would have hired outside counsel to perform the investigation even if no litigation had been threatened at the time, and the notes recounting witness statements would have been necessary to serve the business needs related to the investigation, even absent the threat of litigation); Westhemeco Ltd. v. New Hampshire Ins. Co., 82 F.R.D. 702, 708-709 (S.D.N.Y. 1979) (denying work product protection to documents from insurance investigation where insurer had not determined coverage position, was continuing negotiations, and based on these facts, plaintiff was cooperating with insurer).

privileged merely because inside or outside counsel happened to be involved in their preparation.
See Aetna Cas. & Surety Co. v. Certain Underwriters at Lloyd's, 263 A.D.2d 367, 692 N.Y.S. 2d
384 (1st Dep't 1999) (construing New York law).  To the contrary, the materials in question must
be "uniquely the product[s] of a lawyer's learning and professional skills."  Id. at 368, 692
N.Y.S.2d at 386.

      Finally, the St. Paul Reinsurance Co. case, which has been widely relied upon by other
federal district courts, provides an instructive example of the difficulties an insurer faces, where,
as here, it relies on the work product doctrine and attorney-client privilege to shield claims or
investigation documents.  In that matter, the insurer retained an attorney to investigate and
determine whether its insured had made material misrepresentations in the application process,
thereby allowing the insurer to potentially assert a claim of rescission.  See St. Paul Reinsurance
Co., Ltd. v. Commercial Financial Corp., 197 F.R.D. 620 (N.D. Iowa 2000).  Rejecting the
insurer's work-product doctrine claims, the St. Paul Court held that its analysis turned on
whether and when a "shift" occurred in the claims investigation "from investigation in the
ordinary course of the insurer's business to preparation for or anticipation of litigation."  Id. at
638.  The Court then found that it was unable to decipher such a "shift" because the parties had
not staked out their respective positions on the claim (i.e., presumably denying the claim on the
basis of rescission).  Id.

      Thus, the Court ordered production of the disputed materials, notwithstanding the facts
that:  (i) the insurer's attorney had begun to consider rescission as a legal defense as a result of
the alleged non-disclosure; (ii) the insurer had hired outside counsel, and (iii) the insurer had
determined its intent to litigate the claim.  Id.  The Court also indicated that even after the parties
had staked out their positions, work product doctrine protection still need not be applicable

especially if the parties were exploring amicable resolution of the claim. <u>Id.</u> Finally, the Court

held that the attorney-client privilege did not apply either for many of the same reasons: <u>i.e.,</u>

"the attorney was acting in his capacity as a claims investigator or claims adjustor, not as an

attorney."[8] <u>Id.</u> at 643.

**B.    TIG Should be Compelled to**
**<u>Produce its Audit and Claims Files</u>**

Based on the foregoing authorities, TIG should be compelled to produce the disputed

claims and inspection materials.

At the outset, it appears that TIG is attempting to do exactly what the <u>Rinaldi's Fast</u>

<u>Foods</u> Court forbade: to cloak vast portions of its reinsurance claims file in privilege.  As set

forth above, TIG has withheld roughly 265 reinsurance claims and audit related documents

created in a six month period while producing to AIU virtually no documents of substance from

its claims and audit files.  TIG may not sanitize its reinsurance claims file in this manner,

especially since it has never "staked" out its position by disclaiming reinsurance coverage.

Indeed, at least up until early July, 2007, TIG communicated to AIU that it was requesting an

audit of AIU's files, not pursuant to any rights of discovery (as it had none at that point) but in

the ordinary course of business (<u>see</u> infra, pp. 3-4).  It was on this basis that AIU allowed an

inspection to occur that month.

There are numerous other problems with TIG's approach.  For instance, many of the

entries that TIG asserts are "privileged" were not even drafted by attorneys (or even distributed

---

[8] <u>See also</u> <u>Employers Reinsurance Corp. v. Mid-Continent Cas. Co.</u>, 2002 U.S. Dist. LEXIS 9636 (D. Kan. April 18, 2002) (ordering the production of memos prepared by in-house counsel where privilege log did not establish why the materials were entitled to applicable privileges), <u>affirmed in part, reversed in part and remanded on other grounds by, Employers Reinsurance Corp. v. Mid-Continent Cas. Co.</u>, 358 F.3d 757 (10th Cir. 2004); <u>Medical Protective Co. v. Bubenik</u>, 2007 U.S. Dist. LEXIS 76382, *10 (E.D. Mo. Oct. 15, 2007) ("The test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation").

