# EXHIBIT A

William A. Maher (WM-9470)
Marc L. Abrams (MA-6600)
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
(212) 382-3300

Attorneys for Plaintiff AIU Insurance Company



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

AIU INSURANCE COMPANY,

                      Plaintiff,

        -against-

TIG INSURANCE COMPANY,

                      Defendant.

------------------------------------------------------------- x

**ECF DOCUMENT**

Civil Action No. 07 CIV 7052

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff AIU Insurance Company ("AIU"), by and through its undersigned

attorneys, Wollmuth Maher & Deutsch LLP, for its Complaint against defendant TIG

Insurance Company ("TIG") alleges, upon knowledge as to itself and its own acts and

upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.      This action seeks damages and other relief in connection with TIG's

failure to pay amounts due in accordance with certain facultative reinsurance agreements

entered between AIU and International Insurance Company ("IIC"); in or around 2003,

IIC merged into TIG.  Under these reinsurance agreements, IIC agreed to indemnify AIU

for payments made by AIU pursuant to certain underlying umbrella insurance policies that AIU issued to its insured, Foster Wheeler Corporation, and its insured's affiliates (collectively, "Foster Wheeler").

2.      Although AIU paid significant reinsurance premiums to IIC in return for this reinsurance protection, and despite the fact that the reinsurance agreements give rise to legally binding obligations, TIG, as the successor to IIC, has wrongfully refused to pay what is due and owing under these agreements.  Accordingly, AIU brings this action for breach of contract and declaratory relief in order to recover the damages and other relief to which it is entitled as a result of TIG's conduct.

## THE PARTIES

3.      Plaintiff AIU is an insurance company that is organized under the laws of the State of New York and maintains its principal place of business in New York.

4.      Defendant TIG is an insurance company that is organized under the laws of the State of California and maintains its principal place of business in Texas.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because AIU and TIG are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over TIG because:  (i) the operative reinsurance agreements were issued in New York; (ii) these reinsurance agreements were issued on the paper of IIC's corporate parent, Crum & Forster Insurance Companies, which also was located in New York; (iii) the reinsurance agreements were subsequently distributed to AIU in New York; (iv) TIG has transacted and continues to transact

2

substantial business in New York; and (v) TIG is an insurance company licensed by the
New York State Department of Insurance.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) in that a
substantial part of the events or omissions giving rise to the claims occurred in this
district.

## BACKGROUND

8.    Reinsurance is a type of insurance in which an insurer transfers to a
reinsurer some or all of the risk that the insurer has assumed under one or more insurance
policies. The reinsurer is paid a premium in accordance with the terms of the reinsurance
agreement. The original insurer is known as the "cedent" or "ceding insurer" and it is
said to "cede" risk, and premium, to the reinsurer. In this case, AIU, as cedent,
transferred certain risks discussed below to IIC, as reinsurer. When IIC subsequently
merged into TIG, these risks were assumed by TIG.

9.    The reinsurance that IIC provided to AIU is referred to as "facultative
reinsurance," which is a type of reinsurance coverage that applies to a single policy or
risk and is negotiated on an individual basis.

### The Relevant Agreements

10.    Between 1978 and 1982, as well as in certain other years not relevant to
this dispute, Liberty Mutual Insurance Company and its affiliates ("Liberty Mutual")
issued primary general liability insurance policies to Foster Wheeler (the "Primary
Policies") in the amount of $1 million per occurrence and in the aggregate.

11.    Sitting directly above certain of the Primary Policies were four Umbrella
Liability Policies that AIU issued to Foster Wheeler bearing policy numbers 75-100789,

3

75-101149, 75-101988, and 75-102083 (collectively, the "Umbrella Policies"). The Umbrella Policies were effective from October 1, 1978 until October 1, 1982 and contained limits of $20 million per occurrence and in the aggregate for claims in excess of Liberty Mutual's $1 million limits under the Primary Policies.

12.    In order to reinsure its exposure under the Umbrella Policies, AIU entered into four facultative reinsurance agreements with IIC covering the same time periods as the Umbrella Policies: i.e., from October 1, 1978 until October 1, 1982. These reinsurance agreements included: (i) certificate numbers CFR-0062, CFR-0063, and CFR-0064, covering the period from October 1, 1978 until October 1, 1979; (ii) certificate numbers CFR-0071, CFR-0072, and CFR-0073, covering the period from October 1, 1979 until October 1, 1980; (iii) certificate numbers CFR-0085, CFR-0086, and CFR-0087, covering the period from October 1, 1980 until October 1, 1981; and (iv) an additional certificate covering the period from October 1, 1981 until October 1, 1982 (collectively, the "Reinsurance Agreements").

13.    Under the Reinsurance Agreements, IIC agreed to indemnify AIU for a portion of losses and loss expenses that AIU incurred under the Umbrella Policies.

14.    More specifically, in connection with Umbrella Policy 75-100789, IIC agreed inter alia, to pay with respect to "each occurrence," a 60 percent share of AIU's first $5 million of exposure, a 31.28 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; in connection with Umbrella Policy 75-101149, IIC agreed inter alia, to pay with respect to "each occurrence," a 70 percent share of AIU's first $5 million of exposure, a 25.78 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10

million of exposure; in connection with Umbrella Policy 75-101988, IIC agreed, <u>inter</u> <u>alia</u>, to pay with respect to "each occurrence," an 80 percent share of AIU first $5 million of exposure, a 35 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; and with respect to Umbrella Policy 75-102083, IIC agreed, <u>inter alia</u>, to pay with respect to "each occurrence" a 25 percent share of AIU's exposure of $10 million in excess of $10 million.

15.    The Reinsurance Agreements provide that "[a]ll claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, with respect to business accepted on an excess of loss basis and in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability with respect to business accepted on a pro rata basis, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award."

16.    The Reinsurance Agreements also provide that "[p]ayment of its proportion of loss and expense paid by the Company will be made by the Reinsurer to the Company promptly following receipt of proof of loss."

17.    In exchange for its agreement to reinsure AIU in accordance with the terms of the Reinsurance Agreements, IIC accepted substantial premium payments from AIU.

## The Underlying Claims

18.     Foster Wheeler was a manufacturer and installer of boilers and other steam generating and heat exchange equipment for various utilities and other industries. Since the late 1970s, hundreds of thousands of asbestos claims have been asserted against Foster Wheeler.

19.     Foster Wheeler was engaged in coverage litigation with Liberty Mutual (and various of its other excess and umbrella insurers, including AIU as to the coverage obligations under the Primary Policies (as well as the coverage obligations under various other primary, excess and umbrella policies) relating to asbestos claims asserted against it. In or around June 2003, Foster Wheeler and Liberty Mutual ultimately settled their respective claims against one another, thereby exhausting coverage under the Primary Policies. Foster Wheeler then sought insurance payments from certain excess and umbrella insurers, including AIU, in the action entitled Foster Wheeler LLC v. Affiliated FM Ins. Co., et al, Index No. 60777/01 (Supreme Court, New York County) (the "Coverage Action").

20.     After negotiations between Foster Wheeler, AIU, and certain of AIU's corporate affiliates, AIU and certain of its corporate affiliates reached a settlement with Foster Wheeler and entered into a confidential settlement agreement dated as of June 30, 2006 (the "Settlement Agreement"). Thereafter, AIU and certain of its corporate affiliates were dismissed from the Coverage Action.

21.     In accordance with the terms of the Settlement Agreement, AIU has made substantial payments to Foster Wheeler under the Umbrella Policies.

22.     AIU has provided TIG with information related to the coverage claims
asserted by Foster Wheeler and the Settlement Agreement.

### The Reinsurance Billings

23.     On or around March 26, 2007, AIU submitted a reinsurance billing and
proofs of loss to RiverStone Reinsurance Services LLC ("RiverStone"), the entity that
administers reinsurance claims on behalf of TIG.

24.     AIU has subsequently submitted additional billings and proofs of loss to
RiverStone, including correspondence dated June 22, 2007, which indicated that as of
that date, TIG owed AIU approximately $12,300,454 in reinsurance billings submitted
under the Reinsurance Agreements in connection with payments AIU has made under the
Settlement Agreement.

