# EXHIBIT D

**REDACTED**

# EXHIBIT E



RiverStone

250 COMMERCIAL STREET
SUITE 5000
MANCHESTER, NEW HAMPSHIRE 03101
TELEPHONE: (603) 656-2200
FACSIMILE: (603) 656-2400/2401

Michael Staley
Assumed Reinsurance Sr. Claims
Specialist
Direct Line: 603-656-2414
E-mail michael_staley@trg.com

April 3, 2007

Richard E. Kafaf, CPCU
Toxic Tort Claims Department
101 Hudson Street, 29th Floor
Jersey City, New Jersey 07302

RE:                        AIG's Asbestos Settlement with Foster Wheeler

Insured:              Foster Wheeler Corporation
Reinsured's Claims:   87-55941D; 87-559941H; 87-55941L
Our Claims:           ARD9664; ARD9665
                      ARD9667; ARD9668
                      ARD9672; ARD9670
Reinsured:            AIU Insurance Company
Reinsurer:            International Insurance Company
Cert Nos:             CFR0062; CFR0063; CFR0064
                      CFR0071; CFR0072; CFR0073
                      CFR0085; CFR0086; CFR0087
Reinsured's Policies: 75-100789   Effective:   10/1/78-10/1/79
                      75-101149   Effective:   10/1/79-10/1/80
                      75-101149   Effective:   10/1/80-10/1/81

Dear Mr. Kafaf:

This will serve to acknowledge receipt of American International Underwriter's (AIU) March 26, 2007 proofs of loss, relating to their asbestos/silica settlement with Foster Wheeler Corporation (FW). However, in that we have not received a response to our February 2, 2007 letter (copy attached for your convenience) we are not able to give consideration to these claims.

While reference is made to evidence of payment transactions in our February 2, 2007 letter, we wish to make it clear that while evidence of payment could take the form of check/wire copies or claim screen prints, and/or payment reports, any such evidence must set out the transaction date(s), payee(s), check number(s) and amount(s) that tie back to AIU's proofs. In addition, please provide the documentation that satisfied AIU the underlying primary coverage was exhausted.

In closing, we are obliged to continue to expressly reserve all rights under the subject reinsurance contracts, including the apparent late notice of these claims.

Very Sincerely,

Michael E. Staley

Michael Staley

**TIG 000117**

# EXHIBIT F

Sean Thomas Keely (SK-8593)
Andrew M. Behrman (AB-5949)
LOVELLS LLP
590 Madison Avenue
New York, New York 10022
(212) 909-0600
sean.keely@lovells.com

James I. Rubin (*pro hac vice*)
Catherine E. Isely (*pro hac vice*)
Julie Rodriguez Aldort (*pro hac vice*)
BUTLER RUBIN SALTARELLI & BOYD
70 W. Madison, Suite 1800
Chicago, Illinois 60602
(312) 444-9660
Attorneys for Defendant
TIG Insurance Company

**REDACTED VERSION**

**ORIGINAL FILED UNDER SEAL SUBJECT TO CONFIDENTIALITY ORDER**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

|  |  |
|---|---|
| AIU INSURANCE COMPANY, | : |
| Plaintiff, | : |
| -v. - | :  Civil Action No. 07 CIV 7052 |
| TIG INSURANCE COMPANY, | : |
| Defendant. | : |

------------------------------------------------

## TIG INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL

## Table of Contents

Page

STATEMENT OF FACTS.................................................................................................2

ARGUMENT................................................................................................................... 11

I.  THIS COURT SHOULD COMPEL AIU TO PRODUCE ALL DOCUMENTS
    RELATING TO AIU'S KNOWLEDGE OF POTENTIAL EXPOSURE UNDER
    PLAINTIFF'S FOSTER WHEELER POLICIES AND THE REINSURANCE
    CONTRACTS................................................................................................... 11

    A.  AIU Cannot Assert That It Provided Timely Notice Under
        the Reinsurance Contracts Without Implicitly Waiving Privilege. ........................... 11

### REDACTED

II.  THIS COURT SHOULD COMPEL AIU TO RESPOND TO
     TIG'S REQUESTS FOR THE OTHER CLAIMS DOCUMENTS. ................................ 16

    A.  The Other Asbestos Claims Documents Should Be Produced. ................................ 17

    B.  The Boiler Claim Documents Should Be Produced. ................................................. 21

III.  AIU SHOULD NOT WITHHOLD DOCUMENTS PRODUCED IN
      THE FOSTER WHEELER DECLARATORY JUDGMENT ACTION. ......................... 23

IV.  AIU SHOULD PERFORM A DILIGENT ELECTRONIC SEARCH. ........................... 23

V.  CONCLUSION.................................................................................................... 25

<u>Table of Authorities</u>

<u>Page</u>

**Cases**

*105 Street Assoc., LLC v. Greenwich Ins. Co.,*
    No. 05 Civ. 9938, 2006 WL 3230292 (S.D.N.Y. Nov. 7, 2006) .............................................. 15

*Am. Steamship Owners Mut. Protection and Indem. Assoc., Inc. v. Alcoa Steamship Co.,*
    No. 04 Civ. 4309, 2005 WL 2254463 (S.D.N.Y. Sept. 15, 2005)........................................... 12

*AT&T Co. v. New York City Human Resources Admin.,*
    No. 89 Civ. 4569 (PKL), 1991 WL 79461 (S.D.N.Y. May 6, 1991).......................... 16, 20, 22

*Bowne of New York City, Inc. v. AmBase Corp.,*
    150 F.R.D.465 (S.D.N.Y. 1993) .................................................................................................. 11

*Buckley v. Vidal,*
    50 F.R.D. 271 (S.D.N.Y. 1970) .................................................................................................. 20

*Burke v. New York City Police Dept.,*
    115 F.R.D. 220 (S.D.N.Y. 1987) ...................................................................................... 16, 17, 21

*Century 21, Inc. v. Diamond State Ins. Co.,*
    No. 03 Civ. 5163, 2006 WL 2355323 (S.D.N.Y. Aug. 10, 2006) ................................ 12, 13, 14

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips,*
    105 F.R.D. 16 (S.D.N.Y. 1984) .................................................................................................. 16

*Condit v. Dunne,*
    225 F.R.D. 100 (S.D.N.Y. 2004) ................................................................................................ 11

*Fletcher v. Atex, Inc.,*
    156 F.R.D. 45 (S.D.N.Y. 1994) .................................................................................................. 17

*Granite Partners, L.P. v. Bear, Stearns & Co., Inc.,*
    184 F.R.D. 49 (S.D.N.Y. 1999) ............................................................................................ 11, 12

*Herbst v. Able,*
    63 F.R.D. 135 (S.D.N.Y. 1972) .................................................................................................. 17

*Hickman v. Taylor,*
    329 U.S. 495 (1947)...................................................................................................................... 20

*In re Steinhardt Partners, L.P.,*
    9 F.3d 230 (2d Cir. 1993)............................................................................................................. 16

*Lego v. Stratos Lightwave, Inc.,*
    224 F.R.D. 576 (S.D.N.Y. 2004) ................................................................................................ 11

*Long v. Marubeni Am. Corp.,*
    No. 05 Civ. 639, 2007 WL 402943 (S.D.N.Y. Feb. 2, 2007) .................................................... 15

*McGrath v. Nassau Cty Health Care Corp.,*
    204 F.R.D. 240 (E.D.N.Y. 2001) ............................................................................................... 12

*Melendez v. Greiner,*
    No. 01 Civ. 07888 (SAS DF), 2003 WL 22434101 (S.D.N.Y. October 23, 2003) .................. 20

*Royal Indem. Co. v. Salomon Smith Barney, Inc.,*
    No. 125889/99, 4 Misc. 3d 1006, 791 N.Y.S.2d 873, 2004 WL 1563259
    (N.Y. Sup. Ct. June 29, 2004) ........................................................................................ 12, 13, 14

*U.S. v. Bilzerian,*
    926 F.2d 1285 (2d Cir. 1991) ......................................................................................... 11, 12

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.,*
    309 F.Supp.2d 459 (S.D.N.Y. 2003) .................................................................................... 20

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................... 17, 21

Plaintiff AIU Insurance Company ("AIU") brought this breach of contract action against Defendant TIG Insurance Company ("TIG") seeking reinsurance recoverables allegedly due under certain facultative reinsurance certificates allegedly issued by TIG's predecessor, International Insurance Company ("IIC"), to AIU (the "Reinsurance Contracts"). The AIU reinsurance billings at issue arise from AIU's 2006 settlement of its asbestos-related liability to its insured, Foster Wheeler. (Exhibit 11, attached to Declaration of Julie Rodriguez Aldort (hereinafter "Aldort Dec., Exh. 11"), at TIG 126.) TIG disputes any obligation to AIU for the reinsurance billings, because, *inter alia*, the Reinsurance Contracts required AIU to notify TIG "promptly" of any occurrence or accident that appeared "likely to involve this reinsurance" (Aldort Dec., Exh. 12 at ¶ B, TIG 1163), and AIU did not notify TIG of its potential exposure for the Foster Wheeler asbestos claims under the Reinsurance Contracts until January 2007 – twenty years after Foster Wheeler's initial precautionary notice of the claims to AIU and six years after Foster Wheeler initiated a declaratory judgment action against AIU. (*Id.* at TIG 126, 128.)

**REDACTED**

as well as different documents actually produced by AIU to date in the litigation, demonstrate that the improperly withheld AIU documents contain, or are likely to lead to the discovery of, admissible evidence relating to TIG's affirmative defenses. Absent production of these materials, TIG's ability to present its

defenses to AIU's Complaint will be severely and irreparably prejudiced. Accordingly, TIG brings the instant motion to compel AIU's compliance with its discovery obligations.

**Statement of Facts**

**A.    The Reinsurance Contracts**

AIU issued certain umbrella liability policies of insurance to Foster Wheeler covering the period from 1978-1982 ("Plaintiff's Foster Wheeler Policies"). (Answer at ¶ 11.) TIG and AIU entered into the Reinsurance Contracts, under which TIG agreed, subject to certain terms and conditions, to reinsure AIU for a portion of losses and loss expenses that AIU incurred under three of the Plaintiff's Foster Wheeler Policies. [1] (*Id.* at ¶¶ 12-13.) One such condition required AIU to provide "prompt notice" to TIG of "any occurrence or accident which appears likely to involve this reinsurance." (*E.g.* Aldort Dec., Exh. 12, at ¶ B, TIG 1163.) In addition, the Reinsurance Contracts provided that AIU "shall make available for inspection and place at the disposal of [TIG] at reasonable times any of its records relating to this reinsurance or claims in connection therewith." (*E.g.* Aldort Dec., Exh. 12, at ¶ A, TIG 1163.)

