Sean Thomas Keely (SK-8593)
LOVELLS LLP
590 Madison Avenue
New York, New York 10022
(212) 909-0600

James I. Rubin (IL 02413191- admitted *pro hac vice*)
Catherine E. Isely (IL 06237505 - admitted *pro hac vice*)
Julie Rodriguez Aldort (IL 6271412, admitted *pro hac vice*)
BUTLER RUBIN SALTARELLI & BOYD
70 W. Madison, Suite 1800
Chicago, Illinois 60602
(312) 444-9660
Attorneys for Defendant
TIG Insurance Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
:
AIU INSURANCE COMPANY,                  :
:
Plaintiff,            :
:
-v. -                                   :          Civil Action No. 07 CIV 7052
:
TIG INSURANCE COMPANY,                  :
:
Defendant.            :
:
---------------------------------------------------------x

### DECLARATION OF JOHN PARKER

I, John Parker, declare as follows:

1.  I am over the age of 18 years.

2.  The following statements are true to the best of my knowledge, information and belief.

3.  Since September, 2006, I have held the position of Senior Vice President – Reinsurance and Reinsurance Counsel for TIG Insurance Company ("TIG").

4.     I serve in the role of an attorney, and it is my responsibility to provide legal advice and services to TIG and its employees with respect to reinsurance disputes.

5.     Ann Weikers has been employed as TIG's Deputy Reinsurance Counsel from May 30, 2007 to present and as Assistant Vice President of TIG from January 1, 2008 to present. I hired Ms. Weikers, and it is Ms. Weikers' responsibility to provide legal advice and services to TIG and its employees with respect to reinsurance disputes under my supervision.

6.     Ms. Weikers and I have operated solely in a legal capacity with respect to the dispute between TIG and AIU over AIU's Foster Wheeler claim. At no time have either of us acted in a claims handling capacity with respect to the claim.

7.     Upon receipt of the January 25, 2007 notice, TIG opened up an assumed reinsurance claim file and assigned the AIU claim to Michael Staley, TIG's Assumed Reinsurance Senior Claims Specialist.

8.     From at least January 25, 2007 to the present, Mr. Staley has served as an Assumed Reinsurance Senior Claims Specialist for TIG and reported to William Pascale, TIG's Assumed Reinsurance Claims Manager.

9.     From at least January 25, 2007 to the present, Mr. Pascale has served as TIG's Assumed Reinsurance Claims Manager. Claims handling for AIU's Foster Wheeler claim is and has been the responsibility of only Mr. Staley and Mr. Pascale. Mr. Pascale has primary responsibility for handling AIU's claims for reinsurance recoveries under the reinsurance facultative certificates that are at issue in this litigation.

10.    Mr. Staley and Mr. Pascale reviewed AIU's January 25, 2007 notice upon receipt as part of their investigation and adjustment of AIU's claim in the ordinary course of business. On or about February 1, 2007, Mr. Staley alerted me to his and Mr. Pascale's concerns about

2

AIU's apparent failure to provide TIG with the requisite "prompt notice" to which TIG was entitled under the Reinsurance Contracts and sought my legal advice regarding TIG's resulting rights and obligations under the Reinsurance Contracts.

11. In light of AIU's extreme delay in notifying TIG of the claim and AIU's execution of a multi-million dollar settlement without notice to TIG under the Reinsurance Contracts of Foster Wheeler's claim, demand, coverage action or settlement negotiations, I immediately determined that AIU's claim was likely to be the subject of litigation.

12. Over the next week, I considered various legal strategies for enforcing TIG's contractual right to receive prompt notice from AIU under the Reinsurance Contracts.

13. On February 12, 2007, I contacted and retained attorneys at Butler Rubin Saltarelli & Boyd LLP ("Butler Rubin") to obtain legal advice concerning TIG's rights and obligations under the Reinsurance Contracts, to consider the prosecution of legal action against AIU, and to undertake the defense of litigation I anticipated AIU could file at any time.

14. Thereafter, I engaged in extensive communications with attorneys from Butler Rubin, and I also directed various TIG employees, including Messrs. Staley and Pascale, to undertake certain investigations to assist me and Butler Rubin in our legal analyses.

15. I am familiar with Rule 26(b)(3) of the Federal Rules of Civil Procedure, and I fully intended and expected that the work product privilege would attach to any documents created during those investigations, given that I directed Mr. Staley, Mr. Pascale and other TIG employees to undertake the investigations to assist Butler Rubin and me in what I anticipated would be litigation with AIU over the Foster Wheeler claim.

3

16. These investigations were separate from Mr. Staley's and Mr. Pascale's claims handling and adjusting responsibilities on behalf of TIG with respect to AIU's Foster Wheeler claim, responsibilities which they continued to pursue as appropriate.

17. Butler Rubin attorneys and paralegals have operated solely in a legal capacity with respect to AIU's Foster Wheeler claim and at no time have acted in a claims handling capacity with respect to the claim.

18. Communications among Ms. Weikers, other TIG employees and me are primarily of a legal character and are made or received by Ms. Weikers and me in our roles as attorneys.

19. Communications between employees of TIG and Butler Rubin are primarily of a legal character and are made or received by Butler Rubin in its role of as TIG's attorney.

20. Beginning in May of 2007, I began considering whether to invoke the access to records clause of the Reinsurance Contracts in order to identify additional information regarding the timing of AIU's knowledge or notice of potential exposure to the Foster Wheeler Policies and to thereby inform my legal strategy regarding the anticipated litigation with AIU.

21. I sought legal advice from Butler Rubin regarding this issue.

22. Messrs. Pascale and Loggia conducted a review of AIU's files in July of 2007. Prior to and during that audit, Ms. Weikers and I gave Messrs. Pascale and Loggia legal advice and direction with respect to the conduct of the audit, including with respect to any notes taken during the audit.

23. Messrs. Pascale and Loggia provided their notes only to Ms. Weikers, Butler Rubin and me.

24. I am familiar with Rule 26(b)(3) of the Federal Rules of Civil Procedure, and I fully intended and expected that the work product privilege would attach to these documents,

4

given that I directed Messrs. Pascale and Loggia to create those documents to assist Butler Rubin and me in what I anticipated would be litigation with AIU over the Foster Wheeler claim.

25.  TIG has incurred fees and expenses, including attorneys' fees, in opposing AIU's Motion to Compel. If this Court denies AIU's motion and determines that an award of TIG's fees and expenses is warranted under Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure, I am prepared to provide competent evidence as to the applicable amounts TIG has incurred.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: May 19, 2008

_____
John Parker

W0067849v4