Sean Thomas Keely (SK-8593)
LOVELLS LLP
590 Madison Avenue
New York, New York 10022
(212) 909-0600
sean.keely@lovells.com

James I. Rubin (*pro hac vice*)
Catherine E. Isely (*pro hac vice*)
Julie Rodriguez Aldort (*pro hac vice*)
BUTLER RUBIN SALTARELLI & BOYD
70 W. Madison, Suite 1800
Chicago, Illinois 60602
(312) 444-9660
Attorneys for Defendant
TIG Insurance Company

**FILED UNDER SEAL
PURSUANT TO
CONFIDENTIALITY ORDER**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------

|                              |   |                          |
|------------------------------|---|--------------------------|
| AIU INSURANCE COMPANY,       | : |                          |
|                              | : |                          |
|           Plaintiff,         | : |                          |
|                              | : |                          |
|         -v. -                | : | Civil Action No. 07 CIV 7052 |
|                              | : |                          |
| TIG INSURANCE COMPANY,       | : |                          |
|                              | : |                          |
|           Defendant.         | : |                          |

-------------------------------------------------------

### TIG INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO AIU INSURANCE COMPANY'S MOTION TO COMPEL

## Table of Contents

Page

STATEMENT OF FACTS ............................................................................................ - 1 -

ARGUMENT ............................................................................................................... - 7 -

I.    AIU'S CHALLENGE TO TIG'S ATTORNEYCLIENT PRIVILEGE CLAIM OVER
      CERTAIN COMMUTATION-RELATED DOCUMENTS SHOULD BE REJECTED
      AS PROCEDURALLY DEFECTIVE ......................................................................... - 7 -

II.   TIG HAS ESTABLISHED THE ELEMENTS OF THE ATTORNEY-CLIENT
      PRIVILEGE AS TO THE DOCUMENTS SOUGHT BY AIU. .................................. - 10 -

A.    The Legal Standard Governing the Attorney-Client Privilege ...................................... - 11 -

B.    TIG Has Established the Elements of the Attorney-Client Privilege. .......................... - 12 -

C.    The Cases Cited by AIU in Support of Its Challenge to TIG's Attorney-Privilege
      Claim Involve Individuals Specifically Employed to Provide Claims
      Handling Services. ..................................................................................................... - 14 -

III.  TIG HAS ESTABLISHED THE ELEMENTS OF THE WORK PRODUCT DOCTRINE
      AS TO THE DOCUMENTS SOUGHT BY AIU......................................................... - 16 -

A.    The Legal Standard Governing the Work Product Doctrine ....................................... - 16 -

B.    TIG Has Established the Elements of the Work Product Doctrine.............................. - 18 -

C.    TIG's Reservation of Rights Is Evidence of Its "Resolve to Litigate." ....................... - 19 -

D.    TIG's Retention of Butler Rubin Is Evidence of Its "Resolve to Litigate." ................. - 21 -

E.    The Withheld Audit Documents Were Prepared in Anticipation of Litigation. ........... - 22 -

F.    AIU Bears the Burden of Showing a Substantial Need for TIG's Work Product and an
      Inability to Obtain Its Substantial Equivalent. ........................................................... - 23 -

IV.   TIG IS ENTITLED TO AN AWARD OF ITS FEES AND EXPENSES.................... - 24 -

CONCLUSION........................................................................................................... - 25 -

## <u>Table of Authorities</u>

Page

**Cases**

*Aetna Cas. & Surety Co. v. Certain Underwriters at Lloyd's,*
    263 A.D.2d 367, 692 N.Y.S.2d 384 (1st Dep't 1999) .............................................. 14

*Apex Oil Co. v. Belcher Co.,* 855 F.2d 1009, 1020 (2d Cir. 1988) .............................................. 25

*Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pitt.,*
    No. 90 Civ. 7811, 1994 U.S. Dist. LEXIS 17768, at *6 (S.D.N.Y. Dec. 13, 1994) ............... 20

*Condit v. Dunne,*
    225 F.R.D. 100, 108 (S.D.N.Y. 2004) ...................................................................... 11

*ECDC Envtl., L.C. v. New York Marine and Gen. Ins. Co.,*
    No. 96 CIV 6033 (BSJ)(HBP), 1998 WL 614478, at *4 (S.D.N.Y. June 4, 1998) ................ 13

*Employers Reinsurance Corp. v. MidContinent Cas. Co.,*
    No. 012058KTTV, 2002 U.S. Dist. LEXIS 9636 (D. Kan. Apr. 18, 2002) ........... 15 , 23 , 24

*Excess Ins. Co., Ltd. v. Rochdale Ins. Co.,*
    No. 05 Civ. 10174, 2007 WL 2900217, at *1 (S.D.N.Y. Oct. 4, 2007) .................................. 10

*Hickman v. Taylor,*
    329 U.S. 495, 51011, 67 S. Ct. 385, 39394, 91 L. Ed. 451 (1947) .......................................... 17

*In re County of Erie,*
    473 F.3d 413, 419 (2d Cir. 2007) ................................................................................ 11

*In Re Grand Jury Subpoenas dated December 18, 1981 & January 4, 1982,*
    561 F. Supp. 1247, 1257 (E.D.N.Y.1982) ........................................................................ 17

*In re Kidder Peabody,*
    168 F.R.D. 459, 466 (S.D.N.Y. 1996) ........................................................................ 18

*Lego v. Stratos Lightwave, Inc.,*
    224 F.R.D. 576, 57879 (S.D.N.Y. 2004) ........................................................................ 11

*Matsushita Elec. Corp. of America v. 212 Copiers Corp.,*
    No. 93 Civ. 3243, 1996 WL 87245, at *1 (S.D.N.Y. Feb. 29, 1996) ...................................... 8

*Medical Protective Co. v. Bubenik,*
    No. 4:06 CV 01639 ERW, 2007 U.S. Dist. LEXIS 76382
    (E.D. Mo. Oct. 15, 2007) .................................................................................. 15 , 16 , 18

*Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc.,*
    No. 96 CIV. 5590 MJL HBP, 1998 WL 729735, at *4 (S.D.N.Y. Oct. 16, 1998) .......... 17 , 18

*Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos.,*
    123 F.R.D. 198, 202 (M.D.N.C. 1988) ........................................................................ 21

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.,*
No. 96 Civ. 7590 (DAB)JCF, 1998 WL 67672, at *3 (S.D.N.Y. Feb. 18, 1998) .................... 10

*Rossi v. Blue Cross & Blue Shield,*
73 N.Y.2d 588, 592, 540 N.E.2d 703, 705, 542 N.Y.S.2d 508, 510 (N.Y. 1989) .................. 11

*Royal Surplus Lines Ins. Co. v. Sofamor Danke Group, Inc.,*
190 F.R.D. 463, 492 (W.D. Tenn. 1998 ........................................................... 21

*Spectrum Systems Int'l Corp. v. Chemical Bank,*
78 N.Y.2d 371, 377, 581 N.E.2d 1055, 1060, 575 N.Y.S.2d 809, 814 (N.Y. 1991) ....... 11 , 16

*SR Int'l Bus. Ins. Co. Ltd v. World Trade Ctr. Prop. LLC,*
No. 01 Civ. 9291, 2002 WL 1998195, at *2 (S.D.N.Y. Aug. 29, 2002) ............................. 21

*St. Paul Fire & Marine Ins. Co. v. ConAgra Foods, Inc.,*
No. 2:07cv0009, 2008 WL 222518, at *3 ............................................................ 21

