**REDACTED VERSION**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

AIU INSURANCE COMPANY,

                Plaintiff,

-against-

TIG INSURANCE COMPANY,

                Defendant.
------------------------------------------------------------X

**ORIGINAL FILED UNDER SEAL
PURSUANT TO
CONFIDENTIALITY ORDER**

Civil Action No.: 07 CIV 7052 (SHS)

# AIU INSURANCE COMPANY'S
# REPLY MEMORANDUM OF LAW IN
# SUPPORT OF ITS MOTION TO COMPEL

WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300

Of counsel:

    William A. Maher (WM-9470)
    Marc L. Abrams (MA-6600)

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| I. TIG's Reinsurance Claim and Inspection Files Are Not Subject to Work Product Doctrine Protection | 2 |
|     A. TIG May Not Sanitize its Reinsurance Claims File on the Basis of its Reservation of Rights | 2 |
|     B. TIG's Retention of Outside Counsel Does Not Allow it to Sanitize its Reinsurance Claims File | 6 |
|     C. TIG's Inspection Notes and Papers Are Not Protected by the Work Product Doctrine | 7 |
|     D. TIG's Reinsurance Claims File Is Central to the Proceeding | 7 |
| II. TIG's Reinsurance Claim and Inspection Files Are Not Subject to the Attorney-Client Privilege | 8 |
| III. AIU is Entitled to Production Of TIG's Commutation Files | 9 |

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                      **Page**

Aetna Cas. & Surety Co. v. Certain Underwriters at Lloyd's London,
    263 A.D.2d 367, 368, 692 N.Y.S.2d 384 (1st Dep't 1999) ...................................................9

Amoco Oil Co. v. Hartford Accident & Indemnity Co.,
    1995 U.S. Dist. Lexis 13532 (S.D.N.Y. Sept. 18, 1995) .....................................................6

Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co.,
    1994 U.S. Dist. LEXIS 17768 (S.D.N.Y. Dec. 13, 1994) ....................................................2

Fine v. Bellefonte,
    91 F.R.D. 420 (S.D.N.Y. 1981) ..........................................................................................7

Insurance Co. of N. Am. v. M/V Savannah,
    1995 U.S. Dist. LEXIS 15247 (S.D.N.Y. October 16, 1995) ..............................................5

McAlpin v. RLI Ins. Co.,
    509 F. Supp. 2d 242 (W.D.N.Y 2007) ................................................................................6

Mission Nat'l Ins. Co. v. Lilly,
    112 F.R.D. 160 (D. Minn. 1986) .........................................................................................9

Mount Vernon Fire Insurance Co. v. Try 3 Building Services, Inc.,
    1998 U.S. Dist. LEXIS 16183 (S.D.N.Y. Oct. 14, 1998). ...................................................2

St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.,
    197 F.R.D. 620 (N.D. Iowa 2000) ................................................................................3, 7, 9

The American Ins. Co. v. Elgot Sales Corp.,
    1998 U.S. Dist. LEXIS 14822 (S.D.N.Y. Sept. 18, 1998) ...................................................5

Travelers Casualty & Surety Co. v. J.D. Elliott & Co., P.C.,
    2004 U.S. Dist. LEXIS 20712 (S.D.N.Y. July 14, 2004) ....................................................5

United States Fidelity & Guaranty Co. v. Braspetro Oil Services Co.,
    2000 U.S. Dist. LEXIS 7939 (S.D.N.Y. June 7, 2000) .......................................................3

Westhemeco Ltd. v. New Hampshire Ins. Co.,
    82 F.R.D. 702 (S.D.N.Y. 1979) ........................................................................................3, 7

Plaintiff AIU,[1] by its attorneys, Wollmuth Maher & Deutsch LLP, respectfully submits this reply memorandum of law, together with the Reply Declaration of Marc L. Abrams ("Abrams Reply Dec.") in further support of its Motion to Compel (the "Motion").

