UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

AIU INSURANCE COMPANY,                  :

                    Plaintiff,          :     07 Civ. 7052 (SHS)(HBP)

        -against-                       :     OPINION
                                              AND ORDER
TIG INSURANCE COMPANY,                  :

                    Defendant.          :

----------------------------------X


            PITMAN, United States Magistrate Judge:


I.   Introduction


            By notice of motion dated May 6, 2008, AIU Insurance

Company ("AIU") moves for an Order pursuant to Rule 37 of the

Federal Rules of Civil Procedure, compelling the production or

the production in full of documents listed on TIG Insurance

Company's ("TIG") privilege and redaction logs that are being

withheld on the basis of the attorney-client privilege and the

work-product doctrine (Docket Item 40).  AIU argues that the

withheld documents are not within the scope of the privileges

asserted.  For the reasons set forth below, AIU's motion is

granted in part and denied in part.

II.  <u>Facts</u>

    A.  Basis of
       <u>Underlying Claims</u>

      AIU brings this action alleging breach of contract and seeking declaratory relief for TIG's failure to pay amounts due under four reinsurance contracts[1] (the "Reinsurance Contracts") (Complaint, dated Aug. 7, 2007 ("Compl.") ¶¶ 26-33).

      AIU issued four umbrella insurance policies to the Foster Wheeler Corporation and its affiliates ("Foster Wheeler") covering the period from October 1, 1978 to October 1, 1982 (Compl. ¶ 11).  AIU subsequently reinsured its exposure under the umbrella insurance policies with International Insurance Company, TIG's predecessor company, pursuant to the Reinsurance Contracts (Compl. ¶ 12).  Under the Reinsurance Contracts, AIU is obligated to provide "[p]rompt notice . . . to [TIG] of any occurrence or accident which appears likely to involve" the Reinsurance Con-tract, and TIG is obligated to indemnify AIU for payments it makes to Foster Wheeler pursuant to the umbrella insurance

---

    [1]"A certificate of reinsurance is a contract between two insurance companies in which the reinsured company agrees to cede part of its risk to the reinsurer in return for a percentage of the premium."  <u>Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.</u>, 79 N.Y.2d 576, 582, 594 N.E.2d 571, 574, 584 N.Y.S.2d 290, 293 (1992).  "[A] reinsurer's only obligation is to indemnify the primary insurer[.]"  <u>Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.</u>, <u>supra</u>, 79 N.Y.2d at 582, 594 N.E.2d at 574, 584 N.Y.S.2d at 293.

policies (Certificate of Facultative Reinsurance Number CFR 0062, dated Apr. 19, 1979 ("CFR 0062") at TIG 1163, ¶¶ B, C, annexed as Exhibit 2 to Declaration of Julie Aldort, Esq., dated May 19, 2008 ("Aldort Decl.")).  The Reinsurance Contracts also grant TIG the right to inspect AIU's "records relating to this reinsurance or claims in connection therewith" (CFR 0062 at TIG 11163, ¶ A).

Foster Wheeler is a manufacturer of boilers and other steam-generating and heat-exchange equipment and, since the late 1970s, it has been the subject of thousands of asbestos-related personal injury claims (Compl. ¶ 18).  Because of these asbestos claims, in February 2001, Foster Wheeler became engaged in coverage litigation with its primary and excess insurers (Compl. ¶¶ 18-19).  Foster Wheeler and its primary insurers settled their claims, thereby exhausting coverage under the primary policies (Compl. ¶ 19).  Foster Wheeler then filed a related action in New York Supreme Court against its excess and umbrella insurers, including AIU, seeking insurance payments (Compl ¶ 19).  On June 30, 2006, Foster Wheeler and AIU settled this action and AIU began making payments to Foster Wheeler pursuant to the settlement agreement (Compl. ¶¶ 20, 24).

On January 25, 2007, AIU sought reimbursement of these settlement payments pursuant to the Reinsurance Contracts by submitting a reinsurance claim to TIG and attaching the settlement agreement between Foster Wheeler and AIU (AIU Letter,

dated Jan. 25, 2007, annexed as Exhibit 1 to Aldort Decl.). This
letter was AIU's first notice to TIG that TIG faced potential
exposure under the Reinsurance Contracts for the Foster Wheeler
asbestos claims (Amended Answer, dated Apr. 22, 2008 ("Am. Ans.")
¶ 18). Upon receipt of the letter, TIG opened a reinsurance
claim file and assigned it to Michael Staley, an Assumed
Reinsurance Senior Claims Specialist, and his manager, William
Pascale, an Assumed Reinsurance Senior Claims Manager
(Declaration of John Parker, Esq., dated May 19, 2008 ("Parker
Decl.") ¶¶ 7-8).

After consulting with John Parker, Esq., TIG's Senior
Reinsurance Counsel and Reinsurance Senior Vice President, Staley
responded to AIU's January 25 letter by noting that AIU has a
duty to provide TIG with prompt notice of "any occurrence or
accident which appears likely to involve" the Reinsurance
Contracts (TIG Letter, dated Feb. 2, 2007 ("2/2/07 Ltr."),
annexed as Exhibit D to Abrams Decl., quoting CFR 0062 at TIG
1163, ¶¶ B, C). Staley also requested documents relating to
AIU's first notice of claim from Foster Wheeler concerning the
umbrella insurance policies and stated that TIG was not making a
coverage decision at that time and was expressly reserving all
rights (2/2/07 Ltr.).

On February 12, 2007, TIG, at the direction of Parker,
retained the law firm of Butler Rubin Saltarelli & Boyd LLP

("Butler Rubin") to obtain legal advice regarding TIG's rights and obligations under the Reinsurance Contracts, to consider possible legal action against AIU, and to prepare possible defenses to potential litigation (Parker Decl. ¶ 13; Aldort Decl. ¶ 3). Between February and May of 2007, Staley and Pascale continued to investigate AIU's claim for payment under the Reinsurance Contracts by requesting documents from AIU. As part of this investigation, TIG requested documents concerning AIU's first notice of the Foster Wheeler asbestos claims, but these documents were never furnished (TIG Letter, dated April 3 ("4/3/07"), annexed as Exhibit E to Abrams Decl.; TIG Letter, dated May 15, 2007 ("5/15/07 Ltr."), annexed as Exhibit 6 to Aldort Decl.). In its correspondence throughout this period, TIG continued to expressly reserve all rights under the Reinsurance Contracts.

Apparently dissatisfied with the documents AIU provided, in May 2007, TIG requested an on-site audit of AIU's files pursuant to the access-to-records clause in the Reinsurance Contracts (Parker Decl. ¶ 20; 5/15/07 Ltr.). The purpose of the audit was to identify information bearing on the timing of AIU's knowledge of potential claims under the umbrella insurance policies (Parker Decl. ¶ 20). Before the audit, Pascale executed a confidentiality agreement on behalf of TIG in which TIG represented that it was "seek[ing] to exercise its right to

inspect certain files of AIU with regard to AIU's reinsurance claims" (Confidentiality Agreement, executed July 2, 2007 ("Confid. Agreement") at TIG 000005, annexed as Exhibit G to Abrams Decl.). In July, 2007, Pascale and Joseph Loggia, an outside consultant retained by TIG, conducted the audit of AIU's files and, at the direction of counsel, took notes concerning documents they considered relevant (Parker Decl. ¶ 22). Pascale and Loggia provided these notes to Butler Rubin, Parker, and Anne Weikers, TIG's Deputy Reinsurance Counsel and Assistant Vice President (Parker Decl. ¶¶ 5, 23).

Thereafter, AIU commenced suit against TIG, alleging that TIG had breached the Reinsurance Contracts by failing to indemnify AIU for its share of the settlement payments (Compl. ¶ 25). In its Amended Answer, TIG asserts a lack-of-prompt-notice defense, claiming that it is not obligated to indemnify AIU because AIU breached the Reinsurance Contracts by failing to provide TIG with prompt notice of AIU's potential exposure for the Foster Wheeler asbestos claims (Am. Ans. at 14).

B. The Present
   Discovery Dispute

On November 12, 2007, AIU served its First Request for Production of Documents on TIG (Aldort Decl. ¶ 8). After an initial production of documents, TIG withheld and redacted documents on the basis of attorney-client privilege and the work-

product doctrine, listing the documents on a privilege and redaction log (TIG's Privilege Log, dated Mar. 25, 2008 ("Priv. Log"), annexed as Exhibit M to Abrams Decl.; TIG's Redaction Log, dated Mar. 25, 2008, annexed as Exhibit N to Abrams Decl.). After a series of meet-and-confer sessions between counsel, AIU filed the instant motion to compel. On or about June 24, 2007, I directed that the documents in issue be submitted to my chambers for in camera review.

AIU seeks all the documents listed on TIG's privilege log and the full text of certain documents on TIG's redaction log. The withheld and redacted documents fall into two categories: (1) documents relating to TIG's handling of claims under the Reinsurance Contracts and TIG's July 2007 audit of AIU's files[2] and (2) documents relating to commutations[3] between TIG and other insurance companies that purport to show the

---

[2]These documents are numbered as entries 35-90, 94-103, 105-39, 141-270, and 274-79 on the privilege log and the documents on the redaction log with the following Bates numbers: 12987, 13208, 13277, 13514, 13515, 13585, 13589, 13993, 14002, 14011, 14020, 14032, 14110, 14112-18, 14127, 14136, 14147, 14284, 14425, 14567, 14586, 15911, and 15914.

[3]"An experience or commutation provision refers to an insurance mechanism by which the insured is refunded premium at the end of the policy if there were few loss experiences over the course of the contract." In re Am. Int'l Group, Inc., No. 3-11254, 2003 WL 22469910 at *8 (S.D.N.Y. Sept. 11, 2003).

economic prejudice TIG suffered as a result of AIU's late notice
of Foster Wheeler's claims.[4]

III.  <u>Analysis</u>

    A.  AIU's Failure to
       Meet and Confer
       <u>Pursuant to Rule 37</u>

      TIG initially argues that AIU's motion to compel the
commutation documents withheld on the ground of attorney-client
privilege should be denied because of AIU's failure to satisfy
Rule 37's meet-and-confer requirement.  TIG also seeks attorneys'
fees and costs (TIG's Memorandum in Opposition to AIU's Motion to
Compel, dated May 20, 2008 ("Def. Mem.") at 7-10, 24-25).  AIU
argues that these commutation documents are not privileged to the
extent that they reflect business decisions made by TIG's
attorneys, such as which contracts to commute and the price of
such commutations, and therefore must be produced (AIU's
Memorandum of Law in Support of its Motion to Compel, dated May
6, 2008 ("Plf. Mem.") at 13).

