UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

AIU INSURANCE COMPANY,                   :

              Plaintiff,          :      07 Civ. 7052 (SHS)(HBP)

   -against-                           :      OPINION
                              AND ORDER

TIG INSURANCE COMPANY,                   :

              Defendant.          :

----------------------------------X

        PITMAN, United States Magistrate Judge:


I.  Introduction


        Defendant, TIG Insurance Company ("TIG"), moves to
compel plaintiff, AIU Insurance Company ("AIU"), to produce
documents responsive to twelve requests propounded in TIG's First
Set of Document Requests (Docket Item 25).  For the reasons set
forth below, defendant's motion is granted in part and denied in
part.


II. Facts


        This is an action seeking damages and declaratory
relief for breach of four reinsurance contracts[1]

---

     [1]"A certificate of reinsurance is a contract between two
insurance companies in which the reinsured company agrees to cede
part of its risk to the reinsurer in return for a percentage of
the premium."  Unigard Sec. Ins. Co. v. N. River Ins. Co., 79
N.Y.2d 576, 582, 594 N.E.2d 571, 574, 584 N.Y.S.2d 290, 293
                                        (continued...)

entered into between AIU and defendant's predecessor (Complaint, dated Aug. 7, 2007 ("Compl.") ¶¶ 26-33).  Under the reinsurance contracts, TIG is obligated to indemnify AIU for payments made pursuant to umbrella insurance policies[2] that AIU had issued to its insured, Foster Wheeler Corporation and its affiliates ("Foster Wheeler") (Compl. ¶¶ 1, 13).

Foster Wheeler is a manufacturer of boilers and other steam generating and heat exchange equipment and, since the late 1970s, it has been the subject of thousands of asbestos-related personal injury claims (Compl. ¶ 18).  Due to these asbestos-related claims, in February 2001, certain insurers commenced an action in New York State Supreme Court against Foster Wheeler, seeking declaratory relief regarding the parties' rights and obligations under Foster Wheeler's primary and excess insurance policies, including the umbrella insurance policies (the "2001 Foster Wheeler New York State Court Action")(Compl. ¶¶ 18-19).  In July 2001, Foster Wheeler filed a third party complaint against its insurers, including AIU, also seeking declaratory

---

[1](...continued)
(1992).  "[A] reinsurer's only obligation is to indemnify the primary insurer."  Unigard Sec. Ins. Co. v. N. River Ins. Co., supra, 79 N.Y.2d at 582, 594 N.E.2d at 574, 584 N.Y.S.2d at 293, citing Matter of Midland Ins. Co., 79 N.Y.2d 253, 258, 590 N.E.2d 1186, 1188, 582 N.Y.S.2d 58, 60 (1992).

[2]AIU alleges there are four umbrella insurance policies, bearing the policy numbers 75-100789, 75-101149, 75-102083, and 75-102083, which were effective from October 1, 1978 until October 1, 1982 (Compl. ¶ 11).

relief as to its excess insurance policies (Third Party Complaint, Index No. 600777/01, dated July 25, 2001, attached as Ex. 14 to the Declaration of Julie Rodriguez Aldort, Esq., dated April 16, 2008 ("Aldort Decl.")).

On June 30, 2006, Foster Wheeler and its excess insurers, including AIU, settled the 2001 Foster Wheeler New York State Court Action, and AIU began making payments to Foster Wheeler pursuant to the settlement agreement (Compl. ¶¶ 20, 24; Confidential Settlement Agreement and Mutual Release between Foster Wheeler, LLC and AIU Insurance Co., dated June 30, 2006, attached as Ex. 11 to the Aldort Decl.).  On January 25, 2007, AIU sought reimbursement of these settlement payments by submitting a reinsurance claim to TIG pursuant to the reinsurance contracts; AIU attached an August 16, 2006 document purportedly sent to AIU's other reinsurers describing the settlement (Compl. ¶ 24; Letter of Judy Mariotti, dated August 16, 2006, attached as Ex. 11 to the Aldort Decl.; Letter of Richard E. Kafaf, dated January 25, 2007, attached as Ex. 11 to the Aldort Decl.).

In February 2007, in response to AIU's claim, TIG began an investigation of its potential exposure under the reinsurance contracts and requested that AIU provide information concerning when AIU first received notice of Foster Wheeler's claim under the umbrella insurance policies (Letter of Michael Staley, dated Feb. 2, 2007, attached as Ex. 16 to the Aldort Decl.; Letter of

3

Michael Staley, dated April 3, 2007, attached as Ex. 17 to the
Aldort Decl.).  In response on April 26, 2007, AIU sent TIG an
August 15, 2005 coverage counsel opinion that AIU had received
from Cozen O'Connor (Memorandum of Cozen O'Connor, dated Aug. 15,
2005 ("Cozen Memorandum"), attached as Ex. 18 to the Aldort
Decl.).  The opinion bore the heading "ATTORNEY-CLIENT COMMUNI-
CATION/PRIVILEGED AND CONFIDENTIAL" and provided background on
the dispute between AIU and Foster Wheeler (Cozen Memorandum at
1, TIG 000044).  Specifically, this opinion letter noted that, in
March 1992, AIU received notice of AIU's potential exposure under
certain excess insurance policies (Cozen Memorandum at 14, TIG
000057).

