```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
AIU INSURANCE COMPANY,              :
            Plaintiff,              :    07 Civ. 7052 (SHS)(HBP)
     -against-                      :    OPINION
                                         AND ORDER
TIG INSURANCE COMPANY,              :
            Defendant.              :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

By notice of motion dated September 15, 2008, TIG Insurance Company ("TIG") moves for partial reconsideration of my Opinion and Order dated August 28, 2008 ("August 28 Order") (Docket Item 233). The August 28 Order granted in part and denied in part AIU Insurance Company's ("AIU") motion to compel the production of documents listed on TIG's privilege log as withheld on the basis of the attorney-client privilege and the work-product doctrine (Docket Item 40). TIG now moves for partial reconsideration with regard to twenty-five of the documents which I ordered produced.

II.  Facts

    A.  Basis of
        <u>Underlying Claims</u>

       Familiarity with the facts contained in my August 28 Order is assumed.  I restate them here only to the extent necessary for an understanding of the issues raised by the present motion.

       AIU brings this action alleging breach of contract and seeking declaratory relief for TIG's failure to pay amounts due under four reinsurance contracts[1] (the "Reinsurance Contracts") (Complaint, dated Aug. 7, 2007 ("Compl.") ¶¶ 26-33).

       AIU issued four umbrella insurance policies to the Foster Wheeler Corporation and its affiliates ("Foster Wheeler") covering the period from October 1, 1978 to October 1, 1982 (Compl. ¶ 11).  AIU subsequently reinsured its exposure under the umbrella insurance policies with International Insurance Company, TIG's predecessor company, pursuant to the Reinsurance Contracts (Compl. ¶ 12).  Under the Reinsurance Contracts, AIU is obligated

---

[1] "A certificate of reinsurance is a contract between two insurance companies in which the reinsured company agrees to cede part of its risk to the reinsurer in return for a percentage of the premium."  <u>Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.</u>, 79 N.Y.2d 576, 582, 594 N.E.2d 571, 574, 584 N.Y.S.2d 290, 293 (1992).  "[A] reinsurer's only obligation is to indemnify the primary insurer[.]"  <u>Unigard Sec. Ins. Co., Inc. v. N. River Ins. Co.</u>, <u>supra</u>, 79 N.Y.2d at 582, 594 N.E.2d at 574, 584 N.Y.S.2d at 293.

to provide "[p]rompt notice . . . to [TIG] of any occurrence or accident which appears likely to involve" the Reinsurance Contract, and TIG is obligated to indemnify AIU for payments it makes to Foster Wheeler pursuant to the umbrella insurance policies (Certificate of Facultative Reinsurance Number CFR 0062, dated Apr. 19, 1979 ("CFR 0062") at TIG 1163, ¶¶ B, C, annexed as Exhibit 2 to Declaration of Julie Aldort, Esq., dated May 19, 2008 ("Aldort Decl.")).

Foster Wheeler is a manufacturer of boilers and other steam-generating and heat-exchange equipment and, since the late 1970s, it has been the subject of thousands of asbestos-related personal injury claims (Compl. ¶ 18). Because of these asbestos claims, in February 2001, Foster Wheeler became engaged in coverage litigation with its primary and umbrella insurers (Compl. ¶¶ 18-19). On June 30, 2006, Foster Wheeler and AIU settled their claims and AIU began making payments to Foster Wheeler pursuant to the settlement agreement (Compl. ¶¶ 20, 24). On January 25, 2007, AIU sought reimbursement of these settlement payments pursuant to the Reinsurance Contracts by submitting a reinsurance claim to TIG and attaching the settlement agreement between Foster Wheeler and AIU (Letter to Michael Staley of TIG, dated Jan. 25, 2007, annexed as Exhibit 1 to Aldort Decl.). This letter was AIU's first notice to TIG that TIG faced potential exposure under the Reinsurance Contracts for the Foster Wheeler

asbestos claims (Amended Answer, dated Apr. 22, 2008 ("Am. Ans.") ¶ 18).