to attorneys).[9] Numerous other entries reflect "notes" prepared by TIG's reinsurance claims handlers (who are not attorneys) but not distributed to anyone, yet these documents were withheld on the basis that they were prepared "at the direction of counsel."  See infra at n. 9. And even where attorneys were involved in the communication, there is no indication that they were acting in a manner that "uniquely" represented "the product[s] of a lawyer's learning and professional skills" as opposed to in a claims or investigatory function.[10]

Although TIG gamely attempts to paper over this distinction by: (i) including the word "legal" or "at the direction of counsel" in many of its privileged entries; and (ii) designating the majority of withheld documents from its reinsurance claims file as attorney-client privileged too, these attempts to confuse the issue should not be credited.  The simple fact is that many of these entries may not involve actual legal communications from attorneys to clients or vice versa.  In sum, AIU has no ability to determine from TIG's Privilege and Redaction Logs, which, if any, of TIG's reinsurance claims documents are truly privileged.

In any case, it would appear that few of TIG's "privileged" entries deserve these protections.  During the reinsurance claims handling process as well as during the inspection of AIU's records, TIG made no effort to indicate that it was operating under the direction of counsel, as TIG now contends.  See Abrams Dec., Exs. D and E.  Indeed, TIG's pre-inspection conduct suggested the opposite conclusion insofar as TIG sought an inspection of AIU's records pursuant to its purported right to inspect reinsurance claims files under the Reinsurance Agreements.  See Abrams Dec., Ex. G at TIG 000005.  Having suggested that the inspection was

---

[9] See, e.g. Abrams Dec., Ex. N (Redaction Log highlighted portions); Ex. M (Privilege Log entries 86-89, 92-98, 103, 105-111, 127, 130-136, 140-141, 143-145, 149, 150-154, 156, 158-161, 163-166, 171-177, 181, 204, 208-210, 212, 214, 217, 225, 229, 233, 235, 237, 240-241, 243, 270, 274-277, 279).  This list is not intended to be exhaustive.

[10] See, e.g., Abrams Dec. Ex. M (Privilege Log entries 35-83, 91, 99, 100, 101, 102, 104, 112-126, 128-129, 138, 142, 146-148, 155, 162, 170, 201-203, 207, 211, 215-216, 220-223, 226-227, 230-232, 234, 236, 238, 244, 250-252, 261, 264, 266, 271).  This list is not intended to be exhaustive either.

to be conducted in the ordinary course of business, TIG should not be permitted to simultaneously withhold the production of documents on the basis of applicable privileges.

Finally, as set forth above, TIG: (i) never indicated to AIU during the reinsurance claims handling process that it intended to deny the reinsurance claim at issue; (ii) never has represented that any of its reinsurance analyses or notes were created for the very purpose of this litigation as required by case law, or; (iii) never has demonstrated that the documents claimed as "privileged" were anything more than standard reinsurance claims materials (regardless of who actually prepared these documents).

### C.    TIG Should be Compelled to Produce its Commutation Files

Finally, to the extent TIG is designating its actual business analysis regarding commutations as privileged and confidential, AIU is entitled to such materials too. AIU concedes that if legal advice was being provided by attorneys – for instance, if attorneys were providing analysis as to the legal merits of a particular commutation clause – such materials would be privileged. On the other hand, if TIG is asserting that its non-legal commutations analysis (i.e., lawyers performing non-legal business functions, which may include determination of which contracts to commute, the price of the commutation) is privileged, then these documents must be produced. It is unclear from TIG's Privilege Log whether the 42 commutation documents that TIG is withholding were withheld on the former or latter grounds. Given the absence of such materials in TIG's production, AIU seeks the Court's assistance in compelling the production of such materials.

## **CONCLUSION**

For all of the foregoing reasons, this Court should grant AIU's motion to compel in its entirety.

Dated: May 6, 2008
      New York, New York

WOLLMUTH MAHER & DEUTSCH LLP

By: _____
      William A. Maher (WM-9470)
      Marc L. Abrams (MA-6600)

500 Fifth Avenue
New York, New York 10110
(212) 382-3300

*Attorneys for Plaintiff AIU Insurance Company*

14