25.     Despite AIU's requests for payment, and the fact that AIU has fulfilled all
of its obligations under the Reinsurance Agreements, TIG has failed to fulfill its
obligation under the Reinsurance Agreements to pay the billed amounts which are due
and owing under the terms of the Reinsurance Agreements.

### COUNT I
### (Breach of Contract)

26.     AIU repeats and realleges the allegations set forth in paragraphs 1 through
25 as though fully set forth herein.

27.     Under the Reinsurance Agreements, TIG, as the successor to IIC, has an
obligation and a duty to reimburse AIU for its share of losses and loss expenses in
connection with the Umbrella Policies issued to Foster Wheeler.

28.     By failing to pay its share of AIU's losses and loss expenses, TIG has breached its obligation and duty to reinsure and indemnify AIU, as required by the Reinsurance Agreements.

29.     As a result of TIG's breach of the Reinsurance Agreements, AIU has suffered damages in the amount of at least $12,300,454 plus interest.

## COUNT II
### (Declaratory Relief)

30.     AIU repeats and realleges the allegations set forth in paragraphs 1 through 29 as though fully set forth herein.

31.     TIG has failed to acknowledge its liability under the Reinsurance Agreements for the losses and loss expenses submitted to it by AIU in connection with the Settlement Agreement.

32.     There is an actual controversy between AIU and TIG as to their respective rights and liabilities under the Reinsurance Agreements.

33.     AIU is entitled to a declaration, in accordance with 28 U.S.C. § 2201, that the Reinsurance Agreements are in full force and effect and that TIG is obligated to make timely payments to AIU in such amounts as have already become due and may become due in the future insofar as claims are ceded under the Reinsurance Agreements in connection with the Settlement Agreement.


WHEREFORE, Plaintiff AIU respectfully requests that this Court enter judgment in its favor, and against TIG, as follows:

A.     A judgment that TIG has breached the Reinsurance Agreements;

B.     Compensatory damages in the total amount of $12,300,454, plus interest;

C.    A declaration that TIG must reimburse AIU for its share of current and
      future losses and loss expenses under the Reinsurance Agreements in
      connection with payments under the Settlement Agreement;

D.    Reasonable costs and fees incurred in bringing this action; and

E.    Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 7, 2007
       New York, New York

**WOLLMUTH MAHER & DEUTSCH LLP**

By: _____
    William A. Maher (WM-9470)
    Marc L. Abrams (MA-6600)

500 Fifth Avenue
New York, NY 10110
(212) 382-3300

Attorneys for Plaintiff AIU Insurance Company

9

# EXHIBIT B

Sean Thomas Keely (SK-8593)
LOVELLS LLP
590 Madison Avenue
New York, New York 10022
(212) 909-0600
sean.keely@lovells.com

James I. Rubin (*pro hac vice*)
Catherine E. Isely (*pro hac vice*)
Julie Rodriguez Aldort (*pro hac vice*)
BUTLER RUBIN SALTARELLI & BOYD
70 W. Madison, Suite 1800
Chicago, Illinois 60602
(312) 444-9660

Attorneys for Defendant
TIG Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
AIU INSURANCE COMPANY,

                                    Plaintiff,                          Case No. 07-CV-7052 (SHS)

         -against-

TIG INSURANCE COMPANY,

                                    Defendant.

-------------------------------------------------------------x

## FIRST AMENDED ANSWER

Defendant TIG INSURANCE COMPANY, for its First Amended Answer states as

follows:

### Nature of the Action

1.       This action seeks damages and other relief in connection with TIG's failure to pay
amounts due in accordance with certain facultative reinsurance agreements entered between AIU
and International Insurance Company ("IIC"); in or around 2003, IIC merged into TIG.  Under

these reinsurance agreements, IIC agreed to indemnify AIU for payments made by AIU pursuant to certain underlying umbrella insurance policies that AIU issued to its insured, Foster Wheeler Corporation, and its insured's affiliates (collectively, "Foster Wheeler").

ANSWER:     TIG admits that the Complaint purports to seek damages and other relief. TIG admits that AIU and IIC entered into certain facultative reinsurance agreements, but denies that TIG has failed to pay amounts in fact due under those facultative reinsurance agreements. TIG admits that, in or around 2003, IIC merged into TIG. TIG admits that, pursuant to the terms and conditions of certain facultative reinsurance agreements, IIC agreed to reinsure AIU with respect to certain underlying umbrella insurance policies that AIU issued to its insured, Foster Wheeler Corporation, and its insured's affiliates. TIG denies any remaining allegations of Paragraph 1 not specifically admitted herein.

2.     Although AIU paid significant reinsurance premiums to IIC in return for this reinsurance protection, and despite the fact that the reinsurance agreements give rise to legally binding obligations, TIG, as the successor to IIC, has wrongfully refused to pay what is due and owing under these agreements. Accordingly, AIU brings this action for breach of contract and declaratory relief in order to recover the damages and other relief to which it is entitled as a result of TIG's conduct.

ANSWER:     TIG admits that AIU paid reinsurance premiums to IIC for certain facultative reinsurance agreements and admits that the reinsurance agreements give rise to legally binding obligations by both parties, but denies that AIU has met its legally binding obligations under the agreements. TIG admits that TIG is the successor to IIC with respect to the facultative reinsurance agreements, but denies that TIG has wrongfully refused to pay sums allegedly due and owing under these agreements. TIG admits that AIU's Complaint is styled as an action for breach of contract and declaratory relief, but denies that AIU is entitled to recover damages and other relief as a result of TIG's conduct. TIG denies any remaining allegations of Paragraph 2 not specifically admitted herein.

2

## The Parties

3.      Plaintiff AIU is an insurance company that is organized under the laws of the
State of New York and maintains its principal place of business in New York.

ANSWER:      TIG is without knowledge or information sufficient to form a belief as to the truth

of Paragraph 3, and therefore denies same.


4.      Defendant TIG is an insurance company that is organized under the laws of the
State of California and maintains its principal place of business in Texas.

ANSWER:      TIG admits that it is an insurance company that is organized under the laws of the

State of California.  TIG denies that it maintains its principal place of business in Texas.  Further

answering, TIG states that it maintains its principal place of business in New Hampshire.


## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C.
§ 1332 because AIU and TIG are citizens of different states and the amount in controversy
exceeds $75,000, exclusive of interest and costs.

ANSWER:      TIG admits that the amount in controversy exceeds $75,000, exclusive of interest

and costs.  TIG is without knowledge or information sufficient to form a belief as to the truth of

the remaining allegations of Paragraph 5, and therefore denies same.


6.      This Court has personal jurisdiction over TIG because:  (1) the operative
reinsurance agreements were issued in New York; (ii) these reinsurance agreements were issued
on the paper of IIC's corporate parent, Crum & Forster Insurance Companies, which also was
located in New York; (iii) the reinsurance agreements were subsequently distributed to AIU in
New York; (iv) TIG has transacted and continues to transact substantial business in New York;
and (v) TIG is an insurance company licensed by the New York State Department of Insurance.

ANSWER:      TIG admits that this Court has personal jurisdiction over TIG, that TIG has

transacted business in New York and that TIG is an insurance company licensed by the New

York State Department of Insurance.  TIG denies that TIG continues to transact business in New

3

York, and further denies that the operative reinsurance agreements were issued in New York or

that the agreements were issued "on the paper of IIC's corporate parent, Crum & Forster

Insurance Companies." TIG is without knowledge or information sufficient to form a belief as to

the truth of the allegation that "the reinsurance agreements were subsequently distributed to AIU

in New York," and therefore denies same. TIG denies any further allegations of Paragraph 6 not

specifically admitted herein.

     7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) in that a
substantial part of the events or omissions giving rise to the claims occurred in this district.

ANSWER:    TIG admits that venue is proper pursuant to 28 U.S.C. § 1391 (a) (1), but denies

that venue is proper pursuant to 28 U.S.C. § 1391 (a) (2) and further denies that a substantial part

of the events or omissions giving rise to the claims occurred in this district. TIG denies any

further allegations of Paragraph 7 not specifically admitted herein.

### Background

     8.     Reinsurance is a type of insurance in which an insurer transfers to a reinsurer
some or all of the risk that the insurer has assumed under one or more insurance policies. The
reinsurer is paid a premium in accordance with the terms of the reinsurance agreement. The
original insurer is known as the "cedent" or "ceding insurer" and it is said to "cede" risk, and
premium, to the reinsurer. In this case, AIU, as cedent, transferred certain risks discussed below
to IIC, as reinsurer. When IIC subsequently merged into TIG, these risks were assumed by TIG.