**B.    The Declaratory Judgment Action**

In February 2001, certain London insurers sued Foster Wheeler and other Foster Wheeler insurers in New York state court to obtain a declaratory judgment as to the parties' rights and obligations under primary and excess insurance policies issued to Foster Wheeler (referred to herein as the "Declaratory Judgment Action"). (Aldort Dec., Exh. 13.) In July of 2001, Foster Wheeler filed a third party complaint against certain of its insurers, including several AIG entities, in which it sought a declaratory judgment as to the insurers' liabilities under certain policies. (Aldort Dec., Exh. 14.) The amounts at issue in Declaratory Judgment Action were

---

[1] AIU contends that TIG issued facultative reinsurance certificates covering losses on four insurance policies. (Comp. at ¶ 11.) Thus, one issue in this case is whether the fourth policy identified in AIU's complaint was reinsured by TIG. This issue need not be resolved in the instant motion.

2

substantial, as Foster Wheeler faced liability for thousands of paid, pending and future asbestos claims (referred to herein as the "Foster Wheeler Asbestos Claims"). (Aldort Dec., Exh. 14 at TIG 1712.) In the third party complaint, Foster Wheeler specifically identified Plaintiff's Foster Wheeler Policies, and alleged that it had placed its excess carriers on notice of the asbestos claims beginning in 1987.[2] (Aldort Dec., Exh. 14 at TIG 1717.) The Declaratory Judgment Action proceeded,[3]

**REDACTED**

**C.    AIU's January 25, 2007 Notice to TIG**

On June 30, 2006, the AIG entities, including AIU, executed a written settlement agreement with Foster Wheeler

**REDACTED**

(Aldort Dec., Exh. 11, at TIG 000130.)

(Aldort Dec., Exh. 15, at PL 59450.) On January 25, 2007, *seven months after execution of the written settlement agreement, three years after Foster Wheeler's demand, six years after onset of Foster Wheeler's declaratory judgment action and twenty years after Foster Wheeler's initial precautionary notice of the claims to its excess insurers,*

(Aldort Dec., Exh. 13, at TIG 000126.)

**REDACTED**

(*Id.* at TIG 000128.)

---

2 ·

[3] The parties engaged in discovery in the Foster Wheeler Declaratory Judgment Action, and AIU produced documents in response to Foster Wheeler's requests for production. Now, however, AIU is objecting to producing certain segments of those same documents to TIG. *See, infra,* at Section III.

Neither document had been sent to TIG; the January 25, 2007 notice was the first advice by AIU to TIG that the Reinsurance Contracts faced potential exposure for the Foster Wheeler Asbestos Claims.

### REDACTED

After receiving notice from AIU in January of 2007, TIG undertook an investigation of its potential exposure under the Reinsurance Contracts. Beginning in February of 2007, TIG requested information from AIU concerning the Declaratory Judgment Action. (Aldort Dec., Exh. 16 and Exh. 17.) On April 26, 2007, AIU declined to provide TIG with the requested copies of the Foster Wheeler documents constituting notice to AIU.

(Aldort Dec., Exh. 18 at TIG 0044.)

### REDACTED

(*Id.* at TIG 57.)

(*Id.*)

E.   **The July 2007 Audit**

On May 15, 2007, TIG requested an audit of "AIU's records concerning this reinsurance and claim," as permitted under Paragraph A of the Reinsuring Agreements and Conditions of the

Reinsurance Contracts.[4] On July 2, 2007, in anticipation of the audit, AIU and TIG entered into a "Reinsurer Common Interest Confidentiality Agreement." (Pascale Dec., Exh. A.)  In that agreement, AIU promised to grant TIG "access to *all* records relevant to the claims made against AIU by its insured, Foster Wheeler Corporation, for coverage under the reinsured policies, 75-100789, 75-101149 and 75-101988, including but not limited to related underwriting, claims and financial records." (*Id.* (emphasis added).)

At the direction of TIG's counsel, William Pascale and Joseph Loggia conducted an audit of AIU's files relating to the Foster Wheeler account from July 9-11, 2007. (Declaration of William Pascale ("Pascale Dec."), ¶ 9.)  When Pascale and Loggia arrived for the audit, Richard Kafaf of AIG Domestic Claims refused to confirm: (i) whether AIU was providing its complete claim file for audit; (ii) whether AIU had "cleaned up, sanitized, or reorganized" the files TIG was shown; or (iii) whether any documents had been withheld on privilege grounds. (Pascale Dec., ¶ 10.) It is now evident that AIU did not provide TIG with "all records relevant to the claims," but instead selectively provided documents – **REDACTED** – that would serve its own interests. AIU's privilege and redaction logs in this case reveal that AIU selectively withheld a substantial number of materials from the files presented to TIG. (*Id.*, ¶ 16; Aldort Dec., Exhs. 19 and 20.)

**REDACTED**

Pascale identified such documents in notes recorded during the audit:

---

[4] Paragraph A requires that AIU "shall make available for inspection and place at the disposal of [TIG] at reasonable times any of its records relating to this reinsurance or claims in connection therewith."

REDACTED

(Pascale Dec., ¶ 16, and Exh. B.)    **REDACTED**                AIU also

made available documents dating back to the late 1980s that addressed Foster Wheeler's asbestos

liabilities and AIU's potential exposure arising out of those liabilities.  (Pascale Dec., ¶ 13.)

REDACTED

(Aldort Dec.,

Exh. 5 at TIG 2704.)

REDACTED

6

REDACTED

(*Id.* (emphasis added).)

REDACTED

(Pascale Dec., ¶ 15.)  On August

7, 2007, less than a month after the audit, AIU filed its Complaint against TIG.

**G.    TIG's First Set of Document Requests and AIU's Responses and Objections.**

During discovery in this case, TIG propounded document requests seeking historical

information concerning AIU's knowledge of its potential liability under the Plaintiff's Foster

Wheeler Policies in order to elicit admissible evidence or documents likely to lead to the

discovery of admissible evidence as to when the Foster Wheeler Asbestos Claims constituted

"any accident or occurrence which appears likely to involve this reinsurance." (*See* AIU

Insurance Company's Responses and Objections to TIG Insurance Company's First Set of

Document Requests, Aldort Dec., Exh. 1.)  For example, TIG requested that AIU:

> 6.  Produce all documents relating to notices or communications received by Plaintiff or
> its agents or representatives from Foster Wheeler or its agents with respect to requests or
> demands for coverage of asbestos-related claims under Plaintiff's Foster Wheeler
> Policies.
>
> 7.  Produce all documents relating to the evaluation and assessment of any requests or
> demands for coverage from Foster Wheeler under Plaintiff's Foster Wheeler Policies,
> including but not limited to documents prepared by, received from, provided to or
> retained by Plaintiff, Plaintiff's claim handlers and administrators, their supervisors, in-

7

house legal counsel or Coverage Counsel, and Plaintiff's claims files and coverage counsel's files.

8. Produce AIU's and AIG's claims files with respect to Plaintiff's Foster Wheeler Policies.

9. Produce AIU's and AIG's coverage counsel's files with respect to Plaintiff's Foster Wheeler Policies.

17. Produce all documents concerning estimating, setting, posting, evaluating, revising, adjusting or supplementing Plaintiff's reserves with respect to the claims made by Foster Wheeler under Plaintiff's Foster Wheeler Policies.

18. Produce all documents that support, refute or otherwise concern the allegations of Plaintiff's Complaint.

19. Produce all documents that support, refute, or otherwise concern Defendant's defenses to the allegations in the Complaint.

(TIG's First Set of Document Requests, (Aldort Dec., Exh. 21).) TIG also requested AIU's

production of documents relating to Plaintiff's notice to its other reinsurers, given that AIU's

first notice to TIG attached an earlier notice purportedly sent to other reinsurers. Accordingly,

TIG requested AIU:

4. Produce all internal records, journal entries and desk files concerning the Reinsurance Contracts.

14. Produce all documents relating to the decision to give notice to Plaintiff's reinsurers with respect to any claims made by Foster Wheeler pursuant to Plaintiff's Foster Wheeler Policies.

15. Produce all documents relating to notices to any of Plaintiff's reinsurers with respect to any claims made by Foster Wheeler pursuant to Plaintiff's Foster Wheeler Policies.

16. Produce all documents relating to Plaintiff's communications with its reinsurers concerning any claims made by Foster Wheeler pursuant to Plaintiff's Foster Wheeler Policies.

(*Id.*) TIG also sought AIU's production of documents selected by AIU and shown to TIG during

the July 2007 audit, requesting that AIU:

13. Produce all documents relating to any review, audit or inspection performed by or on behalf of Defendant concerning the losses at issue in the Complaint.

8

(*Id.*)

Incorporated into all of AIU's responses to TIG's Document Requests was the following

General Objection related to privilege:

> AIU objects to the Requests, to the extent that they seek, or can be construed to
> seek, documents that are privileged under law, whether under the attorney-client
> privilege, the work-product doctrine, or other privilege or immunity. Such
> documents will not be produced.

(Aldort Dec., Exh. 1, at Gen. Obj. No. 6.) AIU reiterated its privilege objection as a specific

objection in response to Document Request Nos. 7-10, 12-15, and 17. In discussions between

counsel, TIG explained that it was not seeking AIU's disclosure of privileged communications

between AIU and its reinsurance counsel in this dispute. (Aldort Dec., ¶ 7.) Rather, TIG was

seeking access –        **REDACTED**        – to documents prepared by AIU's coverage

counsel and relating to the Declaratory Judgment Action and the settlement for which AIU was

billing TIG. AIU nonetheless maintained its objection to producing any coverage counsel

documents relating to the Foster Wheeler Asbestos Claims. (Aldort Dec., ¶ 7.)

AIU also sought to limit all of its Responses by excluding what it deemed documents

related to the "Other Claims." AIU expressed this limitation in two ways. First, AIU asserted a

General Objection in which it limited responses to requests for coverage counsel documents to

those relating to what it defined as the Foster Wheeler Coverage Litigation, *i.e.*, the Declaratory

Judgment Action. (Aldort Dec., Exh. 1, at Gen. Obj. No. 4.) Second, AIU asserted two types of

qualifiers on its production in response to Document Request Nos. 4, 6, 7, 8, 14, 15, 16, 17, and

18. AIU stated in response to these Requests that it would only produce documents "to the

extent they relate to the subject matter of this lawsuit" or to the extent "they relate to the asbestos

losses submitted to TIG and referred to in the Complaint." (Aldort Dec., Exh. 1, Response Nos. 4, 6-8, and 14-18.)