*St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.,*
197 F.R.D. 620 (N.D. Iowa 2000) ......................................................... 14 , 15 , 18

*TriStar Pictures, Inc. v. Unger,*
171 F.R.D. 94, 99 (S.D.N.Y. 1997) ................................................................. 7

*Tudor Insurance Co. v. McKenna Associates,*
01 Civ. 0115, 2003 U.S. Dist. LEXIS 10853, at *8 (S.D.N.Y. June 25, 2003) .................... 21

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.,*
98 Civ. 3099, 2000 U.S. Dist. LEXIS 7939, at *33*34 (S.D.N.Y. June 8, 2000) .................. 18

*United States v. Adlman,*
134 F.3d 1194, 1196 (2d Cir. 1998) ......................................................... 17 , 18

*von Bulow by Auersperg v. von Bulow,*
811 F.2d 136, 144 and 146 (2d Cir. 1987) ........................................................ 12

*Weinhold v. Witte Heavy Lift, Inc.,*
No. 90 Civ. 2096, 1994 WL 132392, at *3 (S.D.N.Y. Apr. 11, 1994) ................................. 24

*Wiwa v. Royal Dutch Petroleum Co.,*
No. 96 Civ. 8386 (KMW) (HBP), 01 Civ. 1909 (KMW) (HBP), 2006 WL 2637836, at *7
(S.D.N.Y. Sept. 12, 2006) ..................................................................... 9 , 25

## Rules

Fed. R. Civ. P. 26 and 37 Advisory Committee's Notes, 2007 .................................... 19

Fed. R. Civ. P. 26(b)(3)(A) and (B) .............................................................. 19

Fed. R. Civ. P. 37(a)(1) .......................................................................... 7

Fed. R. Civ. P. 37(a)(5)(B) ............................................................... passim

AIU has moved this Court to compel TIG to produce documents that TIG has withheld or redacted under claims of attorney-client privilege and work product. AIU's motion should be denied for three reasons: (i) AIU's motion is procedurally defective for failure to comply with Rule 37 of the Federal Rules of Civil Procedure; (ii) TIG has established the elements of the absolute privilege afforded to attorney-client communications; and (iii) TIG has established the elements of the qualified privilege applicable to work product materials under Rule 26(b)(3) of the Federal Rules of Civil Procedure, and AIU cannot make the requisite showing to overcome that privilege. In addition, AIU's motion is replete with sweeping, but unsupported and inaccurate, representations to this Court regarding the content of TIG's document production to AIU. Accordingly, TIG respectfully requests that this Court deny AIU's Motion to Compel, and further asks this Court to enter an order pursuant to Rule 37(a)(5)(B) requiring AIU to pay TIG's reasonable expenses, including attorneys' fees, incurred in opposing AIU's motion.

**STATEMENT OF FACTS**

**REDACTED**             . (Declaration of Julie Rodriguez Aldort, filed contemporaneously herewith ("Aldort Dec."), Exh. 1, at TIG 000126.)

**REDACTED**

(Aldort Dec. Exh. 1 at TIG 129.) As of the date of AIU's Complaint, AIU's portion of the Foster Wheeler settlement had resulted in more than $12,300,454 in billings to TIG under the Reinsurance Contracts.[1] (Declaration of Marc L.

---

[1] The Reinsurance Contracts are certain facultative certificates that TIG's predecessor allegedly issued to AIU and which reinsure a portion of AIU's insurance of Foster Wheeler. (First Am. Ans. ¶ 12.) Each of the Reinsurance Contracts contains a provision that requires AIU to provide "prompt notice" to TIG of "any occurrence or accident which appears likely to involve this reinsurance." (*E.g.*, Aldort Dec. Exh. 2, at ¶ B, TIG 1163.)

Abrams in support of AIU Insurance Company's Motion to Compel ("Abrams Dec."), Exh. A ¶ 24.)

The January 25, 2007 letter was AIU's first notice to TIG that the Reinsurance Contracts faced potential exposure for the Foster Wheeler asbestos claims. (*See* First Amended Answer, ¶ 18.)

**REDACTED**

Upon receipt of the January 25, 2007 notice, TIG opened up an assumed reinsurance claim file and assigned the AIU claim to Michael Staley, TIG's Assumed Reinsurance Senior Claims Specialist. (Parker Dec. ¶ 7.) Mr. Staley and his supervisor, Assumed Reinsurance Claims Manager William Pascale, promptly reviewed the notice and the Reinsurance Contracts as part of their investigation and adjustment of AIU's claim in the ordinary course of business. (Parker Dec. ¶ 10.) They immediately developed concerns about AIU's apparent failure to provide TIG with the requisite "prompt notice" to which TIG was entitled under the Reinsurance Contracts. (*Id.*)

Accordingly, Messrs. Staley and Pascale sought legal advice from John Parker, TIG's Senior Vice President Reinsurance and Reinsurance Counsel, regarding their concerns and TIG's

resulting rights and obligations under the Reinsurance Contracts.  (Parker Dec. ¶ 10.)  In light of

AIU's extreme delay in notifying TIG of the claim and AIU's execution of a multi-million dollar

settlement without notice to TIG under the Reinsurance Contracts of Foster Wheeler's claim,

demand, coverage action or settlement negotiations, Mr. Parker immediately determined that

AIU's claim was likely to be the subject of litigation.  (Parker Dec. ¶ 11.)  On February 2, 2007,

Mr. Staley, on behalf of TIG, responded to AIU.  (Abrams Dec. Exh. D at TIG 013592.)


### REDACTED


Over the next week, Mr. Parker considered various legal strategies for enforcing TIG's

contractual right to prompt notice from AIU under the Reinsurance Contracts.  (Parker Dec. ¶

12.)  On February 12, 2007, Mr. Parker contacted and retained attorneys at Butler Rubin

Saltarelli & Boyd LLP ("Butler Rubin") to obtain legal advice concerning TIG's rights and

obligations under the Reinsurance Contracts, to consider the prosecution of legal action against

AIU, and to undertake the defense of litigation Mr. Parker anticipated AIU could file at any time.

(Parker Dec. ¶ 13; Aldort Dec. at ¶ 3.)  Mr. Parker engaged in extensive communications with

attorneys from Butler Rubin and directed various TIG employees, including Messrs. Staley and

Pascale, to undertake certain investigations to assist Mr. Parker and Butler Rubin in their legal

analyses.  (Parker Dec. ¶ 14.)[2]

Simultaneously, Messrs. Staley and Pascale continued to pursue their claims handling

and adjusting responsibilities on behalf of TIG with respect to AIU's Foster Wheeler claim.

---

[2] On May 30, 2007, Mr. Parker hired Ann Weikers as Assistant Vice President and Deputy Reinsurance Counsel, and Ms. Weikers joined Mr. Parker in these responsibilities.  (Parker Dec. ¶ 5.)

(Parker Dec. at ¶¶ 9, 16.)

**REDACTED**

On March 26, 2007, AIU submitted

a billing to TIG relating to the Foster Wheeler claim.  (Aldort Dec. Exh. 5.)

**REDACTED**                                                                      AIU

responded on April 26, 2007.

**REDACTED**              (Aldort Dec. Exh. 4 at TIG 41, 42 and 98-99.)

(Aldort Dec. Exh. 6.)