## PRELIMINARY STATEMENT

TIG's Opposition Memorandum ("Opp. Mem.") confirms what AIU has contended all along: that TIG has sanitized its reinsurance claims file under the guise of the work product doctrine and the attorney client privilege. Under TIG's view, substantive claims materials are only discoverable to the extent they were drafted during the two day window between the apparent formation of the reinsurance claims file and TIG's reservation of rights two days later. And, according to TIG, once it reserved its rights, all substantive claims materials prepared thereafter become protected, thereby allowing TIG to refuse the production of roughly 265 documents in its reinsurance file. Under this theory, TIG has produced no substantive documents from its reinsurance claims file including claims analyses, notes or memoranda – whether authored during the two day window or thereafter.

The Court should not tolerate TIG's efforts to thwart discovery in this manner.

First, TIG's reinsurance claims file is not entitled to protection under the work product doctrine because: (i) numerous Courts have prohibited reinsurers such as TIG from refusing the production of all substantive documents within a claims file under the guise of the work product doctrine; (ii) TIG's reservation of rights (and retention of counsel) is of no consequence because TIG continued to act in the ordinary course of business afterward, even declaring its common interest with AIU and invoking the terms of the Reinsurance Agreements while never disclaiming coverage; and (iii) the Court has already recognized the appropriateness of discovery as to TIG's potential knowledge of Foster Wheeler claims and the disputed documents would

---

[1] AIU's reply papers adopt all capitalized terms appearing in AIU's Motion.

1

further illuminate the facts relating to this issue.

Second, TIG's reinsurance claims file is not subject to protection under the attorney-client privilege either. Over seventy of the documents that TIG seeks to protect under this privilege do not even involve communications to or from attorneys, and other communications may not involve legal advice to the extent they do involve attorneys.

Third, AIU's request for certain commutation documents was properly raised with TIG and this Court. TIG's attempt to transform AIU's modest request into a sanctionable offense which forms the centerpiece of TIG's Opposition Memorandum demonstrates to the Court the discovery gamesmanship that AIU has had to endure in this matter.

## ARGUMENT

### I. TIG's Reinsurance Claim and Inspection Files Are Not Subject to Work Product Doctrine Protection

In order to shield its claims file from production, TIG must meet its burden of establishing objective facts showing an identifiable resolve to litigate. Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co., 1994 U.S. Dist. LEXIS 17768, at *6 (S.D.N.Y. Dec. 13, 1994). This burden cannot be met by means of conclusory or ipse dixit assertions. Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc., 1998 U.S. Dist. LEXIS 16183, at *7 (S.D.N.Y. Oct. 14, 1998).

#### A. TIG May Not Sanitize its Reinsurance Claims File on the Basis of its Reservation of Rights

TIG asserts that because it reserved its rights on February 2, 2007 – i.e., two days after purportedly receiving notice of the reinsurance claim from AIU – any and all substantive claims documents post-dating TIG's reservation of rights are cloaked under the work product doctrine. Opp. Mem. at pp. 19-21. This argument should be rejected for at least four reasons.

First, TIG's conduct following its reservation of rights demonstrates that TIG had not

2

shifted toward litigation, but continued to act in the ordinary course of business. The case law is clear that where, as here, a reinsurer sends "mixed messages" by initially communicating a coverage position but by then engaging in ordinary business conduct following communication of that coverage position, the insurer cannot meet the rigorous requirement of demonstrating a shift toward litigation. For instance, in Westhemeco, although the insurer initially informed the plaintiff that it was denying coverage under the policy and even retained outside counsel, the parties nonetheless continued to negotiate the claim and consider coverage issues. Westhemeco Ltd. v. New Hampshire Ins. Co., 82 F.R.D. 702, 708-09 (S.D.N.Y. 1979). Thus, the insurer continued to request the provision of "additional documentation" and, in response, the insured "continued to cooperate" with the defendant in meeting its various requests. Id. Given the cooperation between the parties, the court found that the ensuing investigatory report prepared by the insurer's representative was not prepared in anticipation of litigation, but rather in the usual course of investigating a claim.[2]