      Pursuant to Rule 37 of the Federal Rules of Civil
Procedure, a motion to compel "must include a certification that

---

[4]These documents are numbered as entries 1-34, 91-93, 104,
140, and 271-73 on the privilege log and the documents with Bates
numbers 11770-72 on the redaction log.  TIG, however,
subsequently withdrew its assertion of attorney-client privilege
with respect to the documents with Bates numbers 11770-72 by
letter dated August 6, 2008.

the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed.R.Civ.P. 37(a)(1). "The purpose of the meet and confer requirement is to resolve discovery matters without the court's intervention to the greatest extent possible." Excess Ins. Co. v. Rochdale Ins. Co., 05 Civ. 10174 (RWS), 2007 WL 2900217 at *1 (S.D.N.Y. Oct. 4, 2007). To achieve this end, the meet-and-confer obligation requires that the parties:

> meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining . . . what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention.

Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., 96 Civ. 7590 (DAB)(JCF), 1998 WL 67672 at *3 (S.D.N.Y. Feb. 18, 1998). Absent temporal exigencies requiring speedy action, see In re NASDAQ Market-Makers Antitrust Litig., 94 Civ. 3996 (RWS), 1996 WL 187409 at *2 (S.D.N.Y. Apr. 18, 1996), or where efforts at compromise would have been clearly futile, see Matsushita Elec. Corp. v. 212 Copiers Corp., 93 Civ. 3243 (KTD)(MHD), 1996 WL 87245 at *1 (S.D.N.Y. Feb. 29, 1996), "the failure to meet and confer mandates denial of a motion to compel." Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., supra, 1998 WL 67672 at *3.

TIG first contends that the Declaration of Marc Abrams, Esq., submitted on behalf of AIU in support of its motion, is conclusory and, therefore, fails to meet Rule 37's certification requirement (Def. Mem. at 8-9).  To satisfy the meet-and-confer requirement, the certification must "set forth . . . essential facts sufficient to enable the court to pass a preliminary judgment on the adequacy and sincerity of the good faith conferment between the parties[,]" such as the "names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates, times, and results of their discussions, if any." Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 171 (D. Nev. 1996).  In his declaration, Abrams certifies that he "conferred in good faith with counsel for TIG by means of numerous phone conferences and discovery correspondences . . . in an effort to secure disclosure of the documents sought by AIU in this motion without court intervention" (Abrams Decl. ¶ 3).  AIU supplemented this statement by submitting a reply declaration from Marc Abrams, Esq., which details the initial discovery conference between Abrams and Julie Aldort, Esq., counsel for TIG, on April 7, 2008 and the subsequent correspondence in which Abrams requested certain commutation documents (Reply Declaration of Marc L. Abrams, Esq., dated May 28, 2008 ("Reply Abrams Decl.") ¶¶ 6-8).  The reply declaration also notes that Abrams

and Aldort could not resolve the dispute concerning the commutation documents before TIG filed the instant motion to compel (Reply Abrams Decl. ¶¶ 9-12). AIU's certification, therefore, has the level of factual specificity required by Rule 37.

TIG next argues that AIU failed to satisfy its duty to confer because AIU did not raise any issue in the meet-and-confer process concerning TIG's assertion of the attorney-client privilege with respect to the commutation documents on its privilege log (Def. Mem. at 8-10; Aldort Decl. ¶¶ 19-20; Supplemental Declaration of Julie R. Aldort, Esq., dated May 30, 2008, ¶ 5). This argument is not persuasive because the record reveals that, before bringing the instant motion to compel, AIU did confer with TIG in good faith regarding the production of the commutation documents.

In a letter memorializing his understanding of the results of the initial meet-and-confer session, Abrams noted that AIU was seeking internal management reports relating to TIG's commutations and documents created after the commutation agreements were executed, such as summary and payment documents (Letter, dated Apr. 4, 2008 ("4/9/08 Ltr.") at 3, annexed as Exhibit J to Abrams Decl.). In this letter, Abrams also requested "any internal analysis, narratives, memoranda and/or recommendations concerning the potential advantages,

disadvantages or appropriateness of entering into the applicable commutations" (4/9/08 Ltr. at 4). In a letter dated April 10, 2008, Aldort responded that the only commutation documents TIG was withholding were "management reports" and "post-commutation documents" and that TIG was continuing to assess whether to produce these documents (Letter, dated Apr. 10, 2008 at 4, annexed as Exhibit K to Abrams Decl.). Abrams responded in a subsequent email inquiring whether TIG had made a decision regarding the commutation documents and requesting that Aldort respond by the end of the following week (Email, dated Apr. 15, 2008, annexed as Exhibit C to Reply Abrams Decl.). Two days later, Abrams indicated that AIU would file a motion to compel if informal discovery communications proved fruitless (Letter, dated Apr. 17, 2008 at 1, annexed as Exhibit L to Abrams Decl.). On May 1, 2008, TIG informed AIU by email that it intended to produce the management reports related to the commutations and post-commutation documents (Email, dated May 1, 2008, annexed as Exhibit C to Reply Abrams Decl.). TIG, however, ultimately did not produce these documents, and AIU subsequently filed the instant motion to compel (Reply Abrams Decl. ¶ 11).

The fact that Abrams did not expressly challenge TIG's assertion of the attorney-client privilege with respect to the commutation documents during the parties informal discovery communications is of no moment. AIU's informal request in the

April 9, 2008 letter for documents analyzing commutations between TIG and its reinsurers reasonably encompassed the commutation documents listed on TIG's privilege log, which TIG describes as providing legal analysis and assessment of commutation agreements (see, e.g., Priv. Log at Entries 1-33).

Lastly, because this aspect of AIU's motion to compel is not procedurally deficient, TIG's request for attorneys' fees and costs pursuant to Rule 37 is denied.

B.  Attorney-Client Privilege
    and Work-Product Doctrine

I now turn to the merits of AIU's motion to compel.

1.  Legal Principles Applicable
    to the Attorney-Client Privilege
    and the Work-Product Doctrine

The standards for assessing claims of attorney-client privilege and work-product protection are well settled:

> "'[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship.'" von Bulow v. von Bulow, 811 F.2d 136, 144 (2d Cir.), cert. denied, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987) (quoting In re Grand Jury Subpoena dated Jan. 4, 1984, 750 F.2d 223, 224 (2d Cir. 1984)). . . . More broadly, the party seeking to invoke the privilege must establish all elements of the privilege.  See, e.g., In re Horowitz, 482 F.2d 72, 82 (2d Cir.), cert. denied, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); United States v. Kovel, 296 F.2d 918, 923 (2d Cir. 1961) . . . .  This burden can be met only by an evidentiary showing based on competent evidence, see, e.g., von Bulow v. von Bulow, 811 F.2d at 144 . . . and

> cannot be "discharged by mere conclusory or ipse dixit
> assertions." <u>von Bulow v. von Bulow</u>, 811 F.2d at 146
> (quoting <u>In re Bonanno</u>, 344 F.2d 830, 833 (2d Cir.
> 1965)); <u>In re Grand Jury Subpoena dated Jan. 4, 1984</u>,
> 750 F.2d at 224-25.

<u>Bowne of New York City, Inc. v. AmBase Corp.</u>, 150 F.R.D. 465, 470
(S.D.N.Y. 1993).

In an action, such as this, where state law supplies
the rules of decision, state law also controls privilege issues.
Fed.R.Evid. 501; <u>Dixon v. 80 Pine Street Corp.</u>, 516 F.2d 1278,
1280 (2d Cir. 1975); <u>Bowne of New York City, Inc. v. AmBase
Corp.</u>, <u>supra</u>, 150 F.R.D. at 470.  Although the parties disagree
as to which state's law governs the underlying breach-of-contract
dispute (Plf. Mem. at 7 n.6 (asserting New York law applies);
Def. Mem. at 11 n.7 (claiming that Illinois law applies), they
agree that New York law governs the attorney-client privilege
issues here (Plf. Mem. at 7 n.6; Def. Mem. at 11 n.7).  Such
consent eliminates any choice-of-law issue.  <u>Santalucia v.
Sebright Transp., Inc.</u>, 232 F.3d 293, 296 (2d Cir. 2000).  I,
therefore, apply the law of New York concerning the privilege.
See <u>Note Funding Corp. v. Bobian Inv. Co.</u>, 93 Civ. 7427
(DAB)(MHD), 1995 WL 662402 at *1 (S.D.N.Y. Nov. 9, 1995) (holding
that New York law governed assertion of attorney-client privilege
based on parties' consent); <u>Rachman Bag Co. v. Liberty Mut. Ins.
Co.</u>, 839 F. Supp. 998, 1000 n.1 (E.D.N.Y. 1993) ("While it is not
clear that New York law is applicable here, both parties have

relied upon New York law in their briefs and have declined to raise the choice of law issue.  Under these circumstances, it is assumed that New York law governs."), rev'd on other grounds, 46 F.3d 230 (2d Cir. 1995).

In New York, the attorney-client privilege protects confidential communications between attorney and client relating to legal advice.  N.Y. C.P.L.R. § 4503(a); Rossi v. Blue Cross & Blue Shield, 73 N.Y.2d 588, 592, 540 N.E.2d 703, 705, 542 N.Y.S.2d 508, 510 (1989).

> Although typically arising in the context of a client's communication to an attorney, the privilege extends as well to communications from attorney to client. . . . In order for the privilege to apply, the communication from attorney to client must be made 'for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship.' (Rossi v. Blue Cross & Blue Shield, 73 N.Y.2d 588, 593.)  The communication itself must be primarily or predominantly of a legal character.

Spectrum Sys. Int'l Corp. v. Chemical Bank, 78 N.Y.2d 371, 377-78, 581 N.E.2d 1055, 1060, 575 N.Y.S.2d 809, 814 (1991). Communications between a corporation and its in-house counsel for the purpose of obtaining or providing legal advice are also afforded the attorney-client protection.  Rossi v. Blue Cross & Blue Shield, supra, 73 N.Y.2d at 592, 540 N.E.2d at 705, 542 N.Y.S.2d at 510 ("The privilege applies to communications with attorneys, whether corporate staff counsel or outside counsel."). However, where in-house counsel also serves as a business advisor within the corporation, only those communications "related to

15

legal, as contrasted with business, advice are protected." <u>TVT</u>
<u>Records v. Island Def Jam Music Group</u>, 214 F.R.D. 143, 144
(S.D.N.Y. 2003) (internal quotation marks omitted); <u>see</u> <u>also</u> <u>ABB</u>
<u>Kent-Taylor, Inc. v. Stallings & Co.</u>, 172 F.R.D. 53, 58 (W.D.N.Y.
1996) ("[T]here is no privilege for corporate counsel who is
giving, or corporate employees who are seeking, predominately
business advice as opposed to legal advice.").