In May 2007, TIG requested an audit of AIU's records
relating to AIU's claim under the reinsurance contracts.  In
anticipation of the audit, AIU and TIG executed a confidentiality
agreement on July 2, 2007 (Reinsurer Common Interest Confidenti-
ality Agreement, dated July 2, 2007 ("Confidentiality Agree-
ment"), attached as Ex. A to the Declaration of William R.
Pascale, dated April 14, 2008 ("Pascale Decl.")).  Under the
agreement, AIU granted TIG access to all records relating to
Foster Wheeler's claims for coverage under the reinsurance
contracts (Confidentiality Agreement at TIG 000005).  In return,
TIG agreed that any disclosure of documents drafted by AIU's

4

coverage counsel would not "constitute a waiver of any applicable privilege[.]" (Confidentiality Agreement at TIG 000005, ¶ 2).

From July 9 to July 11, 2007, William Pascale and Joseph Loggia conducted an audit of AIU's files relating to the Foster Wheeler account (Pascale Decl. at ¶ 9).  As part of the audit, AIU provided TIG with, among other things, (1) documents prepared by AIU's coverage counsel, (2) documents relating to a 1988 suit involving asbestos claims against Foster Wheeler's affiliate, Forty-Eight Insulations, and (3) a February 27, 1992 letter from Foster Wheeler to its claims broker that purportedly identified the potential for involvement of the umbrella insurance policies (Pascale Decl. at ¶ 12-14, Ex. B).  After the audit, TIG requested copies of these documents from AIU, but AIU refused (Pascale Decl. at ¶ 15).  In addition, TIG asked AIU whether AIU had provided TIG access to all documents produced or obtained by AIU from the time it issued the umbrella insurance policies to Foster Wheeler through the date of the audit (Reinsurance Inquiry Reply, dated August 2, 2007, ("TIG Reinsurance Reply") at TIG 002704, attached as Ex. 5 to the Aldort Decl.).  AIU responded, in substance, that it had not (TIG Reinsurance Reply at TIG 002704).

Thereafter, AIU commenced suit against TIG, alleging that TIG breached the reinsurance contracts by failing to indemnify AIU for its share of the settlement payments (Compl. ¶ 25).

In its Answer, TIG asserts a "prompt-notice" defense, claiming that it is not obligated to indemnify AIU because AIU breached the reinsurance contracts by failing to provide TIG with prompt notice of AIU's potential exposure for the Foster Wheeler asbestos claims (Am. Ans. at 14; Def. Mem. at 1).

    A.   The Document
           Requests at Issue

The present discovery dispute arises from TIG's attempt to obtain documents relevant to its prompt-notice defense. Specifically, TIG seeks documents reflecting AIU's knowledge of its potential exposure under the umbrella insurance policies it issued to Foster Wheeler. TIG argues that such knowledge would shed light on when AIU's contractual obligation to give TIG prompt notice of "any occurrence or accident which appears likely to involve this reinsurance [contract]" was triggered. (Reinsurer Agreements and Conditions, Ex. C attached hereto at ¶ B).

TIG is seeking production of documents responsive to document requests numbered 4, 6, 7, 8, 9, 13, 14, 15, 16, 17, 18, 19 (see TIG Insurance Company's First Set of Document Requests, dated October 25, 2007, attached as Ex. 21 to the Aldort Decl.), arguing that the withheld documents contain, or are likely to lead to the discovery of, admissible evidence relevant to TIG's prompt-notice defense (Def. Mem. at 1). TIG has organized these

requests into three groups according to the nature of the docu-
ments sought.

The first group (Nos. 6, 7, 8, 9, 17, 18, 19) seeks
documents reflecting historical information concerning AIU's
knowledge of its potential liability to Foster Wheeler under the
umbrella insurance policies (Def. Mem. at 7).  The second group
(Nos. 4, 14, 15, 16) seeks documents relating to AIU's notice to
its other reinsurers concerning AIU's settlement with Foster
Wheeler of the coverage claims (Def. Mem. at 8).  The third group
(No. 13) seeks documents relating to TIG's July 2007 audit of AIU
(Def. Mem. at 8).