TIG responded to AIU's January 25 letter by noting that AIU has a duty to provide TIG with prompt notice of "any occurrence or accident which appears likely to involve" the Reinsurance Contracts and requesting documentation regarding AIU's first notice of Foster Wheeler's claims (TIG Letter, dated Feb. 2, 2007, annexed as Exhibit D the Declaration of Marc L. Abrams, Esq., dated May 6, 2008 ("Abrams Decl."), quoting CFR 0062 at TIG 1163, ¶¶ B, C). On February 12, 2007, TIG retained the law firm of Butler Rubin Saltarelli & Boyd LLP ("Butler Rubin") to obtain legal advice regarding TIG's rights and obligations under the Reinsurance Contracts, to consider possible legal action against AIU, and to prepare possible defenses to potential litigation (Declaration of John Parker, Esq., dated May 19, 2008 ("Parker Decl.") ¶ 13; Aldort Decl. ¶ 3). Between February and May of 2007, Michael Staley, an Assumed Reinsurance Senior Claims Specialist, and his manager, William Pascale, an Assumed Reinsurance Senior Claims Manager (Parker Decl. ¶¶ 7-8) continued to investigate AIU's claim for payment under the Reinsurance Contracts by requesting documents from AIU. In its correspondence throughout this period, TIG continued to expressly reserve all rights under the Reinsurance Contracts.

4

Apparently dissatisfied with the documents AIU provided, in May 2007, TIG requested an on-site audit of AIU's files pursuant to the access-to-records clause in the Reinsurance Contracts (Parker Decl. ¶ 20; TIG Letter, dated May 15, 2007, annexed as Exhibit 6 to Aldort Decl.). The purpose of the audit was to identify information bearing on the timing of AIU's knowledge of potential claims under the umbrella insurance policies (Parker Decl. ¶ 20). In July, 2007, Pascale and Joseph Loggia, an outside consultant retained by TIG, reviewed AIU's files (Parker Decl. ¶ 22).

Thereafter, on August 7, 2007, AIU commenced this suit against TIG, alleging that TIG had breached the Reinsurance Contracts by failing to indemnify AIU for its share of the settlement payments (Compl. ¶ 25). In its Amended Answer, TIG asserts a lack-of-prompt-notice defense, claiming that it is not obligated to indemnify AIU because AIU breached the Reinsurance Contracts by failing to provide TIG with prompt notice of AIU's potential exposure for the Foster Wheeler asbestos claims (Am. Ans. at 14).

   B.  The Present
       <u>Discovery Dispute</u>

On November 12, 2007, AIU served its First Request for Production of Documents on TIG (Aldort Decl. ¶ 8). After an initial production of documents, TIG withheld and redacted

documents on the basis of attorney-client privilege and the work-product doctrine, listing the documents in privilege and redaction logs (TIG's Privilege Log, dated Mar. 25, 2008 ("Priv. Log"), annexed as Exhibit M to Abrams Decl.; TIG's Redaction Log, dated Mar. 25, 2008, annexed as Exhibit N to Abrams Decl.). After a series of meet-and-confer sessions between counsel, AIU filed the instant motion to compel.  On or about June 24, 2007, I directed that the documents in issue be submitted to my chambers for in camera review.

After reviewing the documents in camera, I found that many[2] of the documents were not privileged attorney-client communications or attorney work-product and on August 28 I issued an Order which directed the production of these documents.  TIG now moves for partial reconsideration with respect to approximately twenty five (25) of the documents that I ordered produced.

III.  Analysis

The legal principles governing the attorney-client privilege and the work-product doctrine are set forth in my August 28 Order, familiarity with which is assumed.

Motions for reconsideration are appropriate only in limited circumstances.

---

[2] I ordered the production of approximately 266 documents from TIG's privilege and redaction logs.

6

> Motions for reargument "are granted when new facts come to light or when it appears that controlling precedents were overlooked." Weissman v. Fruchtman, 658 F. Supp. 547 (S.D.N.Y. 1987). The proponent of such a motion is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use [Local Civil Rule 6.3] to advance new facts and theories in response to the court's rulings. The purpose of the rule is "to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Lewis v. New York Telephone, No. 83 Civ. 7129, slip op. at 2, 1986 WL 1441 (S.D.N.Y. 1986) cited in Carolco Pictures Inc. v. Sirota, 700 F. Supp. 169 (S.D.N.Y. 1988).