ANSWER:    TIG admits the first two sentences of Paragraph 8 and the third sentence of

Paragraph 8 except for the phrase "and is said to 'cede' risk and premium to the reinsurer." TIG

admits that IIC merged into TIG. TIG denies any further allegations of Paragraph 8 not

specifically admitted herein.

9.    The reinsurance that IIC provided to AIU is referred to as "facultative reinsurance," which is a type of reinsurance coverage that applies to a single policy or risk and is negotiated on an individual basis.

ANSWER:    Admitted.

### The Relevant Agreements

10.    Between 1978 and 1982, as well as in certain other years not relevant to this dispute, Liberty Mutual Insurance Company and its affiliates ("Liberty Mutual") issued primary general liability insurance policies to Foster Wheeler (the "Primary Policies") in the amount of $1 million per occurrence and in the aggregate.

ANSWER:    TIG admits that, between 1978 and 1982, Liberty Mutual Insurance Company and

its affiliates issued primary general liability insurance policies to Foster Wheeler in the amount

of $1 million per occurrence and in the aggregate where applicable.  TIG is without knowledge

or information sufficient to form a belief as to the truth of the allegation as to "certain other years

not relevant to this dispute," and therefore denies same.  TIG denies any further allegations of

Paragraph 10 not specifically admitted herein.


11.    Sitting directly above certain of the Primary Policies were four Umbrella Liability Policies that AIU issued to Foster Wheeler bearing policy numbers 75-100789, 75-101149, 75-101988, and 75-102083 (collectively, the "Umbrella Policies").  The Umbrella Policies were effective from October 1, 1978 until October 1, 1982 and contained limits of $20 million per occurrence and in the aggregate for claims in excess of Liberty Mutual's $1 million limits under the Primary Policies.

ANSWER:    TIG admits that sitting directly above certain of the Primary Policies were three

umbrella liability policies that AIU issued to Foster Wheeler bearing policy numbers 75-100789,

75-101149 and 75-101988 (collectively "Certain Umbrella Policies"), in effect from October 1,

1978 until October 1, 1981, with limits of $20 million per occurrence and in the aggregate where

applicable for claims in excess of Liberty Mutual's $1 million limits under the Primary Policies.

TIG is without knowledge or information sufficient to form a belief as to the truth of the

allegations as to Policy No. 75-102083, and therefore denies same. TIG denies any further

allegations of Paragraph 11 not specifically admitted herein.

12.    In order to reinsure its exposure under the Umbrella Policies, AIU entered into four facultative reinsurance agreements with IIC covering the same time periods as the Umbrella Policies: i.e., from October 1, 1978 until October 1, 1982. These reinsurance agreements included: (1) certificate numbers CFR-0062, CFR-0063, and CFR-0064, covering the period from October 1, 1978 until October 1, 1979; (ii) certificate numbers CFR-0071, CFR-0072, and CFR-0073, covering the period from October 1, 1979 until October 1, 1980; (iii) certificate numbers CFR-0085, CFR-0086, and CFR-0087, covering the period from October 1, 1980 until October 1, 1981; and (iv) an additional certificate covering the period from October 1, 1981 until October 1, 1982 (collectively, the "Reinsurance Agreements").

ANSWER:    TIG is without knowledge with respect to AIU's intentions and, therefore, denies

Paragraph 12, except that TIG admits that AIU and TIG entered into certain reinsurance

agreements, including certificate numbers CFR-0062, CFR-0063, and CFR-0064, covering the

period from October 1, 1978 until October 1, 1979; (ii) certificate numbers CFR-0071, CFR-

0072, and CFR-0073, covering the period from October 1, 1979 until October 1, 1980; and (iii)

certificate numbers CFR-0085, CFR-0086, and CFR-0087, covering the period from October 1,

1980 until October 1, 1981 (collectively "Certain Reinsurance Agreements"). TIG denies that

the parties' reinsurance agreements include "an additional certificate covering the period from

October 1, 1981 until October 1, 1982." TIG denies any further allegations of Paragraph 12 not

specifically admitted herein.

13.    Under the Reinsurance Agreements, IIC agreed to indemnify AIU for a portion of losses and loss expenses that AIU incurred under the Umbrella Policies.

ANSWER:    TIG admits that, subject to the terms, conditions and exclusions of the Certain

Reinsurance Agreements and the implied terms, including the duty of utmost good faith, IIC

agreed to reinsure AIU for a portion of losses and loss expenses that AIU incurred under the

Certain Umbrella Policies. TIG denies any further allegations of Paragraph 13 not specifically admitted herein.

14.     More specifically, in connection with Umbrella Policy 75-100789, IIC agreed inter alia, to pay with respect to "each occurrence," a 60 percent share of AIU's first $5 million of exposure, a 31.28 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; in connection with Umbrella Policy 75-101149, IIC agreed inter alia, to pay with respect to "each occurrence," a 70 percent share of AIU's first $5 million of exposure, a 25.78 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; in connection with Umbrella Policy 75-101988, IIC agreed, inter alia, to pay with respect to "each occurrence," an 80 percent share of AIU first $5 million of exposure, a 35 percent share of AIU's next $5 million of exposure, and a 25 percent share of AIU's next $10 million of exposure; and with respect to Umbrella Policy 75-102083, IIC agreed, inter alia, to pay with respect to "each occurrence" a 25 percent share of AIU's exposure of $10 million in excess of $10 million.

ANSWER:     TIG admits that, subject to the terms, conditions and exclusions of the Certain

Reinsurance Agreements and the implied terms, including the duty of utmost good faith, IIC

agreed to reinsure:  (i) Umbrella Policy 75-100789 for $3 million part of $5 million for AIU's

first $5 million of exposure, $1.5909 million part of $5 million for AIU's $5 million excess of $5

million exposure layer, and $2.5 million part of $10 million for AIU's $10 million excess of $10

million exposure layer; (ii) Umbrella Policy 75-101149 for $3 million part of $5 million for

AIU's first $5 million of exposure, $1.289150 million part of $5 million for AIU's $5 million

excess of $5 million exposure layer, and $2.5 million part of $10 million for AIU's $10 million

excess of $10 million exposure layer; and (iii) Umbrella Policy 75-101989 for $4 million part of

$5 million for AIU's first $5 million of exposure, $1.75 million part of $5 million for AIU's $5

million excess of $5 million exposure layer, and $2.5 million part of $10 million for AIU's $10

million excess of $10 million exposure layer.  TIG denies that it agreed to reinsure Umbrella

Policy 75-102083.  TIG denies any further allegations of Paragraph 14 not specifically admitted

herein.

7

15.    The Reinsurance Agreements provide that "[a]ll claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, with respect to business accepted on an excess of loss basis and in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability with respect to business accepted on a pro rata basis, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award."

ANSWER:    Admitted as to the Certain Reinsurance Agreements only.  TIG denies any further

allegations of Paragraph 15 not specifically admitted herein.


16.    The Reinsurance Agreements also provide that "[p]ayment of its proportion of loss and expense paid by the Company will be made by the Reinsurer to the Company promptly following receipt of proof of loss."

ANSWER:    Admitted as to the Certain Reinsurance Agreements only.  TIG denies any further

allegations of Paragraph 16 not specifically admitted herein.


17.    In exchange for its agreement to reinsure AIU in accordance with the terms of the Reinsurance Agreements, IIC accepted substantial premium payments from AIU.

ANSWER:    TIG admits that, in exchange for its agreement to reinsure AIU in accordance with

the terms, conditions and exclusions of the Certain Reinsurance Agreements, as well as the

implied terms, including the duty of utmost good faith, IIC accepted premium payments from

AIU.  TIG denies any further allegations of Paragraph 17 not specifically admitted herein.


## The Underlying Claims

18.    Foster Wheeler was a manufacturer and installer of boilers and other steam generating and heat exchange equipment for various utilities and other industries.  Since the late 1970s, hundreds of thousands of asbestos claims have been asserted against Foster Wheeler.