In meet and confer discussions with counsel, AIU explained that these qualifiers and its General Objection meant that AIU would not produce documents relating to claims under the Reinsurance Contracts other than the Foster Wheeler Asbestos Claims, *i.e.*, those for which it sought reimbursement in the Complaint. (Aldort Dec., ¶¶ 5, 6, 10-17, 19.)   AIU expressly withheld any documents it deemed related to the Other Asbestos Claims or to two other claims relating to boiler explosions on navy vessels (the "Boiler Claims"). (*Id.* at ¶ 5 and Exh. 5 at TIG 2705 (describing Boiler Claims).) AIU's relevance-based objection was directly rebutted by its earlier statement that these same or same type of documents were made available at audit "to assist TIG in understanding the claims asserted against AIU and their resolution." (Aldort Dec., ¶ 17 and Exh. 5 at 2704.)

Moreover, AIU has limited its production in this manner without having posed a corresponding written objection to TIG's applicable document requests.  For example, in response to TIG's request for the documents relating to the audit, AIU asserted only its privilege objection along with the General Objections, but during discussions with counsel, AIU advised that it had again withheld all documents that it deemed to be Other Claims related. (Aldort Dec., ¶ 22 and Exh. 1, at Response No. 13.)  Discussions with counsel also revealed that AIU presumed that any documents dated before the filing of the Declaratory Judgment Action were related to the Other Claims.  (Aldort Dec., ¶ 19.)

The parties held an extended series of telephonic meet and confer sessions over the period from January 10, 2008 through April 11, 2008, but were unable to resolve their

differences as respects the issues raised in this Motion. The conferences are detailed in the

attached declaration of TIG's counsel, Julie Rodriguez Aldort.

**Argument**

I.    **THIS COURT SHOULD COMPEL AIU TO PRODUCE ALL DOCUMENTS RELATING TO AIU'S KNOWLEDGE OF POTENTIAL EXPOSURE UNDER PLAINTIFF'S FOSTER WHEELER POLICIES AND THE REINSURANCE CONTRACTS.**

    A.    **AIU Cannot Assert That It Provided Timely Notice Under the Reinsurance Contracts Without Implicitly Waiving Privilege.**

The party asserting a claim of privilege – here, AIU – has the burden of demonstrating

both that the privilege exists and that it has not been waived. *See, e.g. Granite Partners, L.P. v.*

*Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 52 (S.D.N.Y. 1999).[6]  "This burden stems from the

recognition that 'enforcement of a claim of privilege acts in derogation of the overriding goals of

liberal discovery and adjudication on their merits.'" *Id.* (quoting *Bowne*, 150 F.R.D. at 473.)

For this reason, "privileges are 'disfavored and generally to be narrowly construed.'" *Id.*, 184

F.R.D. at 52 (quoting *Bowne*, 150 F.R.D. at 473.)  Accordingly, the attorney-client privilege is

"not absolute and thus may be set aside 'where strong public policy requires disclosure.'"

*Bowne*, 150 F.R.D. at 473 (citation omitted).

Case law is clear that the attorney-client privilege and attorney-work product privilege

may "implicitly be waived when a party asserts a claim that in fairness requires the examination

of otherwise protected communications." *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991);

---

[6] TIG maintains that Illinois law governs the substantive issues in this case.  However, New York law appears to govern the privilege issues raised in this motion. *See, e.g., Lego v. Stratos Lightwave, Inc.*, 224 F.R.D. 576, 579 (S.D.N.Y. 2004) (choice of law to be determined by which state's law has greatest interest in application of the privilege at issue); *Condit v. Dunne*, 225 F.R.D. 100, 108 (S.D.N.Y. 2004) ("that California law will govern the underlying claim does not preclude this Court from finding that New York law governs assertions of evidentiary privilege").  Here, the vast majority of the documents AIU has withheld on privilege grounds relate to the Declaratory Judgment Action, which was pending in New York, and concern communications with AIU, a New York company with its principal place of business in New York. (Complaint at ¶ 3.)  Although New York law applies to the privilege issues raised herein, claims of work product are governed by federal law. *See, e.g. Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D.465, 471 (S.D.N.Y. 1993).

11

*McGrath v. Nassau Cty Health Care Corp.*, 204 F.R.D. 240, 244 (E.D.N.Y. 2001); *Am. Steamship Owners Mut. Protection and Indem. Assoc., Inc. v. Alcoa Steamship Co.*, No. 04 Civ. 4309, 2005 WL 2254463, *1 (S.D.N.Y. Sept. 15, 2005).[7] The courts developed the "fairness" doctrine, in part, to preclude a litigant from shrouding in privilege the very evidence its opponent will need to disprove a position taken during litigation. *See, Bilzerian*, 926 F.2d at 1292; *Granite Partners*, 184 F.R.D. at 54. Two courts applying New York law and considering facts in late notice cases, have applied the "fairness doctrine," found an implicit waiver of privilege, and ordered disclosure of otherwise privileged documents. *See Century 21, Inc. v. Diamond State Ins. Co.*, No. 03 Civ. 5163, 2006 WL 2355323 (S.D.N.Y. Aug. 10, 2006); *Royal Indem. Co. v. Salomon Smith Barney, Inc.*, No. 125889/99, 4 Misc. 3d 1006, 791 N.Y.S.2d 873, 2004 WL 1563259 (N.Y. Sup. Ct. June 29, 2004).

The first case, *Century 21, Inc. v. Diamond State Insurance Co.*, involved a coverage action brought by Century 21, the insured, and the insurer's defense of late notice. *Century 21*, 2006 WL 2355323, at *1. The Diamond State policy required Century 21 to provide notice of potential liability under the policy "as soon as practicable." *Id.* Diamond State alleged that Century 21 breached the notice provision, and "maintain[ed] that Century, by suing on the policy, has put the timeliness of its notice in issue and thus impliedly waived the privilege." *Id.*

The court agreed. The court analyzed the issue as one of fairness, explaining that the privilege may be deemed impliedly waived "where the privilege-holder has placed protected communications in issue such that withholding that information from its adversary would be unfair." *Century 21*, 2006 WL 2355323, at *2 ("The overarching consideration is whether allowing the privilege to protect against disclosure of the information would be manifestly unfair to the opposing party.") (citations and internal quotation marks omitted). Turning to the facts

---

[7] All unreported cases are attached in Exhibit 22 to the Aldort Declaration.

before it, the court concluded that "Century has placed the privileged material in issue by suing on an insurance contract that required provision of timely notice . . . , where the law bases timeliness on the knowledge of the insured, and where any evidence relating to Century's knowledge that may be found in the protected communication is not likely discoverable for another source." *Id.* In conclusion, the court observed that "upholding the privilege with respect to the disputed attorney-client communications might very well preclude defendant Diamond from developing facts essential to the issue of notice and thus of contract enforceability." *Id.* at *3. Accordingly, the court compelled disclosure of documents, including privileged documents that discussed Century's potential liability under the policy. *Id.* at *4.

In *Century 21*, the district court cited with approval the New York state court decision in *Royal Indemnity Co. v. Salomon Smith Barney, Inc. See Century*, 2006 WL 2355323, at *3 n.2. *Royal Indemnity* involved an insurer's late notice defense to a claim under an excess insurance policy. *Royal Indem.*, No. 125889/99 at 1. The insurer, Royal Indemnity, maintained that the insured knew at least eleven months before giving notice that the primary policies would be exhausted and that Royal Indemnity's excess policies would be implicated. *Id.* at 2. As in *Century 21*, the *Royal Indemnity* court agreed, and ordered disclosure of the requested documents.

The *Royal Indemnity* court began its analysis by stating that "the attorney-client privilege *and* the work product doctrine can be deemed to be waived where a party advances claims or defenses that place protected information 'at issue' that is – 'where invasion of the privilege is required to determine the validity of the client's claim or defense and application of the privilege would deprive the adversary of vital information.'" *Id.* at 18-19 (citations omitted). The court identified three factors courts consider in determining whether such a waiver has occurred:

13

> As the privilege-exception is sometimes formulated, a party is treated as having waived its privileges where: (1) assertion of the privilege was the result of some affirmative act [here, defendants' claims against their excess carriers] by the non-disclosing party; (2) through this affirmative act, the non-disclosing party put the protected information at issue; and (3) application of the privilege would have denied the opposing party access to information vital to its ability to resist the non-disclosing party's affirmative act.

*Id.* at 19 (citation omitted).  Applying that framework to the facts before it, the court concluded that the insured "cannot establish that they provided timely notice to Royal while at the same time refusing to disclose the information that would either prove or disprove that threshold assertion." *Id.* Finally, the court rejected the notion that the requested information could be obtained directly from the insured at deposition, reasoning that "defendants' witnesses are unlikely to remember in 2004 the details of settlement demands, discussions and assessments held seven to eight years ago." *Id.* at 23.

Like the documents sought by the insurers in *Century 21* and *Royal Indemnity*, the documents TIG seeks in this motion are both "essential" (in the words of the *Century* court) and "vital" (as characterized by the *Royal Indemnity* court).  A central issue in this case is whether AIU complied with its contractual obligation to provide TIG with "[p]rompt notice . . . of any occurrence or accident which appears likely to involve this reinsurance." That question can only be answered by establishing when AIU knew or should have known that TIG faced potential exposure under the Reinsurance Contracts as a result of the Foster Wheeler Asbestos Claims. AIU's privilege log, which excludes any withheld coverage counsel materials prior to 2001, reveals that at least by 2001, AIU was in nearly constant communication with its coverage counsel concerning those claims and the Declaratory Judgment Action.

**REDACTED**

14

**REDACTED**                    AIU cannot, as a matter of fairness, withhold these and

other similar documents – whether they are privileged or attorney work product – while

simultaneously contending that its notice to TIG was timely.  Moreover, these documents bear

directly on the issue of the reasonableness of the settlement for which AIU is seeking

reimbursement from TIG.  Accordingly, AIU should be ordered to produce all documents that

notified AIU, or reasonably should have notified AIU, of potential exposure under the Reinsured

Policies.  In particular, AIU should be ordered to produce all coverage counsel materials from

the Declaratory Judgment Action,            **REDACTED**                    and any

coverage counsel analyses and communications with AIU (or its agents) purportedly relating to

the Other Asbestos Claims.