Beginning in May of 2007, Mr. Parker began considering whether to invoke the access to

records clause of the Reinsurance Contracts in order to identify information regarding the timing

of AIU's knowledge or notice of potential exposure to the Foster Wheeler Policies and to thereby

inform his legal strategy regarding the anticipated litigation with AIU.  (Parker Dec. at ¶ 20.)

Mr. Parker sought legal advice from Butler Rubin regarding this issue.  (Parker Dec. at ¶ 21.)  On

May 15, 2007, TIG requested access to and an audit of AIU's Foster Wheeler files, as TIG was

entitled to do under the Reinsurance Contracts.  (Aldort Dec. Exh. 6 at TIG  32.)

**REDACTED**
                                                               (Aldort Dec. Exh. 7

at PL 63061-63062; Abrams Dec. Exh. G.)

**REDACTED**

Messrs. Pascale and Loggia conducted a review of AIU's files in July of 2007. (Parker Dec. at ¶ 22.) Prior to and during that audit, Mr. Parker and Ms. Weikers gave Messrs. Pascale and Loggia legal advice and direction with respect to the conduct of the audit, including with respect to any notes taken during the audit. (*Id.*) Messrs. Pascale and Loggia provided their notes only to Mr. Parker, Ms. Weikers and Butler Rubin. (Parker Dec. at ¶ 23.) On August 7, 2007, less than a month after the audit, AIU filed its Complaint against TIG.[4]

On October 25, 2007, TIG served AIU with TIG's First Set of Document Requests and First Set of Interrogatories, and on November 12, 2007, AIU served its First Request for Production of Documents and First Set of Interrogatories. (Aldort Dec. at ¶¶ 7, 8.) The parties exchanged responses to written discovery on December 12, 2007. (Aldort Dec. at ¶ 9.) Thereafter, TIG produced 15,990 pages of documents in response to AIU's document requests, including more than 6,233 pages of TIG's assumed reinsurance files. (Aldort Dec. at ¶ 10.) On March 25, 2008, TIG provided AIU with its Privilege Log and Redaction Log, detailing those documents withheld or redacted by TIG under a claim of attorney-client privilege or work product. (Aldort Dec. at ¶ 12.)

Prior to and following the exchange of documents, TIG and AIU conducted extensive meet and confers to identify and attempt to resolve various discovery disputes. (Aldort Dec. at ¶ 13.) The parties' discussions and negotiations led to the successful resolution of many discovery disputes between the parties and minimized the need for court intervention. (Aldort Dec. at ¶ 14.) For example, in response to concerns raised by TIG during a meet and confer regarding the sufficiency of AIU's responses to interrogatories, AIU explained certain of its responses and TIG deemed supplementation unnecessary. (Aldort Dec. at ¶ 15.) In another meet and confer, AIU

---

[4] On September 14, 2007, AIU filed a similar complaint in New York state court alleging breach of reinsurance agreements against certain other of AIU's reinsurers, including Certain Underwriters at Lloyd's, London. (Aldort Dec. Exh. 8.)

posed a complaint regarding redacted documents that it believed were not included on TIG's redaction log, and TIG explained that the redactions AIU identified were not logged because they reflected post-Complaint privilege claims, which the parties had agreed would not be logged, thus resolving AIU's concerns.  (Aldort Dec. at ¶ 16.)  These extensive, and ultimately fruitful, discussions were possible because no exigent circumstances existed to limit the parties' ability to pursue resolution of their disputes without judicial intervention.  (Aldort Dec. at ¶ 17.)

On May 6, 2008, AIU served TIG with its Motion to Compel, Memorandum of Law in Support of Its Motion to Compel and Declaration of Marc L. Abrams.  (Aldort Dec. at ¶ 18.)  In its motion, AIU requested that the Court compel TIG to produce privileged documents from "TIG'S CLAIMS FILES, INSPECTION FILES AND COMMUTATION DOCUMENTS." (AIU Mem. at 7.)  The Abrams Declaration included a certification pursuant to Rule 37 of the Federal Rules of Civil Procedure that counsel for AIU had conferred in good faith with counsel for TIG in an effort to secure disclosure of the documents sought by AIU in the motion without court intervention.  (Abrams Dec. at ¶ 3.)  In fact, at no time prior to the filing of its Motion to Compel had AIU:  (i) questioned the sufficiency or format of TIG's Privilege Log or Redaction Log; (ii) identified by bates number or log number any specific document for which AIU objected to TIG's privilege claim, with the sole exception of TIG 015911 which is not at issue in AIU's motion; (iii) advised TIG that AIU was unable to locate in TIG's production any documents that demonstrated a "determination of which contracts to commute" and "the price of the commutation; or (iv) posed a challenge to TIG's assertion of the attorney-client privilege or the work product doctrine as to any of commutation-related documents identified in TIG's Privilege Log or Redaction Log.  (Aldort Dec. at ¶ 19.)

# ARGUMENT

I. **AIU'S CHALLENGE TO TIG'S ATTORNEY-CLIENT PRIVILEGE CLAIM OVER CERTAIN COMMUTATION-RELATED DOCUMENTS SHOULD BE REJECTED AS PROCEDURALLY DEFECTIVE.**

AIU moves this Court to compel TIG's production of certain commutation-related documents responsive to AIU's document requests that were withheld from production by TIG pursuant to the attorney-client privilege. (AIU Mem. at 13.) AIU's motion in this respect is procedurally defective and should be denied because AIU has failed to comply with its meet and confer obligations under Rule 37 of the Federal Rules of Civil Procedure.

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, any motion seeking an order compelling disclosure or discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). An affidavit containing a conclusory statement that the moving party attempted to meet and confer is not sufficient to satisfy this rule. *See Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 99 (S.D.N.Y. 1997) (denying motion to compel for failure to fulfill meet and confer requirements where insufficient affidavits were submitted). Instead, compliance with Rule 37 requires that the moving party detail its efforts to engage in a meaningful dialogue and explain why such efforts proved fruitless. *Id.* Thus, to satisfy the meet and confer requirement, the parties must:

> meet, in person or by telephone, and [ ] make a genuine effort to resolve the dispute by determining . . . what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention.

*Id.*

The Declaration of Marc L. Abrams, submitted by AIU in support of its Motion to Compel, contains only the conclusory assertion of compliance with Rule 37 that the courts have

held insufficient. (Abrams Dec., ¶ 3.) More importantly, as the Abrams Declaration and

Exhibits J and K thereto illustrate, AIU's certification is inaccurate. In producing commutation-

related materials in discovery, TIG properly logged those materials withheld or redacted

pursuant to any privilege claim. At no time during the parties' meet and confer discussions did

AIU: (i) challenge the sufficiency or format of TIG's Privilege Log or Redaction Log entries; or

(ii) challenge TIG's privilege claim regarding the commutation-related documents generally.