Here, TIG never denied reinsurance coverage and its outward conduct demonstrates that it continued to act in the ordinary course of business after issuance of its reservation of rights letter. In fact, shortly after reserving its rights, TIG issued a series of correspondence to AIU in the ordinary course of business requesting that AIU provide it with various materials:

**REDACTED**

---

[2] Id.; see also St. Paul Reinsurance Co., Ltd. v. Commercial Financing Corp., 197 F.R.D. 620, 637-38 (N.D. Iowa 2000); United States Fidelity & Guaranty Co. v. Braspetro Oil Services Co., 2000 U. S. Dist. LEXIS 7939, at *36-48 (S.D.N.Y. June 8, 2000).

3

See Declaration of Julie R. Aldort in Support of Opp. Mem. (hereinafter "Aldort Dec."), Ex. 6.[3]

Thus, TIG continued to negotiate with AIU as if in the ordinary course of business, even executing a Confidentiality Pledge in early July 2007 declaring: (1) that it shared a "common interest" with AIU; and (2) that it was exercising its contractual rights under the Reinsurance Agreements "to inspect certain files of AIU with regard to AIU's reinsurance claims." See Motion Br. at p. 3.[4] Following the inspection, AIU indicated in writing that the inspection had been conducted in the ordinary course of business, a statement that TIG never challenged. See Abrams Reply Dec., Ex. A at TIG 002704.

Although TIG now contends that AIU's "extreme delay" in advising it of its Foster Wheeler exposures caused it, "almost immediately," to anticipate litigation, <u>if the apparent breach by AIU of the Reinsurance Agreements was so obvious, TIG should have immediately declined coverage.</u> Instead, it chose to reserve its rights while continuing to investigate the claim in the ordinary course of business by invoking the terms of the Reinsurance Agreements. Instead of expressly declining coverage, TIG preferred to internally prepare for litigation while maintaining the outward appearance of cooperation in the ordinary course of business. TIG cannot have it both ways.[5]

Second, a reinsurer may not rely on a reservation of rights letter to avoid production of all substantive documents in its reinsurance claims file, as TIG seeks to do here. In fact, courts in

---

[3] Earlier on April 3, 2007, Mr. Staley issued a similar request for information. Abrams Dec., Ex. E.

[4] TIG continues in its attempt to create the false impression that the Confidentiality Pledge executed was supplied by AIU. In actual fact, TIG unilaterally executed its own pledge as it was not satisfied with AIU's proposed confidentiality agreement. See Abrams Reply Dec., Ex. D.

[5] In its Motion, AIU argued at length that TIG's conduct after issuing the reservation of rights letter forecloses it from invoking work product doctrine protection. See Motion Br. at pp. 11-13. TIG buries its only response in fn. 19 of the Opp. Mem., arguing that AIU "knew full well by the date of the audit . . . that the litigation between the parties over AIU's late notice was anticipated" and that AIU's privilege log concedes as much. See Opp. Mem. at p. 23. Not so. As AIU's privilege log indicates, AIU only invoked the work product doctrine after conclusion of the inspection. See Aldort Dec., Ex. 9. In any case, TIG's speculation as to what AIU knew "full well", even if it were relevant, constitutes a textbook example of <u>ispe dixit</u> testimony, which the Court should not credit.

4

this jurisdiction have prohibited such conduct:

> [T]he line cannot be drawn to include all post-claim work; mechanically drawing the line at the date of the claim would afford work product protection to all of an insurance company's post-claim work, a result that is unreasonable on its face.