In addition, "[a] communication between an attorney and
the agent or employee of a corporation may be privileged where
the agent 'possessed the information needed by the corporation's
attorneys in order to render informed legal advice.'" <u>Allied</u>
<u>Irish Banks v. Bank of Am.</u>, 240 F.R.D. 96, 103 (S.D.N.Y. 2007),
<u>quoting</u> <u>In re Copper Mkt. Antitrust Litig.</u>, 200 F.R.D. 213, 218
(S.D.N.Y. 2001); <u>see</u> <u>also</u> <u>Upjohn Co. v. United States</u>, 449 U.S.
383, 391 (1981).

While the attorney-client privilege "is intended to
encourage clients to be forthcoming and candid with their
attorneys so that the attorney is sufficiently well-informed to
provide sound legal advice[,]" <u>United States v. Adlman</u>, 68 F.3d
1495, 1499 (2d Cir. 1995), the work-product doctrine "is intended
to preserve a zone of privacy in which a lawyer can prepare and
develop legal theories and strategy 'with an eye toward
litigation,' free from unnecessary intrusion by his adversaries."
<u>United States v. Adlman</u>, 134 F.3d 1194, 1196 (2d Cir. 1998),

16

quoting <u>Hickman v. Taylor</u>, 329 U.S. 495, 511 (1947). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." <u>United States v. Nobles</u>, 422 U.S. 225, 238 (1975).

The scope of the work-product doctrine is defined in Fed.R.Civ.P. 26(b)(3), which provides:

> (A) <u>Documents and Tangible Things</u>. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But . . . those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) <u>Protection Against Disclosure</u>. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed.R.Civ.P. 26(b)(3)(A), (B).

Because the protection afforded by Rule 26(b)(3)(A) is not absolute, it is not technically a privilege within the meaning of Fed.R.Evid. 501. <u>See</u> <u>Fine v. Facet Aerospace Prods. Co.</u>, 133 F.R.D. 439, 444 (S.D.N.Y. 1990); <u>R.R. Salvage of Conn., Inc. v. Japan Freight Consolidators (U.S.A.) Inc.</u>, 97 F.R.D. 37,

40 (E.D.N.Y. 1983) (McLaughlin, J.).  Federal law rather than state law governs the applicability of the work-product doctrine in all actions in federal court.  <u>Bowne of New York City, Inc. v. AmBase Corp.</u>, <u>supra</u>, 150 F.R.D. at 471.

A party asserting work-product protection must prove three elements:  "[t]he material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative."  <u>In Re Grand Jury Subpoenas dated Dec. 18, 1981 & Jan. 4, 1982</u>, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982) (McLaughlin, J.); <u>see</u> <u>Adamowicz v. I.R.S.</u>, 552 F. Supp.2d 355, 365 (S.D.N.Y. 2008).

If the proponent succeeds in establishing these elements, the burden then shifts to the parties seeking discovery of work-product material to show substantial need for the material and an inability to obtain its substantial equivalent from another source without undue hardship.  <u>Weinhold v. Witte Heavy Lift, Inc.</u>, 90 Civ. 2096 (PKL), 1994 WL 132392 at *3 (S.D.N.Y. Apr. 11, 1994); <u>accord</u> <u>Kent Corp. v. N.L.R.B.</u>, 530 F.2d 612, 623-24 (5th Cir. 1976).  However, "while factual materials falling within the scope of the doctrine may generally be discovered upon this showing of 'substantial need,' attorney mental impressions are more rigorously protected from

discovery[.]" <u>In re Leslie Fay Cos. Sec. Litig.</u>, 161 F.R.D 274, 279 (S.D.N.Y. 1995).

Although the law on the subject is not well developed, I continue to believe that the appropriate manner to adjudicate claims of privilege or work-product protection is the mechanism I suggested in <u>ECDC Envtl. L.C. v. New York Marine & Gen. Ins. Co.</u>, 96 Civ. 6033 (BSJ)(HBP), 1998 WL 614478 at *3-*4 (S.D.N.Y. June 4, 1998):

> Although it is clear that the proponent of the privilege ultimately bears the burden of proving all essential facts necessary to sustain a claim of privilege, the law is not entirely clear as to how this burden may be discharged where, as here, the proponent has served a detailed index of documents withheld, and the challenger has submitted specific challenges. Apart from the specific challenges made in its motion, defendant does not generally challenge the adequacy of plaintiff's index.
>
> Under these circumstances, it appears that the proponent of the privilege may satisfy its burden by submitting evidentiary material as to the challenged elements only. Requiring the proponent to submit evidentiary material to prove <u>all</u> elements of the privilege in response to a specific challenge unduly burdens and wastes the time of both the Court and the parties. A party asserting a claim of privilege is obligated to prepare an index of withheld documents, which must provide sufficient information "to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). Thus, a party challenging an assertion of privilege is given the information necessary to state the grounds of its challenge and is not left to guess at the nature of what's being withheld and why. Since the challenger is given this information, there is no logic or efficiency in requiring the proponent of a privilege or the Court to address matters which are not contested by the challenger. <u>See generally In re Grand Jury Investigation</u>, 974 F.2d 1068, 1071 (9th Cir. 1992);

Bowne of New York City, Inc. v. AmBase Corp., supra, 150 F.R.D. at 474; Golden Trade, S.r.L. v. Lee Apparel Co., 90 Civ. 6291 (JMC), 1992 WL 367070 at *5 (S.D.N.Y. Nov. 20, 1992).

Stated with slightly more detail, the withholding party's initial obligation is to prepare an index of withheld documents providing the specific information required by Fed.R.Civ.P. 26(b)(5) and Local Civil Rule 26.2. If the assertions of privilege or work-product protection are not challenged, the withholding party has no further obligation with respect to its assertions of privilege. If the assertions of privilege or work-product protection are challenged and the dispute cannot be resolved informally, the withholding party then has to submit evidence, by way of affidavit, deposition testimony or otherwise, establishing only the challenged elements of the applicable privilege or protection, with the ultimate burden of proof resting with the party asserting the privilege or protection. See von Bulow v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987), citing In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224 (2d Cir. 1984); Bowne of New York City, Inc. v. AmBase Corp., supra, 150 F.R.D. at 470 (collecting cases).

The foregoing procedure properly allocates the burden of proof and saves the Court and the parties from having to address any elements of a privilege or protection that are not in dispute. In addition, the foregoing accurately reflects the

20

manner in which disputes concerning documents withheld on the ground of privilege are currently resolved in this District.

With these general principles in mind, I turn to the parties' specific arguments concerning the assertion of the attorney-client privilege and work-product doctrine.

2. Application of Legal
Principles to Withheld
and Redacted Documents

a. Attorney-Client
Privilege

AIU contends that the documents withheld on the basis of the attorney-client privilege should be produced because they do not involve legal communications (Plf. Mem. at 12). Specifically, AIU argues that many of these documents were not drafted by TIG's in-house or outside counsel, as reflected by the information provided on the privilege and redaction logs. AIU also claims that numerous documents drafted by Staley and Pascale and not distributed to TIG's counsel were improperly withheld on the theory that they were prepared "at the direction of counsel." Lastly, even where the privilege and redaction logs indicate that TIG's counsel drafted or received a document, AIU contends that TIG's counsel was acting solely in an investigatory function (Plf. Mem. at 12-13).

Because AIU does not challenge the other elements of the attorney-client privilege, TIG may discharge its burden by presenting competent evidence establishing that each document contains a legal communication between TIG and its counsel. To that end, TIG has submitted its privilege and redaction logs, the Declaration of John Parker, Esq., TIG's in-house reinsurance counsel, and the Declaration of Julie Aldort, Esq., TIG's outside counsel. As noted above, the withheld documents themselves have also been submitted for <u>in</u> <u>camera</u> review.

TIG argues that it has met its burden because these materials establish that the challenged documents contain communications of a legal and not merely business nature (Def. Mem. at 12-14). TIG points to the Parker Declaration, in which he affirms that "[c]ommunications among Ms. Wiekers, other TIG employees and me [were] primarily of a legal character" (Parker Decl. ¶ 18). Similarly, Aldort affirms that "[t]he communications between employees of TIG and Butler Rubin [were] primarily of a legal character and were made or received by Butler Rubin in its role as TIG's attorney" (Aldort Decl. ¶ 6).

These conclusory affirmations, however, are of little value in assessing whether the withheld documents contain communications "made in order to render legal advice or services to the client." <u>Spectrum Sys. Int'l Corp. v. Chemical Bank</u>, <u>supra</u>, 78 N.Y.2d at 379, 581 N.E.2d at 1061, 575 N.Y.S.2d at 815.

For the most part, the declarations do not provide specific facts establishing the nature of the legal advice asked for or given to TIG by its in-house or outside counsel.  Indeed, the declarations fail to address the contents of any withheld document.  <u>See</u> <u>Bowne of New York City, Inc v. AmBase Corp.</u>, <u>supra</u>, 150 F.R.D. at 473 ("In requiring a party to prove the factual basis for its claims of privilege, the courts generally look to a showing based on affidavits or equivalent statements that address <u>each</u> <u>document</u> <u>at</u> <u>issue</u>.") (emphasis added).

The declarations contain only a few particularized facts going to the nature of the legal advice provided to or sought by TIG.  For instance, beginning on February 12, 2007, Parker sought legal advice from Butler Rubin concerning TIG's rights and obligations under the Reinsurance Contracts (Parker Decl. ¶ 13).  Parker also affirms that, beginning in May of 2007, he solicited legal advice from Butler Rubin concerning the decision to audit AIU's records (Parker Decl. ¶¶ 20-21).  Before and during that audit, Parker and Weikers gave Pascale and Loggia "legal advice and direction with respect to the conduct of the audit, including with respect to any notes taken during the audit" (Parker Decl. ¶ 22).  Consistent with Parker's direction, Pascale and Loggia provided their notes to Parker and Weikers only (Parker Decl. ¶ 23).  Although they offer some detail, these statements suffer from the same deficiencies that plague the

balance of the declarations because they focus only on
generalities and do not address any specific challenged
communication between TIG and its counsel.

Given this lack of specificity, I can assess TIG's
claims of privilege only by reviewing the face of the withheld
documents in light of the general context in which they were
prepared and the information disclosed on the privilege and
redaction logs.  After carefully reviewing the withheld documents
in camera, I find that TIG has failed to sustain its burden of
establishing the attorney-client privilege as to the vast
majority of the withheld documents.

For example, a majority of the commutation-related
documents reflect draft language and general revisions
recommended by TIG's in-house counsel concerning commutation
agreements (see, e.g., Priv. Log at Document # 5).  "Under New
York law, the general rule is that a draft document in an
attorney's file may [] be characterized as a communication from
attorney to client in the course of rendering legal advice, and
insofar as there has been no disclosure of the draft's contents
to third persons, it is confidential."  Stenovich v. Wachtell,
Lipton, Rosen & Katz, 195 Misc.2d 99, 107-08, 756 N.Y.S.2d 367,
377 (Sup. Co. N.Y. Co. Jan. 2, 2003).  Moreover, draft documents
retain their privilege if they "contain information a client
considered but decided not to include in the final version[.]"