B.   Objections
     to the Document Requests

AIU objected to document requests Nos. 7-10, 12-15, and
17 "to the extent that [these requests] seek documents that are
privileged under law, whether under the attorney-client privi-
lege, the work product doctrine, or any other privilege or
immunity" (AIU Insurance Company's Responses and Objections to
TIG Insurance Company's First Set of Document Requests, dated
December 12, 2007 ("AIU's Response") at 7-10, 12-15 and 17,
attached as Ex. 1 to the Aldort Decl.).  Subject to this objec-
tion, AIU agreed to produce those documents that did not include
work-product or implicate the attorney-client privilege.

AIU also limited its responses to all of the document requests by excluding documents related to what it termed "other claims" in two ways.  First, AIU asserted a general objection to all requests for coverage counsel documents to the extent the requests sought documents unrelated to the 2001 Foster Wheeler New York State Court Action.  Second, AIU qualified its response to document requests Nos. 4, 6-8, and 14-18 by stating that it would produce documents only "to the extent they relate to the subject matter of this lawsuit" or to the extent "they relate to the asbestos losses submitted to TIG and referred to in the Complaint" (AIU's Response at Nos. 4, 6-8, and 14-18).

TIG's motion to compel seeks the production of documents Nos. 7-10, 12-15, and 17 by arguing that any privilege attached to these documents has been waived either (1) implicitly because AIU put these documents "at issue" by bringing its breach of contract claim against TIG; or (2) expressly by AIU's act of sharing these documents with TIG during the July 2007 audit. With respect to AIU's general relevance objection and qualified response to document requests Nos. 4, 6-8, and 14-18 limiting its production to documents related to the subject matter of this lawsuit, TIG argues that discovery of other claims will likely shed light on AIU's past interpretation of its prompt-notice obligations under these reinsurance contracts.  Finally, TIG seeks to compel AIU to conduct a diligent electronic search of

its records with regard to the following individuals:  Polly
James, Peter Kuchar, Neil McHugh, Susan Wilson, David Anderson,
Patrick Smith and Meera Coilparampil.

III.  Analysis

    A.  "At-Issue" Waiver
       of Privileges

      TIG first argues that AIU has implicitly waived any
attorney-client privilege or work-product protection with respect
to the coverage counsel documents by asserting its breach of
contract claim against TIG (Def. Mem. at 11-15).  AIU replies
that it has not implicitly waived any privilege because the "at-
issue" doctrine results in a waiver only if a party places the
contents of a privileged communication in issue through the
assertion of a claim or defense (Plf. Mem. at 10).  AIU further
contends that the contents of the privileged communications are
not essential for AIU to prove its breach of contract claim and
therefore a requirement of the "at-issue" doctrine has not been
met (Plf. Mem. at 12-13).

      Although the parties disagree as to which state's law
governs the underlying breach-of-contract dispute (Plf. Mem. at
2, 9 n.8 (asserting New York law applies); Def. Mem. at 11 n.6
(claiming that Illinois law applies to the substantive issues in
the case)), they agree that New York law governs the attorney-

9

client privilege issues here (Plf. Mem. at 9 n.8; Def. Mem. at 11 n.6). Such consent eliminates any choice-of-law issue. Santalucia v. Sebright Transp., Inc., 232 F.3d 293, 296 (2d Cir. 2000). I, therefore, apply the law of New York concerning the privilege. See Note Funding Corp. v. Bobian Inv. Co., 93 Civ. 7427 (DAB)-(MHD), 1995 WL 662402 at *1 (S.D.N.Y. Nov. 9, 1995) (holding that New York law governed assertion of attorney-client privilege based on parties' consent); Rachman Bag Co. v. Liberty Mut. Ins. Co., 839 F. Supp. 998, 1000 n.1 (E.D.N.Y. 1993) ("While it is not clear that New York law is applicable here, both parties have relied upon New York law in their briefs and have declined to raise the choice of law issue. Under these circumstances, it is assumed that New York law governs."), rev'd on other grounds, 46 F.3d 230 (2d Cir. 1995).

Under New York law, an implied waiver of a privilege occurs, pursuant to the "at-issue" doctrine, where:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through the affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

Tribune Co. v. Purcigliotti, 93 Civ. 7222 (LAP)(THK), 1997 WL 10924 at *6 (S.D.N.Y. Jan. 10, 1997). The at-issue doctrine is construed narrowly. Century 21, Inc. v. Diamond State Ins. Co., 03 Civ. 5163 (GEL), 2006 WL 2355323 at *3 (S.D.N.Y. Aug. 10,

2006); Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co., 90
Civ. 7811 (AGS)(JCF), 1994 WL 510043 at *11 (S.D.N.Y. Sept. 16,
1994).  None of the elements necessary to apply the at-issue
doctrine are present here.