McMahan & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp., 727 F. Supp. 833, 833 (S.D.N.Y. 1989); see also Mahmud v. Kaufmann, 496 F. Supp.2d 266, 269-70 (S.D.N.Y. 2007). "A movant for reconsideration bears the heavy burden of demonstrating that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." Quinn v. Altria Group, Inc., 07 Civ. 8783 (LTS)(RLE), 2008 WL 3518462 at *1 (S.D.N.Y. Aug. 1, 2008), citing Virgin Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

"[T]o be entitled to reargument under Local [Civil Rule 6.3, a party] must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." Am. Alliance Ins. Co. v. Eagle Ins. Co., 163 F.R.D. 211, 213 (S.D.N.Y. 1995), rev'd on other grounds, 92 F.3d 57 (2d Cir. 1996), citing Ameritrust Co. Nat'l Ass'n v.

7

Dew, 151 F.R.D. 237, 238 (S.D.N.Y. 1993); Fulani v. Brady, 149 F.R.D. 501, 503 (S.D.N.Y. 1993), aff'd sub nom., Fulani v. Bentsen, 35 F.3d 49 (2d Cir. 1994); East Coast Novelty Co. v. City of New York, 141 F.R.D. 245, 245 (S.D.N.Y. 1992); B.N.E. Swedbank, S.A. v. Banker, 791 F. Supp. 1002, 1008 (S.D.N.Y. 1992); Novak v. Nat'l Broad. Co., 760 F. Supp. 47, 48 (S.D.N.Y. 1991); Ashley Meadows Farm, Inc. v. Am. Horse Shows Ass'n, 624 F. Supp. 856, 857 (S.D.N.Y. 1985).  Thus, "a party in its motion for reargument 'may not advance new facts, issues or arguments not previously presented to the court.'"  In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig., 850 F. Supp. 1105, 1151 (S.D.N.Y. 1994), quoting Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc., 86 Civ. 6447 (JMC), 1989 WL 162315 at *4 (S.D.N.Y. Aug. 4, 1989), rev'd on other grounds, 967 F.2d 742 (2d Cir. 1992); accord Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp., 948 F.2d 111, 115 (2d Cir. 1991); see also Woodard v. Hardenfelder, 845 F. Supp. 960, 966 (E.D.N.Y. 1994). A party should not use a motion for reconsideration "to reargue those issues already considered when a party does not like the way the original motion was resolved."  In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996).

TIG argues that reconsideration is appropriate because the Court overlooked certain factual matters contained within the twenty five disputed documents (TIG Insurance Company's Reply in

8

Support of its Motion for Partial Reconsideration of my Opinion and Order, dated Sept. 22, 2008, ("Def. Reply. Mem.") at 2, 4). AIU opposes reconsideration because (1) "TIG's motion relies on new, unsworn factual allegation that were never presented to the Court"; (2) "the motion represents an attempt by TIG to rehabilitate an argument that the Court has already rejected"; (3) "the Motion misreads the Order in a number of critical respects"[3] (AIU Insurance Company's Memorandum of Law in Opposition to TIG Insurance Company's Motion for Partial Reconsideration ("Plf. Mem.") at 1-2).

I have considered the parties' submissions and re-examined each of the twenty five disputed documents.  For purposes of clarity, I address similar documents together.

A.   Documents 97 and 158

In my August 28 Order, I concluded that neither Document 97 nor Document 158 were protected by the attorney work-

---

[3] AIU is correct that TIG's Motion appears to misread the August 28 Order in one critical respect.  At several points in its Memorandum, TIG argues that "having recognized that TIG anticipated litigation by May 15, 2007" any document created after this date should be considered protected work-product (Def. Mem. at 9, 10, 12, 13).  This is a fundamental misreading of my August 28 Order in which I stated that I was not resolving any work-product claims on the basis of a bright-line test but was instead engaging "in a fact-specific inquiry to determine whether each document was created in anticipation of litigation." (August 28 Order at 34).