ANSWER:    TIG admits that, in 2007, TIG first received notice from AIU that included

information from AIU that Foster Wheeler was a manufacturer and installer of boilers and other

steam generating and heat exchange equipment for various utilities and other industries, and that,

since the late 1970s, hundreds of thousands of asbestos claims have been asserted against Foster

Wheeler. TIG denies any further allegations of Paragraph 18 not specifically admitted herein.

19.    Foster Wheeler was engaged in coverage litigation with Liberty Mutual (and various of its other excess and umbrella insurers, including AIU) as to the coverage obligations under the Primary Policies (as well as the coverage obligations under various other primary, excess and umbrella policies) relating to asbestos claims asserted against it. In or around June 2003, Foster Wheeler and Liberty Mutual ultimately settled their respective claims against one another, thereby exhausting coverage under the Primary Policies. Foster Wheeler then sought insurance payments from certain excess and umbrella insurers, including AIU, in the action entitled Foster Wheeler LLC v. Affiliated FM Ins. Co., et al, Index No. 60777/01 (Supreme Court, New York County) (the "Coverage Action").

ANSWER:    TIG admits that, in 2007, TIG first received notice from AIU that included

information from AIU that: (i) Foster Wheeler was engaged in coverage litigation with Liberty

Mutual (and various of its other excess and umbrella insurers, including AIU) as to the coverage

obligations under the Primary Policies (as well as the coverage obligations under various other

primary, excess and umbrella policies) relating to asbestos claims asserted against it; (ii) in or

around June 2003, Foster Wheeler and Liberty Mutual ultimately settled their respective claims

against one another, thereby exhausting coverage under the Primary Policies; and (iii) Foster

Wheeler sought insurance payments from certain excess and umbrella insurers, including AIU, in

the action entitled Foster Wheeler LLC v. Affiliated FM Ins. Co., et al, Index No. 60777/01

(Supreme Court, New York County) (the "Coverage Action"). TIG denies any further

allegations of Paragraph 19 not specifically admitted herein.

9

20.    After negotiations between Foster Wheeler, AIU, and certain of AIU's corporate affiliates, AIU and certain of its corporate affiliates reached a settlement with Foster Wheeler and entered into a confidential settlement agreement dated as of June 30, 2006 (the "Settlement Agreement"). Thereafter, AIU and certain of its corporate affiliates were dismissed from the Coverage Action.

ANSWER:    TIG admits that, in 2007, TIG first received notice from AIU that included

information from: (i) AIU that after negotiations between Foster Wheeler, AIU, and certain of

AIU's corporate affiliates, AIU and certain of its corporate affiliates reached a settlement with

Foster Wheeler and entered into a confidential settlement agreement dated as of June 30, 2006

(the "Settlement Agreement"); and (ii) that, thereafter, AIU and certain of its corporate affiliates

were dismissed from the Coverage Action. TIG denies any further allegations of Paragraph 20

not specifically admitted herein.


21.    In accordance with the terms of the Settlement Agreement, AIU has made substantial payments to Foster Wheeler under the Umbrella Policies.

ANSWER:    TIG admits that, in 2007, TIG first received notice from AIU that included

information from AIU that, in accordance with the terms of the Settlement Agreement, AIU had

made payments to Foster Wheeler under the Umbrella Policies. TIG is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of Paragraph

21, and therefore denies same.


22.    AIU has provided TIG with information related to the coverage claims asserted by Foster Wheeler and the Settlement Agreement.

ANSWER:    TIG admits that AIU first provided TIG with information related to the coverage

claims asserted by Foster Wheeler and the Settlement Agreement in 2007, but denies that the

information provided has been sufficient or timely. TIG denies any remaining allegations of

Paragraph 22 not specifically admitted herein.

**The Reinsurance Billings**

23.    On or around March 26, 2007, AIU submitted a reinsurance billing and proofs of loss to RiverStone Reinsurance Services LLC ("RiverStone"), the entity that administers reinsurance claims on behalf of TIG.

ANSWER:    TIG admits that, on or around March 26, 2007, AIU submitted documents styled as a reinsurance billing and what AIU calls "proofs of loss" to RiverStone Reinsurance Services LLC, and admits that Riverstone Reinsurance Services LLC is the entity that administers reinsurance claims on behalf of TIG. TIG denies that the information provided by AIU has been sufficient or timely. TIG denies any remaining allegations of Paragraph 23 not specifically admitted herein.

24.    AIU has subsequently submitted additional billings and proofs of loss to RiverStone, including correspondence dated June 22, 2007, which indicated that as of that date, TIG owed AIU approximately $12,300,454 in reinsurance billings submitted under the Reinsurance Agreements in connection with payments AIU has made under the Settlement Agreement.

ANSWER:    TIG admits that AIU has submitted additional billings and what AIU calls "proofs of loss" to RiverStone, including correspondence dated June 22, 2007, which asserted that as of that date, TIG owed AIU approximately $12,300,454 in reinsurance billings submitted under the Certain Reinsurance Agreements in connection with payments AIU has made under the Settlement Agreement. TIG denies that TIG owes AIU approximately $12,300,454 in reinsurance billings submitted under the Reinsurance Agreements in connection with payments AIU has made under the Settlement Agreement and denies that the information provided has been sufficient or timely. TIG denies any remaining allegations of Paragraph 24 not specifically admitted herein.

25.    Despite AIU's requests for payment, and the fact that AIU has fulfilled all of its obligations under the Reinsurance Agreements, TIG has failed to fulfill its obligation under the

11

Reinsurance Agreements to pay the billed amounts which are due and owing under the terms of the Reinsurance Agreements.

ANSWER:     TIG admits that AIU has made requests for payment under the Certain Reinsurance Agreements, but TIG denies that AIU has fulfilled all of its obligations under the Reinsurance Agreements.  TIG denies that it has an obligation under the Reinsurance Agreements to pay the billed amounts and denies that the billed amounts are due and owing under the terms of the Reinsurance Agreements.  TIG denies any remaining allegations of Paragraph 25 not specifically admitted herein.  Further answering, AIU (i) breached its express obligation under the Certain Reinsurance Agreements to provide prompt notice of the Foster Wheeler claims to TIG; (ii) breached its duty of utmost good faith implied in the Certain Reinsurance Agreements to provide prompt notice of the Foster Wheeler claims to TIG; and (iii) breached its express obligation under the Certain Reinsurance Agreements to make AIU's records available for TIG's inspection and to place AIU's records at TIG's disposal at reasonable times.

## COUNT I
### (Breach of Contract)

26.     AIU repeats and realleges the allegations set forth in paragraphs 1 through 25 as though fully set forth herein.

ANSWER:     TIG repeats and realleges the responses set forth in paragraphs 1 through 25 as though fully set forth herein.

27.     Under the Reinsurance Agreements, TIG, as the successor to IIC, has an obligation and a duty to reimburse AIU for its share of losses and loss expenses in connection with the Umbrella Policies issued to Foster Wheeler.

ANSWER:     Denied.

12

28.    By failing to pay its share of AIU's losses and loss expenses, TIG has breached its obligation and duty to reinsure and indemnify AIU, as required by the Reinsurance Agreements.

ANSWER:    Denied.

29.    As a result of TIG's breach of the Reinsurance Agreements, AIU has suffered damages in the amount of at least $12,300,454 plus interest.

ANSWER:    Denied.

## COUNT II
### (Declaratory Relief)

30.    AIU repeats and realleges the allegations set forth in paragraphs 1 through 29 as though fully set forth herein.

ANSWER:    TIG repeats and realleges the responses set forth in paragraphs 1 through 29 as

though fully set forth herein.

31.    TIG has failed to acknowledge its liability under the Reinsurance Agreements for the losses and loss expenses submitted to it by AIU in connection with the Settlement Agreement.

ANSWER:    Denied.

32.    There is an actual controversy between AIU and TIG as to their respective rights and liabilities under the Reinsurance Agreements.

ANSWER:    Admitted.

33.    AIU is entitled to a declaration, in accordance with 28 U.S.C. § 2201, that the Reinsurance Agreements are in full force and effect and that TIG is obligated to make timely payments to AIU in such amounts as have already become due and may become due in the future insofar as claims are ceded under the Reinsurance Agreements in connection with the Settlement Agreement.