**REDACTED**

REDACTED

II.    **THIS COURT SHOULD COMPEL AIU TO RESPOND TO TIG'S REQUESTS FOR THE OTHER CLAIMS DOCUMENTS.**

As the party resisting production, AIU bears the burden of establishing the basis for its

opposition. *Burke v. New York City Police Dept.*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987). Such a

showing requires more than conclusory allegations of irrelevance or undue burden. *See*

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips*, 105 F.R.D. 16, 42

(S.D.N.Y. 1984); *see also AT&T Co. v. New York City Human Resources Admin.*, No. 89 Civ.

4569 (PKL), 1991 WL 79461, * 5 (S.D.N.Y. May 6, 1991) ("A party 'cannot evade its discovery

responsibilities by 'simply intoning this familiar litany' that the request is burdensome,

oppressive or overly broad.'"). As set forth in detail below, the Other Asbestos Claims and the

Boiler Claims bear directly on TIG's late notice defense and AIU has failed to show that producing these documents would present an undue burden.[8]

### A.     The Other Asbestos Claims Documents Should Be Produced.

Under Federal Rule of Civil Procedure 26(b), a party seeking production of documents need only demonstrate that the documents are relevant to the subject matter involved in the action. *Herbst v. Able*, 63 F.R.D. 135, 138 (S.D.N.Y. 1972). This liberal standard calls for the production of "any information that appears reasonably calculated to lead to the discovery of admissible evidence." *Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 48 (S.D.N.Y. 1994) (internal quotations omitted). For the party resisting discovery to succeed on a claim of lack of relevance, the party must "satisfy the court that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure." *Burke*, 115 F.R.D. at 224.

AIU asserts that the Other Asbestos Claims and any notices to its reinsurers regarding such claims are not relevant because its "practices regarding notice of claims at issue many years ago simply have no bearing on the claims at issue now." (Aldort Dec., ¶ 14 and Exh. 4.) AIU's position is belied by documents previously produced by AIU, by its positions taken in the Declaratory Judgment Action, and by documents disclosed during the July 2007 audit. The Other Asbestos Claims documents are likely to demonstrate AIU's historical knowledge of asbestos claims against Foster Wheeler and therefore speak to the issue of when AIU was obligated to provide notice under the Reinsurance Contracts. The Other Asbestos Claims were merely the first in a series of thousands of asbestos claims ultimately submitted by Foster

---

[8] TIG has informed AIU that it would produce its corresponding assumed reinsurance claim files for the Other Claims, to the extent they exist, upon the Court's granting of the instant motion to compel. (Aldort Dec., ¶ 27.)

Wheeler under its umbrella liability policies, and therefore Foster Wheeler and AIU treated the Other Asbestos Claims as inextricably intertwined with the Foster Wheeler Asbestos Claims.

(Pascale Dec., Exh. B at TIG 15918.)

**REDACTED**

(Aldort Dec., Exh. 5, at TIG 002704.)

AIU's artificial distinction in this litigation between the two categories of claims documents intentionally excludes documents relevant to this matter. For example, AIU suggested in the meet and confers that documents in its files from prior to the Declaratory Judgment Action related solely to the Other Claims, when, in fact, in response to Foster Wheeler's discovery requests in the Declaratory Judgment Action, AIU stated that it first became "aware that Foster Wheeler was or might be seeking coverage from AIU for asbestos personal injury claims by letter from [its broker] Johnson & Higgins dated March 31, 1992." (Aldort Dec., ¶ 19 and Exh. 23, at PL 5543.)

**REDACTED**

(Pascale Dec., ¶ 13.)

---

9

in

Dec., Exh. 18 at TIG 56.)                                                              (Aldort

Documents in AIU's production also undermine AIU's assumption that pre-Declaratory Judgment Action documents are solely related to the Other Asbestos Claims. For example, AIU produced the third party complaint filed by Foster Wheeler in the Declaratory Judgment Action. In the complaint, Foster Wheeler alleged that "Since September 1987, Foster Wheeler has put the Third-Party Excess Companies on notice of asbestos-related claims brought against Foster Wheeler that implicate or potentially implicate the Excess Policies . . . ." (Aldort Dec., Exh. 14 at TIG 001717.)

Even AIU's initial notice to TIG undermines its assumption that documents prior to the 2001 Declaratory Judgment Action are solely related to the Other Asbestos Claims.

REDACTED

(Aldort Dec., Exh. 11 at TIG 128.) If the Other Asbestos Claims were irrelevant, such information would not have been pertinent to the notice. These documents are directly relevant to TIG's late notice defense, and AIU should be compelled immediately to produce what AIU has withheld as the Other Asbestos Claims, including any notices to its other reinsurers relating to such claims, and any withheld documents pre-dating the Declaratory Judgment Action that relate to the Foster Wheeler Asbestos Claims.[10]

REDACTED

19

AIU argues that producing the Other Asbestos Claims would be unduly burdensome because the files are voluminous and AIU would have to obtain documents from its outside counsel and conduct a privilege review. (Aldort Dec., ¶ 14 and Exh. 4.) To withhold documents on the basis of burden a party must produce competent proof, in the form of affidavits or other evidence demonstrating the actual burden the party faces in complying with the request. *AT&T Co.*, 1991 WL 79461 at * 5 (deeming a party's burden argument waived after the party failed to produce such evidence). The standard is high and a mere claim of inconvenience of production is "outweighed by the principal that 'mutual knowledge of all relevant facts gathered by both parties is essential to proper litigation.'" *Buckley v. Vidal*, 50 F.R.D. 271, 274 (S.D.N.Y. 1970) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). For example, requests limited to matters that are relevant to the plaintiff's claims, necessarily reduces the potential burden on the other side and negates a finding of overburdensomeness. *See Melendez v. Greiner*, No. 01 Civ. 07888 (SAS DF), 2003 WL 22434101, *4 (S.D.N.Y. October 23, 2003); *see also Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*, 309 F.Supp.2d 459, 464 (S.D.N.Y. 2003) (holding that although review of 100 boxes of documents "is a significant undertaking, it is not unduly burdensome" especially because the requesting party had narrowed its request to an easily-identifiable set of documents).

AIU has fallen far short of the high standard required to avoid discovery on the grounds of undue burden, given that AIU's counsel estimates AIU's internal claim files for the Other Asbestos Claims amount to approximately one box. (Aldort Dec., ¶ 15.) Indeed, given that AIU previously presented many of the Other Asbestos Claims files to TIG in its audit in July 2007, any supposed burden in minimal. (Pascale Dec., Exh. B at TIG 15918.)

20

Similarly, AIU's assertion that obtaining responsive documents from outside counsel will require substantial time and effort rings hollow. AIU's counsel admitted that he had not investigated which outside counsel would need to be contacted or how many files would be implicated by the request. (Aldort Dec., ¶ 15.) In sum, AIU has failed to show that complying with TIG's requests would constitute an undue burden. AIU has no basis for refusing to produce these critical documents.

**B.    The Boiler Claim Documents Should Be Produced.**

TIG's request for the Boiler Claims likewise falls well within the broad boundaries of discoverability provided in Federal Rule of Civil Procedure 26(b). AIU contends that the documents are not relevant essentially because "AIU's practices regarding notice of claims at issue many years ago simply have no bearing on the claims at issue now." (Aldort Dec. ¶ 14.) Again, AIU has a high hurdle to overcome to avoid the production of these documents and it comes nowhere near surmounting that hurdle. *See Burke*, 115 F.R.D. at 224 (holding that the party resisting discovery must "satisfy the court that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure.")

The requested discovery is likely to lead to admissible evidence, because, although the Boiler Claims involve bodily injuries arising out of two explosions rather than asbestos claims, AIU's handling of the claims will reveal AIU's interpretation of its prompt notice obligations under the facultative reinsurance certificates. First, a review of the circumstances that led AIU to provide notice for each of the claims may assist in setting the standard for reasonable and prompt notice under the facultative reinsurance certificates. Second, AIU's handling of the claims may demonstrate whether AIU had any system in place to ensure that its notice obligations were

21

fulfilled under the facultative reinsurance certificates.[11] AIU's assumption that the information in the claim files would shed no light on the circumstances that led AIU to provide notice or AIU's practices for providing notice, should not go untested.

AIU also resists production of its notices to its other reinsurers relating to the Boiler Claims. (Aldort Dec., ¶ 13-14.) These documents are also likely to lead to the discovery of admissible evidence on the issue of whether AIU's notice of the Foster Wheeler Asbestos Claims to TIG was prompt by illustrating: (i) the circumstances under which AIU has deemed it appropriate to provide notice to reinsurers; (ii) the reinsurers to which AIU has elected to provide notice, and (iii) when such notice has been provided. Therefore, this evidence is discoverable.

AIU contends that producing the Boiler Claims would be overly burdensome. AIU has provided no detail for this objection, beyond the suggestion that the claim files are old and AIU's counsel was unaware of their location. (Aldort Dec., ¶ 15.) As of the last meet and confer discussion about these claims, AIU's counsel had not conducted an investigation to determine the location and volume of these documents, stating only that he did not have any files in his office and he did not know if the files were still in existence, and if they were, which AIG affiliated entity maintained the files. (Aldort Dec., ¶ 15.) AIU plainly has not performed the due diligence required to assert a meaningful objection based on undue burden, and AIU's objection to producing these relevant documents should be rejected out of hand. *AT&T Co.*, 1991 WL 79461 at * 5 (deeming a party's burden argument waived after the party failed to produce competent proof, in the form of affidavits or other evidence demonstrating the actual burden the party faces in complying with the request).

---

[11] This issue directly pertinent to TIG's proposed eighth affirmative defense, which is the subject of its pending Motion for Leave to File First Amended Answer.

III.   AIU SHOULD NOT WITHHOLD DOCUMENTS PRODUCED IN THE FOSTER
       WHEELER DECLARATORY JUDGMENT ACTION.

Upon review of AIU's recent document production, TIG learned that AIU had previously produced documents to Foster Wheeler in the Declaratory Judgment Action. (Aldort Dec., ¶ 21 and Exh. 24 at PL 32860.) AIU has not produced these same documents to TIG in this action. Accordingly, TIG moves this Court to compel AIU to produce the responsive documents.