(Aldort Dec. at ¶ 19; Abrams Dec. at Exs. J and K.) In its motion, AIU now asserts that "[i]t is

unclear from TIG's Privilege Log whether the 42 commutation documents that TIG is

withholding" were withheld because "legal advice was being provided by attorneys" (which AIU

concedes would constitute privileged materials) or "if TIG is asserting that its non-legal business

functions, which may include determination of which contracts to commute, the price of the

commutation) is privileged." (AIU Mem. at 13.) AIU then asks this court to compel production

of "such materials" "[g]iven the absence of such materials in TIG's production." (*Id.*)

  In failing to follow the procedure mandated by Rule 37, AIU has improperly burdened

both TIG and this Court with a dispute that could potentially have been resolved or narrowed

through the required meet and confer process. *See Matsushita Elec. Corp. of America v. 212

Copiers Corp.*, No. 93 Civ. 3243, 1996 WL 87245, at *1 (S.D.N.Y. Feb. 29, 1996) (explaining

that Fed. R. Civ. Proc. 37 "embodies a policy of encouraging voluntary resolution of pre-trial

disputes, in the interest of judicial and client economy and efficient processing of cases"). The

challenge AIU raises to TIG's privilege claim with respect to the commutation-related

documents is based solely on AIU's inaccurate representation to the Court that there is an

absence of materials in TIG's production that demonstrate a "determination of which contracts to

commute" and "the price of the commutation."[5] (AIU Mem. at 13.) In fact, as a diligent review would have revealed, TIG's production includes extensive documentation of its commutations, including the contracts considered and the commutation amounts negotiated. (Aldort Dec. at ¶ 11 (attesting to the bates range of commutation-related documents and identifying specific examples of contract listings and negotiation of commutation amounts).) If AIU was nonetheless unable to identify such documents, AIU was obligated to raise this issue with TIG during the meet and confer process, so that TIG could respond to AIU's challenge, *e.g.*, by providing applicable bates ranges to AIU.

AIU's failure to meet and confer with TIG in good faith to attempt to resolve its purported uncertainty regarding TIG's Privilege Log or Redaction Log entries before seeking judicial intervention is alone a sufficient ground for denial of AIU's motion to compel TIG's privileged commutation-related documents. *See Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW) (HBP), 01 Civ. 1909 (KMW) (HBP), 2006 WL 2637836, at *7 (S.D.N.Y. Sept. 12, 2006) (concluding that defendants' motion to compel was procedurally and substantively defective, but explaining that defendants' failure to attempt to resolve the dispute before bringing motion was alone a sufficient ground for denying motion). Absent exigent circumstances necessitating speedy action, or where such efforts would be clearly futile, "the

---

[5] In yet another procedural defect, the Abrams Declaration fails to include even a blanket assertion that TIG's production is devoid of such materials, much less an attestation that a complete search of TIG's production failed to yield the documents discussed. Similarly unsupported are AIU's representations to this Court throughout the motion that: (i) TIG has "sanitize[d] its reinsurance claims and audit files by designating virtually all substantive materials in these files as privileged," (AIU Mem. at 1); (ii) "TIG has never denied the reinsurance claim at issue here," (while simultaneously asserting that "TIG refused to reimburse AIU on the ground of late notice and other defenses") (AIU Mem. at 2 and 3); (iii) "AIU has almost no substantive information from TIG's assumed reinsurance file to determine TIG's review or analysis of the reinsurance claim before the Court," (AIU Mem. at 6); (iv) "TIG has withheld roughly 265 reinsurance claims and audit related documents created in a six month period while producing to AIU virtually no documents of substance from its claims and audit files," (AIU Mem. at 11); (v) "[i]t was on this basis [TIG's supposed request for an audit "in the ordinary course of business"] that AIU allowed an inspection to occur," (AIU Mem. at 11); and "many of these entries may not involve actual legal communications from attorneys to clients or vice versa" and "AIU has no ability to determine from TIG's Privilege and Redaction Logs, which, if any, of TIG's reinsurance claims documents are truly privileged." (AIU Mem. at 12.)

failure to meet and confer mandates denial of a motion to compel." *See Prescient Partners, L.P.*

*v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590 (DAB)JCF, 1998 WL 67672, at *3 (S.D.N.Y. Feb.

18, 1998) (holding that the meet and confer obligation is a prerequisite to filing a motion to

compel, and denying motion to compel because moving party failed to fulfill this obligation); *see*

*also Excess Ins. Co., Ltd. v. Rochdale Ins. Co.*, No. 05 Civ. 10174, 2007 WL 2900217, at *1

(S.D.N.Y. Oct. 4, 2007) (denying motion to compel and cross motion to compel where parties

agreed not to meet and confer prior to submitting motions). No exigent circumstances existed

here to excuse AIU's compliance with Rule 37 (Aldort Dec. at ¶ 17), and, as explained above, a

proper effort by AIU to resolve the issue would not have been "clearly futile" – indeed, it would

likely have been successful. Accordingly, this Court should deny as procedurally defective that

portion of AIU's motion seeking production of "the 42 commutation documents that TIG is

withholding" (AIU Mem. at 13) pursuant to a claim of privilege.

## II.    TIG HAS ESTABLISHED THE ELEMENTS OF THE ATTORNEY-CLIENT PRIVILEGE AS TO THE DOCUMENTS SOUGHT BY AIU.

AIU asks this Court to compel TIG's production of documents responsive to AIU's

documents requests but withheld by TIG pursuant to a claim of attorney-client privilege. AIU's

challenge to TIG's attorney-client privilege claim appears to be based on speculation that "many

of these entries [on TIG's Privilege Log and Redaction Log] may not involve actual legal

communications from attorneys to clients or vice versa." (AIU Mem. at 12 (emphasis in

original).) AIU speculates that, instead, TIG's in-house and outside legal counsel may have

been acting "in a claims or investigatory function." (AIU Mem. at 12.)[6] However, AIU's

---

[6] AIU also suggests that certain (unidentified) entries on TIG's Privilege Log and Redaction Log provide
insufficient detail concerning the substance of the withheld documents, complaining that "AIU has no ability to
determine from TIG's Privilege and Redaction Logs, which, if any, of TIG's reinsurance claims documents are truly
privileged." (AIU's Mem. at 12.) To the extent that AIU's motion to compel can be read as a challenge as to the
detail provided in TIG's logs, AIU's motion should be denied as defective for failing to comply with Rule 37. *See,*
*supra*, at Section I. AIU did not meet and confer with TIG on that issue. (Aldort Dec. at ¶ 19.)

speculation will not suffice because TIG has established the elements of the attorney-client privilege.

**A.      The Legal Standard Governing the Attorney-Client Privilege**

Under New York law, the attorney-client privilege applies to confidential communications between attorney and client relating to legal advice.[7] NYCPLR 4503(a). The attorney-client privilege is an absolute privilege, *Spectrum Systems Int'l Corp. v. Chemical Bank,* 78 N.Y.2d 371, 377, 581 N.E.2d 1055, 1060, 575 N.Y.S.2d 809, 814 (N.Y. 1991), the purposes of which "include fostering uninhibited dialogue between lawyers and clients in their professional engagements, thereby ultimately promoting the administration of justice." *Rossi v. Blue Cross & Blue Shield,* 73 N.Y.2d 588, 592, 540 N.E.2d 703, 705, 542 N.Y.S.2d 508, 510 (N.Y. 1989). The privilege extends to both communications from a client to an attorney and from the attorney to the client, where made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship." *Id.* at 593. The "critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." *Spectrum Sys.,* 78 N.Y.2d at 379.[8] Thus, the communications must be primarily, but need not be solely, of a legal character. *See Rossi,* 73 N.Y.2d at 594 (explaining that the privilege attaches where "the communication concerns legal rights and obligations and where it evidences other professional skills such as [a] lawyer's

---

[7] TIG maintains that Illinois law governs the substantive issues in this case, but New York law appears to govern the privilege issues raised in this motion. *See, e.g., Lego v. Stratos Lightwave, Inc.,* 224 F.R.D. 576, 578-79 (S.D.N.Y. 2004) (choice of law to be determined by which state's law has greatest interest in application of the privilege at issue); *Condit v. Dunne,* 225 F.R.D. 100, 108 (S.D.N.Y. 2004) ("that California law will govern the underlying claim does not preclude this Court from finding that New York law governs assertions of evidentiary privilege").