Travelers Casualty & Surety Co. v. J.D. Elliott & Co., P.C., 2004 U.S. Dist. LEXIS 20712, at *5 (S.D.N.Y. October 5, 2004) (emphasis added).[6]

Here, TIG seeks to do exactly what the foregoing authorities have prohibited. As TIG candidly explains in its Opp. Mem., substantive materials in its reinsurance claims file were only discoverable during a two day window – i.e., between the notice and the reservation of rights letter – before TIG invoked the work product doctrine. Opp. Mem. at 21-22. Nonetheless, TIG has not produced any reinsurance claims documents of substance (such as investigative reports, notes, or claims analysis) that were authored during this two day window or thereafter. See Abrams Reply Dec., ¶ 4. In fact, in its Opp. Mem., TIG did not reference a single substantive document from its reinsurance claims file that it has produced in this matter. This is because there are none. TIG's actions have already been considered "facially unreasonable" by other courts. This Court should rule no differently.[7]

Third, TIG offers unpersuasive legal support for the proposition that its reservation of rights letter constituted a shift toward litigation notwithstanding its failure to disclaim reinsurance coverage. Opp. Mem at pp. 19-21. There is an overwhelming array of case law indicating that a Court should presume that if an insurer (or reinsurer) has not explicitly denied the claim, the disputed documents are part of the investigation process and are not entitled to

---

[6] See also The American Ins. Co. v. Elgot Sales Corp., 1998 U.S. Dist. LEXIS 14822, at * 5 (S.D.N.Y. Sept. 18, 1998); Insurance Co. of N. Am. v. M/V Savannah, 1995 U.S. Dist. LEXIS 15247, at *3 (S.D.N.Y. October 16, 1995); Motion Br. at p. 8.

[7] TIG's claim that AIU risks sanctions because it did not individually meet and confer regarding each single entry on TIG's Privilege and Redaction logs is unsupported by any citation. Moreover, TIG is incorrect that TIG 015911 is not covered by AIU's Motion. See Abrams Dec., Ex. N (challenging the purported privilege of this document).

5

work product protection. Motion Br. at pp. 8-9. TIG offers no rebuttal to these cases. Moreover, under New York law, a reservation of rights letter has no bearing on whether an insurer has sent timely notice of a disclaimer of liability or denial of coverage. See, e.g., McAlpin v. RLI Ins. Co., 509 F. Supp. 2d 242, 252 (W.D.N.Y 2007). To the contrary, such correspondence simply serves "to rebut a claim that the carrier waived the right to disclaim by defending the insured." Id. at 252. In sum, the mere unilateral protection of an insurer's rights should not be considered as evidence of a shift toward litigation and the three authorities cited by TIG are not to the contrary.[8]

Fourth, TIG's claim that its reservation of rights statement permits it to protect all substantive documents in its reinsurance claims file defies common sense. Under TIG's approach, a reinsurer could simply invoke a reservation of rights in response to any and all claims submitted to it, thereby protecting its substantive claims files from discovery without suffering any disadvantage as it continued to investigate the claim at issue – even under the purported "direction of counsel." This is exactly what TIG seeks to do here.[9]

### B. TIG's Retention of Outside Counsel Does Not Allow it to Sanitize its Reinsurance Claims File

Although TIG cites to various cases suggesting that as a general matter the referral of a

---

[8] The Mount Vernon, ConAgra and Royal Surplus cases are inapposite because they did not consider the distinction between a reservation of rights letter and a disclaimer of coverage. See Opp. Mem at pp. 20-21. Under New York law, there is a clear distinction between these two communications. Where courts in this jurisdiction have been presented with both of such communications in the context of a work product doctrine dispute, they have explicitly rejected the relevance of the reservation of rights letter in favor of the disclaimer letter. Amoco Oil Co. v. Hartford Accident & Indemnity Co., 1995 U.S. Dist. Lexis 13532, at *3 (S.D.N.Y. Sept. 18, 1995) ("The fact that a reservation of rights letter rather than a disclaimer was sent to Amoco . . . is of no moment."). In any case, these three cases are so factually dissimilar from this one (for instance, the insurers in these cases did not sanitize their claims file while outwardly invoking contractual inspection rights), that they are of little guidance to this dispute.