Women's InterArt Ctr., Inc. v. N.Y.C. Econ. Dev., 223 F.R.D. 156, 161 (S.D.N.Y. 2004) (internal quotation marks omitted). Here, the changes reflected on the draft documents appear to be stylistic and structural changes only (see, e.g., Priv. Log at Document # 10). The handwritten notations on these document do not appear to provide or request legal advice and there is no particularized evidence addressing any of the notations on these draft documents. These documents, therefore, are not privileged.

Many of the withheld documents are emails that merely copy TIG's in-house counsel, Parker, on communications that do not seek legal advice (see, e.g., Priv. Log at Document # 99) and, therefore, are not privileged. See U.S. Postal Serv. v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 160 (E.D.N.Y. 1994) ("[T]he mere fact a communication is made directly to an attorney, or an attorney is copied on a memorandum does not mean that the communication is necessarily privileged.").

Other documents provided to Parker contain updates of TIG's investigation of AIU's claim and reflect only business communications. On its privilege log, TIG indicates that these documents concern "[c]ommunications re investigation/inquiry at direction of counsel re AIU's Foster Wheeler claims[.]" (Priv. Log at Entry 43). However, "a document will not become privileged simply because an attorney recommended its preparation if it contains merely business-related or technical

communications between corporate employees[.]" <u>In re</u>
<u>Rivastigmine Patent Litig.</u>, 237 F.R.D. 69, 80 (S.D.N.Y. 2006).
Indeed, "in analyzing communications created at the direction of
in-house counsel, courts must be wary that the involvement of the
attorney is not being used simply to shield corporate
communications from disclosure." <u>In re Rivastigmine Patent</u>
<u>Litig.</u>, <u>supra</u>, 237 F.R.D. at 80.  The documents made "at the
request" of TIG's counsel that contain merely business
communications are, therefore, not privileged (<u>see</u>, <u>e</u>.<u>g</u>., Priv.
Log at Document # 43).

     Additionally, in many of the emails from Parker to
other TIG employees, Parker is clearly acting in his capacity as
Vice President by giving business advice and not providing legal
advice in his role as in-house counsel.  Thus, these documents
are not privileged either (<u>see</u>, <u>e</u>.<u>g</u>., Priv. Log at Document #
117).  <u>See</u> <u>TVT Records v. Island Def Jam Music Group</u>, <u>supra</u>, 214
F.R.D. at 144.

     Still other documents are not privileged because
neither party to the communication is an attorney nor does the
content of the document reflect legal advice from an attorney or
a request for such advice (<u>see</u>, <u>e</u>.<u>g</u>., Priv. Log at Document #
210).

     Accordingly, I conclude that the following documents on
the privilege log are not privileged because they simply contain

no legal communications between TIG and its in-house or outside counsel: 5-16, 19, 20, 23, 30-33, 35, 39, 40, 43-76, 84, 85, 90, 91, 94, 95, 99-102, 104, 112-26, 128, 129, 137-39, 142, 146-48, 155, 157, 162, 167, 170, 178-80, 186, 188, 196-208, 210, 211, 218, 219, 224, 226-31, 234-36, 238, 239, 242-44, 247, 250-62, 264-69, 271-73, 276, and 278.[5]  In addition, the documents on the redaction log with the following Bates numbers are not privileged for the same reason:  13208, 13277, 13514, 13515, 13585, 13589, 13993, 14002, 14011, 14020, 14032, 14110, 14112-18, 14127, 14136, 14147, 14284, and 14425.[6]  To the extent that TIG has asserted work-product protection over these documents, I address these arguments in the following section.

     As to the remainder of the documents withheld on the basis of attorney-client privilege, TIG has met its burden of demonstrating that they contain protectable legal communications. These documents are 1-3, 17, 18, 21, 22, 24-29, 36, 37, 168, 169, 181-85, 187, 189-95, 213, 215, 216, 220-23, 232, 245, 246, 248, 249, and 279.  To the extent TIG has withheld these documents on

_____

[5]Annexed hereto as Schedule A is a table providing a description of each withheld document on the privilege log and the rationale for my ruling on the claim of privilege or work-product protection.

[6]Annexed hereto as Schedule B is a table providing a description of each redacted document on the redaction log and the rationale for my ruling on the claim of privilege or work-product protection

the basis of work-product protection, I address these arguments in the following section, as well.

    b. Work-Product
       <u>Protection</u>

   AIU next challenges the documents withheld as work-product on the ground that these documents were not prepared in anticipation of litigation.  Specifically, AIU argues that these documents were created as part of TIG's investigation of AIU's claim for coverage in the ordinary course of TIG's business. In support of its position, AIU notes that TIG never denied AIU's claim and many of these documents were prepared as part of TIG's audit of AIU's records pursuant to the access-to-records clause in the Reinsurance Contracts (Plf. Mem. at 7-13).

   In response, TIG contends that these documents were created in anticipation of litigation because it has demonstrated, through the Parker and Aldort Declarations, that it possessed a "resolve to litigate" as early as February of 2007 despite not denying AIU's claim for coverage.  As evidence of this assertion, TIG points to (1) the February 2, 2007 reservation of rights letter it sent to AIU and (2) its decision to retain Butler Rubin on February 12, 2007 (Def. Mem. at 19-22). Specifically, Parker affirms that, upon being advised of AIU's claim for coverage, which raised concerns about whether AIU had satisfied its prompt notice obligation, he "determined that AIU's

28

claim was likely to be the subject of litigation" (Parker Decl. ¶ 11). Parker also notes that he retained Butler Rubin to "consider the prosecution of legal action against AIU, and to undertake the defense of litigation [he] anticipated AIU could file at any time" (Parker Decl. ¶ 13). Based on this, TIG concludes that all documents created after February 1, 2007 should be afforded work-product protection (Def. Mem. at 22).

Application of the work-product doctrine to an insurance company's claims files has been particularly troublesome because it is the routine business of insurance companies to investigate and evaluate claims. Tudor Ins. Co. v. McKenna Assocs., 01 Civ. 115 (DAB)(JCF), 2003 WL 21488058 at *3 (S.D.N.Y. June 25, 2003); Am. Nat'l Fire Ins. Co. v. Mirasco, Inc., 99 Civ. 12405 (RWS), 00 Civ. 5098 (RWS), 2001 WL 876816 at *1 (S.D.N.Y. Aug. 2, 2001). Thus, courts have held that documents in a claims file created by or for an insurance company as part of its ordinary course of business are not afforded work-product protection. E.g., OneBeacon Ins. Co. v. Forman Int'l, Ltd., 04 Civ. 2271 (RWS), 2006 WL 3771010 at *5 (S.D.N.Y. Dec. 15, 2006) (citing cases).

Because it is difficult to determine precisely when the possibility of litigation becomes sufficiently definite to be considered "anticipated," courts frequently presume that documents prepared by or for an insurer prior to a coverage

decision are prepared in the ordinary course of the insurer's business and are not afforded work-product protection.  See OneBeacon Ins. Co. v. Forman Int'l, Ltd., supra, 2006 WL 3771010 at *5; Congregation BNEI Luzer, Inc. v. Md. Cas. Co., 04 Civ. 2353 (BSJ)(DFE), 2004 WL 2609570 at *2 (S.D.N.Y. Nov. 17, 2004). This presumption may be rebutted by the insurer if it demonstrates with specific competent proof that it possessed a "resolve to litigate" when the documents were created.  Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co., 90 Civ. 7811 (AGS), 1994 WL 698298 at *2 (S.D.N.Y. Dec. 13, 1994); Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655, 663-64 & n.4 (S.D. Ind. 1991).

Other courts have adopted a more flexible case-by-case approach.  E.g., Weber v. Paduano, 02 Civ. 3392 (GEL), 2003 WL 161340 at *4 (S.D.N.Y. Jan. 22, 2003); Am. Nat'l Fire Ins. Co. v. Mirasco, Inc., supra, 2001 WL 876816 at *2;  Am. Ins. Co. v. Elgot Sales Corp., 97 Civ. 1327 (RLC)(NRB), 1998 WL 647206 at *1 (S.D.N.Y. Sept. 21, 1998); see also 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2024 at 343 (2d ed. 1994) ("[T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.").

Here, the vast majority of the withheld documents are not entitled to work-product protection.  "[I]n the insurance

context, it is particularly important that the party opposing
production of the documents, on whom the burden of proof as to
privilege rests, demonstrate by specific and competent evidence
that the documents were created in anticipation of litigation."
Weber v. Paduano, supra, 2003 WL 161340 at *4.  TIG's evidentiary
showing is deficient because neither the Parker nor Aldort
Declarations provide specific facts that each withheld or
redacted document was prepared in anticipation of litigation and
not as part of TIG's ordinary investigation of AIU's claim.
Instead, the declarations mostly contain conclusory statements
that do not refer to any particular withheld document on its
privilege or redaction log (see Parker Decl. ¶¶ 15, 24; Aldort
Decl. ¶ 3), and such statements cannot support TIG's assertion of
work-product protection.  See Bowne of New York City, Inc. v.
AmBase Corp., supra, 150 F.R.D. at 470.

TIG's argument that it possessed a resolve to litigate
in early February of 2007 is unpersuasive.  The fact that TIG
sent the reservation of rights letter to AIU on February 2, 2007,
only eight days after it received AIU's first notice of the
Foster Wheeler claim (see 2/2/07 Ltr.), strongly indicates that
the letter was sent during the ordinary course of business.  See
Weber v. Paduano, supra, 2003 WL 161340 at *6 ("[T]he actions
that an insurance company takes immediately after being notified
of a potential claim are almost always part of its ordinary

business of claim investigation[.]").  This is particularly true
when viewed in light of TIG's course of conduct from February
through August of 2007.  During this time period, TIG never
denied AIU's claim, repeatedly requested information from AIU
concerning the Foster Wheeler claims, and eventually conducted an
audit of AIU's records under the auspices of the access-to-
records clause in the Reinsurance Contract (see 2/2/07 Ltr.;
4/3/07 Ltr.; 5/15/07 Ltr.; Confid. Agreement at TIG 000005).
Given this evidence, it is clear that TIG continued to
investigate AIU's claim in the ordinary course of business well
after February of 2007.