        First, AIU's act of seeking coverage is not a suffi-
cient "affirmative act" to place the privileged documents at
issue.  See N. River Ins. Co. v. Philadelphia Reinsurance Corp.,
797 F. Supp. 363, 370-71 (D.N.J. 1992) ("[Defendant's] argument
that [plaintiff's] merely placing the broad question of [reinsur-
ance] coverage in issue somehow makes it fair game for [defen-
dant] to discover confidential attorney-client communications is
a misconstruction of the 'in issue' doctrine."); Zenith Radio
Corp. v. United States, 764 F.2d 1577, 1580 (Fed. Cir. 1985) (a
party does not waive the attorney-client privilege merely by
bringing suit).  Nor does the fact that TIG has interposed an
affirmative defense based on the lack of prompt notice constitute
an affirmative act by AIU implying waiver of the attorney-client
privilege.  See Bank Brussels Lambert v. Credit Lyonnais, 93 Civ.
6876 (LMM), 94 Civ. 2713 (LMM), 2000 WL 1159273 at *1 (S.D.N.Y.
Aug. 15, 2000) (defendant's own initiative in its pleading "can-
not create a waiver" by plaintiff); Chase Manhattan Bank, N.A. v.
Drysdale Sec. Corp., 587 F. Supp. 57, 59 (S.D.N.Y. 1984) (It
cannot be possible for defendant to breach plaintiff's privilege
by pleading an affirmative defense because "[t]hat would give an

11

adversary who is a skillful pleader the ability to render the privilege a nullity.").

In addition, AIU has not placed the protected communications at issue because it does not intend to rely upon the contents of the privileged communications in order to prove its breach of contract claim (Plf. Mem. at 12). See Allen v. West Point-Pepperell Inc., 848 F. Supp. 423, 430 (S.D.N.Y. 1994) (In spite of defendant's contention that lack of delay subsequent to discovering fraud is a necessary element of plaintiffs' rescission claim, the court held that the contents of the attorney-client communications were not critical to a proper resolution of the unreasonable delay defense and therefore not "at issue" for purposes of waiver).

The contents of an attorney-client communication are most frequently found to be at issue when a party asserts an advice-of-counsel argument in support of a claim or defense. See e.g., United States v. Bilzerian, 926 F.2d 1285, 1292-94 (2d Cir. 1991) (defendant's invocation of good faith defense to securities fraud placed his knowledge of the law in issue, thereby waiving the attorney-client privilege); Ohio Cas. Group v. Am. Int'l Specialty Lines Ins. Co., 04 Civ. 10282 (LAP)(DF), 2006 WL 2109475 at *4 (S.D.N.Y. July 25, 2006)("An 'at issue' waiver will commonly occur when a defendant asserts an advice-of-counsel defense or good-faith defense which places in issue whether his

12

attorney made him aware that his acts were illegal or otherwise improper."), quoting Tribune Co. v. Purcigliotti, supra, 1997 WL 10924 at *5; Am. Steamship Owners Mut. Prot. & Indem. Assoc. v. Alcoa S.S. Co., 232 F.R.D. 191, 198-99 (S.D.N.Y. 2005) ("An 'at issue' waiver occurs, for example, when a defendant raises a defense of advice of counsel[.]").  Here, AIU does not intend to use the advice of its coverage counsel to prove its breach of contract claim (Plf. Mem. at 12).  Nor has AIU asserted a good faith or advice-of-counsel defense.  Therefore, while the advice of counsel may be relevant here, AIU has not placed it "at issue" such that waiver of the attorney-client privilege is necessary.

Second, TIG's assertion of privilege would not preclude TIG from discovering material vital to its prompt-notice defense. The determination of "[w]hen the duty to provide [prompt] notice commences requires an objective evaluation of the facts known to the insured."  Christiania Gen. Ins. Corp v. Great Am. Ins. Co., 979 F.2d 268, 275 (2d Cir. 1992).  Given this objective standard, TIG can presumably prove this defense through material other than the privileged communications between AIU and its coverage counsel.  On this point Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co., supra, 1994 WL 510043 is particularly instructive. In Arkwright, the Honorable James C. Francis, United States Magistrate Judge, observed:

> Even where a party's state of knowledge is particularly
> at issue, such as in a case involving claims of laches

13

> or justifiable reliance, waiver of the privilege should
> not be implied because the relevant question is not
> what legal advice was given or what information was
> conveyed to counsel, but what facts the party knew and
> when.  Invasion of the attorney-client privilege is not
> necessary; rather, the discovering party should simply
> inquire directly of the other party as to its knowledge
> of relevant facts, which must be disclosed.

Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co., supra, 1994 WL 510043 at *12.  Here, through use of depositions, TIG is free to ask AIU directly about when it first became aware of the possibility that the underlying Foster Wheeler litigation could implicate the umbrella insurance policies.  See Tribune Co. v. Purcigliotti, supra, 1997 WL 10924 at *8 (stating that while a client in a fraud case may be required "to disclose its thoughts and knowledge" in order to prove that it reasonably relied on the misrepresentations of defendants, it "can clearly do so without relying on privileged documents or communications with [its] attorneys."), citing Arkwright Mutual Ins. Co. v. Nat'l Union Fire Ins. Co., supra, 1994 WL 510043 at *12.  Thus, AIU has not waived its privilege with regard to the coverage counsel docu-ments because (1) AIU has not taken any affirmative act to place the privileged communications at issue and (2) TIG has not been precluded from discovering material vital to its prompt-notice defense.

The authorities TIG cites -- Century 21, Inc. v. Diamond State Ins. Co., supra, 2006 WL 2355323 and Royal Indem. Co. v. Salomon Smith Barney, Inc., No. 125889/99, 2004 WL 1563259

(N.Y. Sup. Ct. N.Y. Co. June 29, 2004) -- do not compel a different result. Both these decisions held that the plaintiffs had implicitly waived applicable privileges by suing on insurance contracts that contained prompt-notice clauses and, thus, directed that certain privileged documents be produced. To reach this conclusion, the courts expressly relied on New York's view that prompt notice is a condition precedent to coverage under an insurance contract, the satisfaction of which must be proven by the insured. See Unigard Sec. Ins. Co. v. N. River Ins. Co., supra, 79 N.Y.2d at 578, 594 N.E.2d at 572, 584 N.Y.S.2d at 291. In reliance on this rule, these courts held that the insureds had injected the issue of prompt notice into the cases by virtue of bringing suit on their insurance contracts because the insureds were required to plead and prove prompt notice in order to prevail on their claims.

By contrast, in a reinsurance contract, a contractual duty to give prompt notice is not a condition precedent to coverage absent clear language to the contrary. Unigard Sec. Ins. Co. v. N. River Ins. Co., supra, 79 N.Y.2d at 581-82, 594 N.E.2d at 573-74, 584 N.Y.S.2d at 292-93. In the reinsurance context, lack of prompt notice is ordinarily an affirmative defense that the insurer must plead and prove. This distinction is important for the issue of waiver; in the insurance context, prompt notice is "at issue" the moment the insured brings suit

whereas in the reinsurance context, prompt notice is not "at issue" unless the insurer raises it.  See Discover Fin. Serv. Inc., v. VISA U.S.A., Inc., 04 Civ. 7844 (BSJ)(DFE), 2006 WL 2807187 at *3-*6 (S.D.N.Y. Sept 27, 2006) (reviewing the case law and concluding that the majority of cases in which courts find an "at-issue" forfeiture of the attorney-client privilege involve a party making an assertion "concerning an element as to which the asserter has the burden of proof").  Indeed, the cases cited by the defendant, Century 21, Inc. v. Diamond State Ins. Co., supra, 2006 WL 2355323 and Royal Indem. Co. v. Salomon Smith Barney, Inc., supra, 2004 WL 1563259, clearly relied upon the allocation of the burden of proof in reaching the conclusion that timely notice had been placed "at issue" by plaintiff's affirmative act of bringing suit.  See e.g. Century 21, Inc. v. Diamond State Ins. Co., supra, 2006 WL 2355323 at *3 ("As [defendant] notes, under New York law, untimely notice is not an affirmative defense that it [the insurer] must raise; rather, timely notice is a condition precedent that the insured must plead and prove in order to demonstrate coverage.").

In this case, the prompt-notice clause in the reinsurance contracts is not a condition precedent because there is no express language in the contract indicating the parties' intent that this clause operate as such.  In fact, the text of the prompt-notice clause here is substantially similar to a clause

16

that the New York Court of Appeals held not to be a condition precedent.  Compare Reinsuring Agreements and Conditions, TIG 001163 at ¶ B with Unigard Sec. Ins. Co. v. N. River Ins. Co., supra, 79 N.Y.2d at 579-80, 594 N.E.2d at 572, 584 N.Y.S.2d at 291.  Thus, under New York law, AIU need not plead and prove prompt notice and, therefore, AIU has not placed prompt notice at issue by merely suing on the reinsurance contracts.

Lastly, TIG argues that AIU has placed the coverage counsel documents at issue because AIU bears the burden of proving that the settled Foster Wheeler claim falls within the terms of the Reinsurance Contract (Def. Reply at 4-5).  Therefore, TIG believes that it is entitled to discovery of the documents in order to challenge the reasonableness of the settlement.  The court in OneBeacon Ins. Co. v. Forman Int'l, Ltd., 04 Civ. 2271(RWS), 2006 WL 3771010 at *10 (S.D.N.Y. Dec. 15, 2006) squarely rejected a similar argument, holding that "[t]he reasonableness of a settlement generally rests on the size of the possible recovery and the degree of probability of the claimant's success.  The content of any legal advice would therefore not necessarily be at issue in determining the reasonableness of any settlement." (citations omitted).