9

product doctrine.[4]  Document 97 consists of "[h]andwritten notes by Pascale reflecting discussion [of a conference call with Butler Rubin, TIG's counsel] about 'late notice' issue(s) and possible prejudice to TIG." (Schedule A annexed to the August 28 Order ("Schedule A"))  I found that there was "[n]o indication [that the] document [was] created to assist Parker or Butler Rubin [and that the d]ocument merely reflects notes from a meeting" (Schedule A).  Similarly, Document 158 consists of "[h]andwritten notes created by Pascale reflecting discussion at conference call [with John Parker and Michael Staley of TIG and Jim Rubin and Catherine Isely of Butler Rubin] and discussing audit of AIU's records" (Schedule A).

      Upon re-examination, I have determined that lines 2-7 of Document 97 at Bates number PRIV 4643 and lines 1-6 of Document 158 at Bates number PRIV 4641 memorialize Butler Rubin's analysis regarding choice-of-law issues and counsel's assessment of the potential damages recoverable in the case.  These lines contain counsel's mental impressions and opinions regarding two material legal issues in the case and are, therefore, protected by the attorney work-product doctrine.  See generally, United States v. Adlman, 134 F.3d 1194, 1197 (2d Cir. 1998) (Opinion work-product which reveals the "mental impressions, conclusions,

---

[4]TIG did not assert the attorney-client privilege with regard to either of these documents (Priv. Log at 4, 6).

opinions, or legal theories of an attorney" receives "special protection"); In re John Doe Corp., 675 F.2d 482, 492-93 (2d Cir. 1982) (indicating that mental processes and legal theories are "entitled to the greatest protection available under the work-product immunity"); Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985) (opinion work-product "is accorded an almost absolute protection from discovery").

Accordingly, reconsideration is granted, and upon reconsideration, I find that lines 2-7 of Document 97 at PRIV 4643 and lines 1-6 of Document 158 at PRIV 4641 may be redacted prior to production.

B. Document 188

Document 188 is a email from Catherine Isely, a Butler Rubin partner, to various TIG employees including John Parker, Bill Pascale, Michael Staely, and Ann Weikers (Priv. Log at 12). The email contains no text but does contain icons representing an attached chart and memorandum which together constitute Document 189. In my August 28 Order, I concluded that Document 188 was not protected by the work-product doctrine or the attorney-client privilege but that Document 189 was protected under both doctrines (Schedule A; August 28 Order at 27, 35).

The two icons in Document 188 display the titles of the attachments which make up Document 189. The titles of these two

11

documents reveal the focus of the legal work performed by Butler Rubin in order to provide legal advice to TIG and, therefore, disclose attorney work-product.  See <u>United States v. Philip Morris USA, Inc.</u>, CIV. A. 99-2496 (GK), 449 F. Supp.2d 1, 943, 2006 WL 2380681 at *6 (D.D.C. Aug. 17, 2006) ("Defendants may withhold the title of documents withheld on grounds of privilege if the document title, without reference to the document's contents, reveals privileged information").

Accordingly, I find that the titles of the two attachments to Document 188 may be redacted prior to production.

C.  <u>Documents 198, 199, and 200</u>

Documents 198, 199, and 200 contain a series of emails regarding the scheduling of a conference between Catherine Isely, James Rubin, and Bob Hermes from Butler Rubin and Ann Weikers, and John Parker from TIG (Priv. Log at 8).  In my August 28 Order I found that these documents were not protected by the attorney-client privilege because they were not primarily of a legal nature.[5]

Upon re-examination, I find that these document contain confidential communications between Butler Rubin attorneys and their client for the purpose of rendering legal services.

---

[5]The work-product doctrine was not asserted with respect to these documents (Priv. Log at 8).

Although the focus of the email chain is on scheduling issues, at one point the parties discuss the documents that they will need to review in preparation for a meeting with a witness in this case (see Document 198, Bates number PRIV 6026). Therefore these documents were properly withheld on the basis of the attorney client privilege.

    D.   Document 204

Document 204 is William Pascale's handwritten notes of a conference held on June 18, 2007 (Priv. Log at 8). In my August 28 Order, I found that this document was not generated to provide legal advice and was "not created 'because of' anticipated or existing litigation" and as a result ordered it produced (Schedule A).

A re-examination of these handwritten notes, reveals what appears to be a brief reference in the notes to Butler Rubin's legal advice regarding the choice-of-law issue. Accordingly, upon reconsideration, I find that the three lines of Document 204 at Bates number PRIV 4603 that begin "BR [Butler Rubin] talked . . ." disclose counsel's analysis and opinion regarding the choice-of-law issue and, accordingly, constitute attorney work-product. Therefore, the three lines described above may be redacted from Document 204.