ANSWER:    Denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

AIU's claims are barred in whole or in part by AIU's preceding breach of the Reinsurance Agreements' provision requiring that AIU provide prompt notice of any occurrence or accident which appears likely to involve the reinsurance.

### SECOND AFFIRMATIVE DEFENSE

AIU's claims are barred in whole or in part by AIU's preceding breach of the Reinsurance Agreements' provision requiring that AIU provide prompt notice of any occurrence or accident which appears likely to involve the reinsurance. As a result, TIG entered into commutations of certain of its outwards reinsurance coverage without notice of Foster Wheeler's claims against AIU. The absence of such notice caused TIG to commute for fewer dollars than TIG otherwise would have commuted had it had such notice. As a result, TIG suffered prejudice and/or tangible economic injury in the form of lost reinsurance recoveries.

### THIRD AFFIRMATIVE DEFENSE

AIU's claims are barred in whole or in part by AIU's preceding breach of the Reinsurance Agreements' provision requiring that AIU provide prompt notice of any occurrence or accident which appears likely to involve the reinsurance. As a result, TIG suffered prejudice and/or tangible economic injury as a result of not receiving notice to set appropriate reserves under the Reinsurance Agreements.

14

## FOURTH AFFIRMATIVE DEFENSE

AIU's claims are barred in whole or in part by AIU's preceding breach of the Reinsurance Agreements' provision requiring that AIU shall make available for inspection and place at the disposal of the TIG at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

## FIFTH AFFIRMATIVE DEFENSE

AIU's claims are barred in whole or in part by the doctrine of estoppel, in that, as a result of AIU's acts and/or omissions, TIG justifiably and detrimentally relied on the absence of prompt notice by AIU advising TIG under the Reinsurance Agreements of the Foster Wheeler claims, suits or proceedings. As a result, TIG enter into commutations of certain of its outwards reinsurance coverage without notice of Foster Wheeler's claims against AIU. The absence of such notice caused TIG to commute for fewer dollars than TIG otherwise would have commuted had it had such notice. As a result, TIG suffered prejudice and/or tangible economic injury in the form of lost reinsurance recoveries.

## SIXTH AFFIRMATIVE DEFENSE

Some or all of the claims paid by AIU to Foster Wheeler may be excluded from the coverage provided by one or more of the Reinsurance Agreements.

## SEVENTH AFFIRMATIVE DEFENSE

AIU has the burden to establish that the claims paid under its settlement with Foster Wheeler are within the terms and conditions of the policies ceded to the Reinsurance Contracts

and are otherwise properly allocated to those policies.  AIU has not met its burden on these points.

EIGHTH AFFIRMATIVE DEFENSE

AIU'S claims are barred in whole or in part by AIU's failure to institute or maintain effective practices, procedures and controls to ensure that it would comply with its contractual obligation to provide TIG prompt notice of any occurrence or accident which appears likely to involve the reinsurance.

**JURY DEMAND**

TIG demands a trial by jury on all issues so triable.


Dated: New York, New York
      April 22, 2008


                LOVELLS LLP

By: _____
                Sean Thomas Keely (SK-8593)
                590 Madison Ave.
                New York, New York 10022
                Phone: (212) 909-0600
                Fax:   (212) 909-0660
                sean.keely@lovells.com

                James I. Rubin (IL 02413191- admitted *pro hac vice*)
                Catherine E. Isely (IL 06237505 - admitted *pro hac vice*)
                Julie Rodriguez Aldort (IL 6271412, admitted *pro hac vice*)
                BUTLER RUBIN SALTARELLI & BOYD
                70 W. Madison, Suite 1800
                Chicago, Illinois 60602
                (312) 444-9660

                Attorneys for Defendant
                TIG Insurance Company

To:    William A. Maher, Esq.
       Marc L. Abrams, Esq.
       WOLLMUTH MAHER & DEUTSCH LLP
       500 Fifth Avenue
       New York, New York 10110
       (212) 382-3300

       Attorneys for Plaintiff
       AIU Insurance Company

W0065071v1

# EXHIBIT C

6/13/01

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,       Index No. 600777/01
ACCIDENT & CASUALTY COMPANY OF          :
    . WINTERTHUR,                               Part Calendar No.
BALOISE FIRE INSURANCE COMPANY LIMITED,   :
BISHOPSGATE INSURANCE COMPANY LIMITED,    :    Justice
DELTA-LLOYD NON-LIFE INSURANCE
    COMPANY LIMITED,                      :
FIDELIDADE INSURANCE COMPANY and          :
WINTERTHUR SWISS INSURANCE COMPANY,       :    ANSWER OF
                                               INTERNATIONAL
                Plaintiffs,               :    INSURANCE COMPANY
                                               TO PLAINTIFFS' FIRST
            vs.                           :     AMENDED COMPLAINT

                                          :

FOSTER WHEELER CORPORATION,
AFFILIATED FM INSURANCE COMPANY,
ALLSTATE INSURANCE COMPANY (as successor
    In interest to NORTHBROOK INDEMNITY    :
    COMPANY),
AMERICAN HOME ASSURANCE COMPANY,          :
AMERICAN RE-INSURANCE COMPANY,
ARGONAUT INSURANCE COMPANY,               :
ATLANTA INTERNATIONAL INSURANCE
    COMPANY (as successor in interest to   :
    DRAKE INSURANCE COMPANY OF
    NEW YORK),                             :
 CENTRAL NATIONAL INSURANCE COMPANY
    OF OMAHA,                              :
CENTURY INDEMNITY COMPANY (as successor
    in interest to CIGNA SPECIALTY INSURANCE:
    COMPANY, f/k/a CALIFORNIA UNION
    INSURANCE COMPANY,                     :
COMMERCIAL UNION INSURANCE COMPANY
    (individually and as successor in interest to   :
    EMPLOYERS COMMERCIAL UNION
    INSURANCE COMPANY),                    :
CONTINENTAL INSURANCE COMPANY,
EMPLOYERS MUTUAL CASUALTY COMPANY,        :
EVEREST REINSURANCE COMPANY (as
    successor in interest to PRUDENTIAL    :
    REINSURANCE COMPANY),

297580. DocsNY

PL 00001566

FEDERAL INSURANCE COMPANY,                          :
FIREMAN'S FUND INSURANCE COMPANY,
FIRST STATE INSURANCE COMPANY,                      :
GRANITE STATE INSURANCE COMPANY,
HARBOR INSURANCE COMPANY,                           :
HARTFORD ACCIDENT & INDEMNITY COMPANY,
HIGHLANDS INSURANCE COMPANY,                        :
HOME INSURANCE COMPANY,
INSURANCE COMPANY OF THE STATE OF                   :
        PENNSYLVANIA,
INTEGRITY MUTUAL INSURANCE COMPANY,                 :
INTERNATIONAL INSURANCE COMPANY
        (individually and as successor to           :
        INTERNATIONAL SURPLUS LINES
        INSURANCE COMPANY),                         :
LEXINGTON INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY,                   :
LUMBERMANS MUTUAL CASUALTY COMPANY,
MISSION AMERICAN INSURANCE COMPANY,                 :
MUTUAL FIRE, MARINE AND INLAND
        INSURANCE COMPANY,                          :
NORTH STAR RE-INSURANCE CORPORATION,
NORTHWESTERN NATIONAL INSURANCE                     :
        COMPANY (as successor in interest to
        BELLEFONTE INSURANCE COMPANY),              :
PROGRESSIVE HOME INSURANCE COMPANY
        (as successor in interest to MIDLAND        :
        RISK INSURANCE COMPANY),
TRAVELERS CASUALTY & SURETY COMPANY                 :
        (as successor in interest to AETNA
        CASUALTY & SURETY COMPANY),                 :
UNITED STATES FIRE INSURANCE COMPANY,
        and                                         :
NEW JERSEY LIABILITY, LTD.,
                                                    :
                Defendants,
                                                    :
CERTAIN LONDON MARKET INSURANCE
        COMPANIES,                                  :
NORTH RIVER INSURANCE COMPANY, and
YASUDA FIRE & MARINE INSURANCE                      :
        COMPANY OF AMERICA,
                                                    :
                Nominal Defendants.
-----------------------------------------------------------x

PL 00001567

Defendant International Insurance Company ("International") on behalf of itself and as successor-in-interest to International Surplus Lines Insurance Company ("ISLIC") and as successor-in-interest by novation to North River Insurance Company ("North River")(collectively, International, ISLIC and North River referred to as "International Defendants") by its undersigned attorneys, answers plaintiffs' First Amended Complaint ("complaint"),as follows:

## NATURE OF ACTION

1.    The allegations in paragraph 1 of plaintiffs' complaint merely characterize the nature of this lawsuit, and, therefore, no response is required.