Documents produced by AIU in the Declaratory Judgment Action are responsive to TIG document requests 7, 8, and 9 and do not fall within AIU's objections. AIU advised that it had not withheld documents based on its General Objections and generic objections, such as vague, ambiguous, etc., except where it expressly set forth in its response that its production was limited. (Aldort Dec., ¶ 6.) TIG therefore inquired about the documents during a meet and confer, and AIU's counsel agreed to inquire as to the status of the documents. (Aldort Dec., ¶ 21 and Exh. 6.) By letter on April 1, 2008, AIU's counsel advised that AIU would produce what he termed the "AIU Document Production," that is the documents AIU produced to Foster Wheeler and the other defendants in the Declaratory Judgment Action. (Aldort Dec., ¶ 25 and Exh. 7.) However, AIU's counsel stated that AIU would withhold from these documents materials that it deemed related to the Other Claims and documents it deemed related to its other reinsurers. (*Id.*) AIU did not offer a basis for its resistance to producing these responsive documents until TIG challenged AIU's position. AIU has now proffered an unsupported and non-specific relevance objection. (Aldort Dec., ¶ 27 and Exh. 9.)

IV.    AIU SHOULD PERFORM A DILIGENT ELECTRONIC SEARCH.

The final discovery dispute at issue in this Motion arises from AIU's refusal to perform a diligent search for electronic documents. TIG has determined that AIU's document production lacks any significant amount of electronic materials, such as e-mails or electronic files. In

response to TIG's inquiry whether AIU had performed searches of the electronic mail boxes of several individuals that TIG had identified during its July 2007 audit list, AIU responded that it had searched for only those individuals identified in AIU's interrogatory responses and certain unspecified other individuals. (Aldort Dec., ¶ 24 and Exh. 7.)[12]  TIG advised that it objected to AIU's approach, stating that the individuals TIG identified were clearly implicated by the audit documents, and, by refusing to search for documents in the possession or files of these individuals, AIU was refusing to satisfy its obligation to perform a diligent search. (Aldort Dec., ¶ 26 and Exh. 8.) On April 11, 2008, AIU proposed to conduct a search as to one individual (the individual from whose file the majority of the pertinent Declaratory Judgment Action pleadings were produced by AIU), if TIG would forego its request as to the remaining individuals – the majority of whom are noticed deponents. (Aldort Dec., ¶ 27 and Exh. 9.) TIG has properly identified each of these individuals through their authorship or receipt of key documents, and declines to forego its right to a diligent search for and a complete production of their responsive documents. Accordingly, TIG requests that this Court enter an order compelling AIU to search for responsive documents in the electronic and paper files of David Anderson, Meera Coilparampil, Polly James, Peter Kuchar, Neil McHugh, Patrick Smith and Susan Wilson.

---

[12] AIU acknowledges that, as of April 11, 2008, it is still reviewing the electronic files of some of those individuals whom AIU agrees are subject to electronic discovery. (Aldort Dec., ¶ 27 and Exh. 9.)

V.    CONCLUSION

For the reasons stated above, TIG respectfully requests that the Court grant TIG's Motion

to Compel and enter the Proposed Order attached thereto.


Dated: April 16, 2008                    Respectfully submitted,


                                         By: _____

James I. Rubin, Esq. (*pro hac vice*)        Sean Thomas Keely (SK-8593)
Catherine E. Isely, Esq. (*pro hac vice*)    Andrew M. Behrman (AB-5949)
Julie Rodriguez Aldort, Esq. (*pro hac vice*) Lovells LLP
Butler Rubin Saltarelli & Boyd LLP           590 Madison Avenue
70 West Madison Street, Suite 1800           New York, New York 10022
Chicago, Illinois 60602                      (212) 909-0600
(312) 444-9660                               sean.keely@lovells.com

                                         Attorneys for Defendant
                                         TIG Insurance Company


W0066179v6


25

# EXHIBIT G

# Reinsurer Common Interest
# Confidentiality Agreement

This Common Interest and Confidentiality Agreement ("Agreement") is executed by TIG Insurance Company, successor by merger to International Insurance Company ("the Reinsurer"), reinsurer of AIU Insurance Company ("AIU"), under the relevant Reinsurance Agreements.

**WHEREAS:** AIU has provided notice of potential claims and/or has made claims against Reinsurer for recovery of billings under its Reinsurance Agreements; and

**WHEREAS:** In accordance with the terms of the Reinsurance Agreements, the Reinsurer seeks to exercise its right to inspect certain files of AIU with regard to AIU's reinsurance claims. AIU hereby grants Reinsurer access to all records relevant to the claims made against AIU by its insured, Foster Wheeler Corporation, for coverage under the reinsured policies, 75-100789, 75-101149 and 75-101988, including but not limited to related underwriting, claims and financial records; and

**WHEREAS:** Some of the documents to be inspected, as well as any additional information obtained from AIU or its attorneys and representatives, may include attorney-client communications between AIU and its counsel which are privileged and confidential and/or which may contain attorney-work product, disclosure of which may be prejudicial to the interest of AIU in the defense of underlying legal actions (hereinafter referred to as "Privileged Information"); and

**WHEREAS:** AIU and the Reinsurer share a common interest in the evaluation and defense of the underlying actions and the Reinsurer does not desire to cause any waiver of the attorney-client privilege or of the work product protection.

### Therefore, it is agreed by Reinsurer as follows:

1.  Reinsurer agrees that it is in the best interest of both AIU and Reinsurer to preserve and protect such privileges and protection as may be applicable to any of the documents examined and an unintended or inadvertent waiver of any such privilege or protections could be prejudicial to AIU and the Reinsurer.

2.  Reinsurer agrees that any disclosure of such information to Reinsurer or its representatives is not intended to diminish in any way the privileged and confidential nature of such materials nor shall it constitute a waiver of any applicable privilege, including attorney-client privilege, work-product privilege, the joint-interest privilege or any other applicable privilege.

3.  Reinsurer agrees it will not provide a copy of any Privileged Information to anyone outside its company, other than its own legal counsel, auditors,

TIG 000005

retrocessionaires, governmental agencies and regulatory agencies, unless specifically required by subpoena or other duly issued order of a court or agency. Further, Reinsurer will limit dissemination within its company only to those persons with a business need relevant to the Reinsurer's rights and obligations under the Reinsurance Agreements. Reinsurer will not disclose or discuss Privileged Information, including within its company, except in such a manner which does not constitute a waiver of any privilege or protection.

4.      Reinsurer agrees that if any person or entity requests or demands, by subpoena or otherwise, any Privileged Information from Reinsurer or its representative which could result in a waiver of any privilege or protection, then Reinsurer shall immediately notify AIU's legal counsel and fully cooperate in taking all reasonable steps necessary to protect the preservation and assertion of all applicable rights and privileges with regard to such Privileged Information.

All of the confidentiality obligations under this Agreement shall survive any termination of this Agreement.

The persons signing this Agreement represents and warrants that he/she is authorized to execute this Agreement on behalf of the Reinsurer.

By: _Will R Pascale_

On behalf of _TIG Insurance Co_

DATED: _July 2_, 2007

By: _____

On behalf of _Rux Brown Legal and Assoc Ltd_

DATED: _July 2_, 2007

# EXHIBIT H

William A. Maher (WM-9470)
Marc L. Abrams (MA-6600)
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, NY 10110
(212) 382-3300

Attorneys for Plaintiff AIU Insurance Company


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
AIU INSURANCE COMPANY,                                      :
                                                            :
                           Plaintiff,                       :
                                                            :
          -against-                                         :     Case No. 07-cv-7052 (SHS)
                                                            :
TIG INSURANCE COMPANY,                                      :
                                                            :
                           Defendant.                       :
                                                            :
------------------------------------------------------------x

## PLAINTIFF AIU INSURANCE COMPANY'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANT TIG INSURANCE COMPANY

PLEASE TAKE NOTICE that pursuant to Rules 26 and 34 of the Federal Rules of Civil

Procedure, plaintiff AIU Insurance Company, by and through its undersigned attorneys,

Wollmuth Maher & Deutsch LLP, hereby requests and demands that defendant TIG Insurance

Company produce all documents in the categories specified below pursuant to the following

definitions and instructions on or before January 11, 2008, in accordance with the discovery

schedule agreed to by the parties, at the offices of Wollmuth Maher & Deutsch LLP, 500 Fifth

Avenue, New York, New York 10110.

## DEFINITIONS

1.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

3.    The term "relating to" means in any way concerning, indicating, referring to, mentioning, reflecting, pertaining to, evidencing, involving, describing or discussing.

4.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a) – i.e., including writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form – including, without limitation, electronic or computerized data compilations (including electronic mail).  A draft or non-identical copy or a copy of the same document from another source is a separate document within the meaning of this term.

5.    The term "person" means any natural person or any business, legal or governmental entity or association.

6.    As used herein, "AIU" means plaintiff AIU Insurance Company and its predecessors, successors, affiliates, and wherever located, their agents, representatives, officers, directors, employees, affiliates, parents, divisions and subsidiaries.

7.    As used herein, "AIG" means American International Group and its predecessors, successors, affiliates, and wherever located, their agents, representatives, officers, directors, employees, affiliates, parents, divisions and subsidiaries.

8.    As used herein, "TIG" means defendant TIG Insurance Company and its predecessors, successors, affiliates, and wherever located, their agents, representatives, officers, directors, employees, affiliates, parents, divisions and subsidiaries, including, without limitation, those persons and/or entities responsible for receiving, handling and/or addressing notices and/or claims under the Reinsurance Agreements.

9.    As used herein, "IIC" means International Insurance Company, and its predecessors, successors, affiliates, and wherever located, their agents, representatives, officers, directors, employees, affiliates, parents, divisions and subsidiaries, including, without limitation, those persons and/or entities responsible for receiving, handling and/or addressing notices and/or claims under the Reinsurance Agreements.

10.    As used herein, "You," "Your" and "defendant" means defendant TIG Insurance Company, and/or anyone acting on their behalf, including counsel.

11.    As used herein, "Foster Wheeler" means the Foster Wheeler Corporation and its predecessors, successors, affiliates, and wherever located, their agents, representatives, officers, directors, employees, affiliates, parents, divisions and subsidiaries.

12.    As used herein, "Umbrella Policies" means those four Umbrella Liability Policies that AIU issued to Foster Wheeler between October 1, 1978 and October 1, 1982 bearing policy numbers 75-100789, 75-101149, 75-101988 and 75-102083, and all addenda, modifications, amendments and endorsements thereto.