[8] The *Spectrum* court made it clear that the "prospect of litigation may be relevant to the subject of work product and trial preparation materials, but the attorney-client privilege is not tied to the contemplation of litigation." *Spectrum Sys.,* 78 NY2d at 380. Thus, the "absence of pending or prospective litigation does not otherwise bear on the privilege analysis." *Id.; see also, e.g., In re County of Erie,* 473 F.3d 413, 419 (2d Cir. 2007) ("Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.")

judgment and recommended legal strategies" and "[s]o long as the communication is primarily or predominantly of a legal character, the privilege is not lost merely by reason of the fact that it also refers to certain nonlegal matters"). The party claiming the protection of a privilege bears the burden of establishing the elements of the privilege through an evidentiary showing based on competent evidence rather than mere conclusory assertions. *See von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 144 and 146 (2d Cir. 1987).

**B.    TIG Has Established the Elements of the Attorney-Client Privilege.**

In support of its objection to production of certain documents pursuant to the attorney-client privilege, TIG provided AIU with a Privilege Log and a Redaction Log (and accompanying lists of attorneys and affiliations included therein) identifying: (i) the attorney and the client(s) between whom each communication was made; (ii) any other recipients of the communication; and (iii) the nature of the communication.[9] (Abrams Dec. Exhs. M, N.) In so doing, TIG provided sufficient information for AIU to assess whether each document was: (i) a communication between an attorney and a client; (ii) confidential; and (iii) relating to legal advice. AIU challenges only the third element of TIG's claim of attorney-client privilege, suggesting that the communications may not "involve actual _legal_ communications," because TIG's in-house and outside counsel may have been acting "in a claims or investigatory function." (AIU Mem. at 12 (emphasis in original).) In response to AIU's challenge, TIG provides the Declarations of John Parker, TIG's in-house counsel, and the Declaration of Julie Rodriguez Aldort, of Butler Rubin Saltarelli & Boyd LLP ("Butler Rubin") TIG's outside counsel, thereby offering competent, fact-specific evidence that the logged communications

---

[9] In a few instances, TIG's privilege and redaction log entries do not have an attorney identified as author or recipient, but the subject matter of the documents reflects counsel inquiries or advice such that attorney-client privilege is appropriate. (*See, e.g.,* Abrams Dec. Exh. M, entries 204, 208, 210.)

"related to legal advice" and that neither in-house or outside counsel were acting "in a claims or investigatory function."[10]

In the Parker Declaration, John Parker, Senior Vice President Reinsurance and Reinsurance Counsel for TIG, affirms that he has served in that capacity from September 2006 to the present, and that he provides legal advice and services to TIG and its employees with respect to reinsurance disputes. (Parker Dec. at ¶¶ 3, 4.) Mr. Parker further affirms that:

- Ann Weikers has been employed as TIG's Deputy Reinsurance Counsel from May 30, 2007 to present and as Assistant Vice President of TIG from January 1, 2008 to present, and she also provides legal advice and services to TIG and its employees with respect to reinsurance disputes, (Parker Dec., ¶ 5);

- Mr. Parker and Ms. Weikers have operated solely in a legal capacity with respect to the dispute between TIG and AIU over AIU's Foster Wheeler claim and at no time has either attorney acted in a claims handling capacity with respect to the claim (*Id.*, at ¶ 6);

- Since January 2007, Michael Staley, TIG's Assumed Reinsurance Senior Claims Specialist, and William Pascale, TIG's Assumed Reinsurance Claims Manager have had claims handling responsibility for AIU's Foster Wheeler claim, (*Id.* at ¶¶ 7, 8); and

- The withheld or redacted communications among Mr. Parker, Ms. Weikers and other TIG employees relate to legal advice sought or given, *i.e.*, are primarily of a legal character, and were made or received by Mr. Parker and Ms. Weikers in their roles as attorneys. (*Id.* at ¶ 18.)

---

[10] TIG may satisfy its burden by submitting evidentiary material as to the challenged elements only. *See, e.g.*, *ECDC Envtl., L.C. v. New York Marine and Gen. Ins. Co.*, No. 96 CIV 6033 (BSJ)(HBP), 1998 WL 614478, at *4 (S.D.N.Y. June 4, 1998). As this Court has oft explained:

> A party asserting a claim of privilege is obligated to prepare an index of withheld documents, which must provide sufficient information "to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). Thus, a party challenging an assertion of privilege is given the information necessary to state the grounds of its challenge and is not left to guess at the nature of what's being withheld and why. Since the challenger is given this information, there is no logic or efficiency in requiring the proponent of a privilege or the Court to address matters which are not contested by the challenger.

(*Id.* at *4.)

In the Aldort Declaration, Julie Rodriguez Aldort, a partner at Butler Rubin, affirms that the Butler Rubin individuals identified in TIG's Privilege and Redaction Logs are attorneys and paralegals who were employed by Butler Rubin from at least February 12, 2007. (Aldort Dec. at ¶ 15.) Mr. Parker and Ms. Aldort affirm that:

- Butler Rubin was retained by TIG on February 12, 2007 to serve as TIG's outside counsel and provide legal advice and services to TIG with respect to anticipated litigation with AIU over the Foster Wheeler claim, (Parker Dec. at ¶ 13; Aldort Dec. at ¶ 3);

- Butler Rubin attorneys and paralegals have operated solely in a legal capacity with respect to AIU's Foster Wheeler claim and at no time have those individuals acted in a claims handling capacity with respect to the claim, (Parker Dec. at ¶ 17; Aldort Dec. at ¶ 4);

- The communications between employees of TIG and Butler Rubin relate to legal advice sought or given, *i.e.*, are primarily of a legal character, and were made or received by Butler Rubin in its role as TIG's attorney. (Parker Dec. at ¶ 17; Aldort Dec. at ¶ 6).

AIU's speculation that the attorney-client communications may not "involve actual legal communications," because TIG's in-house and outside counsel may have been acting "in a claims or investigatory function," is just that -- speculation. TIG has met its burden of establishing the elements of the attorney-client privilege through the required evidentiary showing that the relevant individuals were acting in the role of attorneys, and AIU's motion should be denied.

### C. The Cases Cited by AIU in Support of Its Challenge to TIG's Attorney-Client Privilege Claim Involve Individuals Specifically Employed to Provide Claims Handling Services.