**REDACTED**

6

claim to an outside attorney is a factor in determining whether the insurer anticipates litigation, see Opp. Mem. at pp. 21-22, these cases are not applicable here. This conclusion is apparent because none of these cases consider the exceptional fact pattern before the Court: i.e., where an insurer retains outside counsel but, rather than denying the claim, continues to proceed with resolution of the claim in the ordinary course of business and even invokes the protection of the contract at issue. These facts, however, have already been considered by the St. Paul Court, which refused to credit the insurer's retention of outside counsel because the insurer continued to proceed with a standard claims investigation without formally disclaiming coverage.[10] The same result should obtain here.

### C. TIG's Inspection Notes and Papers Are Not Protected by the Work Product Doctrine

In its Opp. Mem., TIG argues that even though its inspection notes were not prepared by attorneys, they are entitled to work product doctrine protection because TIG's claims handlers received legal advice from TIG attorneys. See Opp. Mem at 22-23. This argument misses the point. TIG's inspection of AIU's records is a claims function conducted by TIG's claims examiners. The fact that they received legal advice prior to the inspection does not detract from the fact that they were performing a claims function. They are not qualified to perform anything other than a claims function. Moreover, had TIG truly believed that its inspection notes were in preparation for litigation, TIG should have "staked out" this position. See Motion Br. at 10-11. TIG encouraged the opposite conclusion by claiming a common interest with AIU.

### D. TIG's Reinsurance Claims File Is Central to the Proceeding

---

[10] See also Westhemeco, 82 F.R.D. at 708-09 (denying work product protection to documents from insurance investigation where despite hiring counsel, insurer had not determined coverage position, was continuing negotiations, and based on these facts, plaintiff was cooperating with insurer); Fine v. Bellefonte, 91 F.R.D. 420, 422-23 (S.D.N.Y. 1981) (same).

TIG claims that AIU has not demonstrated that it requires the production of TIG's reinsurance claims file. See Opp. Mem. at 23-24. Not so. In this matter, TIG has placed before the Court the issue of whether and when TIG was notified of the Foster Wheeler claims. The documents in TIG's reinsurance claims file would illuminate this very question. The Court has already rejected TIG's efforts to thwart discovery as to its potential knowledge regarding the Foster Wheeler claims. Abrams Reply Dec., Ex. B. The Court should rule no differently here.

## II.  TIG's Reinsurance Claim and Inspection Files Are Not Subject to the Attorney-Client Privilege

TIG's assertion that its reinsurance claims file is entitled to protection under the attorney-client privilege, see Opp. Mem at 10-16, is also devoid of merit for the following reasons.

First, TIG has not (as it contends) merely designated "a few" documents from its reinsurance file as subject to the attorney-client privilege notwithstanding their absence of attorney involvement. See Opp. Mem. at p. 12, fn 9. Rather, TIG has designated roughly 74 entries as subject to the attorney-client privilege, even though none of these communications involve attorneys in any respect. TIG should be ordered to produce these materials, especially since it concedes that the authors of the majority of these communications (i.e., Michael Staley and William Pascale) are claims handlers not attorneys.[11] See Opp. Mem. at 15 ("TIG's claims handling functions were undertaken by Messrs. Staley and Pascale").

Second, TIG attempts to protect documents from its reinsurance file involving communications between TIG's claims attorneys (i.e., John Parker and Ann Weikers) and TIG's claims representatives on the grounds that they were acting in a legal capacity and making communications "primarily of a legal character." See Opp. Mem. at 13. Whereas some of these

---

[11] TIG's only defense to the production of these documents is that they "reflect[] counsel inquiries or advice such that attorney-client privilege is appropriate." Opp. Mem. at p. 12, fn 9. This circular argument – that the documents are entitled to privilege because they are privileged – cannot satisfy TIG's burden.