Nor does TIG's retention of Butler Rubin on February
12, 2007 necessarily lead to a finding that TIG possessed a
resolve to litigate.  As TIG itself acknowledges (Def. Mem. at
21), the fact that an insurance company hires a law firm during
its investigation of a claim is a "'significant factor in
determining when the insurer anticipates litigation[]' but is not
determinative."  Weber v. Paduano, supra, 2003 WL 161340 at *8,
quoting Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc.,
96 Civ. 5590 (MJL)(HBP), 1998 WL 729735 at *7 (S.D.N.Y. Oct. 16,
1998).  Because of the fact-specific nature of this inquiry,
documents created after the retention of counsel are not
necessarily afforded work-product protection where the insurance
company continues to investigate the claim without denying

coverage.  See St. Paul Reinsurance Co. v. Commercial Fin. Corp., 197 F.R.D. 620, 638 (N.D. Iowa 2000) ("Such materials are not protected by work product privilege, even though the London Insurers had engaged outside counsel . . . because the hiring of outside counsel does not, by itself, indicate a determination to litigate, and the record presented thus far indicates that coverage evaluation -- i.e., claims investigation in the ordinary course of business -- continued after [outside counsel] was hired[.]"); Fine v. Bellefonte Underwriters Ins. Co., 91 F.R.D. 420, 421-23 (S.D.N.Y. 1981).  In this case, TIG's hiring of Butler Rubin on February 12, 2007 does not demonstrate a resolve to litigate because TIG continued to investigate AIU's claim for months after this date and did not deny coverage.

TIG's argument that it held a resolve to litigate starting on February 1, 2007, only seven days after it opened a claims file for the AIU matter (Parker Decl. ¶ 7), fails for an additional reason.  To make such a categorical ruling would bar production of all the documents TIG has withheld on the basis of work-product.  Such a result would be contrary to case law and undermine the liberal policy of discovery embodied in the Federal Rules of Civil Procedure.  See Travelers Cas. & Sur. Co. v. J.D. Elliott & Co., 03 Civ. 9720 (GBD)(HBP), 2004 WL 2339549 at *2 (S.D.N.Y. Oct. 5, 2004) ("There is no 'bright line' test for determining when an insurance company's investigative work passes

from work in the ordinary course of the insurance company's business to work performed in anticipation of litigation. Certainly the line cannot be drawn to include all post-claim work; mechanically drawing the line at the date of the claim would afford work product protection to all of an insurance company's post-claim work, a result that is unreasonable on its face."); Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos., 123 F.R.D. 198, 202 (M.D.N.C. 1988) ("An insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to claims made on it by its insured.").

Thus, rather than determine that the work-product doctrine applies based on a categorical presumption, the better course here is to engage in a fact-specific inquiry to determine whether each document was created in anticipation of litigation. See United States v. Adlman, supra, 134 F.3d at 1202-03; Weber v. Paduano, supra, 2003 WL 161340 at *4 ("The determination as to whether materials are protected [as work-product] is necessarily fact-specific. This is even more true where, as here, the documents in question were created by or for an insurance company in the course of its investigation[.]"). After reviewing the documents in camera, I find that the following documents on the privilege log were not prepared in anticipation of litigation: 4,

34-83, 86-93, 95-98, 103-36, 140-67, 170-77, 181, 186-88, 196, 204, 207-09, 211, 212, 214, 217-19, 221, 222, 224-29, 232-35, 237-52, 255, 263, 266-70, 272-77, and 279.  I also find that the documents with the following Bates numbers on the redaction log were not prepared "because of" an anticipation of litigation: 12987, 13208, 13277, 13514, 13515, 13585, 13589, 13993, 14002, 14011, 14020, 14032, 14110, 14112-18, 14127, 14136, 14147, 14567, 14586, 15911, and 15914.

However, I find that TIG has sustained its burden in demonstrating that the following documents were prepared in anticipation of litigation:  168, 169, 189, 191-95, and 213. Because AIU does not assert a substantial need for the documents that I find are protected as work-product, they need not be produced.

IV.  Conclusion

Accordingly, for the foregoing reasons, AIU's motion to compel (Docket Item 40) is granted in part and denied in part. TIG is directed to produce the following documents from its privilege and redaction logs:  4-16, 19, 20, 30-35, 38-167, 170-80, 186, 188, 196-212, 214, 217-19, 224-31, 233-44, 247, 250-78, 12987, 13208, 13277, 13514, 13515, 13585, 13589, 13993, 14002, 14011, 14020, 14032, 14110, 14112-18, 14127, 14136, 14147, 14284, 14425, 14567, 14586, 15911, and 15914.  TIG is also directed to

produce documents 23, 37, and 279 in redacted form in accordance
with the instructions found in Schedule A annexed hereto.

Dated: New York, New York
       August 28, 2008

                                    SO ORDERED

                                    _____
                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies transmitted to:

William A. Maher, Esq.
Marc L. Abrams, Esq.
Wollmurth, Maher & Deutsch LLP
500 Fifth Avenue
Suite 1200
New York, New York  10110

Joelle K. Blomquist, Esq.
Butler, Rubin, Saltarelli
       & Boyd, LLP
70 West Madison Street
Suite 1800
Chicago, Illinois  60602

Sean T. Keely, Esq.
Lovells, LLP
590 Madison Avenue
New York, New York  10022

## SCHEDULE A

| # | Description and Rationale for Ruling |
|---|---|
| 1 | Email to Parker from Riverstone employee requesting legal advice regarding language in confidentiality agreement. Riverstone is the entity that apparently assists TIG with claims handling functions.  Email attaches confidentiality agreement.<br><br>Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |
| 2 | Email from Parker responding to request for legal advice in Document # 1.  Email attaches confidentiality agreement.<br><br>Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |
| 3 | Email between Riverstone employees concerning legal language approved by Parker in Document # 2.  Email attaches confidentiality agreement with updated language.<br><br>Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |
| 4 | Draft spreadsheet created by Donna Gilliand, a Riverstone employee who is not an attorney, with handwritten notes regarding commutation agreement.  Drafted in December, 2002.  No indication on face of document that it was transmitted to counsel as indicated on privilege log. Not prepared "because of" anticipation of litigation.<br><br>Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |

| | |
|---|---|
| 5 | Draft settlement agreement with handwritten revisions. No indication revisions made for purposes of providing legal advice.<br><br>Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 6 | <u>See</u> Document # 5. |
| 7 | <u>See</u> Document # 5. |
| 8 | <u>See</u> Document # 5. |
| 9 | <u>See</u> Document # 5. |
| 10 | <u>See</u> Document # 5. |
| 11 | <u>See</u> Document # 5. |
| 12 | <u>See</u> Document # 5. |
| 13 | <u>See</u> Document # 5. |
| 14 | A draft spreadsheet providing financial details of potential settlement.  Privilege log indicates it was sent to "counsel."  Purely a business document and contains no legal communication.<br><br>Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 15 | Same draft spreadsheet in Document # 14 with handwritten notes of non-attorney Riverstone employee.  Notes do not request legal advice.<br><br>Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 16 | <u>See</u> Document # 15. |

| | |
|---|---|
| 17 | Email to Parker from Riverstone employee requesting legal advice regarding language in settlement agreement.  Email attaches settlement agreement.<br><br>Attorney-client privilege attaches.<br><br><br>Work-product doctrine not asserted. |
| 18 | <u>See</u> Document # 17. |
| 19 | Email with no text, attaching final settlement agreement. Parker merely one of recipients of email.  No legal communications.<br><br>Attorney-client privilege does not attach.<br><br><br>Work-product doctrine not asserted. |
| 20 | Email from Parker to Riverstone employee.  Email attaches draft settlement agreement.  No legal advice rendered.<br><br>Attorney-client privilege does not attach.<br><br><br>Work-product doctrine not asserted. |
| 21 | Email from Parker to Riverstone employee explaining Parker's revisions to draft settlement agreement.  Email attaches draft settlement agreement reflecting Parker's changes.<br><br>Attorney-client privilege attaches.<br><br><br>Work-product doctrine not asserted. |
| 22 | Email from Parker to Riverstone employee providing legal advice on implications of draft settlement agreement language.  Email attaches draft settlement agreement reflecting Parker's changes.<br><br>Attorney-client privilege attaches.<br><br><br>Work-product doctrine not asserted. |

| 23 | Email from Riverstone employee to Parker, responding to Parker in Document # 22.  No request for legal advice.<br><br>Attorney-client privilege does not attach.<br><br>TIG is directed to redact the remainder of the document, which duplicates Document # 22.<br><br>Work-product doctrine not asserted. |
|----|---|
| 24 | Email to Parker from Riverstone employee requesting legal advice regarding language in settlement agreement.  Email attaches settlement agreement.<br><br>Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |
| 25 | Email from Parker responding to request for legal advice in Document # 24 with suggested changes in language.<br><br>Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |
| 26 | <u>See</u> Document # 24. |
| 27 | Email to Parker from Riverstone employee requesting legal advice regarding language in settlement agreement.  Email attaches settlement agreement.<br><br>Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |
| 28 | Email to Parker from Riverstone employee requesting legal advice regarding language in settlement agreement.<br><br>Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |

| 29 | Email from Parker to Riverstone employee providing legal advice concerning a proposed settlement agreement.<br><br>Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |
|----|----|
| 30 | Email to Parker from Riverstone employee summarizing settlement agreement.  No request for legal advice.<br><br>Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 31 | Email to Parker from Riverstone employee, attaching settlement agreement.  No request for legal advice.<br><br>Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 32 | Email between Riverstone employees neither of whom is attorney, attaching settlement agreement.  No request for legal advice.<br><br>Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 33 | Draft spreadsheet with handwritten notes prepared by Riverstone employee who is not an attorney.  No request for legal advice.<br><br>Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 34 | Handwritten notes of Riverstone employee who is not an attorney.  Notes not made "because of" anticipated or existing litigation.<br><br>Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |

| 35 | Internal memorandum from Staley to Parker, describing facts underlying AIU's settlement with Foster Wheeler, AIU's umbrella insurance policies with Foster Wheeler, and the Reinsurance Contracts.<br><br>No request for legal advice. Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
|----|----|
| 36 | Email from Parker to Riverstone employees, providing legal advice regarding the retention of attorney-client privilege.<br><br>Attorney-client privilege attaches.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 37 | Email requesting Staley to forward his "write-up" to Parker.<br><br>Communication not made to provide or request legal advice. Attorney-client privilege does not attach to portion of text that constitutes this email to Staley.<br><br>TIG is directed to redact the remainder of the document, which duplicates Document #36.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 38 | Email from Doreen Stelmach, a non-attorney employee of Riverstone, to Staley concerning when a different Riverstone employee would be able to work on Foster Wheeler claim. Document not created "because of" anticipated or existing litigation.<br><br>Work-product doctrine does not attach.<br><br>Attorney-client privilege not asserted. |

| 39 | Email responding to Document # 36.

Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.

Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
|---|---|
| 40 | Email between Riverstone employees neither of whom is an attorney.