B.  Express Waiver
    of Privileges

TIG next argues that AIU knowingly waived the attorney-client and work product privileges by providing TIG with certain documents drafted by AIU's coverage counsel (Def. Mem. at 15-16). Specifically, TIG contends that the privilege has been waived with regard to (1) the Cozen Memorandum which was sent to TIG on April 26, 2006 and (2) the documents provided to TIG during the July 9-11 audit (Cozen Memorandum attached as Ex. 18 to the Aldort Decl.; Pascale Decl. at ¶¶ 12, 16; Notes of William R. Pascale from the July 9-11, 2007 audit at TIG 15925-26 attached as Ex. B to the Pascale Decl.).

AIU argues that the privilege has not been waived with respect to the Cozen Memorandum because this document is covered by the Confidentiality Agreement.  The agreement, however, cannot fairly be read to apply to the production of a privileged document in April 2007, three months before the agreement was executed on July 2, 2007 (Confidentiality Agreement at TIG 000006). AIU also argues that it is entitled to assert a privilege with respect to this document because AIU and TIG's interests were aligned when AIU provided TIG with this document whereas now they are adverse parties (Plf. Mem. at 17-18).  The case on which AIU relies in support of this argument -- Gulf Ins. Co. v. Transatlantic Reinsurance Co., 13 A.D.3d 278, 788 N.Y.S.2d 44 (1st Dep't

2004) -- is distinguishable.  In <u>Gulf Ins.</u>, the court noted that the disclosure of documents by a reinsured to its reinsurer when they have a common interest in the outcome of the underlying litigation does not preclude the assertion of privilege by the reinsured as to "similar documents" when it is later in an adversarial relationship with the reinsurer.  Here, AIU provided TIG with the Cozen Memorandum in April 2007, well after AIU and TIG's interests had ceased to be aligned; the underlying Foster Wheeler litigation settled on June 30, 2006.  Indeed, AIU disclosed the document to TIG in response to TIG's concerns involving prompt notice and, at that point, litigation between the parties was clearly a possibility.  Thus, AIU waived any privilege applicable to the Cozen Memorandum when AIU disclosed it to TIG on April 26, 2007.

With regard to documents provided to TIG during the July 2007 audit, AIU contends that it did not waive any privilege applicable to these documents because TIG signed the Confidentiality Agreement, which provided that the disclosure of any document to TIG during the audit would not constitute a waiver of any applicable privilege (Plf. Mem. at 15-17).  TIG argues the agreement was intended to ensure that disclosure of documents to TIG would not constitute a waiver as to third parties only (Def. Reply at 5-6).  The text of the agreement belies TIG's argument:  "Reinsurer agrees that any disclosure of

such information to Reinsurer [during the audit] . . . is not
intended to . . . constitute a waiver of any applicable privi-
lege, including attorney-client privilege [and] work-product
privilege[.]" (Confidentiality Agreement at ¶ 2).  Thus, AIU did
not expressly waive any privilege applicable to coverage counsel
documents presented to TIG during the July 2007 audit.

        C.  Documents Relating to
            Other Litigation

        TIG also seeks the production of documents related to
actions other than the 2001 Foster Wheeler New York State Court
Action.  Specifically, TIG is seeking documents relating to (1)
asbestos claims asserted in 1988 against Forty-Eight Insulations,
a company acquired by Foster Wheeler in 1972 ("The Forty-Eight
Insulations Litigation") and (2) claims against Foster Wheeler
relating to the explosion of boilers aboard Navy vessels in 1981,
which resulted in AIU making payments to claimants in 1992 (Plf.
Mem. at 8-9).  As a result of these claims, Foster Wheeler sought
coverage under AIU's umbrella insurance policies, which, accord-
ing to TIG, necessarily implicated the reinsurance contracts
(Def. Mem. at 21).  TIG argues that these documents are, there-
fore, discoverable because they will likely shed light on AIU's
past interpretation of its prompt-notice obligations under the
reinsurance contracts (Def. Mem. at 21-22; Def. Reply at 7-8).

With regard to the Forty-Eight Insulations Litigation, TIG specifically seeks (1) a February 27, 1992 notice from Foster Wheeler forwarded to AIU, in which Foster Wheeler identified the potential involvement of the umbrella insurance policies, (2) notices from AIU to its reinsurers other than TIG relating to the Forty-Eight Insulations claims, and (3) any withheld documents pre-dating the 2001 Foster Wheeler New York State Court Action that relate to the Forty-Eight Insulations Litigation (Def. Mem. at 18-19). With respect to the claims arising out of the boiler explosions, TIG specifically seeks (1) AIU's claims files and (2) AIU's notices to its other reinsurers (Def. Mem. at 22).