E. Documents 224, 230, 231, 258, 259, 260, and 262

Documents 224, 230, 231, 258, 259, 260, and 262 are a series of emails between Ann Weikers, William Pascale and John Parker of TIG and Catherine Isely and Jim Rubin of Butler Rubin.[6] In my August 28 Order, I found that these emails were made in preparation for the July audit of AIU and because the audit was primarily a claims function, I held that these emails were not prepared in anticipation of litigation (Schedule A). I also found that these emails were not between an attorney and client "to provide or request legal advice" and consequently were not protected by the attorney-client privilege (Schedule A). TIG contends that although these emails primarily relate to scheduling a conference call, the emails also include a proposed agenda[7] for the call with TIG's outside counsel and therefore TIG insists that I "overlooked the predominantly legal nature of [these] email[s] and the fact that [they were] prepared for purposes of anticipated litigation" (Def. Mem. at 10).

The agenda contained in these emails is of such a general nature that it is unlikely that it would reveal any confidential information to AIU. However, upon reconsideration,

---

[6]Michael Staley and Maureen Lemire are also copied on the emails contained in Documents 259, 260, and 262.

[7]The agenda is identical in Documents 224, 230, and 231 and a slightly different agenda appears in Documents 258, 259, 260, and 262.

14

I have determined that this agenda does indicate the focus of an attorney-client conversation related to the legal representation in this case. Compare United States v. ChevronTexaco Corp., 241 F. Supp.2d 1065, 1077 (N.D. Cal. 2002)("Notes a client would make to prepare for a meeting with her lawyer -- notes which could serve as an agenda or set of reminders about things to ask or tell counsel" -- are privileged.); with Smithkline Beecham Corp. v. Apotex Corp., 193 F.R.D. 530, 538 (N.D. Ill. 2000) (several documents described as agendas for meetings are "very unlikely" to implicate legal advice, "nor would such documents ordinarily be expected to reveal confidential communications").  As a result, the agenda is privileged and may be redacted from the email chains contained in Documents 224, 230, 231, 258, 259, 260 and 262.

    F.    Documents 256, 257 and 261

Documents 256, 257 and 261 contain an email from Bill Pascale of TIG to James Rubin and Catherine Isely of Butler Rubin inquiring as to their availability for a conference call regarding the audit results (Priv. Log at 11).  TIG objects to the production of these emails as part of its sweeping objection to Documents 256-262 that they reveal the "precise issues to be included in the conference calls" (Def. Mem. at 11).  While the statements in these emails hardly reveal the precise issues to be

15

discussed during the conference calls, they do indicate the scope and focus of a legal communication between attorney and client and therefore represent privileged communications. The proposed discussion topics contained in the first line of the email in Document 256 labeled Priv 000211, Document 257 labeled PRIV 4106 and Document 261 labeled PRIV 4111 may be redacted such that the first sentence ends with the words "to discuss."

### G. Document 263

Document 263 is an email from Ann Weikers to John Parker and Bill Pascale of TIG and James Rubin and Catherine Isely of Butler Rubin concerning conversations with Norm Reid, a potential witness in this case (Priv. Log at 11). The email identifies the general nature of the conversation with Mr. Reid and references his answer to a specific inquiry by TIG. Ann Weikers appears to be seeking Butler Rubin's advice as to whether Mr. Reid's answer to this question may have legal ramifications. Therefore, this email consists of a confidential attorney-client communication for the purpose of legal representation and should not be produced.