2.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of plaintiffs' complaint.

3.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of plaintiffs' complaint.

4.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of plaintiffs' complaint.

## PARTIES

5.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of plaintiffs' complaint.

6.    The International Defendants deny knowledge or information sufficient to

297580. DocsNY                                    -3-

PL 00001568

form a belief as to the truth of the allegations contained in paragraph 6 of plaintiffs' complaint.

7.     The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of plaintiffs' complaint.

8.     The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of plaintiffs' complaint.

9.     The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of plaintiffs' complaint.

10.     The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of plaintiffs' complaint, except admit that North River Insurance is a New Jersey corporation and that the principal place of business of North River is New Jersey and regularly engages in the business of insurance.

11.     The allegations set forth in Paragraph 11 of plaintiffs' complaint merely define certain terms or phrases used in plaintiffs' complaint, and, therefore, no response is required.

12.     The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of plaintiffs' complaint, except admit that the International Defendants issued certain policies of insurance to Foster Wheeler Corporation ("FWC") and respectfully refer the Court to the

297580. DocsNY                                    -4-

policies for their content.

13.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of plaintiffs' complaint.

14.    The International Defendants lack knowledge or information sufficient to dorm a belief as to the truth of the allegations contained in paragraph 14 of plaintiffs' complaint, except, upon information and belief, admit that: FWC is a New York Corporation and that at relevant times, the principal place of business of FWC and/or one or more of its subsidiaries is or was New York City; and that FWC has maintained an office in New York City and regularly conducts business and/or is authorized and licensed to do business in New York.

15.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of plaintiffs' complaint, except International admits: it is an Illinois corporation, it is licensed to do business in the State of New York, it has transacted business in the State of New York, it presently transacts business in the State of New York, and it is engaged in the business of insurance.

16.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of plaintiffs' complaint, except admit that the International Defendants issued certain policies of insurance to FWC and respectfully refer the Court to the policies for their content.

17.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of plaintiffs'

PL 00001570

complaint.

18.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of plaintiffs' complaint.

19.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of plaintiffs' complaint.

20.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of plaintiffs' complaint.

## JURISDICTION AND VENUE

21.    The allegations in paragraph 21 of plaintiffs' complaint set forth conclusions of law to which no response is required. To the extent a response is deemed required, however, the International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of plaintiffs' complaint.

22.    The allegations in paragraph 22 of plaintiffs' complaint set forth conclusions of law to which no response is required. To the extent a response is deemed required, however, the International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of plaintiffs' complaint.

## THE POLICIES

23.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of plaintiffs' complaint, except admit that the International Defendants issued certain policies of

297580. DocsNY                          -6-

PL 00001571

insurance to FWC and respectfully refer the Court to the policies for their content.

24.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of plaintiffs' complaint, except allege that policies of insurance were issued to FWC by various insurers, including insurers which are parties in this action, and respectfully refer the Court to the policies issued by those insurers for their content.

25.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of plaintiffs' complaint, except allege that policies of insurance were issued to FWC by various insurers, including insurers which are parties in this action, and respectfully refer the Court to the policies issued by those insurers for their content.

## ASBESTOS CLAIMS AGAINST FOSTER WHEELER

26.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of plaintiffs' complaint.

27.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of plaintiffs' complaint.

28.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of plaintiffs' complaint.

29.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of plaintiffs'

PL 00001572

complaint.

30.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of plaintiffs' complaint.

### COUNT I

31.    The International Defendants repeat and reallege their responses to paragraphs 1 through 30 of plaintiffs' complaint as though fully set forth herein.

32.    The allegations in paragraph 32 of plaintiffs' complaint set forth conclusions of law to which no response is required. To the extent a response is deemed required, however, the International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of plaintiffs' complaint.

33.    The allegations in paragraph 33 of plaintiffs' complaint set forth conclusions of law to which no response is required. To the extent a response is deemed required, however, the International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of plaintiffs' complaint.

34.    The allegations in paragraph 34 of plaintiffs' complaint set forth conclusions of law to which no response is required. To the extent a response is deemed required, however, the International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 of plaintiffs' complaint.

35.    The allegations in paragraph 35 of plaintiffs' complaint set forth conclusions of law to which no response is required. To the extent a response is deemed required, however, the International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 of plaintiffs' complaint.

297580. DocsNY

PL 00001573

36.    The International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of plaintiffs' complaint.

37.    The allegations in paragraph 36 of plaintiffs' complaint set forth conclusions of law to which no response is required.  To the extent a response is deemed required, however, the International Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 of plaintiffs' complaint.

## AFFIRMATIVE DEFENSES

38.    The International Defendants, having denied each and every allegation not expressly admitted above, set forth their affirmative defenses to the plaintiffs' complaint as follows:

## FIRST AFFIRMATIVE DEFENSE

39.    Any recovery by plaintiffs against the International Defendants must be reduced by the amount that plaintiffs or FWC failed to mitigate, minimize or avoid any damages alleged in the underlying asbestos claims.

## SECOND AFFIRMATIVE DEFENSE

40.    Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

41.    To the extent that plaintiffs have failed to assert claims against necessary and indispensable parties that issued policies or other agreements of insurance which may apply to the asbestos-related claims against FWC, plaintiffs' complaint should be dismissed.

297580. DocsNY                              -9-

## FOURTH AFFIRMATIVE DEFENSE

42.     Any claims which plaintiffs may have against the International Defendants are barred, in whole or in part, by the doctrines of laches, unclean hands, waiver and estoppel.

## FIFTH AFFIRMATIVE DEFENSE

43.     Plaintiffs' claims are barred by the doctrines of issue preclusion, res judicata and judicial estoppel.

## SIXTH AFFIRMATIVE DEFENSE

44.     The International Defendants violated no contractual duty.

## SEVENTH AFFIRMATIVE DEFENSE

45.     Plaintiffs' claims are barred in whole or in part by the Statute of Frauds.

## EIGHTH AFFIRMATIVE DEFENSE

46.     The asbestos-related claims against FWC are not covered "occurrences" within the meaning of that term as it pertains to the International Defendants' policies.

## NINTH AFFIRMATIVE DEFENSE

47.     To the extent FWC or its brokers and/or agents either intentionally or negligently misrepresented or concealed material facts from the International Defendants at the time one or more of the International Defendants' policies were applied for, negotiated, issued or delivered, the International Defendants are relieved of their obligation, if any, to provide coverage to FWC for the claims referred to in the complaint, or to contribute to the payment of defense or indemnity costs associated with the claims referred to in plaintiffs' complaint.

## TENTH AFFIRMATIVE DEFENSE

48.     The asbestos-related claims asserted against FWC do not arise from or seek

297580. DocsNY                              -10-

PL 00001575

damages for "bodily injury," "personal injury" or "property damage" within the meaning of the International Defendants' policies.

### ELEVENTH AFFIRMATIVE DEFENSE

49.    A covered "occurrence," if there was one, did not occur during the policy period of the International Defendants' policies.

### TWELFTH AFFIRMATIVE DEFENSE

50.    The alleged damages for which recovery is sought against FWC in the asbestos-related claims did not occur during the policy period of the International Defendants' policies.

### THIRTEENTH AFFIRMATIVE DEFENSE

51.    FWC breached a condition of the International Defendants' policies in that FWC failed to give the International Defendants due and timely notice of any alleged "occurrence" likely to involve the International Defendants' policies, and the International Defendants are, therefore, relieved of their obligations, if any, to provide coverage to FWC for the asbestos-related claims.

### FOURTEENTH AFFIRMATIVE DEFENSE

52.    To the extent that the asbestos-related claims against FWC seek equitable or injunctive relief, such claims do not seek "damages" within the meaning of the International Defendants' policies.