13.    As used herein, "Foster Wheeler Coverage Litigation" means the litigation proceedings in New Jersey and New York with docket numbers L-110-01 and 600777/01, respectively which were the subject of coverage litigation as between Foster Wheeler and its primary and excess carriers.

3

14.    As used herein, "Reinsurance Agreements" means those certain facultative insurance agreements that AIU entered into with IIC between October 1, 1978 and October 1, 1982, including, but not limited to:  (i) certificate numbers CFR-0062, CFR-0063, and CFR-0064, covering the period from October 1, 1978 until October 1, 1979; (ii) certificate numbers CFR-0071, CFR-0072, and CFR-0073, covering the period from October 1, 1979 until October 1, 1980; (iii) certificate numbers CFR-0085, CFR-0086, and CFR-0087, covering the period from October 1, 1980 until October 1, 1981; (iv) any other reinsurance agreements reinsuring any of the Umbrella Policies, including but not limited to such agreements covering the period from October 1, 1981 until October 1, 1982, and (v) and all addenda, modifications, amendments and endorsements to the foregoing documents.

15.    As used herein, "L.W. Biegler" means the entity by that name appearing on the Reinsurance Agreements, and its predecessors, successors, affiliates, and wherever located, their agents, representatives, officers, directors, employees, affiliates, parents, divisions and subsidiaries

16.    As used herein, "Answer" refers to TIG's Answer to AIU's Complaint, filed on or about September 17, 2007.

## INSTRUCTIONS

1.    Each request for documents, and each subsection of each request for documents, is to be fully and separately answered.

2.    Unless otherwise indicated, the time period applicable to these requests shall be January 1, 1978 until the date all of the requested documents are produced.

3.    The terms "all" and "each" shall be construed as all and each.

4.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of the scope.

5.    The term "including" shall be construed also to mean including but not limited to.

6.    The use of the singular form of any word includes the plural and vice versa.

7.    Documents are to be produced in their full and unexpurgated form, together with all drafts and nonidentical copies of each.

8.    In producing the documents requested herein, defendant should include the specific request or requests in response to which each document or group of documents is being produced, or otherwise produce the documents in the manner in which the documents are kept in the ordinary course of business, indicating the file or files from which the documents were taken.

9.    These requests call for the production of the described documents that are in the possession, custody or control of defendant, including those in the possession, custody or control of defendant's agents, representatives or attorneys.

10.    If any document requested herein was formerly in defendant's possession, custody or control and has been lost or destroyed or otherwise disposed of, defendant is requested to submit in lieu of any such document, a written statement:

a.    describing the nature of the document and its contents;

b.    identifying the person(s) who prepared or authored the document and, if applicable, the person(s) to whom the document was sent;

c.    specifying the date on which the document was prepared or transmitted; and

      d.      specifying the date on which the document was lost or destroyed and, if destroyed, the reasons for such destruction and the person(s) requesting and performing the destruction.

11.     If any document or portion of a document responsive to any of these requests for production is being withheld by defendant based on any claim of privilege, defendant is requested to provide, in writing, the following information with respect to each request to which defendant is asserting the privilege:

      a.      the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, the state's privilege law being invoked;

      b.      the type of document, e.g., letter or memorandum;

      c.      the general subject matter of the document;

      d.      the date of the document;

      e.      such other information as is sufficient to identify the document for a subpoena duces tecum, including, where identifiable, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees and recipients to each other; and

      f.      any other information required by Local Rule 26.2.

12.     If a portion of an otherwise responsive document contains information subject to a claim of privilege, those portions of the document subject to a claim of privilege shall be deleted or redacted from the document and any and all non-privileged portions of the document shall be produced.

6

13.     Any ground for withholding a document not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be waived.

14.     As required by Rule 26 (e) of the Federal Rules of Civil Procedure, these requests shall be deemed to be continuing so as to require further and supplemental production in the event that, subsequent to the service of the original responses, defendant discovers, locates, acquires or generate responsive documents or learns that documents previously withheld from production should previously have been produced.

## DOCUMENTS REQUESTED

1.    All documents relating to the Reinsurance Agreements, including, without limitation:

   a.  Documents relating to the placement of the Reinsurance Agreements;

   b.  Documents relating to the underwriting of the Reinsurance Agreements;

   c.  Documents relating to the negotiation of the Reinsurance Agreements;

   d.  Broker and/or intermediary files relating to the Reinsurance Agreements, including, but not limited to, files and/or documents maintained by L.W. Biegler;

   e.  Documents relating to the handling, administration, review, consideration and/or submission of claims under the Reinsurance Agreements; and

   f.  Documents relating to billings submitted under the Reinsurance Agreements.

2.    All documents relating to the Umbrella Policies.

3.    All documents concerning notice provided by AIU or AIG on the one hand, to IIC or TIG on the other hand (through intermediaries or otherwise), relating to losses or risks submitted under the Umbrella Policies, the Reinsurance Agreements, and/or relating to Foster Wheeler.

4.    All documents concerning any communications between AIU or AIG on the one hand, and IIC or TIG on the other hand (through intermediaries or otherwise), relating to losses or risks submitted under the Umbrella Policies, the Reinsurance Agreements and/or relating to Foster Wheeler.

5.    All documents relating to notices or communications from Foster Wheeler to TIG and/or IIC concerning coverage of asbestos related claims.

6.    All documents relating to TIG and/or IIC's evaluation and/or assessment and/or consideration of any requests or demands for insurance coverage from Foster Wheeler.

7.    All documents relating to TIG and/or IIC's evaluation and/or assessment and/or consideration of any requests or demands for reinsurance coverage concerning the Reinsurance Agreements, including, but not limited to, any documents relating to the establishment of reserves with respect to the Reinsurance Agreements.

8.    All documents concerning the Foster Wheeler Coverage Litigation.

9.    All documents concerning any guidelines or directives for estimating, setting, posting, evaluating, revising, adjusting or supplementing reserves, to the extent they apply concern or relate to the Reinsurance Agreements.

10.    All documents concerning TIG's denial that the Reinsurance Agreements include "an additional certificate covering the period from October 1, 1981 until October 1, 1982," as alleged in Paragraph 12 of the Answer.

11.    All documents concerning TIG's denial that "it agreed to reinsure Umbrella Policy 75-102083" as alleged in Paragraph 14 of the Answer.

12.    All documents concerning AIU's purported "breach of the Reinsurance Agreements' provision requiring that AIU provide prompt notice of any occurrence or accident which appears likely to involve the reinsurance," as alleged in the First, Second, Third and Fourth Affirmative Defenses of the Answer.

13.    All documents concerning TIG's alleged commutation(s) of reinsurance that would otherwise have involved losses or risks relating to Foster Wheeler, as alleged in the

9

Second and Fifth Affirmative Defenses of the Answer, including, but not limited to, all documents relating to the negotiation of any such commutation(s).

14.    All documents concerning the allegation in the Second and Fifth Affirmative Defenses of the Answer that the "TIG entered into commutations of certain of its outwards reinsurance coverage without notice of Foster Wheeler's claims against AIU."

15.    All documents concerning the allegation in the Second and Fifth Affirmative Defenses of the Answer that "[t]he absence of such notice caused TIG to commute for fewer dollars than TIG otherwise might have commuted had it had such notice."

16.    All documents concerning any "prejudice and/or tangible economic injury in the form of lost reinsurance recoveries" suffered by TIG, as alleged in the Second Affirmative Defense of the Answer.

17.    All documents concerning any "prejudice and/or tangible economic injury as a result of not receiving notice to set appropriate reserves under the Reinsurance Agreements" suffered by TIG, as alleged in the Third Affirmative Defense of the Answer.

18.    All documents concerning AIU's alleged failure to "make available for inspection and place at the disposal of TIG at reasonable times any of its records relating to this reiunsurance or claims in connection therewith," as alleged in the Fourth Affirmative Defense of the Answer.

19.    All documents concerning the allegation in the Fifth Affirmative Defense of the Answer that "TIG justifiably and detrimentally relied on the absence of prompt notice by AIU advising TIG under the Reinsurance Agreements of the Foster Wheeler's claims, suits or proceedings."

20.     All documents concerning the allegation in the Sixth Affirmative Defense of the Answer that "[s]ome or all of the claims paid by AIU to Foster Wheeler may be excluded from the coverage provided by one or more of the Reinsurance Agreements."

21.     All documents concerning the allegation in the Seventh Affirmative Defense of the Complaint that AIU has not met its alleged "burden to establish that the claims paid under its settlement with Foster Wheeler are within the terms and conditions of the Policies ceded to Reinsurance Contracts and are otherwise properly allocated to those policies."

22.     All documents concerning any statements of witnesses (including present and former employees of TIG and former employees of IIC) relating to the Reinsurance Agreements, the Umbrella Policies, Foster Wheeler, the Foster Wheeler Coverage Litigation and/or any of the Affirmative Defenses set forth in the Answer.

23.     All documents provided to any person whom TIG may call as a fact witness during the trial of this matter.

24.     With respect to any witness who is retained or specially employed to provide expert testimony in this action or whose duties as an employee of defendant regularly involve giving expert testimony, (i) all reports, including drafts of the witness's opinions and the bases and reasons therefor, (ii) all documents concerning the data or other information considered by the witness in forming his opinion, (iii) any exhibits to be used as a summary of or support for the opinions, (iv) a current and complete curriculum vitae of the witness, (v) all publications authored by the witness within the preceding ten years, (vi) all documents concerning the agreement between the defendant and the witness, including the compensation to be paid for witness's study and testimony, and (v) transcripts of all testimony (whether given at trial,

11

deposition, hearing, arbitration, other proceeding or in written statement ) given by the witness within the preceding four years.

25.    To the extent not previously requested, the documents referred to in Section II of TIG Insurance Company's Rule 26 Initial Disclosures, dated October 25, 2007.

26.    To the extent not previously requested, all documents TIG intends to use at the trial of this action.

27.    All documents identified in, or used in preparing and responding to, AIU's First Set of Interrogatories to defendant TIG Insurance Company.