AIU cites two cases in support of its challenge to TIG's attorney-client privilege claim: *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 197 F.R.D. 620 (N.D. Iowa 2000) and *Aetna Cas. & Surety Co. v. Certain Underwriters at Lloyd's*, 263 A.D.2d 367, 692 N.Y.S.2d 384 (1st Dep't 1999). In *St. Paul Reins.*, the court rejected *inter alia* the insurers'

claims under Iowa law of attorney-client privilege as to communications to and from the President of Professional Claims Managers, Inc., an attorney engaged by the insurers to conduct their claims investigation. *St. Paul Reins.,* 197 F.R.D. at 626 and 641. The court distinguished the claims handler's role with that of the outside attorneys employed by the same insurers as legal counsel. *Id.* at 642. No such facts exist here. TIG's claims handling functions were undertaken by Messrs. Staley and Pascale. (Parker Dec. at ¶ 9.) Legal advice and services were separately provided by different individuals: Mr. Parker, Ms. Weikers and attorneys from Butler Rubin serving strictly in the role of legal counsel to TIG and its employees. (Parker Dec. at ¶¶ 6, 17; Aldort Dec. at ¶ 4)

In *Aetna Cas. & Surety Co.*, the court considered the defendants' motion to compel the return of certain inadvertently produced documents, including minutes of the Environmental Claims Reinsurance Group and a list of potential interviewees under both claims of attorney-client privilege and attorney work product. *Aetna Cas. & Surety Co.*, 263 A.D.2d at 368. The court rejected both claims, but, with respect to the attorney-client privilege claim so ruled because the defendants had not shown the communications were confidential and the "communications contained in the minutes pertain in the main to commercial concerns" *Id.* Here, AIU has raised no challenge to the confidentiality of the privileged communications, and the communications reflect the request for and provision of legal advice – not business meetings of TIG's assumed reinsurance group.[11] (*See* Parker Dec. at ¶¶ 18, 19; Aldort Dec. at ¶ 6.) In

---

[11] In note 8 of its Memorandum, AIU also cites to *Employers Reinsurance Corp. v. Mid-Continent Cas. Co.,* No. 01-2058-KTTV, 2002 U.S. Dist. LEXIS 9636 (D. Kan. Apr. 18, 2002) and *Medical Protective Co. v. Bubenik,* No. 4:06 CV 01639 ERW, 2007 U.S. Dist. LEXIS 76382 (E.D. Mo. Oct. 15, 2007), in support of AIU's challenge to TIG's attorney-client privilege claims – neither of which support AIU's position. In *Employers Reinsurance*, the reinsurer had argued that the attorney-client privilege protected certain claims audit reports and e-mail because its claims attorneys were acting as legal counsel and not as claims adjustors. *Employers Reinsurance*, 2002 U.S. Dist. LEXIS 9636, at *4. The magistrate judge considered the reinsurer's attorney-client privilege claim with regard to the claims audit reports and e-mail and found that the reinsurer had provided sufficient information to support the privilege. *Id.* at *5. The district court was not asked to rule on the claims audit reports and e-mail. *Id.* AIU's reliance on *Medical*

sum, the documents TIG has withheld on attorney-client privilege grounds evidence legal advice and analysis being solicited or provided by TIG's attorneys in their capacity as lawyers. Accordingly, AIU is not entitled to invade the attorney-client privilege on this record, and the Court should deny AIU's motion with respect to all documents for which TIG has asserted the attorney-client privilege.[12]

## III.    TIG HAS ESTABLISHED THE ELEMENTS OF THE WORK PRODUCT DOCTRINE AS TO THE DOCUMENTS SOUGHT BY AIU.

AIU asks this Court to compel TIG's production of documents responsive to AIU's documents requests but withheld by TIG pursuant to a work product claim. AIU challenges to TIG's work product claim by asserting that the documents were prepared in the ordinary course of business, rather than in anticipation of litigation. (AIU Mem. at 11-13.)[13] AIU's challenge fails because TIG has established each of the elements of the work product privilege and AIU cannot make the required showing of substantial need to overcome that privilege.

### A.    The Legal Standard Governing the Work Product Doctrine

The work product doctrine arises under Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides that:

---

*Protective Co.* is also misplaced. The quote selected by AIU addresses the work product doctrine, not the attorney-client privilege. (AIU Mem. at 11 n.8.) When asked to consider the attorney-client privilege, the court in *Medical Protective Co.* refused to compel production of the withheld documents, concluding that the "documents which contain communications between corporate representatives who are non-lawyers, regarding advice received from an attorney, are subject to the attorney-client privilege." *Med. Protective Co.*, 2007 U.S. Dist. LEXIS 76382, at *6.

[12] Where TIG asserted both attorney-client privilege and work product, a finding that the document is a privileged attorney-client communication requires denial of AIU's motion regardless of whether the Court accepts TIG's separate assertion of the work product doctrine. *See, e.g., Spectrum Sys.*, 78 N.Y.2d at 381 (concluding that analysis of work product assertion was "unnecessary" given prior ruling that document was properly withheld on attorney-client privilege grounds).

[13] AIU also suggests that certain (unidentified) entries on TIG's logs provide insufficient detail concerning the substance of the withheld documents, complaining that "AIU has no ability to determine from TIG's Privilege and Redaction Logs, which, if any, of TIG's reinsurance claims documents are truly privileged." (AIU's Mem. at 12.) To the extent that AIU's motion to compel is read as a challenge as to the format of, or the detail provided in, TIG's Privilege Log and/or Redaction Log, AIU's motion should be denied as defective for failing to comply with Rule 37. *See, supra*, at Section I. AIU did not meet and confer with TIG on that issue. (Aldort Dec. at ¶ 19.)

(A)  *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i)  they are otherwise discoverable under Rule 26(b)(1); and

(ii)  the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B)  *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A) and (B).[14]

The work product protection is a qualified privilege, and one "intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor,* 329 U.S. 495, 510-11, 67 S. Ct. 385, 393-94, 91 L. Ed. 451 (1947)).[15] "A party asserting work-product protection must prove three elements: '[t]he material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative.'" *Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc.*, No. 96 CIV. 5590 MJL HBP, 1998 WL 729735, at *4 (S.D.N.Y. Oct. 16, 1998) (citing *In Re Grand Jury Subpoenas dated December 18, 1981 & January 4, 1982,* 561 F. Supp. 1247, 1257 (E.D.N.Y.1982)).

The Second Circuit has explained that documents prepared "in anticipation of litigation" are not limited to those prepared primarily or exclusively to assist at trial, but extends to

---

[14] In 2007, the language and numbering of Rules 26 and 37 were amended as part of the general restyling of the Rules. These changes were stylistic only. Fed. Civ. P. 26 and 37 Advisory Committee's Notes, 2007.

[15] As this Court has explained, "[f]ederal law rather than state law governs the applicability of the work-product doctrine in all actions in federal court." *Mount Vernon,* 1998 WL 729735, at *4.

instances "[w]here a document was created *because of* anticipated litigation, and would not have

been prepared in substantially similar form but for the prospect of that litigation, it falls within

Rule 26(b)(3)." *See Adlman*, 134 F.3d at 1195 and 1203 (emphasis added).[16] Furthermore,

"documents prepared for both litigation and business purposes generally enjoy work-product

protection," although "'documents that are prepared in the ordinary course of business or that

would have been created in essentially similar form irrespective of the litigation' are not

protected." *Mount Vernon*, 1998 WL 729735, at *5 (quoting *Adlman*, 134 F.3d at 1202).  As the

cases upon which AIU relies recognize, this inquiry is necessarily a fact-specific one.  *E.g., U.S.*

*Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 98 Civ. 3099, 2000 U.S. Dist. LEXIS 7939, at

*33-*34 (S.D.N.Y. June 8, 2000) ("there is no hard and fast rule as to when [shift from ordinary

course of business to an anticipation of litigation] occurs; rather, a fact-specific inquiry is

required to determine when this shift occurs"); *Med. Protective Co.*, 2007 U.S. Dist. Lexis

76382, at *11, *citing St. Paul Reins.*, 197 F.R.D. at 629 (preferring "case-by-case" analysis to

"hard line approach to work-product immunity").