8

documents may be entitled to attorney-client privilege, to the extent TIG's claims attorneys took over the handling of the claim and managed the inspection process, they were not acting in their capacity as legal counsel. See, e.g., Mission Nat'l Ins. Co. v. Lilly, 112 F.R.D. 160, 163 (D. Minn. 1986) ("the attorney must be acting in the role of legal counsel . . . before the privilege may attach"); Aetna Cas. & Surety Co. v. Certain Underwriters at Lloyd's London, 263 A.D.2d 367, 368, 692 N.Y.S.2d 384, 386 (1st Dep't 1999) (same); St. Paul, 197 F.R.D. at 641-42 (same).[12]

### III. AIU is Entitled to Production Of TIG's Commutation Files

At the end of its Motion, AIU spent one short paragraph making a fairly modest point: that is, to the extent that TIG was withholding its actual internal business analyses regarding its commutations that TIG has placed at issue in this case, AIU was entitled to the production of such materials too. See Motion Br. at p. 13. In a transparent effort to divert the Court's attention from the Motion, TIG spends five full pages of its Opposition Memorandum arguing that AIU's request for these materials is sanctionable because it was not properly raised with TIG prior to the Motion. Opp. Mem. at pp. 5-10. TIG's gamesmanship has no basis in fact. In a discovery conference on Monday April 7, 2008, AIU (through counsel) expressed concern that TIG had not produced certain commutation documents: in particular, those documents reflecting actual analyses of the commutations that TIG has placed at issue in this litigation. Abrams Reply Dec., ¶ 6. AIU followed this conference with a letter dated April 9, 2008 indicating as follows:

> I expressed my concern that TIG has produced limited internal documents relating to the commutations raised by TIG. I also asked whether TIG, as a matter of course, prepared any internal analysis, narratives, memoranda and/or

---

[12] TIG attempts to evade St. Paul on the grounds that there "the court distinguished the claims hander's role with that of the outside attorneys employed by the same insurers as legal counsel." Opp. Mem. at p. 15. To the extent that this distinction is even understandable, it is irrelevant. AIU is not challenging that TIG's outside counsel exchanged legal communications with TIG; however, AIU is challenging whether TIG's claims attorneys waived the attorney client privilege to the extent they acted as claims handlers – which is the issue that St. Paul decided.

9

recommendations concerning the potential advantages, disadvantages or appropriateness of entering into the applicable commutations.

See Abrams Reply Dec., ¶ 7; see also Abrams Dec., Ex. J. TIG responded to this letter on April 10, 2008 with a tirade of accusations, charging AIU's counsel with being "disingenuous," holding "misplaced" and "inaccurate" views, making "specious arguments," and demanding that AIU account for certain of its own discovery positions (which AIU had already done in numerous other correspondences). See Abrams Reply Dec., ¶ 8; see also Abrams Dec, Ex. K. AIU responded to this letter via e-mail on April 15, 2008 indicating that it understood that TIG was not producing the disputed commutation files and again on April 17, 2008, indicating that rather than "exchanging interminable rounds of discovery letters replete with [] posturing" it would invoke the protection of the Court. See Abrams Reply Dec., ¶¶ 9-10 and Ex. C; see also Abrams Dec., Ex. L. This is exactly what AIU has done in this Motion.

On the eve of this Motion, TIG did back off its position by agreeing via e-mail well after the deadline to produce a limited amount of its internal commutation files, as requested by AIU. See Abrams Reply Dec. ¶ 11 and Ex. C. Nonetheless, TIG has not produced these documents. Moreover, TIG has never agreed to produce its purportedly privileged files on this subject. Id. Putting aside TIG's obfuscations, the fact remains that AIU still does not have the documents it seeks, and this issue has been appropriately raised with the Court.

Dated: May 28, 2008

WOLLMUTH MAHER & DEUTSCH LLP

By: _____
William A. Maher (WM-9470)
Marc L. Abrams (MA-6600)

500 Fifth Avenue
New York, New York 10110
(212) 382-3300
*Attorneys for Plaintiff AIU Insurance Company*

10