Communication not made to provide or render legal advice. Attorney-client privilege does not attach.

Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 41 | A claim file review created by Staley for the file.  No recipient noted.  Document details facts of AIU's coverage claim.  Created in ordinary course of business.

Document not created "because of" anticipated or existing litigation.

Work-product protection does not attach.

Attorney-client privilege not asserted. |
| 42 | Progress report with handwritten notes from Staley to Parker.  Explaining IIC's exposure to AIU's claims for coverage.

Document not created "because of" anticipated or existing litigation.  Created in ordinary course of business.

Work-product protection does not attach.

Attorney-client privilege not asserted. |

| 43 | Progress report from Staley to Parker.  Text same as Document #35 except for second page.  Explaining IIC's exposure to AIU's claims for coverage.  Created in ordinary course of business.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
|----|----|
| 44 | See Document #43. |
| 45 | See Document #43. |
| 46 | See Document #43. |
| 47 | See Document #43. |
| 48 | See Document #43. |
| 49 | See Document #43. |
| 50 | See Document #43. |
| 51 | See Document #43. |
| 52 | See Document #43. |
| 53 | See Document #43. |
| 54 | See Document #43. |
| 55 | See Document #43. |
| 56 | See Document #43. |
| 57 | See Document #43. |
| 58 | See Document #43. |
| 59 | Progress report from Staley to Parker.  Discussing the facts underlying the Foster Wheeler declaratory judgment case in New York state court and the instant claim for coverage by AIU against TIG.  Made in ordinary course of business.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 60 | See Document #59. |

| | |
|---|---|
| 61 | <u>See</u> Document #59. |
| 62 | <u>See</u> Document #59. |
| 63 | <u>See</u> Document #59. |
| 64 | <u>See</u> Document #59. |
| 65 | <u>See</u> Document #59. |
| 66 | <u>See</u> Document #59. |
| 67 | <u>See</u> Document #59. |
| 68 | <u>See</u> Document #59. |
| 69 | <u>See</u> Document #59. |
| 70 | <u>See</u> Document #59. |
| 71 | <u>See</u> Document #59. |
| 72 | <u>See</u> Document #59. |
| 73 | <u>See</u> Document #59. |
| 74 | <u>See</u> Document #59. |
| 75 | <u>See</u> Document #59. |
| 76 | <u>See</u> Document #43. |
| 77 | Email from Pascale to Sandra LeBlanc, a non-attorney Riverstone employee, instructing her to make certain revisions to attachment. The attachment is a document entitled "operating highlights report" dated November 2006, which primarily details the financial health of Riverstone. The FosterWheeler/AIU claims for coverage are discussed on page 12. The discussion focuses on the facts of the claim thus far and the possibility of a "late notice" issue.<br><br>Document not created "because of" anticipated or existing litigation. It merely reflects status of investigation of AIU's claim.<br><br>Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |

| 78 | Email from Pascale to LeBlanc instructing her to make final revisions to attachment in Document #77. |
|---|---|
| | Document not created "because of" anticipated or existing litigation. |
| | Work-product protection does not attach. |
| | Attorney-client privilege not asserted. |
| 79 | Email from Linda McCarthy, a non-attorney Riverstone employee, asking Staley to inform her when he is done looking at the Reinsurance Contracts. Purely a business document. |
| | Document not created "because of" anticipated or existing litigation. |
| | Work-product protection does not attach. |
| | Attorney-client privilege not asserted. |
| 80 | Email from Gilliand discussing TIG's inability to amend proof of claim to add AIU claim. Document created purely for business purposes. |
| | Document not created "because of" anticipated or existing litigation. |
| | Work-product protection does not attach. |
| | Attorney-client privilege not asserted. |
| 81 | Email from McCarthy requesting info about the AIU claim from Staley. Document created purely for business purposes. |
| | Document not created "because of" anticipated or existing litigation. |
| | Work-product protection does not attach. |
| | Attorney-client privilege not asserted. |
| 82 | See Document # 81. |
| 83 | See Document # 81. |

| 84 | Email from Catherine Isely, a Butler Rubin partner, to Parker notifying him no conflicts exist in relation to Foster Wheeler/AIU claim. |
| --- | --- |
| | Communication not made to provide or request legal advice. |
| | Attorney-client privilege does not attach. |
| | Work-product doctrine not asserted. |
| 85 | Email from LeGros, a non-attorney employee of Butler Rubin, to Parker. |
| | Communication not made to provide or request legal advice. |
| | Attorney-client privilege does not attach. |
| | Work-product doctrine not asserted. |
| 86 | Handwritten notes by Pascale discussing the facts underlying AIU's claim for coverage and the potential "late notice" issue. No recipient noted on privilege log or documents themselves. Document created purely for business purposes. |
| | Document not created "because of" anticipated or existing litigation. |
| | Work-product protection does not attach. |
| | Attorney-client privilege not asserted. |
| 87 | Email between Riverstone employee who are not attorneys, attaching spreadsheet of TIG's reinsurers and commutation dates. Merely describing facts concerning the name of the reinsurers and certain settlement dates. |
| | Document not created "because of" anticipated or existing litigation. |
| | Work-product protection does not attach. |
| | Attorney-client privilege not asserted. |

| 88 | <u>See</u> Document # 87. |
|----|--------------------------|
| 89 | Spreadsheet referred to in Document # 87. Document not created "because of" anticipated or existing litigation.<br><br>Work-product protection does not attach.<br><br><br>Attorney-client privilege not asserted. |
| 90 | Email in Document # 85 sent to Parker and Isley. Communication not made to request legal advice.<br><br>Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 91 | <u>See</u> Document # 87.<br><br>Communication not made to request legal advice. Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 92 | <u>See</u> Document # 87. |
| 93 | Email from Gilliard to Westover and LeGros attaching "CMS screens" and "worksheet" showing damages for two of TIG's reinsurers. Document created purely for business reasons.<br><br>Document not created "because of" anticipated or existing litigation.<br><br>Work-product protection does not attach.<br><br><br>Attorney-client privilege not asserted. |

| 94 | Email between Pascale and Ginamarie Alvino, a non-attorney employee of Riverstone.  Email forwarding sample of a Reinsurance Contract. |
|---|---|
| | Communication not made to provide or request legal advice. |
| | Attorney-client privilege does not attach. |
| | Work-product doctrine not asserted. |
| 95 | Handwritten note by Pascale discussing various TIG commutations.  No recipient indicated on either privilege log or the note itself. |
| | Communication not made to request legal advice. Attorney-client privilege does not attach. |
| | Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 96 | Email from LeGros to Westover, attaching a draft of a memo discussing TIG's commutations with its reinsurers.  The "analysis" is substantially factual.  Document created for business purposes. |
| | Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| | Attorney-client privilege not asserted. |
| 97 | Handwritten notes by Pascale reflecting discussion about "late notice" issue and possible prejudice to TIG.  No indication document created to assist Parker or Butler Rubin.  Document merely reflects notes from a meeting. |
| | Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| | Attorney-client privilege not asserted. |

| 98 | Handwritten notes by Pascale discussing impact of Foster Wheeler claims on a TIG commutation.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
|-----|-----|
| 99 | Email from Pascale to Parker and Staley concerning a meeting regarding AIU's claim for coverage.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 100 | Email response to Document #99.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 101 | First email in chain of Documents # 99 and # 100, requesting meeting to talk about AIU's proofs submitted with claim.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 102 | Handwritten note by Pascale reflecting meeting with Parker and Staley regarding letter to be drafted to AIU requesting additional information to assess late notice issue.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |

| | |
|---|---|
| 103 | Draft spreadsheet created by Gilliand listing information about TIG's reinsurers.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 104 | Email from Staley to Parker attaching draft of April 3, 2007 letter in response to AIU's proofs of loss.  No indication Parker acting in reinsurance counsel role as opposed to Vice President role.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 105 | Draft spreadsheet prepared by Staley listing information about various TIG claims.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 106 | <u>See</u> Document # 105. |
| 107 | Email from Staley to Michael Hanna, a non-attorney employee of Riverstone, discussing results of running claim numbers through risk history.  A business document.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 108 | Email from Staley to Sara Baldwin, a non-attorney employee of Riverstone, concerning results of running a risk history against the certificate numbers of the Reinsurance Policies.  A business document.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |

| 109 | <u>See</u> Document # 107. |
|-----|----------------------------|
| 110 | <u>See</u> Document # 107. |
| 111 | Same as Document # 107 except for handwritten note on email.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 112 | Email from Pascale to Parker and Staley regarding possible denial of coverage for AIU's claims.  A business document.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 113 | Email from Parker to Staley requesting that Staley provide documentation supporting Staley's conclusion that TIG should deny AIU's claim.  Parker acting in role as Vice President.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 114 | Email from Staley to Parker requesting thoughts on denying AIU's claims.  Parker acting in role as Vice President.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |

| | |
|---|---|
| 115 | Internal document from Staley to Parker recommending that TIG deny AIU's claim. This is a business document regarding the investigation of AIU's claim.<br><br>Communication not made to render or solicit legal advice. Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 116 | <u>See</u> Document # 115. |
| 117 | Internal document drafted by Staley. Document does not reflect name of recipient despite the privilege log listing Parker. Staley recommending denial of AIU's claim based on documentation he culled. This a business communication regarding a coverage decision.<br><br>Communication not made to provide or request legal advice. Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 118 | Email from Parker telling Staley to stop by his office.<br><br>Communication not made to provide or request legal advice. Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 119 | Internal document reflecting Parker's approval of a denial of coverage of AIU's claims against certificates CFR0085 and CFR0086 that postdate October 1, 1981. This is a business document regarding the denial of a certain portion of AIU's claim.<br><br>Communication not made to provide or request legal advice. Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 120 | <u>See</u> Document # 119. |
| 121 | <u>See</u> Document # 117. |
| 122 | <u>See</u> Document # 117. |
| 123 | <u>See</u> Document # 119. |

| | |
|---|---|
| 124 | <u>See</u> Document # 117. |
| 125 | <u>See</u> Document # 117. |
| 126 | <u>See</u> Document # 119. |
| 127 | Email between Staley and non-attorney employees of Riverstone concerning whether they can do a loss-run analysis for the Reinsurance Contracts.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br><br>Attorney-client privilege not asserted. |
| 128 | Email from Pascale to Parker relaying conversation he had with a Mr. Nirenberg.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 129 | Handwritten note by Pascale on text of Document # 128.<br><br>Communication not made to provide or request advice. Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 130 | <u>See</u> Document # 127. |
| 131 | <u>See</u> Document # 127. |
| 132 | <u>See</u> Document # 127. |
| 133 | <u>See</u> Document # 127. |
| 134 | <u>See</u> Document # 127. |
| 135 | <u>See</u> Document # 127. |
| 136 | <u>See</u> Document # 127. |

| 137 | Email from Staley to James Rubin, a partner at Butler Rubin, forwarding AIU's response to TIG's request for Foster Wheeler's first demand to AIU.  Attachments include settlement agreement and Cozen O'Connor memorandum prepared for AIG/AIU.  Staley not requesting any legal advice from Rubin. |
|-----|---|
|     | Communication not made to provide or request legal advice.  Attorney-client privilege does not attach. |
|     | Work-product doctrine not asserted. |
| 138 | Email from Pascale to Parker concerning a conference call. |
|     | Communication not made to provide or request legal advice.  Attorney-client privilege does not attach. |
|     | Work-product doctrine not asserted. |
| 139 | Email from Rubin to Staley thanking him for the forwarded message. |
|     | Communication not made to provide or request legal advice.  Attorney-client privilege does not attach. |
|     | Work-product doctrine not asserted. |
| 140 | Email from Gilliand to Pascale and Westover forwarding TIG claim numbers. |
|     | Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
|     | Attorney-client privilege not asserted. |
| 141 | Handwritten notes created by Pascale reflecting discussion at conference call and discussing audit of AIU's records.  No recipient indicated on either privilege log or notes themselves. |
|     | Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
|     | Attorney-client privilege not asserted. |

| 142 | Email from Staley to Parker and Pascale forwarding draft letter Staley intended to send to AIU concerning its response to TIG's request for documentation of its claim. No indication that Parker acting reinsurance counsel role as opposed to Vice President role.