Under Federal Rule of Civil Procedure 26(b)(1), documents are discoverable if they are "relevant" to a party's claim or defense. Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); see also Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)("Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept.").

Extrinsic evidence may be considered in construing an ambiguous prompt-notice provision in a reinsurance contract. Christiania Gen. Ins. Corp. v. Great Am. Ins. Co., supra, 979 F.2d at 274. Thus, it appears the documents TIG is seeking are relevant to the extent they disclose the circumstances under

21

which AIU determined it was appropriate to give notice under the
reinsurance contracts at issue.  However, to the extent TIG is
seeking discovery of documents that relate to AIU giving notice
to reinsurers under other reinsurance contracts, this discovery
is irrelevant because AIU has sued only on its reinsurance
contracts with TIG.[3]

        Because TIG has satisfied its initial burden of showing
the relevance of AIU's conduct with respect to the reinsurance
contracts, the burden shifts to AIU to show that discovery is
improper.  Condit v. Dunne, supra, 225 F.R.D. at 106 ("Once any
possibility of relevance sufficient to warrant discovery is
shown, the burden shifts to the party opposing discovery to show
the discovery is improper.")(internal quotation marks omitted).
AIU objects to this discovery on the grounds that it is irrele-
vant, overbroad, and unduly burdensome (Plf. Mem. at 18, 20).
AIU's burden in opposing this discovery "requires an evidentiary
showing by competent evidence and cannot be discharged by mere
conclusory or ipse dixit assertions."  Abu-Nassar v. Elders
Futures Inc., 88 Civ. 7906 (PKL)(MHD), 1991 WL 45062 at *15
(S.D.N.Y. Mar. 28, 1991) (citations and internal quotation marks
omitted).  AIU has not met this burden.

---

        [3]Indeed, TIG does not make any argument regarding the
relevance of documents pertaining to other reinsurance contracts
(Def. Mem. at 17-19).

As to its relevance objection, AIU essentially argues that these documents do not "relate to the particular reinsurance claim or defense in this litigation" (Plf. Mem. at 18).  This argument is unpersuasive, however, because the documents sought relate to performance on other occasions under the reinsurance contracts at issue here.  In addition, AIU apparently provided documents relating to the other asbestos claims during the July 2007 audit "to assist TIG in understanding [Foster Wheeler's] claims asserted against AIG and their resolution" (Aldort Decl., Ex. 5 at TIG 2704).

As to its overbreadth and burdensomeness objections, AIU claims that the requested documents would be difficult to obtain because the law firm that represented AIU in connection with the Forty-Eight Insulations litigation apparently no longer exists (Plf. Mem. at 20; Declaration of Marc L. Abrams, Esq., dated April 30, 2008 ("Abrams Decl.") at ¶ 6; see also Chicago Daily Law Bulletin, dated Sept. 22, 1997, attached as Ex. I to the Abrams Decl.).  Despite this, AIU proffers that it possesses "one box" of documents relating to this litigation (Plf. Mem. at 20).  As to the boiler claims, AIU asserts that it does not know what firm, if any, represented it in this litigation (Plf. Mem. at 20; Abrams Decl. ¶ 7).  These arguments are undermined, however, by the fact that AIU provided documents related to the other asbestos claims during the July 2007 audit (Def. Mem. at 5-

6, 20; Pascale Decl., Ex. B at TIG 15918).  Moreover, AIU's
arguments relate only to documents possessed by AIU's former
coverage counsel on these matters; AIU does not explain why
providing its own files for these other actions would be burden-
some.

Accordingly, this Court directs AIU to produce the
requested discovery relating to the Forty-Eight Insulations and
boiler actions to the extent such discovery is not privileged and
implicates the reinsurance contracts at issue.

> D.  Documents Produced by AIU
>     in the New York State Court Action

TIG next asserts that AIU has not produced documents
that it previously produced to Foster Wheeler during the New York
state action.  TIG contends that these documents are responsive
to document request Nos. 7, 8, and 9 (Def. Mem. at 23).

AIU argues that it has already produced these documents
except to the extent they relate to (1) the Forty-Eight Insula-
tions litigation and (2) AIU's notice to other reinsurers (Plf.
Mem. at 21).  With regard to the first exception, AIU reasserts
the relevance and burdensomeness arguments set forth above.  With
regard to the second exception, AIU argues that these documents
are not relevant and that TIG itself has redacted documents
produced to AIU that relate to TIG's reinsurers (Plf. Mem. at
21).