### H. Documents 266, 267, 268, 269, 272, and 273

Documents 266, 267, 268, 269, 272, and 273 consist of a series of emails between Ann Weikers and Donna Gilliand of TIG

16

and Catherine Isely of Butler Rubin.  In my August 28 Order, I found that these emails involved "Weikers telling Gilliard she might drop by office to get some commutation files" and therefore held that the emails were "[m]erely [an] administrative communication." (Schedule A)  Upon re-examination of these emails, I have determined that Isely was requesting that Weikers provide her with certain documents out of the commutation files based on specific criteria which she identified in the email.  These emails, therefore, disclose counsel's opinion regarding which files would be important in the upcoming litigation.  Moreover, these emails were sent on July 31, 2007, approximately three weeks after the audit of AIU's files and only seven days before AIU filed the complaint in this case.  Given the factual situation at the time these emails were sent, counsel may fairly be said to have been reviewing these documents in anticipation of trial.  Therefore, counsel's opinion regarding which documents out of the commutation files would be worth reviewing represent attorney work-product and, accordingly, these documents should not be produced.  See Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, and Nov. 1, 1991, 959 F.2d 1158, 1166 (2d Cir. 1992) (the work-product doctrine protects the attorney's selection and compilation process in grouping certain documents together because disclosure of this process would reveal the opposing attorney's thinking or strategy), citing Gould Inc. v. Mitsui

17

Mining & Smelting Co., 825 F.2d 676, 680 (2d Cir. 1987); Sporck v. Peil, supra, 759 F.2d at 316.

I.  Document 279

Document 279 consists of the handwritten notes of Michael Staley from a series of meetings that took place on May 7, May 31, June 19, July 17, and August 9, 2007. Counsel was present at all of these meetings except the July 17, 2007 meeting (Priv. Log at 12). In my August 28 Order, I determined that the "[a]ttorney-client privilege attaches to the extent that the notes reflect communication between Rubin and TIG employees concerning legal issues" and ordered that Document 279 be produced with the exception of the page labeled PRIV 4505.

Upon reexamination, I have determined that the pages labeled PRIV 4504, PRIV 4506, PRIV 4508, and PRIV 4509 also contain legal analysis. The document labeled with Bates number PRIV 4504 contains five issues discussed during the conference call with counsel. Items 1, 3 and 4 reflect counsel's advice with regard to certain legal issues and therefore, these items may be redacted prior to production.

The final three lines of the notes on the page labeled PRIV 4506 memorialize a conversation counsel had with a potential witness. These three lines concern counsel's legal representation of TIG and, therefore, this communication is protected by

the attorney-client privilege.  Accordingly, these three lines may be redacted prior to production.

   The notes on page labeled PRIV 4507 record the July 17, 2007 meeting at which counsel was not present.  This page of notes is not protected and must be produced.

   Finally, almost all of the notes on the page labeled PRIV 4508 concern legal issues and therefore this page is protected, in its entirety, by the attorney-client privilege.

IV. <u>Conclusion</u>

   Accordingly, for all the foregoing reasons, my August 28 Order is hereby modified on reconsideration as follows: (1) Documents 198, 199, 200, and 263 may be withheld in their entirety on the basis of the attorney-client privilege; (2) Documents 266, 267, 268, 269, 272, and 273 may be withheld in their entirety on the basis of the attorney work-product doctrine; (3) lines 2-7 of Document 97 and lines 1-6 of Document 158 may be redacted prior to production; (4) the titles of the two attached documents may be redacted from Document 188; (5) the three lines that begin "BR [Butler Rubin] talked . . ." may be redacted from Document 204; (6) the agenda set forth in Documents 224, 230, 231, 259, 260, and 262 may be redacted; (7) the proposed discussion topics contained in the first line of the email in Document 256 Bates number PRIV 000211, Document 257 Bates number PRIV 4106

and Document 261 Bates number PRIV 4111 may be redacted prior to production; (8) the pages labeled PRIV 4505, PRIV 4507, and PRIV 4508 may be redacted from Document 279. In addition, the text associated with items 1, 3 and 4 on the page labeled PRIV 4504 and the final three lines of page labeled PRIV 4506 may be redacted prior to production.

Dated: New York, New York
       July 8, 2009

                                        SO ORDERED

                                        /s/ Henry Pitman
                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies transmitted to:

William A. Maher, Esq.
Marc L. Abrams, Esq.
Wollmurth, Maher & Deutsch LLP
500 Fifth Avenue, Suite 1200
New York, New York  10110

Joelle K. Blomquist, Esq.
Butler, Rubin, Saltarelli & Boyd, LLP
70 West Madison Street, Suite 1800
Chicago, Illinois  60602

Sean T. Keely, Esq.
Lovells, LLP
590 Madison Avenue
New York, New York  10022