### FIFTEENTH AFFIRMATIVE DEFENSE

53.    To the extent the claims for which FWC have sought or may seek coverage from the International Defendants are not based on any accident, covered occurrence, or fortuitous event, but rather arise as the result of intentional actions on the part of FWC

PL 00001576

and/or others, and/or the claimed injuries were or should have been expected by FWC, the International Defendants have no obligation to indemnify FWC, or to contribute to the payment of defense or indemnity costs associated with the claims referred to in the complaint.

SIXTEENTH AFFIRMATIVE DEFENSE

54.    To the extent the asbestos-related claims against FWC seek punitive damages, fines, or penalties, the International Defendants' policies do not provide coverage therefore.

SEVENTEENTH AFFIRMATIVE DEFENSE

55.    The coverage, if any, provided to FWC by the International Defendants' policies does not attach until after the applicable limits of all underlying and other insurance available to FWC has been exhausted in payment of settlements or judgments arising out of claims properly allocated to the International Defendants' policies. Upon information and belief, FWC has not exhausted the applicable underlying insurance, retentions and deductibles, and all other insurance available to FWC for the asbestos-related claims.

EIGHTEENTH AFFIRMATIVE DEFENSE

56.    The International Defendants' obligations, if any, to FWC are limited by the terms, definitions, exclusions, conditions, and limits of any policies issued by the International Defendants and the policies to which they follow from, including with limitation, any conditions precedent, deductibles, self-insured retentions, policy periods, notice requirements, limits of liability, and exclusions contained therein.

NINETEENTH AFFIRMATIVE DEFENSE

57.    To the extent that FWC or plaintiffs settled some or all of the asbestos-related

297580. DocsNY                               -12-

PL 00001577

claims without notice to or approval from the International Defendants, plaintiffs and FWC are barred from any recovery under the International Defendants' policies.

### TWENTIETH AFFIRMATIVE DEFENSE

58.    Any claim for coverage under the International Defendants' policies, to the extent that there is coverage afforded under these policies, is barred to the extent that FWC failed to maintain the required underlying insurances.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

59.    To the extent that FWC may be a self-insured, under insured, or uninsured for certain claims and, as a self-insured, an under insured, and/or an uninsured, FWC has or may have certain defense and indemnity obligations with respect to claims for alleged bodily injuries that occurred during the period or periods when it was self-insured, under insured, or uninsured.   As a matter of fairness and equity, FWC must be required to pay its own fees, expenses and other amounts incurred in the defense, settlement and judgment of the asbestos-related claims at issue in this action.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

60.    There is no coverage under the  International Defendants' policies with respect to the asbestos-related claims asserted against FWC to the extent that the International Defendants were prohibited from controlling and/or associating in the evaluation, settlement, payment, or defense of the asbestos-related claims against FWC.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

61.    To the extent that the acts or failure to act which gave rise to the asbestos-related claims asserted against FWC constituted a violation of law and/or public policy by FWC, the claims asserted by plaintiffs against the International Defendants are barred.

297580. DocsNY                                    -13-

PL 00001578

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

62.     The obligations of the International Defendants, if any, to pay the defense and/or indemnity costs under the International Defendants' policies are subject to and limited by the defense and indemnity obligations of FWC's other insurers.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

63.     To the extent that FWC has failed to perform all of its obligations under the International Defendants' policies, including conditions precedent and/or conditions subsequent, that are prerequisites to coverage for claims under the policies, coverage under the International Defendants' policies is barred.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

64.     Coverage under the International Defendants' policies, to the extent that there is coverage afforded under these policies, is barred for any asbestos-related claims seeking costs incurred as a result of equitable or injunctive relief or arising out of administrative or non-judicial proceedings.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

65.     Coverage under the International Defendants' policies, to the extent that there is coverage afforded under these policies, is barred to the extent that FWC's conduct which gave rise to the asbestos-related claims asserted against the FWC was willful, deliberate, fraudulent or intentional.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

66.     To the extent that FWC has assumed any financial obligations or paid or has promised to pay any sums in satisfaction of the asbestos-related claims, there is no coverage under the International Defendants' policies.

297580. DocsNY                    -14-

PL 00001579

## TWENTY-NINTH AFFIRMATIVE DEFENSE

67.    The International Defendants' policies do not provide coverage for any liability arising our of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminations or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

## THIRTIETH AFFIRMATIVE DEFENSE

68.    The International Defendants' coverage obligations, if any, are limited by the liability limits stated in the International Defendants' policies, including the applicable aggregate limits, and the "Other Insurance" and "Prior Insurance Non Cumulation of Liability" provisions, and coverage obligations cease upon the exhaustion of applicable limits of coverage.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

69.    The International Defendants' obligations are limited to the named insured in their respective policies, subject to all of the policies' other terms, conditions, limits and exclusions. The International Defendants are not bound by the terms of any agreements entered into between FWC and any other entity with respect to retention or acceptance of liabilities.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

70.    To the extent the claims asserted against FWC arise out of or relate to acts or omissions of other entities which are not within the policy definition of "named insured," the International Defendants are under no obligation to provide coverage to such entities or to FWC for such claims, or to contribute to the payment of defense or indemnity costs

PL 00001580

associated with the claims referred to in the complaint.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

71.    The International Defendants' coverage obligations, if any, are limited to a pro rata share of liability based upon the length of time property damage, bodily injury or personal injury occurred during the International Defendants' coverage in relation to the total period of time during which such property damage, bodily injury or personal injury occurred.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

72.    The International Defendants' policies do not provide coverage in place of underlying or other insurance that is or becomes invalid, uncollectible, or otherwise unavailable due to the insolvency of the underlying insurer or the action or inaction of others.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

73.    The International Defendants' policies are excess policies and the International Defendants have no duty to defend FWC against any of the claims at issue in this action.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

74.    To the extent plaintiffs fail to produce sufficient evidence of the terms and conditions of the alleged policies issued to FWC by the International Defendants, the International Defendants have no obligation to provide coverage to FWC for the claims referred to in the complaint, or to contribute to the payment of defense or indemnity costs associated with the claims referred to in the complaint.

297580. DocsNY                                    -16-

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

75.   The International Defendants reserve their right to assert additional defenses available under the terms of the International Defendants' policies or available at law or equity upon discovery of further information concerning plaintiffs' claims or upon the development of other relevant information, including information discovered during the course of the litigation and information discovered outside the discovery process of this litigation.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

76.   The International Defendants specifically deny that they are liable to FWC or plaintiffs.  However, in the event the International Defendants are deemed liable to FWC or plaintiffs, the International Defendants may be entitled to contribution, indemnification, apportionment, or other relief from all other parties to this action and from any other entities that may be subject to joinder in this action for liabilities and duties arising out of policies issued to FWC, and any liability or duty the International defendants may, owe should be limited or reduced by such contribution indemnification, apportionment, or other relief.


WHEREFORE, the International Defendants demand judgment dismissing plaintiffs' complaint with prejudice, declaring that the International Defendants owe no obligation to defend or indemnify FWC under the policies issued by the International Defendants with respect to any of FWC's alleged liabilities set forth in plaintiffs' complaint, and granting the International Defendants such other and further relief the Court shall deem just and proper, together with reasonable attorney's fees and the costs and disbursements of this action.

PL 00001582

## THE INTERNATIONAL DEFENDANTS'
## CROSS-CLAIM

### The Parties and the Insurance Contracts

1.    Defendant International Insurance Company ("International") on behalf of itself and as successor-in-interest to International Surplus Lines Insurance Company ("ISLIC") and as successor-in-interest by novation to North River Insurance Company ("North River")(collectively, International, ISLIC and North River referred to as "International Defendants") hereby asserts the following cross-claim.

2.    The International Defendants entered into contracts of excess liability insurance with FWC.

3.    Upon information and belief, plaintiffs and each and every co-defendant or third-party now in this action or hereafter added which has or will assert a claim, counter-claim, cross-claim, or third-party claim against the International Defendants in this action (hereinafter, "Certain Insurers") issued certain contracts of insurance which relate to the liabilities of FWC during one or more of the policy periods at issue in this litigation.

4.    Upon information and belief, FWC is a New York corporation which presently maintains its principal place of business at Perryville Corporate Park, Clinton, New Jersey.

5.    Upon information and belief, beginning no later than the early 1900s and continuing until 1965, FWC maintained their principal place of business in New York, New York.