Dated: November 12, 2007
       New York, New York

                            WOLLMUTH MAHER & DEUTSCH LLP

                            By:_____
                                William A. Maher (WM-9470)
                                Marc L. Abrams (MA-6600)

                            500 Fifth Avenue
                            New York, NY 10110
                            (212) 382-3300

                            Attorneys for Plaintiff AIU Insurance Company

# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

|  |  |  |
|---|---|---|
| AIU INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against - | : | Civil Action No. 07 CIV 7052 |
| | : | |
| TIG INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

----------------------------------------------------x

## TIG INSURANCE COMPANY'S ANSWERS AND
## OBJECTIONS TO AIU'S FIRST SET OF DOCUMENT REQUESTS

Defendant TIG Insurance Company ("TIG") provides the following responses and

objections to the Document Requests made by Plaintiff AIU Insurance Company ("AIU"). TIG

reserves the right to supplement, amend or modify these responses and objections.

## GENERAL OBJECTIONS

Each of the following General Responses and Objections is incorporated into all of the

Responses below, and every statement identifying documents TIG will produce or answers it will

provide must be read subject to and limited by these Objections.

1.          TIG objects to the First Set of Document Requests to the extent that it seeks the production of documents referring or relating to, or containing, TIG confidential or proprietary information.

2.          TIG objects to the First Set of Document Requests to the extent that it seeks the production of documents or information that TIG is barred from producing by order or rule of a court or arbitration panel.  Further, TIG objects to the Requests to the extent that they seek production of documents or information where such production would be inconsistent with TIG's obligations under confidentiality agreements entered into with third parties.

3.          TIG objects to providing information in response to the First Set of Document Requests until such information is subject to an appropriate protective order.

4.          TIG objects to the First Set of Document Requests to the extent that it calls for disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other privileges protecting against the disclosure of information.  To the extent that any information that is properly the subject of any such privilege or work product protection is inadvertently produced in response to these Requests, such production is not intended as a waiver of any such privilege or work product protection.

5.          TIG objects to the First Set of Document Requests to the extent that it seeks information already in the possession or control of AIU or equally available to AIU as to TIG.

6.          TIG objects to each Request, Definition and/or Instruction to the extent that it calls for TIG to obtain information from third parties.

7.          To the extent that the First Set of Document Requests are read to embrace more than the information TIG states that it will produce, TIG objects to each such Request on

the grounds that (i) it is vague, ambiguous and overbroad; (ii) it calls for the production of information that is irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence given the needs of the case; and (iii) compliance would be unduly burdensome and oppressive.

8.        TIG objects to each of the First Set of Document Requests to the extent it seeks to impose obligations that exceed or differ from those imposed by the applicable rules, including Local Rules 26.2 and 26.3.

9.        TIG objects to Instruction No. 13 to the extent that it seeks to foreclose TIG's right to supplement, amend, and/or modify its responses and objections to the First Set of Document Requests.

10.        TIG objects to the Definitions to the extent that they conflict with those provided in the applicable rules, including Local Rule 26.3.

11.        TIG objects to the Definition of "Reinsurance Agreements" to the extent that it purports to incorporate reinsurance agreements other than the facultative certificates specified in paragraph 12 of the Complaint.  TIG does not admit that all of the facultative certificates listed in paragraph 12 of the Complaint exist.

12.        TIG objects to each of the Requests to the extent each is phrased in absolute terms.  Where the Request asks for all documents on a particular subject, TIG in responding to such Request, will undertake only to supply documents reasonably locatable and known to it at the time of the responses and will not undertake any obligation, express or implied, to represent that the response includes all of the documents that may exist.

13.        TIG's response that the production of responsive documents will be made

does not mean that any of the requested documents in fact exist. It means only that, subject to these General Responses and Objections, and the Responses and Objections set forth herein, documents will be produced to the extent TIG has been able, upon reasonable effort, to locate responsive documents currently in its possession, custody, or control.

14.    TIG will produce responsive documents, or allow inspection of such documents, as such documents are kept in the usual course of business, and objects to the Requests to the extent they purport to impose any different or inconsistent requirement on TIG.

15.    Production by TIG of any information in response to the First Set of Document Requests or the voluntary production of information not precisely called for by the First Set of Document Requests does not constitute an admission that the information is responsive to a Request or that the Request is, in any way, relevant to this proceeding.

16.    Production by TIG of any information in response to the First Set of Document Requests or the voluntary production of information not precisely called for by the First Set of Document Requests is not a waiver of the right to object to the production of other information of the kind called for in a Request.

17.    TIG responds to the First Set of Document Requests based on the best of its present knowledge, information and belief. TIG's response is at all times subject to such additional or different information that discovery or further investigation may disclose. TIG reserves the right to amend, modify, supplement and/or withdraw these responses and objections to the full extent permitted by law.

18.    TIG reserves all evidentiary objections, including relevance and materiality, and its responses, and any production or identification of documents included in those responses,

- 4 -

shall neither waive nor prejudice any objections it may herein or later assert, including but not limited to objections as to the admissibility of any documents or category of documents at trial.

## RESPONSES AND OBJECTIONS

### REQUEST NO. 1:

All documents relating to the Reinsurance Agreements, including, without limitation:

a.  Documents relating to the placement of the Reinsurance Agreements;
b.  Documents relating to the underwriting of the Reinsurance Agreements;
c.  Documents relating to the negotiation of the Reinsurance Agreements;
d.  Broker and/or intermediary files relating to the Reinsurance Agreements, including, but not limited to, files and/or documents maintained by L.W. Beigler;
e.  Documents relating to the handling, administration, review, consideration and/or submission of claims under the Reinsurance Agreements; and
f.  Documents relating to billings submitted under the Reinsurance Agreements.

### ANSWER:

TIG objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, and it calls for the production of information that is not reasonably calculated to lead to the discovery of admissible evidence to the extent that it seeks all documents relating to the Reinsurance Agreements, regardless of whether they have any connection to the needs of this case. Subject to this objection and its General Objections, TIG will produce: documents relating to the placement of the Reinsurance Agreements; documents relating to the underwriting of the Reinsurance Agreements, documents relating to the negotiation of the Reinsurance Agreements; documents relating to the handling, administration, review, consideration and/or submission of claims under the Reinsurance Agreements giving rise to the billings at issue in the Complaint; and documents relating to billings submitted under the Reinsurance Agreements which are at issue in the Complaint.

**REQUEST NO. 2:**

All documents relating to the Umbrella Policies.

**ANSWER:**

TIG objects to this Request on the grounds that it is vague, overbroad, unduly

burdensome, and it calls for the production of information that is not reasonably calculated to

lead to the discovery of admissible evidence because it could be construed to seek documents

unrelated to the losses AIU ceded to the Reinsurance Agreements. Subject to these objections

and to TIG's General Objections, TIG will produce non-privileged documents responsive to this

Request relating to the billings under the Reinsurance Agreements at issue in the Complaint.

**REQUEST NO. 3:**

All documents concerning notice provided by AIU or AIG on the one hand, to IIC or TIG
on the other hand (through intermediaries or otherwise), relating to losses or risks submitted
under the Umbrella Policies, the Reinsurance Agreements, and/or relating to Foster Wheeler.

**ANSWER:**

TIG objects to this Request on the grounds that it is vague, overbroad, unduly

burdensome, and it calls for the production of information that is not reasonably calculated to

lead to the discovery of admissible evidence because it could be construed to seek documents

unrelated to the losses AIU ceded to the Reinsurance Agreements. Subject to these objections

and to TIG's General Objections, TIG will produce non-privileged documents responsive to this

Request relating to notices of the billings under the Reinsurance Agreements at issue in the

Complaint.

**REQUEST NO. 4:**

All documents concerning any communications between AIU or AIG on the one hand, and IIC or TIG on the other hand (through intermediaries or otherwise), relating to losses or risk submitted under the Umbrella Policies, the Reinsurance Agreements and/or relating to Foster Wheeler.

**ANSWER:**

TIG objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, and it calls for the production of information that is not reasonably calculated to lead to the discovery of admissible evidence because it could be construed to seek documents unrelated to the losses AIU ceded to the Reinsurance Agreements. Subject to these objections and to TIG's General Objections, TIG will produce non-privileged documents responsive to this Request relating to the communications made pursuant to the billings under the Reinsurance Agreements at issue in the Complaint.

**REQUEST NO. 5:**

All documents relating to notices or communications from Foster Wheeler to TIG and/or IIC concerning coverage of asbestos related claims.

**ANSWER:**

TIG objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, and it calls for the production of information that is not reasonably calculated to lead to the discovery of admissible evidence because it could be construed to seek documents unrelated to the losses AIU ceded to the Reinsurance Agreements. TIG also asserts its General Objections in response to this Request.

**REQUEST NO. 6:**

All documents relating to TIG and/or IIC's evaluation and/or assessment and/or consideration of any requests or demands for insurance coverage from Foster Wheeler.

**ANSWER:**

TIG objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, and it calls for the production of information that is not reasonably calculated to lead to the discovery of admissible evidence because it could be construed to seek documents unrelated to the losses AIU ceded to the Reinsurance Agreements. TIG also asserts its General Objections in response to this Request.

**REQUEST NO. 7:**

All documents relating to TIG and/or IIC's evaluation and/or assessment and/or consideration of any requests or demands for reinsurance coverage concerning the Reinsurance Agreements, including, but not limited to, any documents relating to the establishment of reserves with respect to the Reinsurance Agreements.

**ANSWER:**

TIG objects to this Request on the grounds that it is vague, overbroad, unduly burdensome, and it calls for the production of information that is not reasonably calculated to lead to the discovery of admissible evidence because it could be construed to seek documents unrelated to the losses AIU ceded to the Reinsurance Agreements. Subject to these objections and to TIG's General Objections, TIG will produce non-privileged documents responsive to this Request relating to the reserves set in response to the billings under the Reinsurance Agreements at issue in the Complaint.

**REQUEST NO. 8:**

All documents concerning the Foster Wheeler Coverage Litigation.

**ANSWER:**

TIG objects to this Request on the grounds that it is vague, overbroad, unduly

burdensome, and it calls for the production of information that is not reasonably calculated to

lead to the discovery of admissible evidence because it could be construed to seek documents

unrelated to the losses AIU ceded to the Reinsurance Agreements.  TIG also asserts its General

Objections.

**REQUEST NO. 9:**

All documents concerning any guidelines or directives for estimating, setting, posting,
evaluating, revising, adjusting or supplementing reserves, to the extent they apply concern or
relate to the Reinsurance Agreements.