### B.     TIG Has Established the Elements of the Work Product Doctrine.

In support of its objection to production of certain work product documents, TIG

provided AIU with Privilege and Redaction Logs identifying:  (i) the type of document, *e.g.*,

memorandum, e-mail or handwritten notes; (ii) the nature of the document, *e.g.*, legal analysis or

investigation at the direction of counsel, and (iii) the author and any recipients of the document.

(Abrams Dec. Exhs. M, N.)  In so doing, TIG provided sufficient information for AIU to assess

---

[16] The *Adlman* court rejected a requirement that documents be produced "primarily or exclusively to assist in litigation" in order to be protected under the work product doctrine. *Adlman*, 134 F.3d at 1198.  AIU's reliance on the earlier-issued case styled *In re Kidder Peabody* (*see* AIU Mem. at 9 n.7) is therefore misplaced. *See In re Kidder Peabody*, 168 F.R.D. 459, 466 (S.D.N.Y. 1996) (finding that "[s]ince the standard governing work-product claims requires Kidder to demonstrate that the documents in question were prepared 'principally' if not exclusively for litigation purposes, it has not sustained its burden").

.

whether each document was: (i) a document or tangible thing, (2) prepared in anticipation of litigation, and (3) prepared by or for a party, or by or for his representative.

AIU challenges only the second element of TIG's work product claim, suggesting that the communications were prepared in the ordinary course of business, rather than in anticipation of litigation as required by Rule 26(b)(3). (AIU Mem. at 11-13.)  In response to AIU's challenge, TIG has offered competent, fact-specific evidence, through the Parker and Aldort Declarations, that the logged documents were created in anticipation of litigation.[17] The Declarations confirm that:

- Upon receipt of the January 25, 2007 notice, Messrs. Staley and Pascale immediately developed grave concerns about AIU's apparent failure to provide TIG with the requisite "prompt notice" to which TIG was entitled under the Reinsurance Contracts, (Parker Dec. at ¶ 10);

- Mr. Parker considered the late notice issue in response to a request for legal advice from Messrs. Staley and Pascale, and immediately determined that AIU's claim was likely to be the subject of litigation in light of AIU's extreme delay in notifying TIG and AIU's execution of a multi-million dollar settlement prior to notifying TIG of Foster Wheeler's claim, demand, coverage action or settlement negotiations, (Parker Dec. at ¶ 11);

- On February 12, 2007, Mr. Parker contacted and retained attorneys at Butler Rubin Saltarelli & Boyd LLP ("Butler Rubin") to obtain legal advice concerning TIG's rights and obligations under the Reinsurance Contracts, to consider the prosecution of legal action against AIU, and to undertake the defense of litigation Mr. Parker anticipated AIU could file at any time. (Parker Dec. at ¶ 13; Aldort Dec. at ¶ 3.)

Accordingly, TIG has met its burden of establishing the elements of the work product privilege through the required evidentiary showing.

### C.    <u>TIG's Reservation of Rights Is Evidence of Its "Resolve to Litigate."</u>

AIU notes that some courts have recognized a rebuttable presumption that documents created prior to an insurer's denial of a claim normally will not have been created in anticipation

---

[17] TIG may satisfy its burden by submitting evidence as to the challenged element only. *See, supra*, at n.10.

of litigation. (*See* AIU Mem. at 8-9.) In fact, the cases AIU cites also recognize that the presumption only operates where there are no additional facts to indicate that the insurer (or reinsurer) had a "resolve to litigate" prior to formal denial of a claim. *See, e.g., Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pitt.*, No. 90 Civ. 7811, 1994 U.S. Dist. LEXIS 17768, at *6 (S.D.N.Y. Dec. 13, 1994) (presumption that withheld documents were not created in anticipation "can be rebutted" where responding party offers "evidence of a resolve to litigate" prior to formal declination of claim).

Evidence of a "resolve to litigate" can take many forms, and this Court has recognized that an insurer's reservation of rights, sent prior to a formal denial, provides evidence of the anticipation of litigation. *See, e.g., Mount Vernon*, 1998 WL 729735, at *8. In *Mount Vernon*, the court denied work product protection to investigative reports the court found had been prepared in the ordinary course of the insurer's business. *Id.* In reaching this determination, the court focused principally on the date that the insurer first reserved its rights, holding that documents prepared prior to that date were not work product, but documents created after that date were work product protected from disclosure. *Id.* The court considered the declaration of the insurer's in-house counsel attesting that litigation was anticipated "from the first notification of the accident" given the nature of the accident, the severity of the resulting injuries, and certain policy limitations and exclusions, but concluded that the insurer's conduct prior to issuance of the reservation of rights letter was no different from its handling of any other potentially covered incident and did not demonstrate a "resolve to litigate." *Id.* at *5, *7-*8. Instead, the court found that the issuance of the reservation of rights provided sufficient evidence of resolve. *Id.*

Federal courts in other jurisdictions have similarly held that a reservation of rights can establish a "resolve to litigate" for work product purposes. *See, e.g., St. Paul Fire & Marine Ins.*

*Co. v. ConAgra Foods, Inc.*, No. 2:07-cv-0009, 2008 WL 222518, at *3 (S.D. Ohio Jan. 25, 2008) ("In several insurance-related cases, courts have concluded that the issuance of a reservation of rights letter triggers a reasonable expectation of future litigation between the parties."); *Royal Surplus Lines Ins. Co. v. Sofamor Danke Group, Inc.*, 190 F.R.D. 463, 492 (W.D. Tenn. 1998) ("the ROR letter provides the court with the clearest indication that the controversy, as it was communicated between the parties, over the recently issued policy was likely to result in litigation"). Here, TIG asserted a reservation of its rights, accompanied by a statement of its concern regarding AIU's apparent failure to comply with the contracts' prompt notice provision, on February 2, 2007 – two days after receipt of AIU's first notice of the Foster Wheeler claim. (Abrams Dec. Exh. D.) TIG's reservation of rights served as a clear indication that TIG considered that the late notice controversy was likely to result in litigation.

### D.    TIG's Retention of Butler Rubin Is Evidence of Its "Resolve to Litigate."

The Court and other courts have also concluded that "[w]hile not determinative, an insurer's referral of a claim to its attorney is a significant factor in determining when the insurer anticipates litigation." *Mount Vernon*, 1998 WL 729735, at *7, *see also SR Int'l Bus. Ins. Co. Ltd v. World Trade Ctr. Prop. LLC*, No. 01 Civ. 9291, 2002 WL 1998195, at *2 (S.D.N.Y. Aug. 29, 2002) ("It is highly significant in this regard that he retained Simpson Thacher as litigation counsel on September 12."); *Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos.*, 123 F.R.D. 198, 202 (M.D.N.C. 1988) ("Involvement of an attorney is a highly relevant but not necessarily controlling factor" in determining when a party first anticipates litigation). As the district court in *Tudor Insurance Co. v. McKenna Associates*, 01 Civ. 0115, 2003 U.S. Dist. LEXIS 10853, at *8 (S.D.N.Y. June 25, 2003) explained, in appropriate cases, "the retention of counsel by the insurer prior to formal declination signals the anticipation of litigation." *Tudor,*

2003 U.S. Dist. LEXIS 10853, at *8 (granting work product protection to document prepared prior to insurer's formal declination of coverage).