Communication not made to provide or request advice. Attorney-client privilege does not attach.

Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
|---|---|
| 143 | <u>See</u> Document # 127. |
| 144 | <u>See</u> Document # 127. |
| 145 | Email among non-attorney employees of Riverstone looking for explanation of an internal business "code" attached to a claim history for the Reinsurance Contracts.  This is a business document.

Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.


Attorney-client privilege not asserted. |
| 146 | Memorandum from Staley to Parker, Rubin, Pascale, and Westover concerning the documents AIU provided in support of its claim for coverage.  Staley reviews the documents, surveys certain coverage issues, such as late notice, and recommends next steps in the investigation of the claim. Staley does not request legal advice.  A business document.

Communication not made to render or solicit legal advice. Attorney-client privilege does not attach.

Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 147 | <u>See</u> Document # 146.  This document adds handwritten notes concerning minor edits to language. |
| 148 | <u>See</u> Document # 146.  Document appears to be final version of that document. |
| 149 | <u>See</u> Document # 145. |
| 150 | <u>See</u> Document # 145. |

| 151 | <u>See</u> Document # 145.  Additional email concerning Riverstone not yet receiving documents from Iron Mountain.<br><br>Attorney-client privilege not asserted. |
|-----|---|
| 152 | <u>See</u> Document # 145. |
| 153 | <u>See</u> Document # 145. |
| 154 | <u>See</u> Document # 151. |
| 155 | Email from Pascale outlining agenda for conference call. Communication completely administrative in nature.<br><br>Communication not made to render or solicit legal advice. Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 156 | Email from Christopher LeGros, a non-attorney employee of Riverstone, with no text and attaching a spreadsheet.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 157 | <u>See</u> Document # 148. |
| 158 | <u>See</u> Document # 141. |
| 159 | Email from Staley to Pascale attaching a draft letter requesting explanation and additional documents from AIU.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |

| 160 | Email from Staley to Westover copying text of two letters sent to AIU and indicating that a third letter will be forthcoming.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
|-----|------|
| 161 | Draft of letter created by Staley dated May 8, 2007 from TIG to AIU requesting more information.  This is a business document.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 162 | Email from Staley to Parker forwarding draft letter Staley intended to send to AIU concerning its response to TIG's request for documentation of its claim.  No indication that Parker acting in reinsurance counsel role as opposed to Vice President role.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 163 | See Document # 151. |
| 164 | See Document # 151. |
| 165 | Draft of letter created by Staley dated May 8, 2007 from TIG to AIU requesting more information with handwritten revisions.  This is a business document.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 166 | See Document # 165. |
| 167 | See Document # 162. |

| | |
|---|---|
| 168 | Email from Isley, a Butler Rubin partner, to Staley, Pascale, and Parker concerning the omission of particular language in Staley's letter to AIU. This email reflects Ms. Isley's legal advice and strategy concerning the AIU matter.<br><br>Communication made to provide legal advice. Attorney-client privilege attaches.<br><br>Document created "because of" anticipated or existing litigation. Work-product protection attaches. |
| 169 | Email from Parker responding to Isley's legal analysis with his own analysis of the language in the draft letter.<br><br>Attorney-client privilege attaches.<br><br>Work-product protection attaches. |
| 170 | Email from Pascale to Parker, Staley, and Westover relaying conversation with a Mr. Nirenberg who had handled the Foster Wheeler claim for AIU.<br><br>Communication not made to provide or request legal advice. Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 171 | See Document # 170.<br><br>Attorney-client privilege not asserted. |
| 172 | See Document # 145. |
| 173 | Draft letter created by Staley from TIG to AIU dated May 15, 2007 requesting more information from AIU concerning Foster Wheeler's notice to AIU. This is a business document.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 174 | See Document # 145. |
| 175 | See Document # 145. |

| 176 | <u>See</u> Document # 145. |
|------|-------------------------------|
| 177 | <u>See</u> Document # 145. |
| 178 | Email from Staley to Parker, Pascale, and Rubin concerning conversation with Richard Kafaf, an AIG Reinsurance Claim Analyst.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 179 | Email from Rubin responding to Document # 178 and asking whether parties should have conference call.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 180 | Email from Parker responding to Document # 179.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 181 | Handwritten notes of Pascale from telephone conference among Rubin, Paker, Westover, Staley, and Pines.  Notes reflect legal strategy concerning jurisdiction of potential suit, choice of law issues, and effect of future precedent in certain jurisdictions.  Document is comprised predominately of legal advice.<br><br>Attorney-client privilege attaches.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |

| 182 | Email from Isely requesting information concerning a name of individual who signed one of the Reinsurance Contracts. Fact goes to analysis of selection of forum, jurisdiction, and choice of law

Communication made to assist rendition of legal advice. Attorney-client privilege attaches.

Work-product doctrine not asserted. |
|---|---|
| 183 | Responding to Document # 182.

Communication made to assist rendition of legal advice. Attorney-client privilege attaches.

Work-product doctrine not asserted. |
| 184 | Responding to Document # 182.

Communication made to assist rendition of legal advice. Attorney-client privilege attaches.

Work-product doctrine not asserted. |
| 185 | Responding to Document # 182.

Communication made to assist rendition of legal advice. Attorney-client privilege attaches.

Work-product doctrine not asserted. |
| 186 | Draft confidentiality agreement. Privilege log indicates Wiekers is author. No recipient listed. Document does not reflect any changes to language. This confidentiality agreement was eventually sent to AIU.

Communication not made to assist rendition of legal advice. Attorney-client privilege does not attach.

Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |

| | |
|---|---|
| 187 | Responding to Document # 182.<br><br>Communication made to assist rendition of legal advice. Attorney-client privilege attaches.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 188 | Email from Isley with no text and attaching two files. Text of electronic files, however, not offered as part of Document # 188.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 189 | These are the two legal memoranda referred to in Document # 188.  They clearly contain legal advice and strategy concerning possible litigation with AIU.<br><br>Communication made to provide or request legal advice. Attorney-client privilege attaches.<br><br>Document created "because of" anticipated or existing litigation.  Work-product protection attaches. |
| 190 | See Document # 182. |
| 191 | See Document # 189. |
| 192 | Email from Parker responding to Butler Rubin memo. Parker asking Isely about additional information TIG should undercover to assist Butler Rubin in providing legal advice concerning possible litigation with AIU.<br><br>Communication made to provide or request legal advice. Attorney-client privilege attaches.<br><br>Document created "because of" anticipated or existing litigation.  Work-product protection attaches. |

| 193 | Email from Parker responding to Document #192 and providing further legal strategy on how to continue with investigation.<br><br>Communication made to provide or request legal advice. Attorney-client privilege attaches.<br><br>Document created "because of" anticipated or existing litigation.  Work-product protection attaches. |
|-----|---|
| 194 | <u>See</u> Document # 193. |
| 195 | Email from Staley regarding files pertinent to legal inquiry.  Responding to request for information from Isley.<br><br>Communication made to provide or request legal advice. Attorney-client privilege attaches.<br><br>Document created "because of" anticipated or existing litigation.  Work-product protection attaches. |
| 196 | Email merely following up on verbal communication and attaching Reinsurance Contracts.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 197 | Responding thank you to Document #196.<br><br>Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 198 | Email concerning scheduling a conference call.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |

| | |
|---|---|
| 199 | Email concerning scheduling a conference call.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 200 | <u>See</u> Document # 199. |
| 201 | Email from Pascale to Parker, Westover, and Staley discussing AIU's agreement to furnish documents to TIG as part of audit.  This is a business document.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 202 | <u>See</u> Document # 201. |
| 203 | Email asking Pascale for timing of audit.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 204 | Handwritten notes of Pascale memorializing discussion at meeting.  Document reflects strategy to proceed with TIG's investigation of AIU's claim.  No recipient indicated on privilege log or notes themselves.  This is a business document.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 205 | Email from Pascale concerning logistics of anticipated audit.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |

| 206 | Email from Parker responding to Document #206 with date of audit.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
|-----|---|
| 207 | Email from Loggia about availability for audit.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 208 | <u>See</u> Document # 207. |
| 209 | Email confirming date of audit.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 210 | Email from Pascale asking when the audit will be.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 211 | Email forwarded from Staley to Pascale and Parker attaching three proofs of loss from AIU.  This is a business document.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |

| | |
|---|---|
| 212 | Letter from Doreen Stelmach, a non-attorney employee of Riverstone, to Loggia forwarding underlying policies and Reinsurance Contracts in preparation of audit. These documents not included in #212 however.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 213 | Email from Amy Pines, a Butler Rubin associate, to Parker, Pascale, Staley, and Westover attaching legal memorandum. This memorandum clearly provides legal advice relating to anticipated litigation with AIU.<br><br>Communication made to provide or request legal advice. Attorney-client privilege attaches.<br><br>Document created "because of" anticipated or existing litigation. Work-product protection attaches. |
| 214 | Handwritten notes created by Pascale on email otherwise produced discussing logistics of audit. Handwriting reflects the fact that Kafaf, TIF point of contact for the audit, would not answer questions regarding late notice.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 215 | Email with attachment from Pascale to Weikers, requesting that Weikers review a draft language and provide advice.<br><br>Communication made to provide or request legal advice. Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |

| | |
|---|---|
| 216 | Email from Weikers to Pascale responding to Document # 215 and providing legal advice on the scope of proposed language.<br><br>Communication made to provide or request legal advice. Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |
| 217 | See Document # 214. |
| 218 | Email setting up conference call to prepare for audit.<br><br>Communication not made to provide or request legal advice. Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 219 | See Document # 218. |
| 220 | Email from Weikers and Pascale providing advice on language of proposed language in an agreement.<br><br>Communication made to provide or request legal advice. Attorney-client privilege attaches.<br><br>Work-product doctrine not asserted. |
| 221 | See Document #220.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 222 | See Document #220.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 223 | See Document #220. |
| 224 | Email from Weikers to Parker, Isley, and Rubin concerning conference call topics.<br><br>Communication not made to provide or request legal advice. Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |

| | |
|---|---|
| 225 | Handwritten notes of Loggia created during audit of AIU's records pursuant to access-to-records clause in Reinsurance Contract.  Given this, these notes were prepared as part of investigation of AIU's claim for coverage.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 226 | Email from Pascale but with no recipient.  Contains notes from audit.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 227 | Email from Jennifer Hall, a non-attorney employee of Buxbaum Loggia, asking Pascale to sign confidentiality agreement.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 228 | <u>See</u> Document # 227.  Attaches final version of confidentiality agreement. |
| 229 | Email from Pascale to Loggia discussing logistics in anticipation of audit.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 230 | Email from Pascale to Weikers about setting up conference call-in number.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |

| 231 | <u>See</u> Document # 230. |
|---|---|
| 232 | Email from Pascale requesting legal advice from Weikers with regard to changes in contractual language.<br><br>Communication made to provide or request legal advice. Attorney-client privilege attaches.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 233 | Handwritten notes of Pascale on email regarding procedures at audit.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br><br>Attorney-client privilege not asserted. |
| 234 | Email from Weikers requesting Loggia to sign addendum to confidentiality agreement.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 235 | Email from Loggia telling Pascale he will sign addendum the next day.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 236 | Email from Pascale to Weikers merely asking her to "see attached" letter from AIG requesting TIG to agree to additional terms governing the audit.  No indication that Weikers acting in deputy reinsurance counsel role as opposed to Assistant Vice President role.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br><br>Work-product doctrine not asserted. |

| 237 | Email from AIG employee to Pascale asking that additional terms to the confidentiality agreement be executed. Partially illegible handwritten note by Pascale on front. |
|-----|------|
| | Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| | Attorney-client privilege not asserted. |
| 238 | Email from Hall to Weikers, Pascale, and Loggia attaching addendum to confidentiality agreement with Loggia's signature. |
| | Communication not made to provide or request legal advice.  Attorney-client privilege does not attach. |
| | Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 239 | Email from Loggia requesting Parker and Rubin to look over questions before first day of audit.  No questions attached to email. |
| | Communication not made to provide or request legal advice.  Attorney-client privilege does not attach. |
| | Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 240 | Typed notes of Pascale regarding audit procedures and documents reviewed during audit.  These notes were prepared as part of investigation of AIU's claim for coverage. |
| | Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| | Attorney-client privilege not asserted. |

| 241 | Draft letter from Pascale to Kafaf requesting written explanation for AIU's apparent failure to report certain claims made by Foster Wheeler to TIG until after the claims were settled. |
| --- | --- |
| | Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| | Attorney-client privilege not asserted. |
| 242 | Email concerning setting up meeting with Loggia. |
| | Communication not made to provide or request legal advice. Attorney-client privilege does not attach. |
| | Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 243 | <u>See</u> Document # 242. |
| 244 | <u>See</u> Document # 242. |
| 245 | Email from Rubin to Loggia providing advice on Loggia's questions for the audit. |
| | Communication made to provide or request legal advice. Attorney-client privilege attaches. |
| | Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 246 | <u>See</u> Document # 245. |
| 247 | Email from Parker to Loggia approving of Loggia's questions for the audit. No indication that Parker acting in role as reinsurance counsel as opposed to Vice President. |
| | Communication not made to provide or request legal advice. Attorney-client privilege does not attach. |
| | Document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |

| 248 | Email from Loggia to Rubin and Parker requesting legal advice.

Communication made to provide or request legal advice. Attorney-client privilege attaches.

Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
|------|------|
| 249 | Email from Rubin to Loggia and Parker providing legal advice.

Communication made to provide or request legal advice. Attorney-client privilege attaches.

Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 250 | <u>See</u> Document # 242. |
| 251 | <u>See</u> Document # 242. |
| 252 | <u>See</u> Document # 242. |
| 253 | <u>See</u> Document # 247.

Work-product doctrine not asserted. |
| 254 | Email from Weikers requesting Loggia's questions to review them.  No indication that Parker acting in role as reinsurance counsel as opposed to Vice President.

Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.


Work-product doctrine not asserted. |
| 255 | Email from Rubin forwarding Loggia's questions to Weikers.

Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.

Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |

| 256 | Email from Pascale to Rubin and Isely asking for availability for conference call regarding audit results.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br><br>Work-product doctrine not asserted. |
|---|---|
| 257 | <u>See</u> Document # 256. |
| 258 | Email from Isely finalizing conference call logistics.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br><br>Work-product doctrine not asserted. |
| 259 | <u>See</u> Document # 258. |
| 260 | <u>See</u> Document # 258. |
| 261 | <u>See</u> Document # 258. |
| 262 | <u>See</u> Document # 258. |
| 263 | Email from Weikers to Rubin, Parker, Isely, and Pascale concerning conversation with Mr. Reid.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br><br>Attorney-client privilege not asserted. |
| 264 | Email from Weikers to Westover inquiring about what commutation files Westover has shared with Butler Rubin already.  Communication is purely administrative.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br><br>Work-product doctrine not asserted. |

| 265 | Email from Pascale forwarding PDF copies of documents furnished during audit to Parker, Weikers, Rubin, and Isely.<br><br>Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
|------|---|
| 266 | Weikers telling Gilliard she might drop by office to get some commutation files.  Merely administrative communication.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 267 | Email from Gilliard responding to Document # 266 and requesting a list of books.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 268 | Email from Weikers responding to Gilliard merely thanking her.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 269 | Email from Isely responding to Weikers about the books.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |

| | |
|---|---|
| 270 | Handwritten notes of Pascale on a type-written endorsement changing terms of one of the Reinsurance Contracts.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 271 | Email from Westover responding to Document # 264 and answering Weiker's question.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 272 | <u>See</u> Document # 267. |
| 273 | <u>See</u> Document # 268. |
| 274 | Email from Renee Meier, a non-attorney employee of Riverstone, informing Staley that she put together a spreadsheet, which is not attached here, detailing risk history of various policies.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 275 | Staley forwarding Document # 274 to Pascale.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 276 | Typed notes of Staley concerning "loss/claim history" of Reinsurance Contracts.  No recipient of these notes.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |

| 277 | <u>See</u> Document # 275. |
|------|---------------------------|
| 278 | Draft settlement agreement with handwritten notes of Parker.  Handwriting is not of legal nature.<br><br>Communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 279 | Handwritten notes of Staley of various meetings during which AIU's claim for coverage was discussed.  Rubin and Isley attended all meetings except the one held on July 17, 2007.  Attorney-client privilege attaches to the extent that the notes reflect communication between Rubin and TIG employees concerning legal issues.  Accordingly, TIG is directed to produce this document with the exception of the page numbered 4505<br><br>Document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |

**SCHEDULE B**

| Beginning Bates # | Description and Rationale for Ruling |
|---|---|
| 12987 | Handwritten note of Pascale concerning investigation of AIU's claim in ordinary course of business.<br><br>Redacted communications on document not created "because of" anticipated or existing litigation. Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 13208 | Handwritten note of Pascale concerning investigation of AIU's claim in ordinary course of business.<br><br>Redacted communication not made to provide or request legal advice. Attorney-client privilege does not attach.<br><br>Redacted communications on document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 13277 | Handwritten note of Pascale concerning investigation of AIU's claim in ordinary course of business.<br><br>Redacted communication not made to provide or request legal advice. Attorney-client privilege does not attach.<br><br>Redacted communications on document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |
| 13514 | Handwritten notes of Pascale on legal memorandum drafted by AIG's coverage counsel concerning underlying Foster Wheeler claims.<br><br>Redacted communication not made to provide or request legal advice. Attorney-client privilege does not attach.<br><br>Redacted communications on document not created "because of" anticipated or existing litigation. Work-product protection does not attach. |

| | |
|---|---|
| 13585 | Handwritten note of Staley on letter from Kafaf.<br><br>Redacted communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Redacted communications document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 13589 | <u>See</u> Document # 13585. |
| 13993 | Progress note drafted by Staley providing update on investigation of AIU's claim and, in particular, the results of the audit.<br><br>Redacted communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Redacted communications on document not created "because of" anticipated or existing litigation.  Work-product protection does not attach. |
| 14002 | <u>See</u> Document # 13993. |
| 14011 | <u>See</u> Document # 13993. |
| 14020 | <u>See</u> Document # 13993. |
| 14032 | <u>See</u> Document # 13993. |
| 14110 | <u>See</u> Document # 13993. |
| 14112 | <u>See</u> Document # 13993. |
| 14113 | <u>See</u> Document # 13993. |
| 14114 | <u>See</u> Document # 13993. |
| 14115 | <u>See</u> Document # 13993. |
| 14116 | <u>See</u> Document # 13993. |
| 14117 | <u>See</u> Document # 13993. |
| 14118 | <u>See</u> Document # 13993. |
| 14127 | <u>See</u> Document # 13993. |
| 14136 | <u>See</u> Document # 13993. |
| 14147 | <u>See</u> Document # 13993. |

| | |
|---|---|
| 14284 | Email from Staley to Rubin forwarding email from Kafaf.<br><br>Redacted communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 14425 | Email from Staley to Kafaf redacting reference to Rubin in "blind carbon copy" line.<br><br>Redacted communication not made to provide or request legal advice.  Attorney-client privilege does not attach.<br><br>Work-product doctrine not asserted. |
| 14567 | Redacting email from Staley to Pascale and Parker forwarding email from Kafaf.  Kafaf email forwarding three proof of loss documents.<br><br>Redacted communications on document not created "because of" anticipated or existing litigation. Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
| 14586 | Redacted handwritten note of Weikers on letter received from AIG.  AIG's letter provided answers to questions posed by TIG after audit.<br><br>Redacted communications on document not created "because of" anticipated or existing litigation. Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |

| 15911 | Report created by Staley with redacted language concerning "late notice" issue.  Document generated during regular course of business.<br><br>Redacted communications on document not created "because of" anticipated or existing litigation.  Work-product protection does not attach.<br><br>Attorney-client privilege not asserted. |
|--------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 15914  | <u>See</u> Document # 15911. |