The documents TIG seeks here are relevant and AIU's objections fail for the same reasons given in the preceding section.  To the extent AIU is concerned about disclosing the name of its other reinsurers, this concern can be eliminated by redacting those names.

E.   Electronic Search
     for Documents

Lastly, TIG argues that AIU has not conducted a diligent search of the electronic files (including email) of David Anderson, Meera Coilparampil, Polly James, Peter Kuchar, Neil McHugh, Patrick Smith, and Susan Wilson (Def. Mem. at 23-24).

AIU contends that it satisfied its search obligations by searching the files of the individuals designated in its interrogatory responses only, i.e., Steve Parness, Paul Colon, Richard Kafaf, William Mezick, Judy Marotti, Werner Ahrenstedt, Jeffrey Millstone, and Diane Proimos (Abrams Decl., Ex. C at 5-6).  AIU argues that it is not obligated to conduct searches for the seven additional people listed above because (1) it would constitute an undue burden, (2) TIG fails to point to the documents that identify these individuals, and (3) many of these individuals are named in documents that were drafted before the popularization of email (Plf. Mem. at 23).

Under Federal Rule of Civil Procedure 26, a party must "conduct a diligent search" for requested electronic documents.

<u>Treppel v. Biovail Corp.</u>, 233 F.R.D. 363, 374 (S.D.N.Y. 2006).
This means that AIU must search the files of all individuals who
could reasonably be expected to possess responsive documents.  If
AIU represents that Anderson and Patrick had no involvement in
the events that give rise to this action and that there is no
reason to believe that either would have responsive documents, it
need not conduct any further search with respect to these two
individuals.

        With respect to the remaining individuals, TIG has come
forward with sufficient reasons for why electronic discovery
relating to Polly James, Peter Kuchar, Neil McHugh, and Susan
Wilson is relevant.  TIG has identified specific Foster Wheeler-
related documents that these individuals authored or received
(Pascale Decl., Ex. B at TIG 15920 (Kucher), 15921 (McHugh),
15927 (James); Aldort Supp. Decl., Ex. B at PL 59413 (Wilson)).
These documents were furnished to TIG during the July 2007 audit
to provide TIG with an understanding of the Foster Wheeler claim
underlying the New York state declaratory judgment action.  TIG
also makes a sufficient showing as to Coilparampil.  TIG repre-
sents that Coilparampil's files are the source for many of the
allegations in AIU's complaint (Def. Reply at 10) and that AIU
has essentially conceded Coilparampil's relevance to the claims
and defense in this action (<u>see</u> Letter of Marc L. Abrams at 2,
dated April 11, 2008, attached as Ex. 9 to the Aldort Decl. ("In

an effort to compromise with TIG, AIU is willing to also consider undertaking an electronic search with respect to Meera Coilparam-pil . . . .")).

AIU has not made the required showing that a search for these individuals will be unduly burdensome.  AIU does not explain its reasons for conducting electronic searches only with respect to the individuals it named in its interrogatory re-sponses.  In addition, AIU's concern that many of the documents referencing these individuals were drafted before the populariza-tion of email misses the point.  If these individuals did not use email, the search may be fruitless but this does not excuse AIU from its obligation to conduct such a search.  If these individu-als did use email, the fact that TIG identified them in documents authored before email became ubiquitous does not excuse AIU from conducting a diligent search.

Accordingly, I direct that AIU conduct a diligent search of the electronic files of Polly James, Peter Kuchar, Neil McHugh, Susan Wilson, and Coilparampil for responsive documents.

IV.  Conclusion

TIG's motion to compel is granted to the extent that it seeks an Order directing AIU to produce (1) the Cozen Memorandum and (2) the documents related to the 2001 Foster Wheeler New York State Court Action, the Forty-Eight Insulations Action and the

boiler actions to the extent they bear on the prompt-notice provision in the reinsurance contracts.  AIU is also ordered to conduct a diligent electronic search for responsive documents with regard to the electronic files of Polly James, Peter Kuchar, Neil McHugh, Susan Wilson, and Coilparampil.  In all other respects, TIG's motion to compel is denied.

Dated:   New York, New York
         November 25, 2008

                              SO ORDERED


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

Marc L. Abrams, Esq.
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue, Suite 1200
New York, New York, 10110

William A. Maher, Esq.
Wollmuth, Maher & Deutsch, LLP
500 Fifth Avenue
New York, New York, 10110

Joelle K. Blomquist, Esq.
Butler, Rubin, Saltarelli & Boyd, L.L.P.
70 West Madison Street
Suite 1800
Chicago, Illinois, 60602

Sean T. Keely, Esq.
Lovells, LLP
590 Madison Avenue
New York, New York, 10022

                              28