### Jurisdiction and Venue

6.    This Court has jurisdiction with respect to the International Defendants' cross-claim. Venue is proper in New York County.

297560. DocsNY                              -18-

### The Nature of the Cross-Claims

7.    The International Defendants seek a declaration as to the rights and obligations of the International Defendants with respect to the policies issued by the International Defendants for claims arising from FWC's liabilities including, but not limited to, asbestos-related bodily injury matters.

8.    It has also been asserted by plaintiffs in their complaint that FWC has incurred and may incur losses associated with claims of alleged exposure to asbestos.

9.    FWC has asserted or will assert that the International Defendants are obligated to provide insurance coverage for such claims pursuant to the policies issued by the International Defendants.

10.    The claims set forth in paragraphs 7 to 9 above, are presently at issue in this litigation by virtue of plaintiffs' complaint. Pursuant to CPLR § 3001, the International Defendants seek a declaratory judgment in the form of a declaration that the International Defendants owe no obligation to FWC or any other party under the policies issued by the International Defendants or applicable law for any of FWC's liabilities:

   a.    as set forth in plaintiffs' complaint;

   b.    as added to this action by virtue of the International Defendants' cross-claim; or

   c.    for which FWC has or may seek recovery under policies issued by the International Defendants.

### FIRST CROSS-CLAIM FOR DECLARATORY JUDGMENT

11.    The International Defendants repeat and reallege the allegations of paragraphs 1 through 10 of their cross-claim as if they were set forth at length herein.

297580. DocsNY                              -19-

PL 00001584

12.    The International Defendants owe no obligation to FWC or any entity making a claim under the policies issued by the International Defendants for the asbestos-related liabilities set forth in the plaintiffs' complaint, as those claims are not within the scope of the policies issued by the International Defendants, as well as applicable law.

13.    At this time, it appears, an actual and justiciable controversy exists among the International Defendants and FWC concerning their rights and obligations under the policies issued by the International Defendants with respect to these asbestos-related liabilities.

14.    By reason of the foregoing, the International Defendants are entitled to judgment, in the form of a declaration that they have no obligation under the policies issued by the International Defendants to:

a.    defend FWC with respect to any of these asbestos-related liabilities;

b.    reimburse FWC or any other party for any monies expended to date in connection with these asbestos-related liabilities; and

c.    indemnify FWC or any other party in connection with these asbestos-related liabilities.

15.    The International Defendants have no adequate remedy at law.

## SECOND CROSS-CLAIM FOR DECLARATORY JUDGMENT

16.    The International Defendants repeat and reallege the allegations of paragraphs 1 through 15 of its cross-claim as if they were set forth at length herein.

17.    By reason of the foregoing, in the event the International Defendants are deemed liable for all or part of the claims at issue in this litigation, the International Defendants are entitled to judgment, in the form of a declaration, of the rights of the

PL 00001585

International Defendants as to a proper allocation of loss among the International

Defendants, FWC, and all other parties.

18.    The International Defendants have no adequate remedy at law.


WHEREFORE,  the International Defendants, demand judgment declaring:

a.    The International Defendants owe no obligation to defend or
      indemnify FWC under the policies issued by the International
      Defendants with respect to any of the asbestos-related liabilities set
      forth in plaintiffs' complaint;

b.    The International Defendants owe no obligation to defend or
      indemnify FWC under the policies issued by the International
      Defendants with respect to any of the liabilities set forth in
      International's Defendants' cross-complaint;

c.    The International Defendants owe no obligation to FWC or any other
      party in this matter;

d.    In the event the International Defendants are deemed liable for all or
      part of the claims at issue in this litigation, the rights of the
      International Defendants as to a proper allocation of loss among the
      International Defendants, FWC and all other parties; and

e.    Other and further relief as the Court may deem just and proper,
      together with the costs and disbursements herein.

## AS TO CURRENT AND FUTURE CROSS-CLAIMS
## ASSERTED AGAINST THE INTERNATIONAL DEFENDANTS

19.    The International Defendants hereby deny each and every cross-claim which

has been, is, or will be asserted against the International Defendants by the co-defendants

herein, or by any other co-defendant or third-party defendant who is added as such in the

PL 00001586

future and incorporates, as if expressly stated herein, each and every affirmative defense asserted herein in response to plaintiffs' claims.

Dated:  June 13, 2001
        New York, New York

LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway, 27th Floor
New York, New York 10271-0079
(212) 238-4800

By:_____

Louis G. Corsi
R. Christopher Beaver

Attorneys for International Insurance Company individually and as successor-in-interest to International Surplus Lines Insurance Company and as successor by novation to North River Insurance Company

297580. DocsNY                          -22-

PL 00001587

Index No.     600777/01          Year

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, et al.,

Plaintiffs,

v.

FOSTER WHEELER CORPORATION, et al.

Defendants.

ANSWER OF UNITED STATES FIRE
INSURANCE COMPANY TO PLAINTIFFS'
FIRST AMENDED COMPLAINT

Signature (Rule 130-1.1-a)

Print name beneath

LANDMAN CORSI BALLAINE & FORD P.C.

*Attorney for* United States Fire Ins. Co.

*Office and Post Office Address, Telephone*
120 Broadway
NEW YORK, N.Y. 10271-0079
(212) 238-4800

To

Attorney(s) for

Service of a copy of the within is hereby admitted.
Dated

Attorney(s) for

1600 – **Blumberg**Excelsior Inc., NYC 10013

---

NOTICE OF ENTRY

PLEASE take notice that the within is a (*certified*)
true copy of a
duly entered in the office of the clerk of the within
named court on

Dated,

Yours, etc.

LANDMAN CORSI BALLAINE & FORD P.C.

*Attorneys for*

*Office and Post Office Address*
120 Broadway
NEW YORK, N.Y. 10271-0079

To

Attorney(s) for

NOTICE OF SETTLEMENT

PLEASE take notice that an order

of which the within is a true copy will be presented
for settlement to the Hon.

one of the judges of the within named Court, at

on

at     M.

Dated,          Yours, etc.

LANDMAN CORSI BALLAINE & FORD P.C.

*Attorneys for*

*Office and Post Office Address*
120 Broadway
NEW YORK, N.Y. 10271-0079

To

Attorney(s) for

© 1995 JULIUS BLUMBERG, INC.

STATE OF NEW YORK, COUNTY OF                    ss.:

I, the undersigned, an attorney admitted to practice in the courts of New York State,

☐ Certification By Attorney   certify that the within

has been compared by me with the original and found to be a true and complete copy.

☐ Attorney's Affirmation   state that I am

the attorney(s) of record for                                        in the within

action; I have read the foregoing                                        and know the contents thereof;

the same is true to my own knowledge, except as to the matters therein alleged to be on information and belief, and as to those matters I believe it to be true. The reason this verification is made by me and not by

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

I affirm that the foregoing statements are true, under the penalties of perjury.
Dated:
............................................................
The name signed must be printed beneath

STATE OF NEW YORK, COUNTY OF                    ss.:

I, the undersigned, being duly sworn, depose and say: I am

☐ Individual Verification   in the action; I have read the foregoing

and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true.

☐ Corporate Verification   the                          of

a

corporation and a party in the within action; I have read the foregoing and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true. This verification is made by me because the above party is a corporation and I am an officer thereof.

The grounds of my belief as to all matters not stated upon my own knowledge are as follows:

Sworn to before me on
............................................................
The name signed must be printed beneath

STATE OF NEW YORK, COUNTY OF                    ss.:        (If more than one box is checked—indicate after names type of service used.)

I, the undersigned, being sworn, say: I am not a party to the action, am over 18 years of age and reside at

On                          I served the within

☐ Service By Mail   by mailing a copy to each of the following persons at the last known address set forth after each name below.

☐ Personal Service on Individual   by delivering a true copy of each personally to each person named below at the address indicated. I knew each person served to be the person mentioned and described in said papers as *a party therein:*

☐ Service by Electronic Means   by transmitting a copy to the following persons by ☐ FAX at the telephone number set forth after each name below ☐ E-MAIL at the E-Mail address set forth after each name below, which was designated by the attorney for such purpose, and by mailing a copy to the address set forth after each name.

☐ Overnight Delivery Service   by dispatching a copy by overnight delivery to each of the following persons at the last known address set forth after each name below.

PL 00001589