**ANSWER:**

TIG objects to this Request on the grounds that it is vague, overbroad, unduly

burdensome, and it calls for the production of information that is not reasonably calculated to

lead to the discovery of admissible evidence.  TIG has previously agreed to produce reserve

information for the Foster Wheeler claim in response to Request No. 1.  TIG's general guidelines

or directives relating to reserves, to the extent they even exist, have no bearing on the timing or

appropriateness of AIU's notice to TIG or any other issues before the Court.

**REQUEST NO. 10:**

All documents concerning TIG's denial that the Reinsurance Agreements include "an
additional certificate covering the period from October 1, 1981 until October 1, 1982," as alleged
in Paragraph 12 of the Answer.

**ANSWER:**

Subject to its General Objections, TIG will produce documents responsive to this

Request.

**REQUEST NO. 11:**

All documents concerning TIG's denial that, "it agreed to reinsure Umbrella Policy 75-102083" as alleged in Paragraph 14 of the Answer.

**ANSWER:**

Subject to its General Objections, TIG will produce documents responsive to this

Request.

**REQUEST NO. 12:**

All documents concerning AIU's purported "breach of the Reinsurance Agreements' provision requiring that AIU provide prompt notice of any occurrence or accident which appears likely to involve the reinsurance," as alleged in the First, Second, Third and Fourth Affirmative Defenses of the Answer.

**ANSWER:**

Subject to its General Objections, TIG will produce documents responsive to this

Request.

**REQUEST NO. 13:**

All documents concerning TIG's alleged commutation(s) of reinsurance that would otherwise have involved losses or risks relating to Foster Wheeler, as alleged in the Second and Fifth Affirmative Defenses of the Answer, including, but not limited to, all documents relating to the negotiation of any such commutation(s).

**ANSWER:**

TIG objects to this Request on the grounds that it is confusing, vague, overbroad, unduly

burdensome, and it calls for the production of information that is not reasonably calculated to

lead to the discovery of admissible evidence. TIG objects to the Request to the extent that it

seeks production of documents or information where such production would be inconsistent with

TIG's obligations under confidentiality agreements entered into with third parties. Further, TIG

objects to providing information in response to this Request until such information is subject to

an appropriate protective order. Subject to these objections and TIG's General Objections, TIG

will produce non-privileged documents relating to its commutations of outward reinsurance

coverage that were impacted by AIU's late notice of the Foster Wheeler claims under the

Reinsurance Agreements.

## REQUEST NO. 14:

All documents concerning the allegation in the Second and Fifth Affirmative Defenses of the Answer that the "TIG entered into commutations of certain of its outwards reinsurance coverage without notice of Foster Wheeler's claims against AIU."

## ANSWER:

TIG objects to this Request on the grounds that it is confusing, vague, overbroad, unduly

burdensome, and it calls for the production of information that is not reasonably calculated to

lead to the discovery of admissible evidence. TIG objects to the Request to the extent that it

seeks production of documents or information where such production would be inconsistent with

TIG's obligations under confidentiality agreements entered into with third parties. Further, TIG

objects to providing information in response to this Request until such information is subject to

an appropriate protective order. Subject to these objections and TIG's General Objections, TIG

will produce non-privileged documents relating to its commutations of outward reinsurance

coverage that were impacted by AIU's late notice of the Foster Wheeler claims under the

Reinsurance Agreements.

## REQUEST NO. 15:

All documents concerning the allegation in the Second and Fifth Affirmative Defenses of the Answer that "[t]he absence of such notice caused TIG to commute for fewer dollars than TIG otherwise might have commuted had it had such notice."

**ANSWER:**

TIG objects to the Request to the extent that it seeks production of documents or information where such production would be inconsistent with TIG's obligations under confidentiality agreements entered into with third parties. Further, TIG objects to providing information in response to this Request until such information is subject to an appropriate protective order. Subject to these objections and its General Objections, TIG will produce documents responsive to this Request.

**REQUEST NO. 16:**

All documents concerning any "prejudice and/or tangible economic injury in the form of lost reinsurance recoveries" suffered by TIG, as alleged in the Second Affirmative Defense of the Answer.

**ANSWER:**

TIG objects to the Request to the extent that it seeks production of documents or information where such production would be inconsistent with TIG's obligations under confidentiality agreements entered into with third parties. Further, TIG objects to providing information in response to this Request until such information is subject to an appropriate protective order. Subject to these objections and its General Objections, TIG will produce documents responsive to this Request.

**REQUEST NO. 17:**

All documents concerning any "prejudice and/or tangible economic injury as a result of not receiving notice to set appropriate reserves under the Reinsurance Agreements" suffered by TIG, as alleged in the Third Affirmative Defense of the Answer.

**ANSWER:**

TIG objects to the Request to the extent that it seeks production of documents or information where such production would be inconsistent with TIG's obligations under confidentiality agreements entered into with third parties. Further, TIG objects to providing information in response to this Request until such information is subject to an appropriate protective order. Subject to these objections and its General Objections, TIG will produce documents responsive to this Request.

**REQUEST NO. 18:**

All documents concerning AIU's alleged failure to "make available for inspection and place at the disposal of TIG at reasonable times any of its records relating to this reinsurance or claims in connection therewith," as alleged in the Fourth Affirmative Defense of the Answer.

**ANSWER:**

Subject to its General Objections, TIG will produce documents responsive to this Request.

**REQUEST NO. 19:**

All documents concerning the allegation in the Fifth Affirmative Defense of the Answer that "TIG justifiably and detrimentally relied on the absence of prompt notice by AIU advising TIG under the Reinsurance Agreements of the Foster Wheeler's claims, suits or proceedings."

**ANSWER:**

TIG objects to the Request to the extent that it seeks production of documents or information where such production would be inconsistent with TIG's obligations under confidentiality agreements entered into with third parties. Further, TIG objects to providing information in response to this Request until such information is subject to an appropriate

protective order. Subject to these objections and its General Objections, TIG will produce

documents responsive to this Request.

**REQUEST NO. 20:**

      All documents concerning the allegations in the Sixth Affirmative Defense of the Answer that "[s]ome or all of the claims paid by AIU to Foster Wheeler may be excluded from the coverage provided by one or more of the Reinsurance Agreements."

**ANSWER:**

      Subject to its General Objections, TIG will produce documents responsive to this

Request.

**REQUEST NO. 21:**

      All documents concerning the allegation in the Seventh Affirmative Defense of the Complaint that AIU has not met its alleged "burden to establish that the claims paid under its settlement with Foster Wheeler are within the terms and conditions of the Policies ceded to Reinsurance Contracts and are otherwise properly allocated to those policies."

**ANSWER:**

      Subject to its General Objections, TIG will produce documents responsive to this

Request.

**REQUEST NO. 22:**

      All documents concerning any statements of witnesses (including present and former employees of TIG and former employees of IIC) relating to the Reinsurance Agreements, the Umbrella Policies, Foster Wheeler, the Foster Wheeler Coverage Litigation and/or any of the Affirmative Defenses set forth in the Answer.

**ANSWER:**

      TIG objects to this Request on the ground that is seeks information protected by the

attorney work-product doctrine and the attorney client privilege. TIG also asserts its General

Objections.

**REQUEST NO. 23:**

      All documents provided to any person whom TIG may call as a fact witness during the trial of this matter.

**ANSWER:**

      TIG objects to this Request on the ground that is seeks information protected by the attorney work-product doctrine and the attorney client privilege. TIG further objects to this Request on the ground that it is premature. TIG has not yet identified who it will call as fact witnesses in the trial at this matter. When such witnesses are identified, subject to these and the General Objections, TIG will produce responsive documents if they have not previously been produced in response to AIU's other Requests.

**REQUEST NO. 24:**

      With respect to any witness who is retained or specially employed to provide expert testimony in this action or whose duties as an employee of defendant regularly involve giving expert testimony, (i) all reports, including drafts of the witness's opinions and the bases and reasons therefore, (ii) all documents concerning the data or other information considered by the witness in forming his opinion, (iii) any exhibits to be used as a summary of or support for the opinions, (iv) a current and complete curriculum vitae of the witness, (v) all publications authored by the witness within the preceding ten years, (vi) all documents concerning the agreement between the defendant and the witness, including the compensation to be paid for witness's study and testimony, and (v) transcripts of all testimony (whether given at trial, deposition, hearing, arbitration, other proceeding or in written statement) given by the witness within the preceding four years.

**ANSWER:**

      TIG objects to this Request on the grounds that it is overbroad to the extent that it seeks to impose obligations beyond those set forth in the applicable rules. TIG further objects to the Request on the ground that it is premature. TIG also asserts its General Objections. TIG will disclose the information required by the Federal Rules of Civil Procedure at the time such disclosures are required under the Court's scheduling order.

**REQUEST NO. 25:**

To the extent not previously requested, the documents referred to in Section II of TIG Insurance Company's Rule 26 Initial Disclosures, dated October 25, 2007.

**ANSWER:**

Subject to its General Objections, TIG will produce documents responsive to this

Request.

**REQUEST NO. 26:**

To the extent not previously requested, all documents TIG intends to use at the trial of this action.

**ANSWER:**

TIG objects to this Request on the ground that it is premature.  Subject to this objection

and TIG's General Objections, TIG will identify documents responsive to this Request at the

time specified by the Court in the Final Pretrial Order.

**REQUEST NO. 27:**

All documents identified in, or used in preparing and responding to, AIU's First Set of Interrogatories to defendant TIG Insurance Company.

**ANSWER:**

Subject to its General Objections and the specific objections set forth above, TIG will

produce responsive, non-privileged documents within the parameters described in TIG's

responses above.

Dated:  December 12, 2007

Respectfully submitted,

TIG Insurance Company

By: _____

Sean Thomas Keely (SK-8593)

Sean Thomas Keely (SK-8593)
Lovells LLP
590 Madison Avenue
New York, New York 10022
(212) 909-0600

James I. Rubin (Admitted *pro hac vice*)
Catherine E. Isely (Admitted *pro hac vice*)
Julie Rodriguez Aldort (Admitted *pro hac vice*)
Amy Pines (Admitted *pro hac vice*)
Butler Rubin Saltarelli & Boyd LLP
70 West Madison, Ste. 1800
Chicago, Illinois 60602
(312) 444-9660

- 17 -

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on December 12, 2007, he caused the foregoing *TIG Insurance Company's Answer and Objections to AIU's First Set of Document Requests* to be served on the following attorney via messenger:

William A. Maher, Esq.
Marc L. Abrams, Esq.
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York   10110

_____
Sean Thomas Keely

W0059293v2

- 18 -