In this case, TIG issued a reservation of its rights on February 2, 2007, two days after TIG received the January 25, 2007 notice that included evidence that AIU's notice was late and in breach of the Reinsurance Contracts. (*See* Abrams Dec. Exh. F.) TIG retained its outside reinsurance counsel, Butler Rubin, ten days later. (Parker Dec. at ¶ 13; Aldort Dec. at ¶ 3.) Taken together, Mr. Parker's affirmation that he immediately anticipated litigation, TIG's February 2, 2007 reservation of its rights, and TIG's February 12, 2007 retention of Butler Rubin provide competent and conclusive evidence of the elements of TIG's work product claim with respect to documents dated February 1, 2007 and later.[18]

### E.    The Withheld Audit Documents Were Prepared in Anticipation of Litigation.

AIU has challenged TIG's assertion of the work product privilege as to the so-called "audit documents" at least in part because an attorney's name does not appear on some of them. (*See* AIU's Mem. at 12 ("Numerous other entries reflect 'notes' prepared by TIG's reinsurance claims handlers (who are not attorneys) but not distributed to anyone").) As is evidenced by the Parker Declaration, Messrs. Pascale and Loggia prepared certain documents prior to and during the audit at the direction of counsel in anticipation of litigation, and those documents are therefore protected work product.

---

[18] AIU correctly posits that investigative documents are not transformed into protected work product "'simply because an attorney participated in or supervised [the] process.'" (*See* AIU's Mem. at 9-10, *quoting Braspetro,* 2000 U.S. Dist. LEXIS 7939, at *44.) But the *Braspetro* court acknowledged that the facts surrounding the preparation of the relevant documents necessarily inform the work product analysis, and do not "preclude the possibility that, in conducting and supervising the investigation, [the attorney] and others made notes which were specifically directed to litigation strategy or possible litigation defenses" and would therefore be protected. *Braspetro,* 2000 U.S. Dist. LEXIS 7939, at *46. Here, TIG has not asserted work product with respect to any documents "simply because" an attorney participated in TIG's investigation, but because the documents were prepared by or at the direction of counsel *for purposes of anticipated litigation against AIU.*

The Parker Declaration describes the factual circumstances under which the documents were created. Mr. Parker affirms that, in May of 2007, he began considering whether to invoke the access to records clause of the Reinsurance Contracts in order to identify additional information regarding the timing of AIU's knowledge or notice of potential exposure to the Foster Wheeler Policies and thereby inform his legal strategy regarding the anticipated litigation with AIU. (Parker Dec. at ¶ 20.) Prior to and during the July 2007 audit, Mr. Parker and Ms. Weikers gave Messrs. Pascale and Loggia legal advice and direction with respect to the conduct of the audit, including with respect to any notes taken during the audit. (Parker Dec. at ¶ 22.) Messrs. Pascale and Loggia provided their notes only to Mr. Parker, Ms. Weikers and Butler Rubin. (Parker Dec. at ¶ 23.)[19] Thus, those "audit documents" as to which TIG has asserted the work product privilege were created in anticipation of litigation and are protected under Rule 26(b)(3). *See Employers Reins.*, 2002 U.S. Dist. LEXIS 9636 at *4-*5 (describing, without considering, magistrate's finding that reinsurer had provided sufficient information to support its claim of attorney-client privilege with regard to the claims audit reports). Accordingly, TIG should not be compelled to produce these or any of the documents it has categorized as work product in this case.

**F.      AIU Bears the Burden of Showing a Substantial Need for TIG's Work Product and an Inability to Obtain Its Substantial Equivalent.**

Given that TIG has established the elements of the work product doctrine under Rule 26(b)(3), the burden now shifts to AIU to show both "substantial need for the material and an

---

[19] AIU's contention that TIG "suggested that the inspection was to be conducted in the ordinary course of business" is both not true and not relevant. (AIU Mem. at 12-13.) TIG made no such suggestion. Rather, TIG entered into the Reinsurance Common Interest and Confidentiality Agreement, at AIU's request, to attempt to avoid waiving any privilege with respect to third parties. (Aldort Dec. Exh. 3 at ¶ 8 & Exh. A.) AIU knew full well by the date of the audit, and substantially earlier, that litigation between the parties over AIU's late notice was anticipated, given that AIU itself logged documents on its privilege log dated as early as April 20, 2007 that indicate communications between AIU and its counsel regarding "reinsurance collection." (Aldort Dec. at Exh. 9.)

inability to obtain its substantial equivalent from another source without undue hardship." *See Mount Vernon*, 1998 WL 729735, at *4 (citing *Weinhold v. Witte Heavy Lift, Inc.*, No. 90 Civ. 2096, 1994 WL 132392, at *3 (S.D.N.Y. Apr. 11, 1994). AIU cannot make the requisite showing; not only does AIU fail to provide competent evidence in support of such a claim, AIU makes no reference to any "substantial need" for the documents. At most, AIU offers the unsupported assertions that: (i) TIG has withheld the "heart of its reinsurance claims file which presumably would detail TIG's understanding and review of this particular claim" and "AIU has almost no substantive information from TIG's assumed reinsurance file to determine TIG's review or analysis of the reinsurance claim before the Court."[20] (AIU Mem. at 1, 6.) Accordingly, AIU's motion to compel production of TIG's work product should be denied.

## IV.    TIG IS ENTITLED TO AN AWARD OF ITS FEES AND EXPENSES.

TIG is entitled to an award of its fees and expenses, including attorneys' fees, incurred in opposing AIU's Motion to Compel. Rule 37(a)(5)(B) of the Federal Rules of Civil Procedure provides that:

> If the motion [to compel] is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Here, AIU's motion to compel production of certain commutation-related documents as to which TIG has asserted the attorney-client privilege is procedurally defective for failure to comply with Rule 37. *See, supra*, at Section I. Because AIU's motion was premature, rather than "substantially justified," an award of TIG's associated fees and expenses is the just result. *See*

---

[20] In the event that AIU attempts to meet its burden in a reply, TIG reserves its right to seek to provide further or rebuttal evidence in a sur-reply. *See Employers Reins.*, 2002 U.S. Dist. LEXIS 9636 at *15.

*Wiwa,* 2006 WL 2637836, at *9 (awarding responding party attorneys' fees incurred in responding to motion to compel where moving party offered no evidence that they made any attempt to meet and confer prior to making the motion), *citing Apex Oil Co. v. Belcher Co.,* 855 F.2d 1009, 1020 (2d Cir. 1988) (finding that failure to confer in good faith over discovery disputes provides ample authority for sanctions).[21]

## CONCLUSION

For the foregoing reasons, TIG requests that the Court deny AIU's Motion to Compel and enter an order pursuant to Rule 37(a)(5)(B) requiring AIU to pay TIG's expenses, including attorneys' fees, incurred in opposing AIU's motion.

Dated: May 20, 2008                    Respectfully submitted,

By: _____

James I. Rubin, Esq. (*pro hac vice*)          Sean Thomas Keely (SK-8593)
Catherine E. Isely, Esq. (*pro hac vice*)       Lovells LLP
Julie Rodriguez Aldort, Esq. (*pro hac vice*)   590 Madison Avenue
Butler Rubin Saltarelli & Boyd LLP              New York, New York 10022
70 West Madison Street, Suite 1800              (212) 909-0600
Chicago, Illinois 60602                         sean.keely@lovells.com
(312) 444-9660                                  Attorneys for Defendant TIG Insurance Company

W0067844v7

---

[21] *See supra,* n. 14.